UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-0872 |

**DECLARATION OF GEORGE ESCOBAR,
CHIEF OF PROGRAMS AND SERVICES, CASA, INC.**

I, George Escobar, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am the Chief of Programs and Services of CASA, Inc. ("CASA"). CASA is a national nonprofit membership organization headquartered in Langley Park, Maryland, with offices in Maryland, Virginia, Pennsylvania, and Georgia. Founded in 1985, CASA has more than 173,000 lifetime members from across the United States. CASA's members are predominantly noncitizens in a variety of immigration statuses.

2. I have worked at CASA for fourteen years. In my role, I oversee CASA's portfolio of community-facing direct services, including its health, legal, and educational services; employment and workforce development programs; financial literacy and tax programs; and parent engagement programs. An important part of my role is to understand the needs and experiences of our members so that I can work with my staff to design appropriate interventions to address those needs. I therefore speak frequently with community members and receive feedback from my staff regarding CASA members' fears, concerns, and decisions.

1

3. I make this statement based upon personal knowledge, files and documents of CASA that I have reviewed (such as case files, reports, and collected case metrics), as well as information supplied to me by employees of CASA whom I believe to be reliable. These files, documents, and information are of a type that is generated in the ordinary course of our business and that I would customarily rely upon in conducting CASA business.

**CASA's Mission and Activities**

4. A CASA member is a person who shares CASA's values, envisions a future where we can achieve full human rights for all, and is convinced that, when united and organized, we can create a more just society by building power in our working-class and immigrant communities. CASA members play an important role in deciding what campaigns we work on and how CASA serves the community.

5. CASA membership is voluntary. In order to become a member, an individual must apply for membership, pay dues, and subscribe to the principles of CASA. CASA members also must self-identify as members of an immigrant or working-class community.

6. Currently, the annual fee for CASA membership is $35. Alternatively, individuals may pay a recurring membership fee of $5 per month. The membership fee can be waived for individuals who experience financial hardship or are otherwise unable to pay. Members are also offered the opportunity, for an additional $5, to obtain a CASA ID. This is a physical picture identification card that contains basic information about the member. For many of our immigrant members, this card may be the only type of picture identification they have, other than documents from their home country. In certain jurisdictions, CASA IDs are recognized for the purposes of engaging with certain government agencies, including the police.

7. CASA's mission is to create a more just society by building power and improving

the quality of life in working-class Black, Latino/a/e, Afro-descendent, Indigenous, and immigrant communities. From CASA's beginnings in a church basement, we have envisioned a future with diverse and thriving communities living free from discrimination and fear, working together with mutual respect to achieve human rights for all.

8.  In furtherance of this mission, CASA offers a wide variety of social, health, job training, employment, and legal services to immigrant communities, with a particular focus in Maryland, Washington, D.C., Virginia, Pennsylvania, and Georgia. CASA also offers a more limited suite of services remotely to our members across the United States. Those individuals who are not geographically close to a physical CASA office are offered the opportunity to join a national organizing committee, whose members are entitled to vote on CASA's organizational priorities and integrated into our member-led system of internal democratic governance. CASA also conducts campaigns to inform members of immigrant communities of their rights and assists individuals in applying a variety of government benefits. In addition, CASA provides its members with free remote legal assistance, including free legal consultations on immigration issues.

**Harm to CASA's Members**

9.  On January 23, 2025, the U.S. Department of Homeland Security ("DHS") issued a memorandum authorizing the revocation of parole status for individuals who had been legally allowed to enter the United States and further authorizing DHS to subject them to expedited removal. Since that date, DHS has taken further action to implement that directive, which has sparked deep fear and confusion in our membership and the immigrant community generally. The expedited removal process has minimal procedural safeguards and would expose our members to rapid deportation, destroying the lives that they've created here in the U.S. and

denying them the opportunity to seek longer lasting protection.

10. CASA has a large number of members who have already been, or are likely to be, directly harmed by the administration's attempt to end humanitarian parole protections and expose paroled individuals to expedited removal. Many of our members are noncitizens, including individuals with U.S. citizen children or other family members with permanent status in the United States, and we have members specifically who were granted parole through either CBP One or the parole processes for Cuba, Haiti, Nicaragua, and Venezuela ("CHNV parole"). CASA has provided legal and other social services to thousands of of immigrant community members and is a national leader in advocating for immigration protections.

11. More than 33,000 CASA members entered the United States after the CBP One app first launched in October 2020, and a significant portion of those members were likely granted parole through CBP One. We are aware of CASA members who have had their grants of CBP One parole prematurely terminated, putting them at risk of being subjected to expedited removal.

12. Approximately 2,250 CASA members from Cuba, Haiti, Nicaragua or Venezuela entered after the full implementation of the CHNV parole program in January 2023. A significant number of them were likely sponsored for and granted parole through CHNV parole. Due to a recent Supreme Court order staying a district court decision that had temporarily prevented the Trump administration from categorically terminating all grants of CHNV parole, all CASA members who had been paroled into the United States on CHNV parole are now at risk of having their parole terminated at any point, and then being subjected to expedited removal. We have seen our members who are beneficiaries of CHNV parole receive letters terminating their parole status and, in some cases, directing them to leave the country, which

4

stoked fear and created a lot of uncertainty for them.

13. CASA has multiple members who could be placed in expedited removal proceedings under the Trump administration's current policies because they fit one or more of the various profiles the administration has prioritized for expedited removal. CASA has multiple members whose parole has been prematurely terminated and who have been in the United States for less than two years, including some do not have any pending applications for alternate immigration relief. CASA also has multiple members who were granted parole through the CBP One application and are currently in section 240 removal proceedings, who must appear in immigration court for regular hearings and who run the risk of having their proceedings dismissed and subsequently being placed in expedited removal. The significant ramp-up in immigration enforcement in recent weeks, including but not limited to courthouse arrests and raids in Los Angeles that have resulted in swift and summary deportations, only underlines the vulnerability of CASA members to the harms of the administration's policies terminating individual grants of parole and exposing paroled individuals to expedited removal.

14. LZP is a CASA member originally from Honduras who currently resides in Maryland. She is a single mother who entered the United States with her three children, now aged 18, 13 and 6, on humanitarian parole after attending a CBP One appointment at the southern border in July 2024. LZP's two youngest children are attending school in the United States, which is an opportunity they did not have in Honduras. She currently works at a fruit factory, helping to pack fruit for distribution, to support her family. Over the last month, LZP received notice that both her parole status and work authorization have been terminated, despite the fact that her parole was not supposed to expire until June 2, 2026 and her work authorization was valid through July 1, 2026. She was notified of this via a message in an application on her

phone called "Migra Connect" and confirmed it on the USCIS website. These terminations have made her even more afraid that she could be returned to Honduras, where she was a victim of domestic violence and death threats. It has made her afraid to even go outside. She sees what immigration agents are doing, that they are even detaining people who have pending asylum claims or other forms of relief. LZP applied for asylum on February 28, 2025 and intends to apply for work authorization based on her pending asylum application as soon as she is eligible. Her next scheduled immigration court hearing is in April 2026. Recent reporting about individuals who, like her, were paroled into the country being detained after immigration court and placed into expedited removal makes her afraid to go to her hearing. This places her in a terrible situation where she is afraid to pursue her legitimate asylum claim, since even going to court could mean that she would be summarily detained and removed from the country without the process she is relying upon. Yet she knows that in order to have any hope for the future she must fight her case and plans to continue complying with all of her legal obligations, including presenting for immigration court.

15. NDG and YPC are a married couple, both of whom are CASA members. They have four children, aged 16, 13, 8 and 5. All of them were granted humanitarian parole to enter the U.S. through a CBP One appointment in July 2024. They were also issued NTAs and placed into Section 240 removal proceedings. NDG works as a delivery driver to support their family, while YPC takes care of their children – including their 8-year-old son who suffers from a disability called psychomotor delay that slows his learning process. He still requires diapers, has difficulty walking, and cannot write. NDG was a politically active small business owner in Venezuela, and he was targeted and attacked by the government for supporting the opposition party. If he and his family were subjected to expedited removal back to Venezuela, they fear that

6

their family's safety would be at risk, and they would not be able to pursue their pending asylum claims.

16. CASA member JNM is originally from Haiti and entered the U.S. with his two children on CHNV parole in July 2024. In Haiti JNM was assaulted at gun point, and gangs threatened to kidnap his children, which forced him to stop taking them to school. Since being paroled into the United States with his family, JNM has for the first time in many years been able to live in peace, with his children attending school and no longer fearing for their physical safety. On March 29, 2025, however, that sense of security was shattered when he received a letter indicating that his CHNV parole authorization was being terminated and directing him to depart the country by April 24, 2025. After receiving this letter, and consulting with a CASA attorney, JNM was advised to apply for asylum but has not been able to find an attorney to assist him with the application and CASA has not been able to provide him with representation due to resource constraints. To his knowledge he does not have a case in immigration court, but he has a pending sibling petition his sister filed for him approximately seven years ago. His sister was also the one who sponsored him to enter the country on parole. JNM is at risk of being subjected to expedited removal because he fits the profile outlined in the March 25 CHNV termination memo. He is terrified of being subjected to expedited removal without the chance to pursue an asylum application. All of the gang members who threatened his children know who he is and know that he left, so if he returns he fears it will be a death sentence for him and his family.

17. Another CASA member, EMP, was pursuing a defensive asylum case in New York and had those proceedings dismissed, only so the government could detain him and seek to place him in expedited removal proceedings. Without judicial action to protect those whose parole status has been summarily revoked, potentially thousands of CASA members could be

7

subjected to a similar fate.

18. These members—and countless others like them—represent the human cost of the administration's attempt to dramatically reverse course, rapidly stripping parolees of their legal status and work authorization and potentially subjecting them to immediate expulsion from this country via expedited removal. Those members who entered on parole went through rigorous hurdles to come to this country, often fleeing terrible and unsafe conditions in their home countries. They followed the process set up by the government to seek safety here, and for the last several years have been building back their lives, starting families, working and contributing to their communities—making this country stronger.

19. If the administration is allowed to destroy that promise and continue subjecting parolees to expedited removal, without any of the normal protections of due process, it will irreparably harm the communities CASA serves by placing families at risk of separation, jeopardizing livelihoods, and cutting off access to essential healthcare and services. It has also exacerbated the fear and anxiety among immigrants, especially those who have built their lives here and contribute meaningfully to their communities. As our member's stories indicate, the tactics we are seeing by the administration, including arrests at immigration courthouses and blanket revocation of parole status and work authorization with direction to self-deport, make that fear and confusion even more acute. This places our members at risk of exposing themselves to harm by returning to countries that are not safe for them, and upends their ability to continue supporting their families and communities here in the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 10, 2025
Washington, District of Columbia

DocuSigned by:

*George Escobar*
53A219C43A564F2...

George Escobar