UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Noem, *et al.* <br><br> *Defendants*. | Case No 25-cv-00872. |

**DECLARATION OF ANGELICA SALAS, EXECUTIVE DIRECTOR OF THE COALITION FOR HUMANE IMMIGRANT RIGHTS ("CHIRLA")**

I, Angelica Salas, upon my personal knowledge, hereby declare as follows:

1. I am the Executive Director of the Coalition for Humane Immigrant Rights ("CHIRLA"). I have held this position since 1999. In this capacity, I oversee all of CHIRLA's program areas and am responsible for strategic planning and CHIRLA's annual budget.

2. CHIRLA is a nonprofit organization headquartered in Los Angeles, California, with ten offices throughout California and a national policy office in Washington, D.C. CHIRLA was founded in 1986 and its mission is to advance the human and civil rights of immigrants and refugees and ensure immigrant communities are fully integrated into our society with full rights and access to resources.

**CHIRLA's Mission, Membership, and Services**

3. CHIRLA's mission is to ensure that immigrant communities are fully integrated into our society with full rights and access to resources. CHIRLA's first director was Father Luis Olivares, the pastor at Our Lady Queen of Angels Church. As a leading voice of the Sanctuary movement, Olivares used his church to protect refugees fleeing human rights abuses in Central

America in the 1980s. Since its founding in 1986, CHIRLA has continued to advocate for immigrant rights, organizing, educating, serving, and defending immigrants and refugees in Los Angeles and throughout California.

4. Today, CHIRLA is the largest statewide immigrant rights organization in California, with fourteen unique departments and over 185 staff members who help provide a range of services that reach tens of thousands of Californians each year. For example, over the last three years, CHIRLA's education programs have reached over 820,000 people through more than 7,800 events, and its legal department has assisted approximately 30,000 people. In furtherance of its mission, CHIRLA handles the full spectrum of needs of those primarily residing within low-income immigrant communities in an area with very high costs of living and in areas of California that have long been underserved.

5. CHIRLA is a membership-based organization with approximately 51,279 members across California, about 38,926 of whom reside in Los Angeles County. CHIRLA is funded, in part, by its members. The fee for an individual membership starts at $25, and families may become members for $60.

6. CHIRLA's membership is diverse, and includes U.S. citizens, non-U.S. citizens with lawful status, and non-U.S. citizens without lawful status. Many of our members belong to mixed-status families—that is, families consisting of both individuals with citizenship or lawful immigration status and individuals without. Most of our members are low-income. CHIRLA educates its membership as well as our broader community through know-your-rights trainings, workshops, social media and educational literature about a variety of social services and benefits, including immigration law, financial literacy, workers' rights, and civic engagement.

7. In 2012, CHIRLA launched its legal services program to support its members and

others in the community in seeking the benefits and protections of Deferred Action for Childhood Arrivals ("DACA"). Since then, we have expanded the program, first by representing clients in applying for permanent residence and citizenship as well as other affirmative applications before U.S. Citizenship and Immigration Services ("USCIS"), and then expanding in 2017 to representing individuals in removal proceedings in immigration court. We now have three main components within our Department of Legal Services: 1) Programs and Subcontract Administration; 2) Worker Rights and Labor; and 3) Immigration Legal Programs, with over sixty staff members across the components. Subcontract Administration oversees funding from the California Department of Social Services, the County of Los Angeles, and the City of Los Angeles, and in this way helps ensure wider access across Los Angeles and the State of California to legal services. During the past three years, CHIRLA has conducted nearly 30,000 legal consultations and has assisted with hundreds of immigration matters, including I-130 family petitions and attendant adjustments of status, Military Parole in Place cases, consular processes, as well as humanitarian-based applications including asylum, U visas, and Special Immigrant Juvenile Status ("SIJS") and Violence Against Women Act ("VAWA") petitions.

8. There is overlap between our membership and the clients that our legal services program serves. Some members join CHIRLA first as members and then become legal services clients due to need, while others are clients before they become members.

9. Part of the CHIRLA Department of Legal Services, the Removal Defense Unit (RDU), serves immigrants during their initial immigration court proceedings as well as occasionally on appeal. RDU has recently experienced a large increase in consultation requests and due to the Trump Administration's ongoing efforts to enact its mass deportation agenda, RDU is adapting and expanding into assisting detained clients including those facing expedited

3

removal.

10. CHIRLA's programs also include a hotline where individuals—including members, clients, and community members—can call with questions. The assistance hotline that CHIRLA operates fields on average 15,000 calls per year. Given CHIRLA's deep community ties and longstanding legal services programs, CHIRLA is often a first point of contact for individuals seeking information about recent policy changes impacting immigrants.

11. In 2023, in response to a growing need, CHIRLA formed a new Department of Humanitarian Assistance. We were experiencing the arrival of a growing number of recent immigrants to Los Angeles, most of whom needed logistical and legal support. The need became particularly acute when the Governor of Texas, Greg Abbott, began sending buses filled with recent arrivals to cities around the country, including Los Angeles. CHIRLA began working with partner organizations and the City of Los Angeles to assist the newcomers and their families and help them get settled. The vast majority of these new arrivals were paroled into the U.S., primarily via the CBP One application process, and thus are currently at risk of being detained and subjected to expedited removal as has been happening at immigration courts around the country. CHIRLA also has a dedicated program that helps Afghan nationals who arrived both via Operation Allies Welcome and CBP One.

12. CHIRLA reaches its members and community members through in-person meetings and events throughout California and through its social media and other virtual platforms, including a Facebook Live series "CHIRLA en tu Casa," CHIRLA TV YouTube channel, and TikTok. Organizers, along with legal and communications staff, work collaboratively to prepare materials and content for these events that are geared towards members and non-members alike.

13. In addition to its education initiatives and legal services, CHIRLA engages in policy advocacy efforts on behalf of its members at the local, state, and national levels. For example, a recent CHIRLA campaign focused on advocacy for stronger health and safety protections for domestic workers. This campaign began in response to COVID-19, where domestic workers were at the forefront of the pandemic. Since then, CHIRLA has been supporting state legislation that would remove an exemption that denies domestic workers the same health and safety protections as other workers.

### Harm to CHIRLA's Members

14. On January 23, 2025, the U.S. Department of Homeland Security ("DHS") issued a memorandum authorizing the revocation of parole status for individuals who had been legally allowed to enter the United States and further authorizing DHS to subject them to expedited removal. Since that date, DHS has taken further action to implement that directive and aggressively target parole beneficiaries for expedited removal, including prematurely terminating grants of parole for individuals who came through the processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV parole") and arresting individuals who were paroled into the country through CBP One after their immigration court hearings. This has spread fear and confusion in CHIRLA's membership and the immigrant community generally. The expedited removal process has minimal procedural safeguards and would expose our members to swift, summary deportation, depriving them of the opportunity to seek relief for which they are eligible and uprooting the lives that they and their families have created in the United States.

15. CHIRLA has many members who have already been, or are likely to be, directly harmed by the administration's attempt to end humanitarian parole protections and expose paroled individuals to expedited removal. We have members specifically who were granted

parole through either CBP One or the parole processes for Cuba, Haiti, Nicaragua, and Venezuela ("CHNV parole") and who could be placed in expedited removal proceedings under the Trump administration's current policies.

16. Specifically, CHIRLA has members who were granted parole through the CBP One application and are currently in section 240 removal proceedings, who must appear in immigration court for regular hearings. Many of these members fear that they will be apprehended at immigration court and summarily removed from the country because they have heard of the exact same thing happening to others. CHIRLA also has members whose parole was prematurely terminated and who have been in the country for less than two years, including some who do not have any pending applications for asylum or other immigration relief. CHIRLA members are well aware of the recent significant increase in immigration enforcement at courthouses across the country and in and around Los Angeles. The stepped-up immigration enforcement underlines how exposed CHIRLA members are to the administration's drive to terminate individual grants of parole and subject paroled individuals to expedited removal.

17. For example, CHIRLA member E.I.R.M. entered the U.S. with inspection in November 2023 and was paroled into the U.S. via the CBP One parole program. He received a Notice to Appear and attended all his master calendar hearings. On March 7, 2025, he was arrested at a CBP checkpoint and detained despite his parole still being valid, and he is now being processed for expedited removal. While in detention, he was given a credible fear interview and given a negative credible fear finding. His attorney asked an immigration judge to review the determination, and although such reviews are supposed to be held within seven days of a negative determination, more than a month has passed and they have not received any review, nor a transcript of the interview. E.I.R.M.'s mental state has declined due to his detention

and the fact that he does not know how much longer it will last. He went through the entire immigration process in complete compliance with all the rules set out for him, and now he has been separated for months from his family and fiancée, unsure of when, or even if, he will get to see them again. Additionally, he faces harm if he were to be forcibly returned to Mexico, where he and his brother have received death threats from a cartel that the U.S. Government has designated a foreign terrorist group and a transnational criminal organization.

18.     Other CHIRLA members who entered the U.S. during the last two years and were paroled in via the CBP One parole program have expressed significant fears of being detained at court hearings, based on footage in the news media of immigration agents arresting people at courthouses. These members also reported a fear of being detained, a fear of harm should they be deported to countries that they fled due to dangers they faced there, and a fear of being separated from their families if they are detained and/or deported. Additionally, some members fear the loss of income to their households if their detention or deportation disrupts their ability to work and hurts their capacity to earn income at the level needed to support their households.

19.     For CHIRLA's members, as well as their families and communities, the use of and threat of expedited removal against lawfully paroled individuals is causing widespread fear and uncertainty. This fear has increased significantly for CHIRLA members as a result of the recent sweeping ICE raids in Los Angeles, which have already resulted in the arrests of many noncitizens and has compelled CHIRLA members to refrain from going about their daily lives.

20.     In Los Angeles County, home to nearly 40,000 CHIRLA members, any sense of normalcy has been shattered by a high-profile blitz by federal immigration authorities on workplaces and other sites central to people's daily lives. Immigrant Angelenos are inundated by reports of warrantless surprise raids, of their community members snatched up by masked

men, loaded into unmarked vans, and spirited away to unknown locations. Often, family members and lawyers representing or seeking to represent these individuals are unable to ascertain their whereabouts, adding to people's sense of grave danger. And reports are reaching the immigrant community of detained people being deported within a day or two of their arrest, without a hearing in front of an Immigration Judge or other forms of due process. For all these reasons, many of CHIRLA's members are currently living through a period of intense fear, anxiety and dread.

21. CHIRLA has been receiving many inquiries from members, clients, and community members who were granted parole and are now concerned about that status being revoked and being subject to expedited removal. Since the widespread courthouse arrests began around May 20, 2025, the number of inquiries has increased and CHIRLA's Humanitarian Services department is now facing a wave of inquiries from paroled clients who have received termination notifications via email and are very fearful that they will be detained at their upcoming immigration court hearings.

22. CHIRLA has already identified several existing clients as well who are vulnerable to the use of expedited removal against parolees. At least four of CHIRLA's existing clients and an additional five children in their families face the risk of expedited removal when they attend their scheduled court hearings in the next few months.

23. For example, one of CHIRLA's clients and his two children fled organized crime in their home country after relocating internally when their tormentor was released after serving three years out of a 20-year sentence. After all semblance of government protection vanished, and their police report was ignored, they fled the country and entered the U.S. using CBP One. In a few months, the family has a hearing in immigration court, and they fear their case will be

dismissed and they will be arrested for expedited removal like has happened to others who are in similar situations.

24. The administration has made clear—both through written policies and its recent actions in apprehending and detaining scores of individuals across the country—that it intends to remove noncitizens, including parole beneficiaries, as quickly as possible, in as large numbers as possible. CHIRLA members are at significant risk of being subjected to expedited removal proceedings rather than regular removal proceedings because of the administration's express intent to target parole beneficiaries, including by terminating ongoing removal proceedings and active parole status. This threat of expedited removal and all the harm it inflicts on individuals and their families is causing widespread fear among CHIRLA members.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed June 11, 2025, in Los Angeles, California.

_____
Angelica Salas