# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants.* | Case No.: 1:25-cv-0872 |

## DECLARATION OF A. ASHLEY TABADDOR

I, A. Ashley Tabaddor, upon my personal knowledge, hereby declare as follows:

1. I am over the age of 18 and competent to testify to the facts and matters set forth herein.

2. I am currently a Distinguished Visiting Jurist at Southwestern Law School and an attorney in good standing with the State Bar of California. I have over 25 years of experience in immigration law and policy. From 2005 to 2021, I served as a U.S. Immigration Judge in Los Angeles, California, where I presided over a docket of several thousand cases covering a broad range of issues in removal proceedings. In my tenure I presided over both detained and non-detained dockets. From 2017 to 2021, I served as President of the National Association of Immigration Judges, where I was invited to testify before U.S. House and Senate subcommittees in support of establishing an independent immigration court. From 2021 to 2025, I served as Chief Counsel at the U.S. Citizenship and Immigration Services (USCIS) at the Department of Homeland Security, where I led the agency's legal program and provided counsel on, *inter alia*, immigration policy, law, and adjudications. I have also served as an Assistant U.S. Attorney where I primarily handled civil trial defensive litigation, and a Trial Attorney at the Civil

1

Division, Office of Immigration Litigation, U.S. Department of Justice where I primarily handled civil appellate litigation.

3. I submit this declaration to provide background, based on my experience and knowledge, on how formal removal proceedings under Section 240 of the Immigration and Nationality Act ("the Act") differ in process and function from expedited removal proceedings under Section 235(b) of the Act, particularly with regard to procedural safeguards and access to legal and humanitarian forms of relief.

**Overview of § 240 Proceedings**

4. Section 240 removal proceedings are formal adversarial civil proceedings conducted before an Immigration Judge ("IJ") within the Executive Office for Immigration Review ("EOIR") in the U.S. Department of Justice. The minimum requirement to be considered for an appointment as an IJ by the Attorney General is seven years in good standing as a licensed attorney. Once appointed, IJs are expected to exercise independent decision-making authority. They are responsible for ensuring that the proceedings are fundamentally fair and that due process rights of the parties are protected.

5. Section 240 removal proceedings are initiated with the filing of a charging document, entitled a "notice to appear" ("NTA"), by the Department of Homeland Security ("DHS") against noncitizens, who are the "respondents." The respondents are entitled to receive written notice of the charges and the factual basis for those charges against them. They are entitled to be represented by counsel of their own choice at no expense to the government. The IJ is responsible for ensuring that the respondent understands the nature of the proceedings and their rights and responsibilities within it.

6. IJs have a duty to fully develop the record in cases before them. That means they have the ability to examine and cross-examine and must ensure that all relevant information is presented and considered. They must actively elicit information from respondents to create a complete record. This is particularly crucial when a respondent in proceedings is not represented by counsel. When that is so, the judge must explain all legal rights, responsibilities of the parties to the proceedings, and legal requirements for proving eligibility for relief from removal and deportation. This duty is mandated so that respondents have a fair opportunity to present their case and are not disadvantaged by

2

their self-representation. Failure by an IJ to fully develop the record is presumptively prejudicial error and can be a basis for reversal of the IJ decision on appeal.

7. IJs must fully articulate the basis of their decisions, including indicating the law upon which they are relying, the salient facts presented during the hearing, and their analysis of how these interact, thereby providing adequate justification for the decision and outcome of the proceedings.

8. DHS has the initial burden of proof of showing that the respondent is not a citizen or national of the United States. The respondent is afforded the opportunity to contest the charges, move to suppress evidence, apply for relief from removal, present testimony and evidence, object to DHS evidence and witness testimony, and receive a decision from the IJ. They are entitled to the hearings being interpreted for them in the language they read and understand best. These hearings are all recorded, and transcribed if the decision is appealed. Either party, DHS or the respondent, has a right to appeal an IJ's decision to the Board of Immigration Appeals (BIA), which is an administrative appellate body, also within EOIR.

9. Section 240 removal proceedings are often scheduled over multiple hearings to ensure compliance with the applicable constitutional and statutory framework; it is well-settled that respondents are entitled to due process in removal proceedings. In practice, this structure should allow respondents reasonable time to retain counsel, gather documentation and evidence to present to the court in support of a variety of available applications for relief, including asylum, withholding of removal, protection under the Convention Against Torture, adjustment of status, cancellation of removal, etc. It also permits the opportunity to pursue parallel immigration applications before other components of DHS. For noncitizens with collateral relief (which is relief from removal that can be granted not by an immigration court but by another entity like USCIS) like certain applications for adjustment of status through a U.S. citizen immediate relative or other green card category, Temporary Protected Status ("TPS"), or Special Immigrant Juvenile Status ("SIJS"), they can, in section 240 proceedings, request that the IJ allow them to pursue those applications. An IJ has options to do so, including granting a continuance, administratively closing proceedings, placing the case on the "status docket" to provide time for USCIS to adjudicate the collateral relief, or terminating the case

altogether. In my experience, these options were commonly used by IJs to manage their dockets and to allow noncitizens to apply for relief for which they are eligible.

10. In my experience as an IJ, it was also common for proceedings to be continued at least once, if not more, to permit individuals—particularly minors or vulnerable populations—to secure representation or necessary supporting documents. Where individuals had legal avenues to remain in the United States, such as through family-based petitions, SIJS, VAWA self-petitions, or humanitarian programs, these cases were often continued to avoid premature adjudication in court before those processes could be completed outside of court.

**Overview of Expedited Removal**

11. In contrast, expedited removal under § 235(b) is a process conducted by DHS enforcement officers, not IJs. It applies to certain individuals who are apprehended at ports of entry or shortly after entry into the United States and who are determined to be inadmissible under designated grounds. Individuals subject to expedited removal do not receive a hearing before an IJ, nor are they entitled to seek or be represented by counsel. Moreover, as the term "expedited" implies, such proceedings are conducted on a very compressed schedule and can result in deportation in hours or days.

12. If a person in expedited removal indicates a fear of return, they are referred for a "credible fear" screening interview with an asylum officer who is also an employee of DHS. There is no right to counsel during the credible fear determination. The asylum officer exclusively conducts the interview. The non-citizen may be accompanied by a trusted individual, who may be counsel, but only if they are able to contact and secure one within a very limited time provided to them (on average 24 to 48 hours). Since this typically takes place in a custodial setting – within CBP or ICE custody – the ability to meet the deadline is severely constrained. Moreover, even when counsel is secured, counsel is not permitted to "present" the individual's case. Only the asylum officer determines the line and scope of questioning. At most, if present, counsel may be permitted to offer a closing statement.

13. Asylum officers are not required to be attorneys and have no explicit requirement to advise or even explain to an applicant the requirements needed to qualify for asylum or persecution related relief.

14. If the asylum officer finds no credible fear, the individual may request a limited review by an IJ. This review is typically conducted telephonically or via videoconference and focuses solely on whether the credible fear determination was proper. If no fear is expressed, or if the claim is found not credible, removal may occur within hours or days of apprehension. There is no judicial review of the IJ decision here.

15. Additionally, it is my understanding that regulations were promulgated after my departure from the bench to allow individuals who are subjected to § 235(b) expedited removal proceedings, who are then found to possess a credible fear of persecution or torture, to be placed into "streamlined" removal proceedings. These streamlined proceedings, as laid out in 8 C.F.R. § 1240.17, operate on a truncated timeline and are to be completed within 90 to 100 days of the serving of the NTA. 8 C.F.R. § 1240.17(f). These proceedings thus afford fewer opportunities for respondents to secure counsel or pursue collateral forms of relief from removal. The determination of whether the individual's proceedings will be regular § 240 removal proceedings, or the more truncated "streamlined" version, depends on DHS's choice of procedure in whether to have USCIS or EOIR consider the individual's asylum application in the first instance subsequent to a positive credible fear finding.

16. Unlike § 240 proceedings, there is no mechanism within expedited removal for individuals to pursue or even disclose eligibility for other forms of relief, such as pending family-based petitions, special immigration visas, TPS, or adjustment of status under humanitarian or employment-based provisions. The process is not designed to assess those forms of eligibility. As a result, with respect to individuals who would have valid claims for relief from removal – either directly before the IJ or indirectly through collateral relief that the IJ frequently would afford respondents time to pursue outside of court – their placement in expedited removal rather than 240 proceedings can eliminate their ability to secure relief from removal that would otherwise be available to them.

**Key Distinctions Between the Two Processes**

17. The primary distinctions between § 240 and § 235(b) proceedings involve procedural protections, adjudicator neutrality, transparency, and legal opportunities for relief:

    a. <u>Adjudicator</u>: In § 240 proceedings, an IJ who is sworn to serve as a neutral judge presides over adversarial court proceedings. In § 235 proceedings, DHS officers both initiate and adjudicate the removal order. None of the officers involved in § 235 proceedings, including the adjudication and the credible fear interview, is required to be an attorney or serve as a neutral arbiter of facts.

    b. <u>Access to Counsel</u>: Respondents in § 240 proceedings are afforded the opportunity to retain counsel and request continuances to secure representation. In expedited removal, there is no statutory or regulatory right to counsel prior to removal and the compressed timeframes and remote locations in which these proceedings take place greatly diminish the opportunities available to non-citizens to locate and retain counsel.

    c. <u>Opportunity to Prepare and Present Evidence</u>: Section 240 proceedings grant people reasonable time to gather and submit documents, witness testimony, and legal motions. Expedited removal does not. Respondents who have a fear of return may struggle to articulate the full basis of their claims during a single screening interview in 235(b) removal protocols.

    d. <u>Relief Eligibility</u>: In § 240 removal proceedings, individuals may pursue multiple forms of relief, including asylum and other forms of immigration relief before the IJ, or adjustment of status or SIJS through applications to USCIS (for which the removal proceedings before the IJ would be administratively closed or otherwise continued in some form or fashion). In contrast, those who are subjected to 235(b) expedited removal protocols may avoid removal only by expressing intention to apply for asylum or a fear of persecution or torture and then demonstrating to an immigration officer's satisfaction that they possess a credible fear of persecution. Only by establishing a fear-based reason to avoid expedited removal can an individual be returned to 240 removal proceedings, where they may in theory able to secure lawful permanent residence from the IJ or in collateral proceedings through marriage to a U.S. citizen spouse, or other types of visas such as special immigration visa, or diversity visa, or employment-based visas.

    e. <u>Transparency and Review</u>: § 240 proceedings generate a formal record, including transcripts and written decisions, subject to appellate and judicial review in the circuit court of appeals. Expedited removal results in summary paperwork with no routine oversight or external review unless a credible fear claim is accepted. While review of a negative credible fear finding allows an IJ to accept new evidence, a finding that an applicant did not provide credible testimony to the asylum officer has great weight in the ultimate determination of whether an applicant is found to be a credible witness before the IJ. Witness credibility takes on great importance since many, if not most, asylum applicants are unable to produce specific documentary evidence to support their claims. The lack of recordings or verbatim transcripts of expedited removal interviews greatly increases the possibility of errors.

**Role and Impact of Detention**

18. Separate from the legal framework, a significant distinction between the two processes also lies in the use and impact of detention. In § 240 proceedings, individuals may be detained or released on bond, parole, or their own recognizance, depending on statutory authority and agency discretion.

19. In expedited removal, individuals are typically detained from the time of apprehension through the conclusion of their case.

20. In my experience, detention practically:
    a. Severely restricts or eliminates access to counsel;
    b. Complicates the logistics of gathering evidence or coordinating with family;
    c. Impairs meaningful participation in fear interviews or other screenings;
    d. Can result in withdrawal of legal representation, particularly if the detention location is far from the attorney's base of practice or if attorney-client communication becomes unworkable.

21. In my experience, the combination of short timelines and detention conditions significantly impact the quality and completeness of the information presented by noncitizens in both the credible fear process and expedited removal more broadly.

7

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in Los Angeles, California on June 9, 2025.

A. Ashley Tabaddor