UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants.* | Case No.: 1:25-cv-0872 |

**DECLARATION OF LINDSAY TOCZYLOWSKI**

I, Lindsay Toczylowski, upon my personal knowledge, hereby declare as follows:

1. I am over the age of 18 and competent to testify to the facts and matters set forth herein.

2. I am the President and CEO at Immigrant Defenders Law Center ("ImmDef"), and I am an attorney in good standing of the State Bar of California (State Bar# 262481). My office represents 2 clients, E.F.S. and R.A.U.P., who were both paroled into the United States at a port of entry following CBP One appointments but were detained last week while unrepresented at their immigration court hearings and are now being processed for expedited removal.

3. On Friday, May 23, 2025, I was at the North Los Angeles Court observing immigration court hearings. During Immigration Judge Peter Kim's morning docket that day, I personally observed E.F.S. appear for his hearing unrepresented alongside his wife and young son.

4. During the hearing, the Department of Homeland Security ("DHS") attorney, Caroline Tompkins, made an oral motion to the court to sever E.F.S.'s case from that of his wife and son. She specifically stated that the government was moving to dismiss E.F.S.'s case as it was no longer in the government's best interest to pursue the case and the Department intended to place E.F.S. into expedited removal proceedings.

5. E.F.S. verbally opposed the motion to dismiss and told the court that he wanted his case to remain with his wife and child. The Judge said that is not a legal basis to deny the Government's motion to dismiss and ordered E.F.S.'s case dismissed.

6. I followed E.F.S. and his wife and son out of the courtroom after the proceedings were dismissed and witnessed approximately 6 ICE officers arrest E.F.S. in front of his young son and wife. While the male officers handcuffed E.F.S., a female ICE officer ushered his wife and young son away. E.F.S.'s young son, who I later learned was 8 years old, had a shocked look on his face and tears in his eyes. E.F.S.'s wife was shaking and holding on to her son. The ICE officers moved E.F.S. into a non-public hallway with a service elevator and left his wife and young son stunned and confused in the hallway.

7. Another attorney from my office, Andrew Freire, and I spoke to the wife of E.F.S. following his arrest. She informed us that this was their first court hearing and that they had entered the U.S. via CBP One appointments in 2024. I then directed Andrew Freire to go downstairs and attempt to speak to E.F.S. in government custody, which he did.

8. I then returned to Immigration Judge Kim's courtroom to observe the afternoon master calendar docket. The last case that was called that afternoon was a young man, R.A.U.P. In his case, I personally observed the same DHS attorney, Caroline Tompkins, move to

dismiss his case saying that it was no longer in the government's best interest to pursue the case and the Department intended to pursue expedited removal. Like E.F.S., R.A.U.P. verbally opposed the dismissal, but when Immigration Judge Kim asked him to articulate a basis, he was not able to say much more than he wants to remain in the U.S. and wants to continue with his case. The Immigration Judge told him that he could continue with his case outside of court but did not explain what expedited removal means. Following this, the Immigration Judge dismissed the proceedings despite R.A.U.P.'s opposition.

9. I followed R.A.U.P. out of the courtroom as he exited with his female partner. Moments after exiting the courtroom, he was stopped by approximately 6 ICE officers who immediately began restraining him. His partner started screaming and fell to the floor. She was begging the officers not to take R.A.U.P. and saying "he is a good person. He didn't do anything wrong." The officers did not speak to her and quickly moved R.A.U.P. into the service elevator hallway. I remained with his partner who told me that R.A.U.P. had entered the U.S. approximately 6 months earlier via a CBP One appointment. This was his first court appearance. I gathered additional information from his partner so that we could meet with him in custody.

10. No one from ImmDef was able to meet with R.A.U.P. that day because the attorney access at the 300 North Los Angeles Street building ended shortly after his detention. By the time we located him the following Tuesday, he and E.F.S. had both been moved 1100 miles away to a detention center in Tacoma, Washington, far from their families and attorneys. Our team at ImmDef has continued to meet with them and is representing both E.F.S. and R.A.U.P. in their expedited removal proceedings.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in Los Angeles, California on June 4, 2025.

_____
Lindsay Toczylowski