# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br> *Defendants.* | Case No.: 1:25-cv-0872 |

## DECLARATION OF MEGHAN DUPUIS MAURUS

I, Meghan DuPuis Maurus, upon my personal knowledge, hereby declare as follows:

1. I am over the age of 18 and competent to testify to the facts and matters set forth herein.

2. I am an attorney at Border Butterflies Project, a coalitional project of LGBT organizations including the Transgender Law Center, the Black LGBTQIA+ Migrant Project, and Familia TQLM, and I am an attorney in good standing of the State Bars of New York and New Jersey. I represent J.A.L.M., a citizen of Honduras who arrived in the United States on September 3, 2024, at Eagle Pass, Texas, after appearing at a port of entry pursuant to an appointment that he received using the mobile application formerly known as CBP One. On that date, J.A.L.M. was paroled into the United States and provided a Notice to Appear (NTA) and other documents. Attached as Exhibit A to this declaration is a true and correct copy of J.A.L.M.'s Notice to Appear with all personally identifiable information redacted.

3. J.A.L.M. went to live with family members at the address in Kearns, Utah that he had provided to government personnel at the border. With the help of a community

organization, J.A.L.M. applied for and received an Employment Authorization Document (EAD) and lawful employment in Kearns.

4.  The Department of Homeland Security (DHS) filed the NTA with the Salt Lake City, Utah Immigration Court, and had a court date set for Jan. 20, 2028. In the months before April 2025, I provided legal information and was in contact with the client regarding their efforts to find legal counsel and support, but did not initially enter an appearance to represent him in removal proceedings.

5.  In April 2025, J.A.L.M. was arrested at their birthday party by Kearns, Utah police after he went to a nearby police station in person to report an escalating situation at his family's home. J.A.L.M. paid a bail with the police department and was taken immediately into U.S. Immigration and Customs Enforcement (ICE) custody. No charges to date have been filed by the Office of the District Attorney in Salt Lake City, Utah.

6.  On April 8, 2025, the ICE attorney representing the Department of Homeland Security in removal proceedings filed in the Salt Lake City Immigration Court a motion to dismiss the case without prejudice. The stated goal was to place J.A.L.M. into expedited removal proceedings. Beginning on April 8, 2025, I attempted three times to file a G-28, Notice of Appearance with United States Citizenship and Immigration Services (USCIS). My goal in entering an appearance with USCIS was to ensure that I could represent J.A.L.M. in any expedited removal proceedings, including in any Credible Fear Interview (CFI) that USCIS might conduct with J.A.L.M. as part of those expedited removal proceedings. Each time the response from USCIS was that they had no jurisdiction over the matter and therefore could not accept the G-28.

7.  On April 10, 2025, I filed an application for Asylum, Withholding of Removal and
    protection under the Convention against Torture (I-589), which was accepted in ECAS on
    April 14, 2025. On April 10, I also filed an opposition to the dismissal motion. Attached
    as Exhibit B to this declaration is a true and correct copy of my opposition to the ICE
    motion to dismiss with all personally identifiable information redacted.

8.  During this time, J.A.L.M. was incarcerated at the Southern Nevada Detention Center,
    where he remains detained.

9.  On April 14, 2025, I received a telephone call without advance notice from a USCIS
    asylum officer who had my client on the line and said they were going to conduct a CFI.
    At the outset I explained that my client was not subject to expedited removal because he
    was still in ongoing removal proceedings in the Salt Lake City Immigration Court. As a
    result, I objected to USCIS having jurisdiction to conduct a CFI. Nonetheless the CFI
    proceeded.

10. J.A.L.M. explained during the interview that their fear of return to Honduras was based
    on their sexual orientation and gender presentation/identity. The USCIS officer asked
    about J.A.L.M.'s entry into the United States and J.A.L.M. explained that they entered
    the United States with parole and a Notice to Appear (NTA) after receiving an
    appointment through the CBP One application to appear at a port of entry. About an hour
    into the CFI, J.A.L.M. was asked why they had crossed the border without waiting for an
    appointment to go to a port of entry. J.A.L.M. explained for the second time that they had
    waited for an appointment and only went to the port of entry at Eagle Pass, Texas, once
    they had that CBP One appointment. At this point the interviewer paused the interview to

seek clarification. The break was approximately 15-20 minutes. When she returned, the officer terminated the interview without explanation.

11. Shortly after the termination of the CFI, I sent another G-28 to USCIS seeking to be named as J.A.L.M.'s legal representative. That email was also returned stating that USCIS did not have jurisdiction. Attached as Exhibits C and D to this declaration, respectively, are true and correct copies of this next G-28 submission to USCIS and USCIS's responses to the submission, all personally identifiable information redacted. These papers are representative of my prior three attempts to file with USCIS a G-28 to represent J.A.L.M.

12. On April 28, 2025, Immigration Judge (IJ) Douglas Nelson granted DHS's motion to dismiss the removal case against J.A.L.M. Attached as Exhibit E to this declaration is a true and correct copy of the immigration judge's decision with all personally identifiable information redacted.

13. On May 8, 2025, USCIS called me on the telephone without advance notice and with J.A.L.M. on the line to resume my client's CFI. I requested to reschedule because of a scheduling conflict. On May 13, 2025, the CFI proceeded telephonically as scheduled and I was present.

14. On May 19, 2025, J.A.L.M. was informed he had passed his CFI, and was placed back in removal proceedings.

15. J.A.L.M. remains detained pending his new removal case. His first Master Calendar Hearing (MCH) was on June 3, 2025. At the MCH, the new Immigration Judge stated that she could not see any of the prior proceedings, and anything related to the case would need to be re-submitted.

4

16. J.A.L.M. arrived in the United States in September 2024 at an official port of entry with an appointment that he secured using the government-issued CBP One process and they was inspected and lawfully paroled into the country at that time. They went to the address that he provided to government officials, lawfully obtained an EAD and employment, and followed all processes and requirements provided to him by ICE and the immigration courts. Beginning with their detention by ICE on or about April 8, 2025, he has experienced significant emotional distress. I have spent numerous hours scrambling to understand what the government was doing at various points in this case, from initiating a credible fear interview process while removal proceedings were ongoing and expedited removal could not legally have been commenced, to moving to dismiss his removal proceedings despite the fact that he was lawfully paroled into the country, to repeatedly rejecting my properly-filed notices of appearance with USCIS. The complete process from being in removal proceedings in front of EOIR through expedited removal and back to removal proceedings took up numerous hours of office time within our office and caused our client incredible amounts of anxiety and took an emotional toll. J.A.L.M. is gay and has a strong asylum case. J.A.L.M.'s asylum claim stems from his effeminate gender presentation and his sexuality. They are afraid and currently experiencing mental distress at being in a detention center where they fear bullying and violence from other detainees. After all the time and emotional distress that J.A.L.M. was subjected to as a result of the government's efforts to dismiss removal proceedings and process them for expedited removal, J.A.L.M. is once more in removal proceedings.

17. This declaration is based on a review of all documents available to myself and J.A.L.M. regarding their immigration history, immigration status, and immigration case and to the

best of their knowledge all statements are true and correct. It is not feasible for J.A.L.M.

to prepare his own signed declaration, because they are in immigration detention and I

have only been able to review the documents in their immigration file and am only able

to occasionally speak to them by phone.

I declare under penalty of perjury and under the laws of the United States that the foregoing is

true and correct to the best of my knowledge.

Executed in San Diego, California on June 11, 2025.

Meghan Dupuis Maurus

6

# EXHIBIT A

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

DEPARTMENT OF HOMELAND SECURITY
# NOTICE TO APPEAR

| | |
|---|---|
| **In removal proceedings under section 240 of the Immigration and Nationality Act:** | |

File No: _____ ████

In the Matter of:

Respondent: ████████████ _____ currently residing at:

NEVADA SOUTHERN DETENTION CENTER, 2190 E. MESQUITE AVE, PAHRUMP NV, 89060      385-461-5697

(Number, street, city, state and ZIP code)      (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of Honduras and a citizen of HONDURAS;
3. You entered the United States at an unknown location on or about 2024-09-03;
4. You did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

☒ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☒ Section 235(b)(1) order was vacated pursuant to:    ☒ 8CFR 208.30    ☐ 8CFR 235.3(b)(5)(iv)    ████

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

110 N CITY PKWY, STE 400, LAS VEGAS, NV, 89106

*(Complete Address of Immigration Court, including Room Number, if any)*

on ___6/3/2025___ at ___8:00 AM___ to show why you should not be removed from the United States based on the
    *(Date)*        *(Time)*

charge(s) set forth above.

_____ Supervisory Asylum Officer

*(Signature and Title of Issuing Officer)*

Date: ___5/16/2025___     _____ PAHRUMP NV

*(City and State)*

DHS Form I-862 (6/22)          Page 1 of 3

**Notice to Respondent**

**Warning:** Any statement you make may be used against you in removal proceedings.
**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/I-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Judge, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

Upon information and belief, the language that the alien understands is          SPANISH

---

**Request for Prompt Hearing**

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____      _____

*(Signature of Respondent)*

Date: _____

_____
*(Signature and Title of Immigration Officer)*

---

**Certificate of Service**

This Notice To Appear was served on the respondent by me on ~~9/7/21~~ 5.19.25 , in the following manner and in compliance with section 239(a)(1) of the Act.

☑ in person    ☐ by certified mail, returned receipt # _____ requested    ☐ by regular mail

☐ Attached is a credible fear worksheet.

☑ Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the     SPANISH     language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____          _____
*(Personally Served)*                                   *(Signature and Title of officer)*

Uploaded on: 05/20/2025 at 09:53:25 AM (Pacific Daylight Time)  Base City: LVG

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

EOIR – 3 of 3

# EXHIBIT B

Meghan DuPuis Maurus                                          **DETAINED**
EOIR CC111789
2364 Paseo de las Americas, 104-301
San Diego, CA 92154
 (619) 649-8898
maurus@transgnderlawcenter.org


### UNITED STATES DEPARTMENT OF JUSTICE
### EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
### SALT LAKE CITY IMMIGRATION COURT
### SALT LAKE CITY, UTAH


**In the matter of:**

████████████████████                        **File No.** ████████████

**In Removal Proceedings**


**Hon. Douglas Donaldson**                   **Next Hearing: Jan. 20, 2028**


### RESPONDENT'S OPPOSITION TO THE DEPARTMENT OF HOMELAND SECURITY'S
### MOTION TO DISMISS

Meghan DuPuis Maurus                                    **DETAINED**
EOIR CC111789
2364 Paseo de las Americas, 104-301
San Diego, CA 92154
 (619) 649-8898
maurus@transgnderlawcenter.org


**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**SALT LAKE CITY IMMIGRATION COURT**
**SALT LAKE CITY, UTAH**

**In the matter of:**

███████████████████████                        **File No.** ████████████

 **In Removal Proceedings**


**RESPONDENT'S OPPOSITION TO DHS'S MOTION TO DISMISS**

On April 8, 2025 counsel for the Department of Homeland Security (DHS) Office of

the Principal Legal Advisor (OPLA) filed a motion to dismiss these proceedings. DHS

alleges that, pursuant to 8 C.F.R. § 239.2(a)(7), the circumstances of this case have changed

after the issuance of the Notice to Appear to such an extent that continuation is no longer in

the best interest of the government because the government has now decided that it would

like to pursue expedited removal against the Respondent. OPLA did not seek Respondent's

position before filing the motion to dismiss, and Respondent strenuously opposes the

motion.[1] For the reasons set forth below, the Court should deny DHS's motion to dismiss.

**I.     FACTS AND PROCEDURAL HISTORY**

---

ᵞ The Immigration Court Practice Manual (ICPM) states that a party "should make a good faith effort to ascertain the opposing party's position on the motion." EOIR Policy Manual, Pt. II – ICPM, Ch. 5.2(i), https://www.justice.gov/eoir/reference-materials/ic/chapter-5/2. The Court should reject DHS's motion for their failure to comply with the ICPM by not making a good faith effort to contact Respondent's counsel.

1

DHS issued a Notice to Appear (NTA) to initiate these removal proceedings against Respondent on September 3, 2024, alleging that Respondent was an arriving alien. Respondent was not a citizen or national of the United States. Respondent was a citizen of Honduras. Respondent applied for admission on September 3, 2024, at Eagle Pass, Texas (Bridge 2). DHS further alleged that Respondent was an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act ("INA"); and that they were an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity or nationality. DHS filed the NTA on September 3, 2024, commencing these removal proceedings.

Respondent entered the United States after applying for, and receiving, a date to present at the border through CBP One. On September 3, 2024, CBP One was the process laid out by the US Government on how to enter and seek asylum. Respondent received their date to present on September 3, 2024, and presented at the assigned date and time, and entered through the Port of Entry at Eagle Pass, Texas. Respondent travelled to the sponsor they had listed in CBP One and at the border. Respondent was placed in removal proceedings and given a date to appear in Salt Lake City Immigration Court on Jan. 20, 2028, at 1pm. Through a local legal organization Respondent applied for, and obtained a work permit, and was on waitlists with at least two organizations to complete the Application for Asylum, Withholding of Removal, and Protection under the Convention against Torture ("CAT"), Form I-589 ("I-589"), within one year of entering the United States. They remained at the address listed when they entered the United States.

Respondent submitted a I-589 on April 9, 2025, asserting asylum based on their membership in a particular social group, and their political opinion. Mr. ████████ is a gay man who has also been a member of a LGBT rights organization in Honduras. On both of these bases he has been physically harmed, sexually assaulted, and endured a lifetime of smaller but daily assault on his person for being gay. Respondent decided to leave Honduras after being kidnapped off the street and violently raped at knifepoint. At the end the perpetrator told Respondent he knew who he was and knew his family. Respondent was threatened with death. He went to the police, but they told him there was nothing they could do, and that likely the perpetrator would know he came. Respondent felt the only way to stay alive was to flee Honduras. See, Exhibit E.

The incident that caused him to flee was merely the last incident in a lifetime of anti-LGBT violence against him. *Id.* He was spit on in the street. Nearly daily he would have people say anti-gay slurs or insults. *Id.* He had to barely subsist as a self-employed person because he could not find employment because of his sexuality. *Id.* He was attacked physically on numerous occasions. *Id.* In short, he suffered a lifetime of violence and abuse for his sexuality.

## I.    ARGUMENT

This Court should deny DHS's motion to dismiss. In adjudicating DHS's motion, this Court must consider Respondent's arguments in opposition to the motion. *Matter of G-N-C-*, 22 I&N Dec. 281, 284-85 (BIA 1998). This Court should deny DHS's motion to dismiss because

Respondent wishes to have this Court adjudicate his pending application for Asylum, Withholding of Removal and protection under CAT, and, since DHS has chosen to

commence INA § 240 proceedings, he has a right to be heard on that claim. Further, Respondent will suffer serious prejudice if this Court grants DHS's motion to dismiss and he is not able to pursue her application for asylum before this Court. Even evaluating DHS's motion solely on its stated basis pursuant to 8 C.F.R. § 239.2(a)(7), the motion must be denied because DHS has failed to establish that circumstances in *this case* have changed since the NTA's issuance, or that it is not in the government's best interest for the case to proceed to a final merits adjudication. In fact, DHS cannot lawfully apply expedited removal to the Respondent, as doing so would violate bedrock anti-retroactivity law. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

A. **This Court Has a Duty to Consider the Respondent's Arguments in Opposition to DHS's Motion to Dismiss.**

This Court has the exclusive authority to decide whether or not to dismiss these removal proceedings, and it must consider the Respondent's reasons for opposing DHS's motion. *See* 8 C.F.R. § 1239.2(c); *Matter of G-N-C-*, 22 I&N Dec. 281, 284-85 (BIA 1998). Board of Immigration Appeals (BIA) precedent recognizes that, in adjudicating a DHS motion to dismiss, an Immigration Judge must consider both parties' arguments. *G-N-C-*, 22 I&N Dec. at 284-85 ("To the extent that these proceedings were terminated without considering arguments from both sides, the Immigration Judge erred."). In a 2023 case, the BIA reaffirmed its longstanding precedent that when DHS moves to dismiss removal proceedings, the Immigration Judge "must ... independently adjudicate the motion." *Matter of H.N. Ferreira*, 28 I&N Dec. 765, 768 (BIA 2023). In adjudicating DHS's motion, the Court must consider all "underlying facts and circumstances," including "[t]he respondent's interest." *Id.* at 769. Recent EOIR guidance has affirmed the Immigration Judge's role as an independent and impartial adjudicator. *See* Memorandum from Sirce E. Owen, EOIR Acting

Dir., PM 25-02, EOIR's Core Policy Values, at 1 (Jan. 27, 2025).

In interpreting Immigration Judge and BIA regulatory authority to control removal proceedings and adjudicate other types of motions that bear on a case's finality, the BIA has repeatedly confirmed that DHS does not have "absolute veto power over the authority of an Immigration Judge or the Board to act in proceedings." *Matter of Avetisyan*, 25 I&N Dec. 688, 693 (BIA 2012); *accord Matter of W-Y-U-*, 27 I&N Dec. 17, 20 n.5 (BIA 2017); *see also Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 890 (9th Cir. 2018) ("In the context of . . . motions to reopen and requests for continuances—the BIA and the Ninth Circuit, as well as other circuits, have rejected allowing such veto power to a party."). Instead, Immigration Judges are required to "exercise [their] independent judgment and discretion and may take any action consistent with the Act and regulations that is appropriate and necessary for the disposition of such cases." *Avetisyan*, 25 I&N Dec. at 691 (citing 8 C.F.R. § 1003.10(b)).

In sum, this Court must consider the Respondent's arguments against dismissal.

**B. This Court Should Deny DHS's Motion to Dismiss Because Dismissal for Expedited Removal Would Severely Prejudice the Respondent.**

Dismissal of these proceedings so that DHS can subject the Respondent to expedited removal would result in his swift return to Honduras, where he would face harm. This is further evidenced by the fact that Respondent spent a little over a year in Mexico where he also endured anti-gay violence. Initially, Respondent considered staying in Mexico when they left Honduras. See, I-589. However, they experienced anti-LGBT attacks and violence and realized they had to continue to flee to the United States. Respondent has a strong asylum case as a LGBT man with clear past persecution. Justice is best served by continuing the removal proceedings in Immigration Court where a Judge can adjudicate the claim most expeditiously and efficiently.

Dismissal of these proceedings would also deprive the Respondent of his right to have her meritorious claim for Asylum adjudicated, as described below. BIA case law evaluating unilateral DHS dismissal motions has upheld dismissal where the respondent was not prejudiced. *See, e.g.*, *Matter of Andrade Jaso & Carbajal Ayala*, 27 I&N Dec. 557, 559 (BIA 2019) (upholding Immigration Judge grant of DHS motion to dismiss noting that dismissal was without prejudice, as "[t]he respondents have not been ordered removed,…there is no indication that they are in imminent danger of removal," and they could pursue relief in the future if DHS placed them into new removal proceedings); *G-N-C-*, 22 I&N Dec. at 286 (upholding DHS's motion to dismiss where the respondent did not specify relief he was eligible for or "explain how he was prejudiced" by the Immigration Judge's decision to dismiss). In contrast, here, the dismissal would severely prejudice the Respondent, and thus the Court must deny DHS's motion.

1. *Respondent Has a Right to Pursue Humanitarian Protection, and This Court Has a Responsibility to Adjudicate Respondent's Application.*

This Court should deny DHS's motion to dismiss because the Respondent has a right to have his claims for humanitarian protection adjudicated on the merits. Noncitizens in removal proceedings have a right to apply for relief from removal and to a hearing on their applications for relief.  *See* INA § 240(b)(4)(B); 8 C.F.R. § 1240.10(a)(4); *see also, e.g.*, *Matter of M-A-M-*, 25 I&N Dec. 474, 479 (BIA 2011) ("Included in the rights that the Due Process Clause requires in removal proceedings is the right to a full and fair hearing."). The regulations state that the Immigration Judge "*shall* inform the [noncitizen] of his or her apparent eligibility to apply for *any of the benefits enumerated in this chapter* and *shall afford the [noncitizen] an opportunity to make application during the hearing*, in accordance with the provisions of § 1240.8(d)." 8 C.F.R.

§ 1240.11(a)(2) (emphases added).

     Respondent has a statutory right to seek asylum. INA § 208(a)(1) ("[A noncitizen] who is physically present in the United States or who arrives in the United States . . . irrespective of such [noncitizen's] status, may apply for asylum     "). Granting DHS's motion to dismiss where, as here, Respondent wishes to present his asylum claim would subvert Congress's clearly articulated intent. It would also violate his "right to a hearing on the merits of [their] claim." *W-Y-U-*, 27 I&N Dec. at 19; *see* 8 C.F.R. § 1240.11(c)(3) (directing that applications for asylum and withholding "*will be decided by the immigration judge* . . . after an evidentiary hearing to resolve factual issues in dispute" (emphasis added)).

     In adjudicating an opposed DHS motion to dismiss, as here, the Court must consider whether dismissal would prejudice the Respondent, including considering the Respondent's desire to have an application for relief adjudicated on the merits. *Cf. Avetisyan*, 25 I&N Dec. at 691 (recognizing that in considering whether to defer action on a case, an Immigration Judge considers "justice and fairness to the parties"). Once DHS has initiated removal proceedings by filing an NTA, it is the Court's "responsibility to . . . adjudicate the respondent's application for relief from removal, if any." *Id.*; *see also Matter of J-A-B- & I-J-V-A-*, 27 I&N Dec. 168, 170 (BIA 2017) (recognizing IJ's "duty to adjudicate the respondents' case once the removal proceedings were initiated."). The BIA has repeatedly recognized that "[t]he role of the Immigration Courts and the Board is to adjudicate whether [a noncitizen] is removable and eligible for relief from removal in cases brought by the DHS." *J-A-B- & I-J-V-A-*, 27 I&N at 170 (quoting *W-Y-U-*, 27 I&N Dec. at 19); *J-A-B- & I-J-V-A-*, 27 I&N at 170 (noting that terminating proceedings upon unilateral motion may be "inconsistent with [the IJ's] role in our adjudicative process.").

In *Matter of W-Y-U-*, where the respondent, who had filed an application for asylum with the court, opposed a DHS motion for administrative closure, the BIA recognized that in exercising their administrative closure authority an Immigration Judge must consider the respondent's "interest in having [the] case resolved on the merits." 27 I&N Dec. at 18-19. The BIA further acknowledged that a noncitizen in removal proceedings has a right to seek asylum and related relief and a "right to a hearing on the merits of [their] claim." *Id.* at 19. The BIA concluded that these were persuasive reasons for the case to proceed and be resolved on the merits and reversed the Immigration Judge's grant of DHS's motion for administrative closure. *Id.* at 20.[22]

Similarly, here, the Court should deny DHS's motion given Respondent's interest in having the case resolved on the merits and his right to be heard on his claims for humanitarian protection. *See W-Y-U-*, 27 I&N Dec. at 19; *H.N. Ferreira*, 28 I&N Dec. at 769-70 (reversing dismissal noting the respondent's "significant" interest in having her Form I-751 reviewed). Indeed, the facts of this case are similar to unpublished BIA decisions where the BIA has sustained respondents' appeal of a DHS motion to dismiss in light of respondents' desire to seek relief before the immigration court. *See, e.g.*, Ex. A, G-C-D-, AXXX XXX 178 (BIA May 15, 2017) (unpublished) (sustaining appeal where respondents wished to have their applications for cancellation of removal and asylum adjudicated by the court); Ex. B, R-G-H-M-, AXXX-XXX 972 (Aug. 9, 2017) (unpublished) (sustaining appeal where the respondents wished to seek cancellation of removal, noting that a respondent being a low DHS enforcement priority was no guarantee

---

[22] *Matter of W-Y-U-* was partially superseded on other grounds via the 2024 EOIR Rule, Efficient Case and Docket Management in Immigration Proceedings, 89 Fed. Reg. 46742, 46753 (May 29, 2024).

that she would remain so in the future and was not a sound basis for terminating her case and denying her the opportunity to have her cancellation claim adjudicated); Ex. C, AXXX XXX XXX (BIA Jan. 8, 2024) (unpublished) (sustaining appeal where the respondent wanted an adjudication on their pending asylum application, noting that DHS's reason for dismissal to preserve limited resources "is not a sufficient basis to terminate these proceedings over the objection of the respondent after DHS filed a Notice to Appear, and the respondent filed an application for relief from removal").

2. *Respondent Will Suffer Harm If Not Able to Pursue his Applications for Asylum, Withholding of Removal and protection under the CAT*

Respondent has applied for asylum, withholding of removal, and protection under the CAT and wishes to continue to pursue this relief. Dismissing this case in Immigration Court and then forcing the Respondent to re-start their asylum process via a credible fear under INA § 235 would be an incredible waste of resources and severely harmful to the Respondent. It would prejudice the Respondent to lose the opportunity to have their case heard in an appropriate venue, only to be placed in an extended limbo of starting the process over *via* expedited removal/CFI process. Their detention is unnecessary and undertaken at taxpayer expense. As would be dismissing this case only to place them back into expedited removal proceedings. Additionally, Respondent would have fewer rights in the CFI process than he is currently entitled in removal proceedings, which would prejudice the Respondent. *See Matter of E-R-M- & L-R-M-, 25 I&N Dec. 520, 521 n.1 (BIA 2011) (noting that respondents in removal proceedings have "more rights available to them" than in expedited removal proceedings) compare, e.g., INA § 240(b)(4), 8 C.F.R. §§ 1240.3, 1240.10(a), 1003.1(b)(3) (rights in removal proceedings), with 8 C.F.R. §§ 1003.42(c), 1208.30(g)(2)(iv)(A) (limited rights in credible fear process.*

Granting DHS Motion to Dismiss would upend the principle of fairness and reliance that is guaranteed by our system of law. Respondent followed all instructions and requirements laid out of him by the US Government in pursuing his asylum claim. He waited for six months to obtain a date to present at the border via CBP One, which was then the method laid out by the US Government. See, Exhibit E. He stayed in a shelter for LGBT people in Mexico and suffered anti-LGBT violence during that time, but managed to wait to get a date as was instructed by the US Government. *Id.* Respondent provided a familial sponsor at the border, went to live with that sponsor, and followed all instructions laid out for him by immigration officials. *Id.* They sought, and obtained, a work permit. They were seeking counsel to prepare and file their asylum application and other forms of humanitarian protection. Respondent followed the lawful process in place at the time with the belief that they would be able to pursue asylum, and now they may be removed with virtually no opportunity to present their claim.

As in *Matter of W-Y-U-*, here Respondent seeks a merits adjudication from this Court on his pending application for relief, which if granted would make him "eligible for lawful status in the United States," whereas dismissal provides him no legal status. *Id.* at 19; *see also id.* at 20 ("An unreasonable delay in the resolution of the proceedings may operate to the detriment of [noncitizens] by preventing them from obtaining relief that can provide lawful status…… ").

Unlike in other cases where the BIA has considered DHS unilateral motions to dismiss, here the prejudice to the Respondent would be immediate and extreme. If the Court grants dismissal, DHS will subject him to expedited removal, likely resulting in his swift deportation from the United States with no ability to have his meritorious claim for relief

heard in any forum. *See, e.g.*, *Matter of Andrade Jaso & Carbajal Ayala*, 27 I&N at 559 (upholding IJ grant of DHS motion to dismiss noting that "[t]he respondents have not been ordered removed, . . . there is no indication that they are in imminent danger of removal," and they could pursue relief in the future if DHS placed them into new removal proceedings).

**C.  Even When Evaluated Solely on Its Stated Basis, DHS's Motion Must Be Denied.**

Even evaluating DHS's motion solely on its stated basis, if this Court conducts "an informed adjudication . . . based on an evaluation of the factors underlying [DHS's] motion," *G-N-C-*, 22 I&N Dec. at 284, that motions fails on its own terms and must be denied. *See Matter of Andrade Jaso & Carbajal Ayala*, 27 I&N Dec. at 559 (considering whether DHS's motion under 8 C.F.R. § 239.2(a)(7) complied with that provision's requirements). The regulation underlying DHS's motion allows DHS to seek dismissal where "[c]ircumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government." 8 C.F.R. § 239.2(a)(7). This provision encompasses a case-specific component— "circumstances of the case"— and a government-specific component— "best interest of the government." *Id.* Here, DHS has failed to establish that circumstances in Respondent's case have changed since the NTA's issuance and has separately failed to demonstrate that continuation is no longer in the government's best interest. Further, DHS's sole reason for requesting dismissal is to pursue expedited removal against Respondent, which it cannot lawfully do as explained below.

*1.  DHS Cannot Lawfully Pursue Expedited Removal Against Respondent*

DHS's sole reason for requesting dismissal under 8 C.F.R. § 239.2(a)(7) is so that DHS can pursue expedited removal against Respondent. The Court should deny DHS's motion to dismiss because DHS's intended post-dismissal actions are unlawful for at least

two reasons.

**First**, subjecting Respondent to expedited removal would violate Congress's carefully crafted statutory scheme for processing noncitizen applicants for admission. INA § 235(b) provides DHS with several choices for how to process a noncitizen whom it alleges is an inadmissible applicant for admission, but there is no statutory authority for DHS to later reverse that choice. For certain allegedly inadmissible noncitizens, DHS can *either* place them into expedited removal under 8 U.S.C. § 1225(b)(1) *or* place them into full removal proceedings under 8 U.S.C. § 1225(b)(2). *See Matter of E-R-M- & L-R-M-*, 25 I&N Dec. at 523 (holding that "DHS has discretion to put [noncitizens] in section 240 removal proceedings even though they may also be subject to expedited removal under section 235(b)(1)(A)(i) of the Act"); *Matter of Cabrera-Fernandez*, 28 I&N Dec. 747, 748 (BIA 2023). If DHS at the time of initial processing of the individual makes the choice to use its INA § 235(b)(2) authority by issuing the noncitizen an NTA, as DHS did in Respondent's case, DHS has no authority to later reverse that choice. Nor does DHS point to any such authority in their motion to dismiss.

The Supreme Court's interpretation of INA § 235(b) in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), also supports a reading of the statute that permits DHS to subject any given inadmissible applicant for admission to one process or the other, with no mechanism for later reversing course. In *Jennings*, the Supreme Court differentiated between (b)(1) noncitizens and (b)(2) noncitizens. The Court observed that "applicants for admission fall into one of two categories, those covered by [INA §235](b)(1) and those covered by [INA § 235](b)(2). [INA § 235](b)(2) . . . serves as a catchall provision that applies to all applicants for admission not covered by [INA § 235[(b)(1)]." *Id.* at 287–88. Indeed, the statute itself

states that INA § 235(b)(2) applies to applicants for admission "to whom paragraph [(b)](1)" does not apply.[3] Here, because DHS has elected to commence removal proceedings in Respondent's case, paragraph (b)(1) does not apply.

Similarly, a number of provisions in the INA describe INA § 235(b)(2) noncitizens as those "to whom proceedings under [INA § 240] are . . . initiated *at the time of such [noncitizen's] arrival*."[4] This language makes clear that Congress understood that DHS's processing decision for a noncitizen applicant for admission—whether to proceed with (b)(1) or (b)(2)—would occur at the time of the noncitizen's arrival or initial apprehension, not at some other point months or years later.  In a 2003 decision, the U.S. District Court for the Eastern District of Michigan questioned DHS's authority to use expedited removal against noncitizens who had been paroled into the United States at some earlier point, concluding that the government had "not provided any authority to show that expedited removal applies to [noncitizens] who are 'arriving aliens' based solely on the entry fiction doctrine and who have been residing in the interior of the United States for some time." *Am.-Arab Anti-Discrimination Comm. v. Ashcroft*, 272 F. Supp. 2d 650, 667-68 (E.D. Mich. 2003).

**Second**, subjecting Respondent to expedited removal would be unlawful because it would violate the long-held doctrine that new rules may not be applied retroactively in the

---

[3] INA § 235(b)(2)(B)(ii); *accord Innovation L. Lab v. Wolf*, 951 F.3d 1073, 1083 (9th Cir. 2020), *vacated and remanded sub nom. Mayorkas v. Innovation L. Lab*, 141 S. Ct. 2842 (2021), *and vacated as moot sub nom. Innovation L. Lab v. Mayorkas*, 5 F.4th 1099 (9th Cir. 2021).

[4] *See, e.g.*, INA § 240B(a)(4) (referring to a noncitizen "who is arriving . . . and with respect to whom proceedings under section 1229a of this title are . . . initiated *at the time of such alien's arrival*" (emphasis added)); INA § 212(a)(9)(A)(i) (making inadmissible certain noncitizens "ordered removed under [INA § 235(b)(1)] or at the end of proceedings under [INA § 240] initiated upon the [noncitizen's] arrival"); INA § 241(b)(1)(A) ("[a noncitizen] who arrives at the United States and with respect to whom proceedings under [INA § 240] of this title were initiated at the time of such [noncitizen's] arrival"); INA § 241(c)(1) ("[A noncitizen] arriving at a port of entry of the United States who is ordered removed either without a hearing under [INA § 235(b)(1) or § 235(c)] or pursuant to proceedings under [INA § 240] initiated at the time of such [noncitizen's] arrival . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ").

absence of a clear congressional grant of retroactive rulemaking authority. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). In this case, DHS purports to have the authority to subject Respondent to expedited removal pursuant to the January 24, 2025 Federal Register Notice expanding expedited removal to its full legislative scope. DHS, Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). While Congress granted DHS the authority to determine the scope of expedited removal up to the statutory maximum, *see* INA § 235(b)(1)(A)(iii)(I), it did not grant DHS the authority to apply new expedited removal designations retroactively. The Supreme Court has long recognized that "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen*, 488 U.S. at 208. To do so would add "new legal consequences to events completed [prior to the expansion]." *See Landgraf v. USI Film Prods*., 511 U.S. 244, 269-70 (1994). Because Congress did not grant DHS the power to retroactively expand expedited removal, DHS cannot subject the Respondent, whose removal proceedings were initiated before the January 2025 expansion, to expedited removal; as described above, doing so would cause him significant prejudice.

     2. *DHS Has Failed to Show How Circumstances of This Case Have Changed Since the NTA's Issuance.*

Further, dismissal is inappropriate because the "[c]ircumstances of the case" have not changed. 8 C.F.R. § 239.2(a)(7). DHS's motion does not even attempt to articulate how circumstances in *this case* have changed since the issuance of Respondent's NTA. In fact, DHS's motion references no facts specific to this case whatsoever. Contrary to DHS's conclusory statement that circumstances have changed, in fact no relevant circumstances have changed with respect to Respondent's case— he remains eligible for asylum and

continues to desire an adjudication on his claim on the merits by this Court. *See supra*

Section II.B. Respondent has been waiting for an adjudication of his application for relief

that only this Court has jurisdiction to grant.

Though DHS does not articulate the alleged changed circumstance in its

motion, presumably DHS would argue that its new desire to pursue expedited

removal against Respondent is a change in circumstances. But even if DHS's

immigration enforcement policy may have changed since the NTA was issued, a

political change underlying the government's enforcement policy is insufficient to

show a changed circumstance in "the case," meaning this specific case of

Respondent Josue Andres Leiva Molina, considering his individualized

circumstances and facts. *See also Andrade Jaso & Carbajal Ayala*, 27 I&N Dec. at

559 (concluding that the respondent's post NTA behavior constituted a change in

circumstances for purposes of 8 C.F.R. § 239.2(a)(7)).

Because DHS has not shown that circumstances in this case have changed since the

issuance of the NTA, the Court should deny DHS's motion to dismiss.

   3. *DHS Has Failed to Show Why Continuation Is Not in the "Best Interest of the Government."*

Even if DHS had articulated changed circumstances in this case since the NTA's

issuance, which it has not, DHS has failed to show why continuation is not in the "best

interest of the government." 8 C.F.R. § 239.2(a)(7). DHS's motion fails to consider key

factors necessary to determining the government's best interest in an individual case,

including Respondent's individual circumstances, Respondent's position on dismissal, and

the efficient use of limited government resources. Consideration of these factors compels the

conclusion that this case should proceed to a merits determination, as Respondent desires.

   *a. The Respondent's Individual Circumstances and Position on Dismissal*

   Determining whether dismissal of given case is in the government's best interest necessarily requires DHS to reach out to the respondent, as required by the ICPM, prior to filing for dismissal in order to understand the respondent's viewpoint and reasons why the respondent opposes dismissal. An individual's in having their claim for permanent immigration relief adjudicated on the merits must inform the government's view of whether dismissal is in the government's best interest. Moreover, what is in the government's best interest necessarily includes knowing the respondent's current case circumstances[5] and how a strategy one way or the other impacts lawful permanent residents and U.S. citizens in the respondent's life. Thus, OPLA's failure to seek Respondent's position before filing this motion itself defeats their assertion that dismissal is in the government's best interest, and therefore the motion must be denied.

   *b. Efficient Use of Limited Government Resources*

   DHS has not established that dismissal of this case is in the government's best interest because it has failed to address a key factor, the efficient use of limited government resources. In this case, Respondent wishes to pursue relief before the Court, including relief that only the immigration court has authority to grant.

   Dismissing these proceedings over Respondent's objection would waste rather than conserve government resources. If this case is dismissed, Respondent will likely appeal the dismissal. DHS will then have to invest considerable resources in defending its decision to dismiss these proceedings. Likewise, the Department of Justice will expend considerable resources if this case is dismissed. The BIA will expend resources to issue a decision on

---

[5] DHS cannot know what the current circumstances of this case are because the of the lack of record in the case.

appeal. The case may then be remanded to this Court, restoring Respondent to his current position before the Court, after the passage of time and expenditure of considerable government resources. If this case is dismissed and Respondent is placed in expedited removal, Respondent will pursue asylum through the Credible Fear process, requiring the use of more government resources to adjudicate the claim in another forum, which will ultimately result in the case returning to this Court for an asylum adjudication. This process would result in a much larger aggregate expenditure of resources than allowing Respondent's claim to proceed now as he desires.

In contrast, this Court's adjudication of Respondent's I-589 application on promotes finality of the removal proceedings and prevents waste of government resources. If this case is allowed to move forward, the Court will schedule Respondent for an individual hearing which will use a limited amount of the Court's time and of OPLA's time.

Because DHS cannot establish either of the necessary requirements for bringing a motion to dismiss under 8 C.F.R. § 239.2(a)(7), this Court must deny the motion and allow Respondent's case to proceed to an adjudication on the merits.

## II.    CONCLUSION

For all of the reasons stated above, this Court should deny DHS's motion to dismiss and allow Respondent to proceed to the merits of the application pending before the Court.

Respectfully Submitted,

Meghan DuPuis Maurus
EOIR CC111789
2364 Paseo de las Americas, 104-301
San Diego, CA 92154
(619) 649-8898
maurus@transgnderlawcenter.org

17

# EXHIBIT C



⊙ **Emem Maurus** <maurus@transgenderlawcenter.org>

**To:** AsylumD3Prescreening

Wednesday, April 16, 2025 at 1:32 PM

2 MB

Download All    Preview All

To Whom It May Concern,

My name is Meghan D. Maurus. I represent the above referenced client. They are currently detained at **Nevada South Detention Center**. Attached you will find a G-28.

My client is in active removal proceedings in Salt Lake City, Utah, and we are opposing any motion to dismiss the case. The case remains pending.

In detention they have been asked several times to sign removal papers, and they have refused. They have refused because they fled their country due to persecution based on their **gender and sexuality**. They have clear past persecution and fear future persecution.

I have spoken with them, and they seek to continue their case and will not abandon or renounce it. Before any removal is effectuated, we seek a CFI with counsel present.

Best Regards,

Meghan D. Maurus

--
Meghan Maurus
Legal Director
Border Butterflies
Transgender Law Center
2364 Paseo de las Americas, 104-301
San Diego, CA 92154
(619) 649-8898
(+52) 664-358-2763
maurus@transgenderlawcenter.org

# EXHIBIT D

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)



RE:

○ **AsylumD3Prescreening** <AsylumD3Prescreening@uscis.dhs.gov>
To: ○ Emem Maurus

Thursday, April 17, 2025 at 7:59 AM

⚐ This message is flagged for follow up.

Mark Complete

Hello,

Thank you for reaching out to District 3. Unfortunately, your client's case is no longer in our jurisdiction as it is with ICE.

Please reach out to ICE: https://www.ice.gov/contact

Thank you,
District 3
//mb

**From:** Emem Maurus <maurus@transgenderlawcenter.org>
**Sent:** Wednesday, April 16, 2025 3:33 PM
**To:** AsylumD3Prescreening <AsylumD3Prescreening@uscis.dhs.gov>
**Subject:**

You don't often get email from maurus@transgenderlawcenter.org. Learn why this is important
**CAUTION:** This email originated from outside of the Federal Government. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact the USCIS Security Operations Center with questions or click the "Report Phishing" button to report it as a phishing attempt.

To Whom It May Concern,

My name is Meghan D. Maurus. I represent the above referenced client. They are currently detained at **Nevada South Detention Center**. Attached you will find a G-28.

My client is in active removal proceedings in Salt Lake City, Utah, and we are opposing any motion to dismiss the case. The case remains pending.

In detention they have been asked several times to sign removal papers, and they have refused. They have refused because they fled their country due to persecution based on their **gender and sexuality**. They have clear past persecution and fear future persecution.

I have spoken with them, and they seek to continue their case and will not abandon or renounce it. Before any removal is effectuated, we seek a CFI with counsel present.

Best Regards,

Meghan D. Maurus

--

Meghan Maurus
Legal Director
Border Butterflies
Transgender Law Center
2364 Paseo de las Americas, 104-301
San Diego, CA 92154
(619) 649-8898
(+52) 664-368-2763
maurus@transgenderlawcenter.org

# EXHIBIT E



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**SALT LAKE CITY IMMIGRATION COURT**

Respondent Name:

████████████████████

To:

    Maurus, Meghan DuPuis
    2364 paseo de las Americas
    104-301
    San Diego, CA 92154

A-Number:

████████

Riders:
In Removal Proceedings
Initiated by the Department of Homeland Security
Date:
04/28/2025

**ORDER ON MOTION TO DISMISS**

☑ The Respondent ☐ the Department of Homeland Security ☐ the parties jointly has/have filed a motion to dismiss these proceedings under 8 CFR 1239.2(c). The moving party has given notice of the motion to the non-moving party and the court has provided the non-moving party with an opportunity to respond. The motion is ☑ opposed ☐ unopposed.

After considering the facts and circumstances, the immigration court orders that the motion to dismiss is:

☑ Granted without prejudice
☐ Denied

Further explanation:

On April 8, 2025, the Department of Homeland Security (DHS) filed its Motion to Dismiss Without Prejudice. It states that the respondent is removable under INA section 235(b)(1). It seeks to remove the respondent as per that authority. Accordingly, it seeks dismissal without prejudice because circumstances have changed since the issuance of the Notice to Appear (NTA), namely that continuation of these removal proceedings is no longer in the interest of the government.

On April 10, 2025, the respondent filed his Opposition to DHS's Motion to Dismiss. He states that DHS failed to make a good faith effort to ascertain the respondent's position on the motion. It objects to dismissal because DHS has failed to establish circumstances in this particular case that have changed since the issuance of the NTA. The respondent fears that the merits of his case will not be heard if placed into expedited removal and that he will face harm upon return to his country. He asserts that he has a right to have his claims for protection adjudicated on their merits. Respondent says he will lose the opportunity to have his case heard in an appropriate venue if dismissal is allowed. He believes that DHS cannot lawfully

pursue expedited removal at this stage. He also argues, among other things, that dismissal is not an efficient use of the government's limited resources.

The Court has considered all arguments presented by both sides. Previously, DHS elected to place this respondent into removal proceedings rather than expedited removal as it probably should have done from the beginning. Its election has caused resources to be spent by multiple agencies and by the respondent in furtherance of these proceedings. Yet there is no authority that states DHS is prohibited from changing its election. Indeed, recent authority (Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025)) reaffirms the application of Congress's explicit authorization of DHS's categorization of aliens to whom expedited removal procedures may be applied. The exercise of that authority is within "the sole and unreviewable discretion" of DHS and may be modified at any time. INA section 235(b)(A)(A)(iii)(I). Accordingly, DHS is allowed to end these removal proceedings and institute expedited removal.

As for any due process concerns the Court finds the respondent is not entitled to commencement or continuation of removal proceedings to regularize his status through adjudication of a discretionary application for relief. See INA section 240A(b)(1); Matters of Jaso & Ayala, 27 I&N Dec. 557 at 559 (BIA 2019). This is a significant factor that weighs in favor of the DHS request. Moreover, the INA does not include "a judicially enforceable duty to proceed within a reasonable time." Kowalczyk v. INS, 245 F.3d 1143, 1150 n.5 (10th Cir. 2001).

Nor is the respondent precluded from seeking asylum and its related protections. In expedited removal, when he expresses his fear of persecution or torture, or a fear of return to his country, the inspecting officer shall not proceed further with his removal until he has been referred to an asylum officer. 8 CFR section 235.3(b)(4).

Accordingly, the government's motion to dismiss these proceedings is hereby GRANTED.


IT IS SO ORDERED.



Immigration Judge: NELSON, DOUGLAS 04/28/2025

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name : ██████████████████ | A-Number : ████████

Riders:

Date: 05/01/2025 By: Recinos, Nuvia, Court Staff