UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants.* | Case No.: 1:25-cv-0872 |

## DECLARATION OF MELISSA LIM CHUA

I, Melissa Lim Chua, upon my personal knowledge, hereby declare as follows:

1. I am over the age of 18 and competent to testify to the facts and matters set forth herein.

2. I am Co-Director of the Immigrant Protection Unit at the New York Legal Assistance Group (NYLAG), and I am an attorney in good standing of the State Bar of New York. NYLAG represents one client, D.L.C., who was paroled into the United States after an appointment properly made through the CBP One application and was subsequently processed for expedited removal. D.L.C. and his mother are both members of CASA.

### D.L.C.

3. D.L.C. is a national of Venezuela who was granted parole on or about May 1, 2024, after securing an appointment using the CBP One application to appear at an official port of entry. He was 19 years old at the time of entry. That same day, D.L.C. was issued a Notice to Appear (NTA), which was docketed with EOIR on May 2, 2024. D.L.C. was

subsequently granted an employment authorization document (EAD) pursuant to this parole, valid for one year.

4. Upon arriving in the United States, D.L.C. was living with his mother and attending a public school focused on supporting English Language Learners. On May 28, 2024, D.L.C. filed a timely *pro se* application for asylum with the immigration court detailing his fear of his removal to Venezuela. On October 2, 2024, D.L.C. attended his first master calendar hearing with the immigration court. The Immigration Judge scheduled a second master calendar hearing for May 21, 2025.

5. On April 11, 2025, D.L.C. received an email informing him that his parole was being terminated effective April 18, 2025; on April 18, 2025, D.L.C.'s parole was terminated.

6. Prior to his second hearing with the immigration court, D.L.C. began the process of seeking Special Immigrant Juvenile Status ("SIJS") with the assistance of a *pro se* clinic at the NYC Asylum Seeker Navigation Center, set up by the City of New York to provide *pro se* services to newly arrived New York residents. SIJS is a pathway to lawful permanent resident status (LPR) or a "green card" for children who are under 21 years of age and have been "abused, neglected or abandoned" by one or more parents. There are two general stages in obtaining SIJS: the first is a proceeding in the Family or Surrogates Court where the child resides, and the second is an application with the Department of Homeland Security (DHS). Upon information and belief, D.L.C. is *prima facie* eligible for SIJS relief because he is: under 21 years old; unmarried; unable to be reunified with his father because his father abandoned and neglected him, and his father is deceased, a similar basis under New York State law; and it is not in his best interest to return to his home country.

7. On May 21, 2025, D.L.C. and his mother attended his second master calendar hearing *pro se* at the 290 Broadway Immigration Court in New York. D.L.C.'s mother informed me that at that hearing, counsel for DHS moved the Court to dismiss D.L.C.'s proceedings, despite D.L.C.'s timely-submitted and pending application for asylum. Upon information and belief, the Court asked D.L.C.'s mother several questions regarding dismissal, a complicated legal procedure that neither D.L.C nor his mother fully understood. Neither D.L.C. nor his mother speak English fluently, nor does either have any background in the American legal system. At the time of the hearing, D.L.C. and his mother believed dismissal would allow D.L.C. to move forward more easily on his SIJS case and that he could continue to pursue his application for asylum outside of the court. D.L.C.'s mother stated that neither she nor D.L.C. were clearly advised that DHS intended to arrest and detain him or that DHS would later attempt to remove him through expedited removal procedures upon dismissal of D.L.C.'s immigration court proceedings, nor were they advised that dismissal would mean that D.L.C. could no longer pursue his asylum application before the immigration court.

8. After D.L.C.'s case was dismissed, D.L.C. and his mother left court, where they were followed into the elevator by two men in plain clothes. After leaving the elevator at the lobby on the first floor, the two men, who were ICE officers, ordered D.L.C. and his mother up against a wall. The officers spoke English, which neither D.L.C. nor his mother speak fluently. D.L.C.'s mother believes that the ICE officers said that they had an arrest warrant for them, but when she asked to see the warrant, they did not provide anything to her. The ICE officers then asked D.L.C. and his mother to present their "papers" and D.L.C.'s mother complied. Immediately after she presented their

documents, the ICE officers handcuffed D.L.C. Although his mother tried to explain that D.L.C. was young and was very ill, the ICE officers detained D.L.C. and put him in a vehicle. Although D.L.C.'s mother took video of the arrest, she stopped recording when the ICE officers told her that if she continued to resist, she would also be detained. Upon information and belief, aside from this May 21, 2025, apprehension by ICE, D.L.C. has not had any contact with law enforcement since entering the United States.

9. On May 21, 2025, the same day that D.L.C. was detained, another NYLAG attorney observed a number of ICE officers throughout the immigration courts at 26 Federal Plaza and 290 Broadway in New York, including in courtrooms. While many of the officers were undercover, there were also at least two armed DHS law enforcement officers in uniform outside of the buildings. In front of the immigration courts, the NYLAG attorney also observed and photographed multiple vehicles marked "DHS police," as well as a number of unmarked vehicles that, upon information and belief, were in use by ICE. At 290 Broadway, the NYLAG attorney observed the apprehension of a noncitizen, who was arrested by plainclothes ICE officers and placed into an unmarked vehicle.

10. Shortly after D.L.C was detained, D.L.C.'s mother was connected with NYLAG's rapid response team, which generally focuses on providing representation to noncitizens who have been detained and/or ordered removed following proceedings that do not comport with due process. We reached out to ICE Enforcement and Removal Operations (ERO) on D.L.C.'s behalf and were informed that D.L.C. would be transferred to an Asylum Pre-Screening Officer (APSO) for a CFI on May 22, which we understood to mean that D.L.C. had been placed into expedited proceedings. At that time we informed ICE them that D.L.C. was not properly subject to expedited removal as he entered on parole and

4

that he had an upcoming hearing in family court for his SIJS application. We did confirm that he would receive a credible fear interview (CFI) should they subject him to expedited proceedings, as he feared removal to Venezuela. We additionally asked that D.L.C. receive a fear screening with respect to El Salvador should the government try to remove him to that country instead of to Venezuela.

11. We additionally informed ICE that D.L.C. suffered from a chronic medical condition that required treatment. A few months after arriving in the United States, D.L.C. began experiencing serious health issues. Specifically, D.L.C. suffers from persistent fevers and gastrointestinal issues, leading him to seek medical treatment repeatedly from the Sun River Health Center. Unable to determine the cause of his symptoms, the health center referred him to New York Blood and Cancer Specialists for follow-up visits with an oncologist and hematologist. At the time of his detention by U.S. Immigration and Customs Enforcement, D.L.C. was being assessed for the cause of his ongoing symptoms. Since being detained, D.L.C. received a diagnosis from these outside specialists that may be life threatening or lead to significant morbidity if not treated properly.

12. Had D.L.C. or his mother been aware of the ramifications of dismissal, they would have vigorously opposed dismissal of proceedings. D.L.C.'s mother reported that she and D.L.C. did try to change their pleading regarding dismissal, because they became concerned about their decision towards the end of the hearing, but D.L.C.'s mother is unsure if that was translated from Spanish to English for the Court. D.L.C.'s mother informed me that there was a man in the courtroom observing their proceedings whom she did not recognize. On May 29, 2025, we requested a copy of the "Digital Audio

5

Recording" (DAR) via a Freedom of Information Act Request (FOIA) and on May 30, 2025, we requested a copy of the DAR via the court's system to retrieve the Record of Proceedings (ROP). We were first provided with a copy of the DAR today, June 10, 2025.

13. NYLAG's immigration unit handles hundreds of removal cases a year and we have not previously seen DHS move to dismiss removal proceedings to pursue expedited removal, let alone processing a person paroled into the country for removal through expedited removal.

14. Although NYLAG began the process of reaching out to D.L.C. on May 21, 2025, because of D.LC.'s movement between facilities, we were unable to make contact with him until the morning of May 28, 2025. Initially, upon information and belief, D.L.C. believed that he would be sent to a detention center in New Jersey. When D.L.C. appeared in the ICE detainee locator on May 22, 2025, the locator indicated that D.L.C. had been detained at the Elizabeth Contract Detention Center in Elizabeth, New Jersey. That same day, NYLAG attorneys were informed by ERO that D.L.C. was not at Elizabeth, but at the Orange County Jail (OCJ), in Goshen, New York. When NYLAG attorneys called OCJ, they were informed by OCJ staff that D.L.C. was not in fact detained there. The evening of May 22, 2025, D.L.C. was then moved to the Port Isabel Detention Center (Port Isabel) in Los Fresnos, Texas. That same day, NYLAG attorneys set up a call for Tuesday, May 27, 2025, the first available attorney visit that was available. However, on the evening of May 24, 2025, D.L.C. called his mother, indicating that he had been moved to the Alexandria Staging Facility in Alexandria, Louisiana. On the morning of May 25, 2025, a NYLAG attorney reached out to ERO to confirm D.L.C.'s whereabouts, as the detainee locator on the morning of May 25, 2025, still indicated that D.L.C. was at

Port Isabel. That same day, ERO sent an email to the NYLAG attorney indicating that D.L.C. was at the Moshannon Valley Correctional Center (Moshannon) in Pennsylvania. However, soon after the email from ERO, D.L.C. called his mother and informed her that he was, in fact, still in Alexandria. The NYLAG attorney wrote another email to ERO, again asking them to clarify his location, and was informed that D.L.C. was not actually in Moshannon yet but would be transferred from Alexandria to Moshannon via airplane later in the day on May 25, 2025. ERO then informed the NYLAG attorney that they would have to contact Moshannon in order to set up an attorney visit with D.L.C. As of 7:00 am on May 26, 2025, the ICE detainee locator listed D.L.C. as being held in Alexandria. Around that time, D.L.C.'s mother called a NYLAG attorney to relay that D.L.C. had called from Moshannon. Following that phone call, a NYLAG attorney emailed ERO in Moshannon to confirm his location. ERO emailed saying that D.L.C. had never been detained at Moshannon. Having received the message from D.L.C.'s mother relaying that D.L.C. had called from Moshannon, the NYLAG attorney emailed ERO again to ask again where D.L.C. was being held. As of 11:00 am on May 26, 2025, D.L.C. was still listed as being at Alexandria, notwithstanding having called his mother from Moshannon. It was not until May 27, 2025, at approximately 10:27am that we confirmed by contacting Moshannon directly that D.L.C. was, in fact, at that facility. Because of transit, NYLAG was not able to make contact with D.L.C. until the morning of Tuesday, May 28, 2025, the earliest available appointment.

15. Upon information and belief, prior to NYLAG's first contact with D.L.C. on May 28, 2025, D.L.C. had asked officials for an attorney to be present at his CFI but was told that he would have to proceed with his CFI on whatever date they provided him, with or

7

without an attorney. It can take many days to schedule a legal call when a non-citizen is transferred to a new detention facility, and D.L.C.'s constant transfers between facilities have made it impossible to date to make contact with him to represent or even prepare him for his CFI.

16. On May 29, 2025, D.L.C. had his CFI. NYLAG was only made aware of the CFI through D.L.C.'s mother one hour before the interview. Upon learning about the imminent interview, we contacted APSO with a Form G-28 indicating that we were representing D.L.C. and asked to be called into the interview. At approximately 8:30 am, counsel was contacted by APSO and allowed to represent D.L.C. during the interview.

17. On May 30, 2025, NYLAG attorneys and D.L.C.'s mother appeared at a scheduled Bronx Family Court hearing in connection with his request for SIJC. Although the Department of Homeland Security (DHS) did not make him available for this previously scheduled court hearing, even virtually, the Bronx Family Court referee granted the guardianship and special findings orders necessary for D.L.C. to qualify for SIJS. NYLAG filed D.L.C.'s application for SIJS on Form I-360 with U.S. Citizenship and Immigration Services on Tuesday, June 3, 2025.

18. On June 1, 2025, D.L.C. was served with a new Notice to Appear (NTA), indicating that he had passed his CFI. Attached to the NTA was the Notice and Order of Expedited Removal on Form I-860, signed on May 21, 2025, the day of the dismissal of D.L.C.'s hearing. Attached as Exhibits A and B to this declaration are, respectively, true and correct copies of D.L.C.'s second Notice to Appear and Form I-860, with all personally identifiable information redacted. Prior to that date, we had not received copies of the Form I-860, despite having asked ERO for them.

19. D.L.C. has suffered serious harm from being subjected to expedited removal proceedings. First, as a result of DHS's decision to end D.L.C.'s immigration court proceedings and to instead process him through expedited removal, D.L.C. was placed great at risk of losing his ability to pursue SIJS, an important form of relief from removal. D.L.C. would have been unable to seek this relief had he been expeditiously removed to Venezuela and the only want he was able to avoid such a removal was by separately establishing that he has a credible fear of persecution in Venezuela; had he not had a strong claim for asylum, he would not have been returned to ordinary immigration court proceedings and his eligibility for SIJS relief would have provided no opportunity to slow down the removal process for him to pursue that relief.

20. Additionally, D.L.C.'s detention resulting from DHS's decision to process him for expedited removal means he will not be able to obtain the medical intervention necessary to treat his newly diagnosed condition. As a result, his health is likely to deteriorate, making it extremely difficult to pursue an asylum case, and potentially exposing him to significant morbidity and/or death.

21. Finally, D.L.C. is young—only 20 years old—and he is already feeling extremely scared and hopeless at the fact that he has been jailed and moved far from family, school, and support. He has had ongoing headaches and is unlikely to be able to receive the treatment necessary for his medical condition. Moreover, as evidenced by the difficulty NYLAG attorneys have had communicating with D.L.C., continuing to subject him to detention as a result of the decision to dismiss his first removal proceedings and pursue expedited removal will make it extremely difficult for him to access counsel and properly present

his claims, increasing the risk that he will be removed to a country where he faces the threat of persecution without the meaningful opportunity to have his cases adjudicated.

22. It is not feasible for D.L.C. to prepare his own signed declaration, because he is in immigration detention and we are only able to speak with him occasionally by phone.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in New York, New York on June 11, 2025.

Melissa Lim Chua

10

# EXHIBIT A

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

DEPARTMENT OF HOMELAND SECURITY
# NOTICE TO APPEAR

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

File No: ███████

In the Matter of:

Respondent: ███████████████████████████ currently residing at:

MOSHANNON VALLEY PROCESSING CENTER, 555 GEO DRIVE, PHILIPSBURG, PA 16866    929-759-8099
*(Number, street, city, state and ZIP code)*    *(Area code and phone number)*

[ ] You are an arriving alien.

[x] You are an alien present in the United States who has not been admitted or paroled.

[ ] You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of Venezuela and a citizen of VENEZUELA;
3. You entered the United States at an unknown location on or about 2024-05-01;
4. You did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document;
5. You were not then admitted or paroled after inspection by an Immigration Officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

Section 212(a)(6)(A)(i) of the Act, as amended, as an alien present in the United States without being admitted or paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General.

[x] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

[x] Section 235(b)(1) order was vacated pursuant to:    [x] 8CFR 208.30    [ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

625 EVANS STREET, ROOM 148A, ELIZABETH, NJ 07201
*(Complete Address of Immigration Court, including Room Number, if any)*

on  06/12/2025  at  9:00 AM   to show why you should not be removed from the United States based on the
   *(Date)*         *(Time)*

charge(s) set forth above.                                    _____ Supervisory Asylum Officer
                                                              *(Signature and Title of Issuing Officer)*

Date:  06/01/2025                                 Philipsburg, PA
                                                  *(City and State)*

DHS Form I-862 (6/22)                                                                 Page 1 of 3

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.
**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

Upon information and belief, the language that the alien understands is                     SPANISH

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____                    _____
                                                                                                                                        (Signature of Respondent)

                                                                                                                                        Date: _____
_____
(Signature and Title of Immigration Officer)

### Certificate of Service

This Notice To Appear was served on the respondent by me on _____, in the following manner and in compliance with section 239(a)(1) of the Act.

☐ in person   ☐ by certified mail, returned receipt # _____ requested   ☐ by regular mail
☐ Attached is a credible fear worksheet.
☐ Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____                    _____
(Signature of Respondent if Personally Served)                                   (Signature and Title of officer)

DHS Form I-862 (6/22)                                                                                                                            Page 2 of 3

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

# EXHIBIT B

Coalition for Humane Immigrant Rights, et al. v. Noem et al., 1:25-cv-00872 (JMC)

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## NOTICE AND ORDER OF EXPEDITED REMOVAL
DETERMINATION OF INADMISSIBILITY

Event Number: ███

File No: ███

Date: **May 21, 2025**

In the Matter of: ███

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Department of Homeland Security has determined that you are inadmissible to the United States under section(s) 212(a) ☐ (6)(C)(i); ☐ (6)(C)(ii); ☒ (7)(A)(i)(I); ☐ (7)(A)(i)(II); ☐ (7)(B)(i)(I); and/or ☐ (7)(B)(i)(II); of the Act, as amended, and therefore are subject to removal, in that:

1. You are not a citizen or national of the United States;

2. You are a native of VENEZUELA and a citizen of VENEZUELA;

3. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; and/or

4. You are an immigrant in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

See I-831

**FAHAD ASLAM**
DO
Name and title of immigration officer (Print)                Signature of immigration officer (Sign in ink)

---

### ORDER OF REMOVAL
### UNDER SECTION 235(b)(1) OF THE ACT

Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States.

**FAHAD ASLAM**
DO
Name and title of immigration officer (Print)                Signature of immigration officer (Sign in ink)

**V. COLLADO COLLADO**
Supervisory Detention and Deportati
Name and title of supervisor (Print)                Signature of supervisor, if available (Sign in ink)

☐ Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty).

---

**CERTIFICATE OF SERVICE**

I personally served the original of this notice upon the above-named person on 05/21/25.
(Date)

Signature of immigration officer (Sign in ink)

Refused to sign
Signature of alien (Sign in ink)                05/21/25
(Date)

ICE Form I-860 (5/11)                                                                Page 1 of 1

| U.S. Department of Homeland Security | | Continuation Page for Form I-860 |
|---|---|---|
| Alien's Name | File Number<br>Event No: | Date<br>05/21/2025 |

**NARRATIVE**
---------

5. ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION OF
LAW:=============================================================================
====212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

| Signature<br>FAHAD ASLAM | Title<br>DO |
|---|---|

2 of 2 Pages

Form I-831 Continuation Page (Rev. 08/01/07)