BRETT A. SHUMATE
*Assistant Attorney General*
*Civil Division*
AUGUST E. FLENTJE
*Special Counsel for Immigration*
PAPU SANDHU
*Assistant Director*
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-9357
Papu.Sandhu@usdoj.gov
TIM RAMNITZ
*Senior Litigation Counsel*
ARIC A. ANDERSON
TARYN ARBEITER
*Trial Attorneys*

Counsel for Defendants

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-00872 (JMC)<br><br>Hon. Jia M. Cobb |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A STAY OF AGENCY ACTION UNDER 5 U.S.C. § 705

# TABLE OF CONTENTS

INTRODUCTION................................................................................................................1

LEGAL AND PROCEDURAL BACKGROUND.........................................................3

   I.   Statutory Scheme for Expedited Removal and Parole....................................3

   II.   DHS Documents Plaintiffs Request to Stay ................................................7

LEGAL STANDARD........................................................................................................9

ARGUMENT ...................................................................................................................11

   I.   5 U.S.C. § 705 Does Not Provide a Basis for the Relief Plaintiff Seeks. .....................11

      A.   Section 1252(f)(1) Prohibits a Stay of Agency Action that Precludes DHS from Applying Expedited Removal to Paroled Aliens....................................................11

      B.   The Court Cannot Stay Agency Action that Has Already Gone into Effect. ...........15

      C.   The INA's Judicial Review Provision for Expedited Removal Also Does Not Support the Request for a Stay.........................................................17

   II.   The Court Should Deny the Stay Motion Because It Lacks Jurisdiction Over Plaintiffs' Claims............................................................18

      A.   Plaintiffs Cannot Establish Standing Because Their Alleged Harms are not Redressable. ......................................................................................18

      B.   Plaintiffs' Challenges to Expedited Removal Are Time-Barred. ............................20

      C.   The Relief That Plaintiffs Seek Is Also Squarely Foreclosed by 8 U.S.C. § 1252(g)........................................................24

      D.   Plaintiff Organizations Cannot Show They Are Within the Zone of Interests Protected by the Expedited Removal Statute.......................................................26

III. Plaintiffs Fail to Establish a Likelihood of Success on the Merits Because Application of Expedited Removal to Plaintiffs' Members Is Lawful..................................................................................................30

    A. Aliens Paroled into the U.S. at a Port of Entry are Properly Subject to Expedited Removal Because They Are Aliens "Arriving in the United States."............................................................................................30

    B. Aliens Paroled into the U.S. at a Port of Entry are Properly Subject to Expedited Removal Because They Are Within the Class of Aliens Designated by the Secretary. 34

    C. Plaintiffs Are Not Likely to Succeed on their APA Claim Because the Documents They Contest Did Not Make the Changes That Plaintiffs Allege and Are Not Inconsistent. ........................................................................................39

IV. The Remaining Equitable Factors Weigh Strongly in the Government's Favor. ..............................................................................46

    A. Plaintiffs have not Established Irreparable Harm..................................46

    B. The Harm to the Government and the Public's Interest Favor Denying the Stay.....51

V. At a Minimum, any Relief Should be Limited to Identifiable Plaintiff Members and Their Specific Harms.............................................53

CONCLUSION....................................................................................................55

# TABLE OF AUTHORITIES

## **Cases**

*Abbott v. Perez,*
  585 U.S. 579 (2018) ............................................................................................ 12

*Adams v. Holder,*
  692 F.3d 91 (2d Cir. 2012) ................................................................................. 48

*AILA v. Reno (AILA I),*
  18 F. Supp. 2d 38, 47 (D.D.C. 1998) ................................................................. 24

*Arizona v. U.S.,*
  567 U.S. 387 (2012) ............................................................................................ 52

*Bates v. United States,*
  522 U.S. 23 (1997) ........................................................................................ 33, 50

*Bauer v. DeVos,*
  325 F. Supp. 3d 74 (D.D.C. 2018) ....................................................................... 9

*Bennett v. Spear,*
  520 U.S. 154 (1997) ............................................................................................ 40

*Biden v. Texas,*
  597 U.S. 785 (2022) ............................................................................................ 11

*Brown v. Gilmore,*
  533 U.S. 1301 (2001) .................................................................................... 12, 14

*California v. Grace Brethren Church,*
  457 U.S. 393 (1982) ............................................................................................ 12

*California v. U.S. Bureau of Land Mgmt.,*
  277 F. Supp. 3d 1106 (N.D. Cal. 2017) ............................................................. 15

*Clarke v. Security Indus. Ass'n,*
  479 U.S. 388 (1987) ............................................................................................ 27

*Ctr. for Biological Diversity v. Regan,*
  No. CV 21-119 (RDM), 2022 WL 971067 (D.D.C. Mar. 30, 2022) .................. 15

*Dep't of Homeland Sec. v. Thuraissigiam*,
    591 U.S. 103 (2020)................................................................................*passim*

*DHS v. New York*,
    140 S. Ct. 599 (2020)..........................................................................54

*Doe v. Noem*,
    No. 1:25-CV-10495-IT, 2025 WL 1099602 (D. Mass. Apr. 14, 2025).........................*passim*

*Duarte v. Mayorkas*,
    27 F.4th 1044 (5th Cir. 2022)............................................................32, 35

*Dugdale v. Customs and Border Protection*,
    300 F. Supp. 3d 276 (D.D.C. 2018)...............................................................23

*Dugdale v. U.S. Customs & Border Prot.*,
    88 F. Supp. 3d 1 (D.D.C. 2015)....................................................................45

*E.F.L. v. Prim*,
    986 F.3d 959 (7th Cir. 2021)........................................................................25, 26

*F.D.A. v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024)...................................................................................20

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022).............................................................................11, 13

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018)........................................................................10, 53

*Grace v. Barr*,
    965 F.3d 883 (D.C. Cir. 2020).....................................................................44

*Ibragimov v. Gonzales*,
    476 F.3d 125 (2d Cir. 2007)........................................................................32, 35

*Immigrant Defs. L. Ctr. v. Noem*,
    ___ F.3d ____, 2025 WL 1172442 (C.D. Cal. Apr. 16, 2025)..............................13

*INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*,
    510 U.S. 1301 (1993)............................................................................29, 52

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018)..........................................................................30, 35, 48

*Kaspersky Lab, Inc. v. DHS*,
    311 F. Supp. 3d 187 (D.D.C. 2018) ................................................................ 19

*Kiakombua v. Wolf*,
    498 F. Supp. 3d 1 (D.D.C. 2020) .................................................................... 23

*Landin-Molina v. Holder*,
    580 F.3d 913 (9th Cir. 2009) .......................................................................... 49

*Lawyers Ass'n v. Reno*,
    ("AILA II"), 199 F.3d 1352 (D.C. Cir. 2000) ........................................... *passim*

*Leng May Ma v. Barber*,
    357 U.S. 185 (1958) .......................................................................... 6, 32, 35

*Log Cabin Republicans v. United States*,
    658 F.3d 1162 (9th Cir. 2011) ........................................................................ 10

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ........................................................................................ 31

*Lucacela v. Reno*,
    161 F.3d 1055 (7th Cir. 1998) ........................................................................ 52

*Lujan v. Def. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 18

*M.M.V. v. Garland*,
    1 F.4th 1100 (D.C. Cir. 2021) ........................................................................ 24

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994) ................................................................................ 10, 54

*Make the Rd. New York v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) ....................................................................... 28

*Make the Road N.Y. v. McAleenan*,
    405 F. Supp. 3d 1 (D.D.C. 2019) ...................................................... 29, 41, 42

*Maryland v. King*,
    567 U.S. 1301 (2012) ...................................................................................... 52

*Matter of E-R-M-*,
    25 I. & N. Dec. 520 (BIA 2011) ..................................................................... 26

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)...............................................................................54

*Morice v. Hosp. Serv. Dist. #3*, No.,
    CV 18-7945, 2019 WL 1517954 (E.D. La. Apr. 8, 2019) ...........................53

*Munaf v. Geren*,
    553 U.S. 674 (2008)...............................................................................10

*Myers v. United States*,
    272 U.S. 52 (1926).................................................................................52

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023)...............................................................................43

*Nat'l TPS All. v. Noem*,
    ___F. Supp. 3d___, 2025 WL 957677 (N.D. Cal. Mar. 31, 2025) .........................13

*Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*,
    467 F.3d 999 (6th Cir. 2006)....................................................................16

*Nken v. Holder*,
    556 U.S. 418 (2009)....................................................................13, 14, 52

*Noem v. Doe*,
    145 S. Ct. 1524 (2025).......................................................................*passim*

*Nutrition Distrib., LLC v. Enhanced Athlete, Inc.*,
    2017 WL 5467252 (E.D. Cal. Nov. 14, 2017)..............................................53

*O.A. v. Trump*,
    404 F. Supp. 3d 109, 144 (D.D.C. 2019).  ...........................................29, 30

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*,
    473 U.S. 1301 (1985)..............................................................................17

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)....................................................................25, 26, 39

*Russello v. United States*,
    464 U.S. 16 (1983)............................................................................33, 34

*Sampson v. Murray*,
    415 U.S. 61 (1974)............................................................................10, 12

*Shaughnessy v. United States ex rel. Mezei,*
    345 U.S. 206 (1953)................................................................................................ 6, 46

*Sierra Club v. Jackson,*
    833 F. Supp. 2d 11 (D.D.C. 2012)............................................................................. 13

*Sorenson v. Sec'y of Treasury,*
    475 U.S. 851 (1986).................................................................................................. 15

*Tazu v. Att'y Gen. U.S.,*
    975 F.3d 292 (3d Cir. 2020).................................................................................. 25, 26

*Tesfamichael v. Gonzales,*
    411 F.3d 169 (5th Cir. 2005)..................................................................................... 13

*Texas v. Biden,*
    646 F. Supp. 3d 753 (N.D. Tex. 2022)...................................................................... 13

*Texas v. E.P.A.,*
    726 F.3d 180 (D.C. Cir. 2013)................................................................................... 19

*Thompson v. N. Am. Stainless,*
    562 U.S. 170 (2011).................................................................................................. 27

*Turkiye Halk Bankasi A.S. v. United States,*
    598 U.S. 264 (2023).................................................................................................. 43

*Turner v. U.S. Att'y Gen.,*
    130 F.4th 1254 (11th Cir. 2025)................................................................................ 35

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)...................................................................................................... 10

*Wyoming v. U.S. Dep't of Interior,*
    2018 WL 2727031 (10th Cir. June 4, 2018).............................................................. 12

**Statutes**

5 U.S.C. § 701(a)(1)........................................................................................................ 25

5 U.S.C. § 702................................................................................................................. 27

5 U.S.C. § 702(1)............................................................................................................ 55

5 U.S.C. § 702(a)(2) ................................................................................................ 44

5 U.S.C. § 704 ........................................................................................................ 39

5 U.S.C. § 705 .................................................................................................. *passim*

5 U.S.C. § 706(2)(A) .............................................................................................. 54

8 U.S.C. § 1101(a)(13)(B) ....................................................................................... 6

8 U.S.C. § 1182(a)(6)(C) ..................................................................................... 4, 5

8 U.S.C § 1182(a)(7) ............................................................................................... 4

8 U.S.C. § 1182(d)(5) ....................................................................................... *passim*

8 U.S.C. § 1182(d)(5)(A) .................................................................................. *passim*

8 U.S.C. § 1225 ................................................................................................. 36, 38

8 U.S.C. § 1225(b)(1)(A) ................................................................................... 11, 28

8 U.S.C. § 1225(b)(1)(B) ....................................................................................... 45

8 U.S.C. § 1226(e) ................................................................................................. 48

8 U.S.C. § 1229a .......................................................................................... 2, 3, 47

8 U.S.C. § 1229b(b)(1) ........................................................................................... 48

8 U.S.C. § 1252(a)(2)(A) ................................................................................... 20, 24

8 U.S.C. § 1252(e) .............................................................................................. 27, 28

8 U.S.C. § 1252(e)(1)(A) .................................................................................... 12, 17

8 U.S.C. § 1252(e)(1)(B) ....................................................................................... 18

8 U.S.C. § 1252(e)(3) ..................................................................................... 1, 20, 41

8 U.S.C. § 1252(e)(3)(A) ....................................................................................... 21

8 U.S.C. § 1252(e)(3)(B) ................................................................................. 22, 23, 45

8 U.S.C. § 1252(f)(1)..................................................................................... *passim*

8 U.S.C. § 1252(g)........................................................................................ *passim*

8 U.S.C. § 1255(a)(2)........................................................................................ 49

28 U.S.C. § 2401............................................................................................... 24

**Rules**

Fed. R. Civ. Pro. 23........................................................................................... 54

**Regulations**

8 C.F.R. § 1.1(q) (1998)................................................................................. 4, 22

8 C.F.R. § 1.2............................................................................................... *passim*

8 C.F.R. § 208.30(e)(8)...................................................................................... 46

8 C.F.R. § 212.5(e)(2).................................................................................. 6, 7, 35

8 C.F.R. § 212.5(e)(2)(i)............................................................................... *passim*

8 C.F.R. § 235.3................................................................................................ 18

8 C.F.R. § 235.3(b)...................................................................................... 30, 46

8 C.F.R. § 235.3(b)(1)......................................................................................... 3

8 C.F.R. § 235.3(b)(1)(i).............................................................................. *passim*

8 C.F.R. § 235.3(b)(1)(ii).................................................................................. 37

8 C.F.R. § 235.3(b)(4)....................................................................................... 46

8 C.F.R. § 235.3(b)(6)....................................................................................... 37

8 C.F.R. § 1003.42(c)........................................................................................ 46

8 C.F.R. § 1003.42(d)........................................................................................ 46

## Other Authorities

*Proclamation No. 14, 159,*
    90 Fed. Reg. 8443 (Jan. 20, 2025) ..................................................................................4

*Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures,*
    62 Fed. Reg. 10 (Mar. 6, 1997) ....................................................................................4

*Designating Aliens for Expedited Removal,*
    90 Fed. Reg. 8139 (Jan. 24, 2025) ........................................................................*passim*

*Eligibility of Arriving Aliens in Removal Proceedings to Apply for Adjustment of Status and Jurisdiction to Adjudicate Applications for Adjustment of Status,*
    71 Fed. Reg. 27 (May 12, 2006) ....................................................................................4

# INTRODUCTION

This Court should deny Plaintiffs' motion under 5 U.S.C. § 705 to stay the effective date of various agency documents that have already gone into effect. Plaintiffs argue that the Department of Homeland Security ("DHS") lacks statutory authority to apply expedited removal to aliens paroled at ports of entry, but they concede that a 1997 regulation, 8 C.F.R. § 1.2, in combination with 8 C.F.R. § 235.3(b)(1)(i), explicitly provides DHS such authority. Plaintiffs' stay motion, however, does not ask the Court to enjoin the application of these regulations, and therefore their motion fails for lack of redressability because, separate and apart from the challenged documents, the regulations provide a legal basis for DHS to apply expedited removal to paroled aliens.

Plaintiffs further concede that they are *not* challenging a March 2025 Federal Register Notice from Secretary of Homeland Security Kristi Noem ending certain parole programs. ECF No. 21 ("Amended Compl."), ¶¶ 20, 51; *see Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13,611 (Mar. 25, 2025) ("March 2025 FRN"). Yet they ask this Court to stay that Rule, which is already in effect, without explaining how the Court has authority to do so in light of their concession and in light of a recent Supreme Court order staying a district court's injunction enjoining that very Rule. *Noem v. Doe*, 145 S. Ct. 1524 (2025).

The stay motion fails on other threshold grounds. First, Plaintiffs' challenges to expedited removal are time-barred under 8 U.S.C. § 1252(e)(3) and precluded from this Court's review under 8 U.S.C. § 1252(g). Second, Plaintiffs' request for a stay is barred by 8 U.S.C. § 1252(f)(1) because that request is in substance no different than a request for a preliminary injunction seeking

to prevent DHS from applying expedited removal to paroled aliens.  Third, while 5 U.S.C. § 705 authorizes courts in some circumstances to delay the effective date of an agency action, section 705 cannot be used where, as here, the agency action has already taken effect.

As to the merits, Plaintiffs cannot show a likelihood of success.  The statutory text, context, structure, and history support the view that Congress intended for 8 U.S.C. § 1225(b)(1)(A)(i) to apply to aliens paroled at ports of entry as those "arriving in" the U.S.  *See* 8 U.S.C. § 1182(d)(5)(A) ("And when the purposes of parole have been served the alien shall forthwith be returned to custody and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.").  In addition, and apart from the "arriving in" provision, paroled aliens (whose parole is later terminated or revoked) can be subject to expedited removal if they have been continuously present in the United States for less than two years as designated by the Secretary of Homeland Security, as they now are.  8 U.S.C. § 1225(b)(1)(A)(iii); 90 Fed. Reg. 8139 (Jan. 24, 2025).  And, contrary to Plaintiff's protestations, there is nothing inconsistent about DHS citing these different overlapping statutory authorities for expedited removal in different documents.

Finally, the stay motion should be denied because the balance of harms weighs strongly in the Defendants' favor.  Plaintiffs' assertion that expedited removal will lead to their members suffering persecution or torture is simply not convincing, given aliens are entitled to "credible fear" procedures that allow them to assert a fear of return to their home country and receive three levels of administrative review.  Indeed, several aliens that Plaintiffs discuss in their declarations were found to have a credible fear through this process and referred to removal proceedings under 8 U.S.C. § 1229a.  Plaintiffs also allege a litany of other harms that will result from expedited

removal, but these allegations do not establish irreparable harm because they are the normal consequences of removal that apply to all removed aliens, whether DHS initiates expedited removal, removal following a proceeding under section 1229a, or some other removal procedure.

In contrast, if Plaintiffs' request were granted in the way they seek, DHS would be enjoined from applying expedited removal to potentially hundreds of thousands of aliens whose parole it has terminated or will terminate, thereby frustrating its ability to expeditiously remove such aliens and imposing substantial administrative burdens by requiring DHS to initiate and litigate full-blown section 1229a removal hearings if it chose to pursue removal. Thus, the balance of hardships weighs heavily in the Defendants' favor.

Lastly, if the Court grants the stay motion, the relief should be narrowly tailored. Plaintiffs' lawsuit is brought on behalf of their members, and therefore a stay should not go beyond those members who they can identify as being affected by the challenged agency actions, rather than to all aliens paroled at a port of entry (as Plaintiffs' motion appears to request).

## LEGAL AND PROCEDURAL BACKGROUND

### I.    Statutory Scheme for Expedited Removal and Parole

**A.    *Expedited Removal.*** Two groups of aliens are subject to expedited removal: (1) aliens arriving in the United States, 8 U.S.C. § 1225(b)(1)(A)(i) ("an alien ... who is arriving in the United States"), and (2) aliens designated by the Secretary of Homeland Security within certain outer statutory limits, *id.* ("an alien ... described in clause (iii)"). *See* 8 U.S.C. § 1225(b)(1)(A)(i), (iii); 8 C.F.R. § 235.3(b)(1). As to the first group, an alien who arrives at a port of entry and is subsequently paroled into the United States is subject to expedited removal because he retains his status as an alien "arriving in" the United States. 8 C.F.R. § 1.2. As to the second group, the statute limits designation as follows: "An alien ... who has not been admitted or paroled into the United

States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Aliens in either the first group (arriving alien) or second group (designated alien) can be removed through the expedited removal procedure if they are removable on either of two grounds of inadmissibility, namely, on the basis of fraud or willful misrepresentation, 8 U.S.C. § 1182(a)(6)(C), or a lack of valid documents, 8 U.S.C § 1182(a)(7). 8 U.S.C. § 1225(b)(1)(A)(i).

In 1997, DOJ promulgated implementing regulations to apply expedited removal initially only to aliens arriving at a port of entry. *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312, 10,312-13 (Mar. 6, 1997) (noting the agency's view "that the statute seemed to differentiate more clearly between aliens at ports-of-entry and those encountered elsewhere in the United States"). The Department adopted a regulation defining arriving alien to include "an alien who seeks admission to or transit through the United States, as provided in 8 CFR part 235, at a port-of-entry." 8 C.F.R. § 1.1(q) (1998) (currently at 8 C.F.R. §§ 1.2, 1001.1(q)). Critically, it also provided: "An arriving alien remains such *even if paroled* pursuant to section 212(d)(5) of the Act [8 U.S.C. § 1182(d)(5)]." *Id.* (emphasis added). That rule went into effect on April 1, 1997. 62 Fed. Reg. at 10,312.

Although the regulation has been revised since its adoption, the amendments only confirm that "arriving alien" includes aliens paroled at a port of entry, like the members described by Plaintiffs. In 2006, the regulatory definitions were amended to specifically provide, as they do

4

now, that an arriving alien includes aliens who are paroled "even after any such parole is terminated or revoked." 8 C.F.R. §§ 1.2, 1001.1(q); *see Eligibility of Arriving Aliens in Removal Proceedings to Apply for Adjustment of Status and Jurisdiction to Adjudicate Applications for Adjustment of Status*, 71 Fed. Reg. 27,585, 27,591 (May 12, 2006).

With respect to the designation provision at 8 U.S.C. § 1225(b)(1)(A)(iii), the Secretary of Homeland Security (and Commissioner of the legacy INS in 2002) have on five occasions exercised this designation authority. The most recent designation of aliens under 8 U.S.C. § 1225(b)(1)(A)(iii) occurred on January 24, 2025, following President Trump's Executive Order 14159, *Protecting the American People from Invasion*, 90 Fed. Reg. 8443 (Jan. 20, 2025). The Acting Secretary of Homeland Security published a Federal Register notice restoring the scope of expedited removal to "the fullest extent authorized by Congress." *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025). The notice enabled DHS "to place in expedited removal, with limited exceptions, aliens determined to be inadmissible under [8 U.S.C. § 1182(a)(6)(C) or (a)(7)] who have not been admitted or paroled into the United States and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility," who were not covered by previous designations. *Id.* at 8,139-40. The notice explained that this action aimed to "enhance national security and public safety—while reducing government costs—by facilitating prompt immigration determinations" and would "enable DHS to address more effectively and efficiently the large volume of aliens who are present in the United States unlawfully ... and ensure the prompt removal from the United States of those not entitled to enter, remain, or be provided relief or protection

from removal." *Id.* at 8,139.  Plaintiffs do not challenge that expansion in this case.  ECF No. 21 ("Amended Compl."), ¶¶ 20, 59.

**B. *Parole.*** Congress has long provided authority to immigration officials to use parole to temporarily allow aliens to proceed into the interior of the United States, emphasizing that parole is not an "admission" within the meaning of the INA.  8 U.S.C. §§ 1101(a)(13)(B), 1182(d)(5)(A).  "[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)); *see also Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958).

As amended in 1996, the relevant statute provides that the Secretary of Homeland Security "may ... in [her] discretion parole" an "alien applying for admission," and specifies that such a parole is done "temporarily under such conditions as [the Secretary] may prescribe [and] only on a case-by-case basis for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).  The statute further states that parole may be terminated "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served."[1]  *Id.* Thus, the grant of parole and its termination is committed to the broad discretion of the Secretary. After parole is terminated, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall *continue to be dealt with in the same manner as that of any other applicant for admission* to the United States."  *Id.* (emphasis added).  In other

---

[1]  In addition, among other possibilities, parole terminates with service of a document charging the alien with being removable.  8 C.F.R. § 212.5(e)(2).

words, when parole ends, the alien "shall be restored to the status that he or she had at the time of parole." *Id.*

## II.    DHS Documents Plaintiffs Request to Stay

Plaintiffs' motion seeks to stay three DHS documents. Memorandum of Law in support of Motion for a Stay of Agency Action, ECF No. 22-1 ("Memo") at 10. The first document is a memorandum issued on January 23, 2025 by then-Acting Secretary of Homeland Security Benjamine C. Huffman to senior DHS officials setting forth guidance on how to exercise enforcement discretion in light of a recent "clarifi[cation]" of DHS's policy regarding the scope of the parole statute and its expansion of expedited removal consistent with its statutory authority. *Id.* Memorandum from Benjamine C. Huffman, Acting Secretary (Jan. 23, 2025) ("Huffman Memorandum"), *available at* https://www.dhs.gov/sites/default/files/2025-01/25_0123_er-and-parole-guidance.pdf (last accessed May 27, 2025). The Huffman Memorandum instructs immigration enforcement to take "all steps necessary to review [an] alien's case and consider, in exercising [] enforcement discretion, whether to apply expedited removal," which "may include" terminating other removal proceedings or parole. *Id.* For aliens who are not subject to expedited removal and have "been granted parole under a policy that may be paused, modified, or terminated immediately under the January 20 memorandum," the Huffman Memorandum instructs DHS officials to "consider, in exercising [their] enforcement discretion, whether any such alien should be placed in removal proceedings" or whether "parole remains appropriate in light of any changed legal or factual circumstances." *Id.* Finally, the Huffman Memorandum directs that "[t]he actions contemplated by this memorandum shall be taken in a manner consistent with applicable, statutes, regulations, and court orders." *Id.*

The second document Plaintiffs seek to stay is, according to Plaintiffs, a "directive" sent by ICE leadership to Enforcement and Removal Operations personnel "directing such officers to consider for expedited removal 'paroled arriving aliens' who have not applied affirmatively for asylum with USCIS." Amended Compl., ¶ 63; Memo at 18-19, 25.

The third document Plaintiffs seek to stay is a March 2025 Federal Register Notice from Secretary of Homeland Security Kristi Noem ending certain parole programs. Memo at 10. *Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13,611 (Mar. 25, 2025) ("March 2025 FRN"). Plaintiffs' reliance on this document requires some background.

During the Biden Administration, DHS established several parole programs, including those for individuals from Cuba, Haiti, Nicaragua, and Venezuela and their immediate family members ("CHNV" programs). Memo at 5-6 & n.5. In a notice published on March 25, 2025, DHS terminated the CHNV parole programs. 90 Fed. Reg. 13,611. Upon re-examination and based on DHS's experience, Secretary Noem determined that the CHNV programs "do not serve a significant public benefit, are not necessary to reduce levels of illegal immigration, did not sufficiently mitigate the domestic effects of illegal immigration, are not serving their intended purposes, and are inconsistent with the Administration's foreign policy goals." *Id.* at 13,612. To the extent that "urgent humanitarian reasons" supported any grants of parole under CHNV, "DHS believes that [such] reasons for granting parole [are] best addressed on a case-by-case basis consistent with the statute, and taking into consideration each alien's specific circumstances." *Id.* Thus, the Secretary determined that grants of parole under the CHNV programs that had not

8

already expired by April 24, 2025, were to terminate on that date unless the Secretary decides to the contrary in individual cases. *Id.* at 13,611.

In addressing the effect of such termination on existing parolees, the Secretary determined any reliance interests were outweighed by the fact that allowing parole to expire on its own terms would enable some aliens to accrue more than two years of presence in the United States, which, the Notice noted, would mean that DHS could not remove them by expedited removal pursuant to § 1225(b)(1)(A)(iii) but would instead have to initiate the more lengthy process of a full removal hearing under 8 U.S.C. § 1229a. *Id.* at 13,619 ("If DHS were to allow the CHNV parolee population to remain for the full duration of their two-year parole, DHS would be compelled to place a greater proportion of this population in section 240 removal proceedings to effectuate their removal, further straining the already over-burdened immigration court system") (citations and footnote omitted)); *see also id.* at 13,620 (same effect). The Notice did not discuss the use of expedited removal for the parolees as arriving aliens under 8 U.S.C. § 1225(b)(1)(A)(i) and 8 C.F.R. § 235.3(b)(1)(i).

## LEGAL STANDARD

Plaintiffs move for a stay under 5 U.S.C. § 705, which provides, in relevant part, that "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court ... may ... postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." "[A] stay under § 705 should be imposed for one—and only one—reason: to maintain the status quo in order to allow judicial review of the underlying regulation to proceed in a 'just' manner." *Bauer v. DeVo*s, 325 F. Supp. 3d 74, 106-07 (D.D.C. 2018). Moreover, as the D.C. Circuit has explained, Section 705

is intended to "postpone the effective date of a not yet effective rule, pending judicial review." *Safety-Kleen Corp. v. EPA*, Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324, at *2-3 (D.C. Cir. Jan. 19, 1996).

The standards of review for relief under 5 U.S.C. § 705 and for preliminary injunctions are the same. *See Sampson v. Murray*, 415 U.S. 61, 80 (1974). A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). A court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must demonstrate (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer an irreparable injury in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Id.* at 20.

Moreover, Article III demands that a remedy "be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Gill v. Whitford*, 138 S. Ct. 1916, 1931 (2018) (citation omitted); *see Log Cabin Republicans v. United States*, 658 F.3d 1162, 1168 (9th Cir. 2011) (per curiam), and bedrock principles of equity similarly require that injunctions be no broader than "necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).

**ARGUMENT**

I.    **5 U.S.C. § 705 Does Not Provide a Basis for the Relief Plaintiff Seeks.**

    A.    **Section 1252(f)(1) Prohibits a Stay of Agency Action that Precludes DHS from Applying Expedited Removal to Paroled Aliens.**

While Plaintiffs have styled their request for relief as a stay rather than an injunction, the relief requested is the same in substance.  Therefore, their request is precluded by 8 U.S.C. § 1252(f)(1), which provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of Part IV of this subchapter ... other than with respect to the application of such provisions to an individual alien against whom proceedings ... have been initiated.

*See also Biden v. Texas*, 597 U.S. 785, 797 (2022) (section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions").  "Part IV of this subchapter" refers to 8 U.S.C. §§ 1221-1232, the sections of the United States Code which govern the inspection, apprehension, examination, exclusion, and removal of aliens.  *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549, 558 (2022).  Expedited removal under 8 U.S.C. § 1225(b)(1)(A) falls within §§ 1221-1232 and, therefore, is covered by 8 U.S.C. § 1252(f)(1).  And whether Plaintiffs are ultimately correct that section 1225(b)(1)(A) cannot be applied to former parolees does not matter.  "[T]he reach of § 1252(f)(1)" is not "dependent upon the merits" of Plaintiffs' claim that the government is "misapplying a covered statutory provision."  *Aleman Gonzalez*, 596 U.S. at 553-54.  Consequently, the Court lacks authority to grant Plaintiffs' request to categorically stay application of expedited removal to former parolees.  *Texas*, 597 U.S. at 794, 797 (holding that the

district court's order enjoining the government to continue applying its "remain in Mexico" program under 8 U.S.C. § 1225(b)(2)(C) violated § 1252(f)(1)).

Section 705 does not provide an end-run around 8 U.S.C. § 1252(f)(1). "The relevant legislative history of [section 705] … indicates that it was primarily intended to reflect existing law under the Scripps-Howard doctrine ... and not to fashion new rules of intervention for District Courts." *Sampson*, 415 U.S. at 68 n.15. The Scripps-Howard doctrine was that courts of appeal have traditional equitable authority to grant a stay pending review of final agency action, even where a statute does not explicitly authorize a stay. *Id.* at 73. Section 705 codified this existing equitable authority. *Id.* at 68 n.15. Equitable relief, however, is not available for "any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)." 8 U.S.C. § 1252(e)(1)(A) ("Without regard to the nature of the action or claim and without regard to the identity of the part or parties bringing the action, no court may … enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)...."). Meanwhile, Plaintiffs' stay request is, in any event, no different than a request for an injunction. *See Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J., in chambers) ("[A]pplicants are seeking not merely a stay of a lower court judgment, but an injunction against the enforcement of a presumptively valid state statute"); *Abbott v. Perez*, 585 U.S. 579, 595 (2018) ("[W]e have not allowed district courts to shield their orders from appellate review by avoiding the label injunction.") (cleaned up); *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (statute barring court orders that "suspend or restrain" tax collection stripped jurisdiction to enter injunctions or declaratory relief); *Wyoming v. U.S. Dep't of Interior*, 2018 WL 2727031, at *1 (10th Cir. June 4, 2018) (explaining that "[t]he district court's 'stay' effectively

12

enjoins enforcement of the Rule" and is thus immediately appealable as an injunctive order). A court order granting Plaintiffs' stay request under § 705 would—as Plaintiffs envision it—restrain how DHS implements expedited removal. Memo at 1; *see also* Amended Compl. at 54, ¶ 5, Prayer for Relief. Section 1252(f)(1) eliminates any court's (other than the Supreme Court's) authority to issue orders enjoining or restraining implementation of the expedited removal statute, where "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. *Aleman Gonzalez*, 596 U.S. 549. Consequently, a stay under section 705 is analogous to a preliminary injunction. *See Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 28 (D.D.C. 2012) (discussing how a § 705 "[s]tay is not designed to do anything other than preserve the status quo."). *But see Immigrant Defs. L. Ctr. v. Noem*, ___ F.3d ____, 2025 WL 1172442, at *14-15 (C.D. Cal. Apr. 16, 2025) (declining to extend 8 U.S.C. § 1252(f)(1) to Section 705), *appeal pending*, No. 25-2581 (9th Cir. filed Apr. 22, 2025); *Nat'l TPS All. v. Noem*, ___ F. Supp. 3d___, 2025 WL 957677, at *11-14 (N.D. Cal. Mar. 31, 2025) (same), *appeal pending*, No. 25-2120 (9th Cir. filed Apr. 2, 2025); *Texas v. Biden*, 646 F. Supp. 3d 753, 768-69 (N.D. Tex. 2022) (same).

*Nken v. Holder*, 556 U.S. 418, 428 (2009), is not to the contrary. The *Nken* Court addressed a different INA provision, 8 U.S.C. § 1252(f)(2)—which only prohibited "enjoin[ing] the removal of any alien"—and held it did not preclude *individual stays* of the order of removal pending review. *Id.* at 428. The stay of the removal order, the Court reasoned, "operate[d] upon the [administrative or] judicial proceeding itself." *Id.* at 428; *see Tesfamichael v. Gonzales*, 411 F.3d 169, 174 (5th Cir. 2005) (a "stay" is distinct from an "injunction" when it operates on an *adjudication* originating in a lower court or an administrative agency); *see also Black's Law Dictionary* 1413 (6th ed. 1990)

(defining a "stay" as: "[a] stopping; the act of arresting *a judicial proceeding* by the order of a court") (emphasis added).

Moreover, § 1252(f)(1) is far broader than § 1252(f)(2), given that it strips courts of jurisdiction to "enjoin *or restrain* the operation" of the covered provisions, rather than just prohibiting enjoining removal orders. 8 U.S.C. § 1252(f)(1). And Plaintiffs do not seek to enjoin an individual removal proceeding or some other *agency adjudication* pending judicial review of that adjudication. They ask this Court to prevent the government from implementing the expedited removal statute. Such an order, even if labeled a stay, is injunctive in effect and thus § 1252(f)(1) bars it. *See Brown*, 533 U.S. at 1303 (Rehnquist, C.J., in chambers) ("[A]pplicants are seeking not merely a stay of a lower court judgment, but an injunction against the enforcement of a presumptively valid state statute"); *see Nken*, 556 U.S. at 429 ("[a] stay 'simply suspends *judicial alteration of the status quo*, while injunctive relief *grants judicial intervention*" in the first instance) (emphasis added). Indeed, a contrary reading is at odds with Congress's clear intent that the government's chosen means of implementing the covered "procedures will remain in force while [any] lawsuits are pending" and that "single district courts or courts of appeal do not have authority to enjoin procedures established by Congress to reform the process of removing illegal aliens from the U.S." H.R. Rep. No. 104-469, pt 1, at 161 (Conference Report). A postponement under Section 705 would improperly prevent implementation of expedited removal "while [] lawsuits are pending," before final judgment affirmed by the Supreme Court. *Id*. Accordingly, § 1252(f) bars Plaintiff's request for a stay.

**B.    The Court Cannot Stay Agency Action that Has Already Gone into Effect.**

Aide from Section 1252(f)'s clear bar on relief, section 705 by its own terms does not authorize a postponement of the documents. Courts construing section 705 have concluded that

14

the phrase "postpone the effective date" of an agency action authorizes the "postpone[ment of] the effective date of a *not yet effective rule*, pending judicial review," but not suspension of a rule that is already in effect. *See, e.g.*, *Safety-Kleen Corp. v. EPA*, Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324, at *2-3 (D.C. Cir. Jan. 19, 1996) (emphasis added); *Ctr. for Biological Diversity v. Regan*, No. CV 21-119 (RDM), 2022 WL 971067, at *21 (D.D.C. Mar. 30, 2022) (same, collecting cases); *California v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1118 (N.D. Cal. 2017) (same). While these cases address an agency decision to "postpone the effective date," Section 705 uses identical language when referring to "the reviewing court ... postpon[ing] the effective date of an agency action." The use of an identical phrase in the first and second sentences of Section 705 must be presumed to be intentional. *See, e.g.*, *Sorenson v. Sec'y of Treasur*y, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning."). Given its plain meaning, the language in Section 705 allowing a court or agency to "postpone the effective date" can only be read to mean that the statute allows the court "to put off until a future time," "defer," or "delay" the "operative" date of the agency action. *See* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/postpone (last visited June 19, 2025); MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/effective (last visited June 19, 2025); *see also* BLACK'S LAW DICTIONARY ONLINE (2d. Ed.) (defining "postpone" as "to put off; defer; delay; continue"). One cannot "defer" or "put off" an action that has already occurred; thus, it would be unreasonable to interpret the statute as permitting the issuance of a stay after the operative date of the challenged rule has already passed.

15

Here, the agency actions Plaintiffs seek to stay are already in effect. The Huffman Memorandum is dated January 23 without a future effective date; it is written in the present tense to provide guidance to agency officials. Huffman Memorandum at 1 ("This memorandum provides guidance regarding how to exercise enforcement discretion in implementing these policies."). The February 18 email "directive," as described by Plaintiffs, likewise does not provide for delayed implementation. Amended Compl., ¶¶ 63-64. The March 25, 2025 FRN stated it was immediately terminating the CHNV parole programs and providing 30 days' notice before existing parole grants were terminated.[2] The fact that Section 705 is disjunctive, permitting reviewing courts to "postpone the effective date of an agency action *or* to preserve status or rights pending conclusion of the review proceedings" (emphasis added), cannot change this result. That second clause is subject to the same temporal limitation as the first clause for the simple reason that the status quo, once a rule goes into effect, is that the rule is in effect. An order staying a rule or policy after it goes into effect thus does not preserve, but alters, the status quo. *See, e.g., Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006) (explaining an order "preventing the implementation of new regulations" would "disturb[]" rather than preserve "the status quo"); *Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1305 (1985) (explaining that had the district court issued an order

---

[2] Although the District Court for the District of Massachusetts, on April 14, 2025, issued preliminary relief enjoining the March 25, 2025 FRN's termination of parole grants for those previously granted parole under the CHNV programs, *Doe v. Noem*, No. 1:25-CV-10495-IT, 2025 WL 1099602, at *20 (D. Mass. Apr. 14, 2025), *appeal pending* No. 25-1384 (1st Cir.), the FRN had already gone into effect on March 25. In any event, on May 30, 2025, the Supreme Court granted the Government's application for a stay of the district court's order pending the disposition of the Government's appeal in the First Circuit. *Noem v. Doe*, 145 S. Ct. 1524 (2025). Following that decision, Plaintiffs did not seek a stay of the FRN with this Court until June 11, 2025.

16

stopping rule from taking effect that would alter the "status quo"). The status quo presently is that all three DHS documents are operative.

### C.    The INA's Judicial Review Provision for Expedited Removal Also Does Not Support the Request for a Stay.

The INA's juridical review provisions for changes to the expedited removal system also precludes the relief being sought. Section 1252(e)(1) provides that "no court may—(A) enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection." As to section 1252(e)(3), the sole remedy authorized is a "determination[]" on the merits of "whether [section 1225(b)], or any regulation issued to implement such section, is constitutional" or "whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General [or Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." Section 1252(e)(3) does not provide for any interim relief premised on such a determination. Congress authorized litigation "by, and only by, aliens against whom the new procedures had been applied." *Am. Immigr. Lawyers Ass'n v. Reno* ("*AILA II*"), 199 F.3d 1352, 1360 (D.C. Cir. 2000). And Section 1252(e) specifically bars any "declaratory, injunctive, or other equitable relief" preventing the application of such procedures to other aliens during the course of litigation. 8 U.S.C. § 1252(e)(1)(A). Congress also barred class actions in 8 U.S.C. § 1252(e)(1)(B), providing further evidence that Congress intended to limit broad relief like Plaintiffs seek in the stay motion.

17

II.    **The Court Should Deny the Stay Motion Because It Lacks Jurisdiction Over Plaintiffs' Claims.**

A.    **Plaintiffs Cannot Establish Standing Because Their Alleged Harms are not Redressable.**

Plaintiff organizations seek to stay three DHS documents described above which guide DHS officials' exercise of enforcement discretion.  In doing so, Plaintiffs assert claims on behalf of various members of theirs who were granted parole, despite not being directly subject to DHS's documents themselves.  Plaintiffs, however, cannot establish standing because they have failed to show how granting the requested relief will prevent their members from being subject to expedited removal.  *See Lujan v. Def. of Wildlife*, 504 U.S. 555, 560--61 (1992) (discussing standing requirements including that the injury is "likely" to be redressed by a favorable decision).

The problem for Plaintiffs is that they concede in their first amended complaint that DHS's regulation at 8 C.F.R. § 1.2, in combination with 8 C.F.R. § 235.3, allows DHS to apply expedited removal to aliens paroled at ports of entry.  *See* Amended Compl., ¶ 78 ("The overbroad definition of 'arriving alien' in 8 C.F.R. § 1.2, when Defendants apply it through 8 C.F.R. § 235.3, means that any paroled individual may be subjected to expedited removal at any time.").  While Plaintiffs allege in their amended complaint that section 1.2 is inconsistent with the expedited removal statute, Amended Compl., ¶ 179, their stay motion does not ask the Court to enjoin the application of 8 C.F.R. §§ 1.2 or 235.3, as applied to paroled aliens.

Instead, they ask the Court to stay three DHS documents, none of which purports to address the issue of DHS's authority to apply expedited removal to paroled aliens, but which assume that authority.  The primary document Plaintiffs rely on, the Huffman Memorandum, directs immigration officers "to review the alien's case and consider, in exercising [] enforcement discretion, whether to apply expedited removal" in order to effectively implement DHS's new

18

policies regarding the termination of certain parole programs and the expansion of expedited removal. But DHS's authority to apply expedited removal to paroled aliens pursuant to 8 C.F.R. §§ 1.2, 235.3—which were promulgated almost three decades ago—is in no way contingent on this enforcement guidance document issued five months ago. The same reasoning applies to ICE's February 18 "directive." That document likewise assumes DHS has authority to apply expedited removal to paroled aliens. *See* Amended Compl., ¶ 63 (characterizing this document as "directing [DHS] officers to consider for expedited removal 'paroled arriving aliens'").

Finally, while the FRN did discuss DHS's authority under 8 U.S.C. § 1225(b)(1)(A)(iii) to designate paroled aliens for expedited removal, it did not set out to specify which individuals would be eligible for expedited removal. 90 Fed. Reg. at 13,611 (summary and background). Instead, in issuing this FRN, the Secretary decided to end certain parole programs and explained her reasons for doing so. *Id*. at 13,612-17. And given that Plaintiffs do not challenge this Rule, it is unclear on what basis they can seek a stay. Thus, none of these documents are necessary for DHS to apply expedited removal to aliens paroled at a port of entry, and staying their implementation will not prevent the harms Plaintiffs allege they cause. *See Texas v. E.P.A.*, 726 F.3d 180, 198 (D.C. Cir. 2013) (dismissing challenge to administrative rules for lack of standing because vacating those rules "would not redress the State petitioners' injury," which was separately caused by a statute); c*f. Kaspersky Lab, Inc. v. DHS,* 311 F. Supp. 3d 187, 219 (D.D.C. 2018) (finding plaintiffs failed to establish redressability where requested relief addressed "only one of two government actions that both independently produce the same alleged harm").

Plaintiff organizations further cannot establish standing because they have failed to plead an injury. None of the Plaintiffs have attempted to assert organizational standing and have indeed

19

failed to identify any legally cognizable injury to themselves. *F.D.A. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024) (holding that the mere expenditure of resources to research and advocate against the practices at issue in a case does not confer standing); *see* Amended Compl., ¶¶ 89–143; Memo at 11.   Instead, Plaintiffs attempt to establish associational standing. Memo at 11-12.  For purposes of this opposition, Defendants do not challenge Plaintiffs' claim that they have sufficiently pled injury to their members because, as discussed, Plaintiffs lack standing on another basis—failing to establish redressability.

**B.    Plaintiffs' Challenges to Expedited Removal Are Time-Barred.**

Plaintiffs claim that the Court has jurisdiction under 8 U.S.C. § 1252(e)(3).  Memo at 13. But their claims—all of which challenge expedited removal—are out of time under that statute. Section 1252(a)(2)(A), entitled "Review relating to section 1225(b)(1))," provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—
>
> *        *        *
>
> (ii) except as provided in subsection (e), a decision by the Attorney General to invoke the provisions of such section [section 1225(b)(1)],
>
> (iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or
>
> (iv) except as provided in subsection (e), procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A).  Therefore, the INA precludes challenges to DHS's decision to "invoke" the expedited removal procedure or to apply it to "individual aliens" "except as provided under subsection (e)" of section 1252.  In turn, subsection (e)(3)(A), entitled "Challenges on Validity of the System," provides:

Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

(i) whether such section, or any regulation issued to implement such section, is constitutional; or

(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A).

Critically, these types of systematic challenges shall be filed "no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure ... is first implemented." *Id.* § 1252(e)(3)(B). That deadline is jurisdictional and is not excused by a post sixty-day discovery that a particular individual will be subject to expedited removal. *AILA v. Reno (AILA I)*, 18 F. Supp. 2d 38, 47 (D.D.C. 1998) ("The Court reaches this conclusion because Congress designed the statute so that the 60 days ran from a fixed point, the initial implementation of the challenged provisions, rather than from the date of application of IIRIRA to a particular alien."), *aff'd*, *AILA II,* 199 F.3d at 1358.

In their stay motion, Plaintiffs argue that three DHS documents provide incorrect guidance because aliens paroled at a port of entry are not subject to expedited removal. Memo at 14-21. However, as explained below, DHS promulgated a regulation effective on April 1, 1997 defining an "arriving alien" as "an alien who seeks admission ... at a port-of-entry" and clarified that such an alien remains an arriving alien "even if paroled." 62 Fed. Reg. at 10,312 (codified at 8 C.F.R. § 1.2). Plaintiffs cannot challenge the conclusion that they are subject to expedited removal or the adequacy of these procedures because their complaint was not filed within sixty days of April 1, 1997.

21

In an interim final rule effective April 1, 1997, the Department of Justice defined the term "arriving alien" as including precisely the group that Plaintiffs say are not subject to expedited removal:

> The term arriving alien means *an alien who seeks admission to or transit through the United States, as provided in 8 CFR part 235, at a port-of-entry*, or an alien who is interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. *An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act.*

62 Fed. Reg. at 10,312; 8 C.F.R. § 1.1(q) (1998) (emphases added). "Arriving aliens" are subject to expedited removal. 8 C.F.R. § 235.3(b)(1)(i). If Plaintiffs wanted to contest the regulation's inclusion of aliens paroled at a port of entry as within the group of "arriving aliens" subject to expedited removal, they had to do so within sixty days after April 1, 1997. 8 U.S.C. § 1252(e)(3)(B); *see AILA II*, 199 F.3d at 1355. The present complaint was filed decades out of time. That is so even if Plaintiffs' members did not themselves become "arriving aliens" and subject to expedited removal until long after the deadline passed. *AILA I*, 18 F. Supp. 2d at 47. Thus, the Court lacks jurisdiction over Plaintiffs' challenges to expedited removal.

In their brief, Plaintiffs claim their challenge to the DHS documents is timely because the complaint was filed within 60 days of the date the three recent documents were issued. Memo at 12-13. Plaintiffs are incorrect. 8 U.S.C. § 1252(e)(3)(B) (60-day clock runs "after the date the challenged [document] is *first implemented*" (emphasis added)). If plaintiffs could initiate a lawsuit every time federal statutes or rules were cited or discussed in more recent agency guidance, it would nullify the deadline that Congress established. *See AILA II*, 199 F.3d at 1364 ("Congress imposed the 60-day limit on actions in order to cabin judicial review and to have the validity of the new law decided promptly."). Thus, Plaintiffs cannot challenge the long-established principle

that aliens paroled at a port of entry are subject to expedited removal, even if that proposition was repeated in the 60 days before the filing of their complaint. 8 U.S.C. § 1252(e)(3)(B) ("first implemented"); *cf. Kiakombua v. Wolf,* 498 F. Supp. 3d 1, 36 (D.D.C. 2020) (Jackson, J.) (finding that 60-day limit ran from the date the USCIS's "lesson plan" was implemented where certain parts of that plan provided new credible fear adjudication standards that were contrary to the INA and its regulations).

This is highlighted by the fact that the agency documents do not set out a new policy regarding the application of expedited removal to paroled aliens but simply remind DHS officers of the statutory and regulatory law and judicial precedent relating to DHS' enforcement discretion, and encourage them to exercise that discretion, including "consider[ing]" whether to apply expedited removal. *Supra*, at 7-8. Moreover, even if the agency's reiteration of a long-held position could restart the 60-day clock, that does not help Plaintiffs here because none of DHS's documents purports to address the issue of DHS's authority to apply expedited removal to paroled aliens. Rather, they assume that authority. *See supra*, at II.A; *see also Dugdale v. Customs and Border Protection*, 300 F. Supp. 3d 276, 278 n.5 (D.D.C. 2018), *aff'd*, 2019 WL 2157423 (D.C. Cir. 2019).

In their amended complaint, Plaintiffs raise three additional arguments in an attempt to avoid the time bar, each of which fails. *See* Amended Compl., ¶¶ 181-83. First, Plaintiffs' assertion that the jurisdictional bar at 8 U.S.C. § 1252(a)(2)(A) does not apply is meritless. *See* Amended Compl., ¶ 181. The challenge to the regulation is a challenge to the procedures adopted to implement the expedited removal statute and therefore its review is limited to that available under 1252(e), including its 60-day time limit. 8 U.S.C. § 1252(a)(2)(A)(iv) ("no court shall have jurisdiction to review ... except as provided in subsection (e), *procedures and policies adopted by*

*the Attorney General* to implement the provisions of section 1225(b)(1) of this title" (emphasis added)). Second, the statute governing judicial review in this case supersedes the six-year limitations period in 28 U.S.C. § 2401. 8 U.S.C. § 1252(a)(2)(A) ("*Notwithstanding any other provision of law* (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title..." (emphasis added)). And, finally, equitable tolling cannot assist Plaintiffs. *M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021). The D.C. Circuit approved the holding that the 60-day limit is jurisdictional. *AILA I*, 18 F. Supp. at 47; *AILA II*, 199 F.3d at 1355. And, in any event, Plaintiffs do not allege any facts that would justify equitable tolling if it were available. *See, e.g., Robinson v. DHS OIG*, 71 F.4th4th 51, 58 (D.C. Cir. 2023).

For all of these reasons, the Court should dismiss Plaintiffs' claims as time-barred.

### C.    The Relief That Plaintiffs Seek Is Also Squarely Foreclosed by 8 U.S.C. § 1252(g).

Plaintiffs ask the Court to issue a stay of the DHS documents "insofar as they subject individuals who have previously been granted parole at ports of entry to expedited removal." Memo at 38. Although Plaintiffs style their motion as a stay of agency action, the clear import of what Plaintiffs seek is for the Court to preclude DHS from commencing expedited removal against aliens paroled at a port of entry. Indeed, their amended complaint requests precisely that relief. Amended Compl., ¶ 5, Prayer for Relief (requesting Court "[e]njoin Defendants from applying expedited removal to noncitizens who have previously been granted parole at a port of entry"). That claim falls directly within section 1252(g)'s preclusion of review for actions seeking to challenge DHS's commencement of expedited removal and, therefore, the Court should deny the

application for a stay. *See* 5 U.S.C. § 701(a)(1) (judicial review of agency action is not available under the APA where another statute precludes judicial review).

Section 1252(g) provides that "notwithstanding any other provision of law (statutory or nonstatutory) ... no court shall have jurisdiction to hear any cause or claim by *or on behalf of any alien* arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien," except through a petition for review from a final order of removal filed in a court of appeals. (Emphasis added). Though this section "does not sweep broadly," *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020), its "narrow sweep is firm," *E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021). Courts "cannot entertain challenges to the enumerated executive branch decisions or actions" outside a petition for review. *E.F.L.*, 986 F.3d at 964. The Supreme Court has explained that 8 U.S.C. § 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 & n.9 (1999) ("*AADC*") ("Section 1252(g) seems clearly designed to give some measure of protection to ... discretionary determinations.").

Plaintiffs, "on behalf" of their members, effectively request that this Court "impose judicial constraints" on DHS's "prosecutorial" decision to "commence" expedited removal proceedings against those members. But that is one of the actions that § 1252(g) bars. *AADC* is directly on point: There the Court held that § 1252(g) precluded the district court's review of the aliens' selective prosecution claims which sought to enjoin the Government from commencing deportation proceedings. *Id.* at 487 ("the language seems to have been crafted with such a challenge precisely in mind"). This applies as well to Plaintiffs' related claim that DHS should not

25

terminate section 1229a proceedings in order to commence the expedited removal process. That contention is fatally flawed because DHS has unfettered and unreviewable discretion to choose among its statutorily-provided removal options. *Id.; see also Matter of E-R-M-*, 25 I. & N. Dec. 520, 521–24 (BIA 2011) (DHS has discretion whether to process an inadmissible arriving noncitizen for expedited removal or to place the noncitizen in 1229a proceedings).

Plaintiffs cannot bypass section 1252(g) simply because they raise a statutory interpretation question as to DHS's authority to apply expedited removal to paroled aliens or a constitutional challenge to the expedited removal procedures, just as the *AADC* Plaintiffs could not bypass section 1252(g) by alleging selective enforcement constitutional claims. *Id.* Indeed, such an outcome "would gut § 1252(g)" because "[f]uture petitioners could restyle any challenge to the [covered] actions ... as a challenge to the Executive's general lack of authority to violate due process, equal protection, the [Administrative Procedure Act], or some other federal law." *Tazu*, 975 F.3d at 298; *see also E.F.L.*, 986 F.3d at 964 (noting that the restyling of claims would make § 1252(g) a "paper tiger"). For these reasons, section 1252(g) bars the Court from issuing a stay of the agency actions Plaintiffs challenge.

### D. Plaintiff Organizations Cannot Show They Are Within the Zone of Interests Protected by the Expedited Removal Statute.

Even if the Plaintiffs passed the threshold of Article III standing, and even if they showed they were making a timely challenge under § 1252(e)(3) that is not barred by subsections (f) or (g), they cannot succeed in asserting violations of the INA. None of the Plaintiffs are natural persons subject to or potentially subject to expedited removal from the United States. *Cf. AILA II*, 199 F.3d at 1360 (explaining that Congress authorized litigation "by, and only by, aliens against whom the new procedures had been applied"). The Plaintiff organizations describe their reason

for being, *e.g.*, Amended Compl., ¶¶ 91, 109, 110, 126-27, 128, 143, but do not show that Congress created a cause of action allowing them to enforce the limits established by Congress in the INA or, in particular, the expedited removal statute. *See AILA II*, 199 F.3d at 1358 ("We cannot see anything in these provisions allowing litigants—whether individuals or organizations—to raise claims on behalf of those not party to the lawsuit."); *id*. at 1359 ("When we examine other subsections of 8 U.S.C. § 1252(e) dealing with judicial review, we find signs that Congress meant to allow actions only by aliens who have been subjected to the summary procedures contained in § 1225(b) and its implementing regulations.").

A plaintiff must be "adversely affected or aggrieved by agency action within the meaning of a relevant statute" to sue under the APA. 5 U.S.C. § 702. A plaintiff "may not sue unless he falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Thompson v. N. Am. Stainless*, 562 U.S. 170, 177 (2011). This inquiry asks whether Congress intended for a particular plaintiff to invoke a particular statute to challenge agency action. *See Clarke v. Security Indus. Ass'n*, 479 U.S. 388, 399 (1987). Plaintiffs do not adequately articulate how they are in the zone of interests of the expedited removal statute. *See* Amended Compl., ¶¶ 16-18, 23-25, 89-143; Memo at 12.

Unlike the Plaintiffs in *Make the Road*, cited by Plaintiffs to support their assertion of "prudential standing," Memo at 12, the organizational Plaintiffs here have failed to provide evidence directly from their alleged members proving that their members can invoke § 1252(e)(3) to challenge the DHS directives. *Cf. Make the Rd. New York v. Wolf*, 962 F.3d 612, 622 (D.C. Cir. 2020) (holding that three Associations challenging the decision to expand expedited removal under the designation provision had associational standing where they provided three declarations

27

directly from the Associations' members stating that they were subject to and adversely affected by the new designation). Only a fraction of the aliens Plaintiffs identify throughout their pleadings are actually identified as members. For instance, Plaintiffs focus their stay motion on the story of E.F.S. Memo at 2-3, 29, 35-36. But E.F.S., whose circumstances are only explained through pseudonymous hearsay in two declarations by other individuals, *see* ECF Nos. 22-11, 22-5, is never identified as a member of the three Plaintiff organizations. In fact, Plaintiffs only identify three alleged members who were granted parole and subsequently placed in expedited removal proceedings, in each case through pseudonymous hearsay: CHIR member E.I.R.M. (identified as a member in Amended Compl. ¶ 100 and ECF No. 22-7); CASA member E.M.P. (identified as a member in Amended Compl. ¶ 135 but not in ECF No. 22-10); and CASA member D.L.C. (identified as a member in Amended Compl. ¶ 136 but not in ECF No. 22-13). This is insufficient to establish that Plaintiffs fall within the zone of interests protected by the expedited removal statute.

Furthermore, nothing in the text, structure, or purpose of the INA generally, or § 1225(b)(1)(A) specifically, shows an intent to allow organizational Plaintiffs to challenge agency action. With respect to expedited removal, neither section 1225 nor section 1252 evinces any concern with organizations or their interest in representing individuals subject to expedited removal. *See* 8 U.S.C. § 1225(b)(1)(A); *see also id.* § 1252(e)(1)(B) (limiting class certification for matters subject to judicial review in subsection (e) of the section). These provisions do not regulate the organizational Plaintiffs' conduct or create any benefits for which the organizations may be eligible. For example, section 1252(e)(3) is a jurisdiction-conferring statute and does not "provid[e] plaintiffs with a cause of action to challenge the government's implementation of the

expedited removal system." *Make the Road N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 36 (D.D.C. 2019); *see also O.A*, 404 F. Supp. 3d at 140 (finding no "feature of § 1252(e)(3) suggesting that it provides a cause of action, much less an exclusive cause of action for claims brought challenging implementation of the expedited removal statute"). And the D.C. Circuit has concluded that immigration statutes are directed at aliens, not organizations advocating for them. *AILA II*, 199 F.3d at 1364 ("[P]laintiff organizations do not have standing to raise claims, whether statutory or constitutional, on behalf of aliens subjected to IIRIRA's expedited removal system.").

Allowing third parties who cannot be subject to expedited removal to challenge the Executive Branch's decisions through the APA would circumvent Congress's statutory design. As Justice O'Connor explained in granting the government's stay application in an immigration case involving similar organizational plaintiffs, organizations that "provide legal help to immigrants" do not satisfy the zone-of-interests test. *INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*, 510 U.S. 1301, 1302 (1993) (O'Connor, J., in chambers). Federal immigration law was "clearly meant to protect the interests of undocumented aliens, not the interests of organizations." *Id.* at 1305. The fact that an immigration regulation "may affect the way an organization allocates its resources" for representing aliens accordingly does not bring the organization "within the zone of interests" that the asylum and withholding statutes protect. *Id.*

Defendants acknowledge that some courts in this District have sometimes held that the zone-of-interests test should be applied permissively and have found organizations to satisfy it, even in the context of the INA. *See, e.g.*, *O.A. v. Trump*, 404 F. Supp. 3d 109, 144 (D.D.C. 2019). However, this relaxed standard does not (and cannot) survive the Supreme Court's *United States v. Texas* decision. 599 U.S. 670 (2023). There, the Court clarified—relying on principles that

29

inform the scope of Article III and the APA's cause of action—that third parties have no cognizable interest in the way the Executive enforces the immigration laws against others. 599 U.S. at 674, 677. us, for this reason as well, the Court should deny the application for a stay.

III.    **Plaintiffs Fail to Establish a Likelihood of Success on the Merits Because Application of Expedited Removal to Plaintiffs' Members Is Lawful.**

A.    **Aliens Paroled into the U.S. at a Port of Entry are Properly Subject to Expedited Removal Because They Are Aliens "Arriving in the United States."**

An alien who arrives at a port of entry and is subsequently paroled into the United States is subject to expedited removal because he retains his status as an "arriving alien" under the INA. The statute provides that aliens arriving in the United States who meet the other requirements (*i.e.*, inadmissibility on fraud and lack-of-documents grounds) may be subject to expedited removal. 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b). Indeed, an alien reverts to the status he possessed prior to the grant of parole which, in the case of all those paroled at a port of entry, is that of an applicant for admission standing at the threshold of entry. *See* 8 U.S.C. § 1182(d)(5)(A). As Congress explained, parole "shall not be regarded as an admission of the alien and when the purposes of such parole shall ... have been served the alien shall forthwith return ... to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id*.; *see Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (same) (citing statute). The long-extant parole regulations confirm what Congress made clear—that an arriving alien who is paroled continues to be considered an arriving alien. The governing regulations define arriving alien to include "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. §§ 1.2, 1001.1(q). "An arriving alien remains an arriving alien even if paroled pursuant to

30

section 212(d)(5) of the Act [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked." 8 C.F.R. § 1.2. Furthermore, the qualifications made to the regulatory definition—that it does *not* cover aliens paroled before a particular date or aliens paroled after that date if particular circumstances exist—highlights that it *does* include the group of aliens paroled at a port of entry who do not meet the exceptions. *Id.* Moreover, the definition of arriving alien does not include any temporal limit to those who could be subject to expedited removal. *See id.*

In light of the clear regulation that includes arriving aliens granted parole at a port of entry within the class of arriving aliens subject to expedited removal, Plaintiffs, in their Amended Complaint—and somewhat more obliquely in their Stay Motion—*concede* that the regulation at section 1.2 is contrary to their position but contend it is inconsistent with the statute. Memo at 18-21. As Defendants have already explained, this contention is untimely. *Supra* at Section I.B.

Even apart from that untimeliness, the contention is devoid of merit. A review of the statutory text, context and structure support the Defendants' position as the best reading of the statute. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Congress's use of the phrase "arriving in" encompasses aliens paroled at a port of entry given the statutory and historical backdrop of parole. Congress legislated with the knowledge that the Supreme Court has long established that aliens paroled into the United States are legally in the position of aliens standing at the border, regardless of the duration of their parole. *E.g., Leng May Ma*, 357 U.S. at 188-91; *Ibragimov v. Gonzales*, 476 F.3d 125, 134 (2d Cir. 2007). "This is why a parolee normally fits the regulatory definition of an 'arriving alien'—for legal purposes, the parolee is a 'an applicant for admission coming or attempting to come into the United States at a port-of-entry' even if, in actuality, a paroled alien has already physically come into the United States." *Duarte v. Mayorkas*,

31

27 F.4th 1044, 1059-60 (5th Cir. 2022) (citation omitted). Congress amended the parole statute against that background, leaving intact the operative language: "[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i) (providing that when parole ends the alien "shall be restored to the status he or she had at the time of parole"). When—nearly 30 years ago—the Department of Justice adopted its definition of "arriving alien" to include paroled aliens, it relied on this well-established statutory principle to conclude that parolees were included among the class of arriving aliens who could be subject to expedited removal. 62 Fed. Reg. at 10,313 ("The inclusion of paroled aliens was based on the statutory language in section 212(d)(5) of the Act ...."). At the time, the Department received an objection to including parolees in the definition of arriving aliens. However, the legislative treatment of parolees (consistent with the long-standing judicial treatment) led the Department to conclude: "The Department feels there is solid statutory basis for inclusion of certain paroled aliens in the definition of arriving alien, and so will retain this provision." *Id*.

Plaintiffs urge the court to read the word "arriving" in a vacuum and insist that, grammatically, it cannot apply to aliens who have already "arrived" and been paroled despite the agency's careful consideration of this issue long ago. Memo at 20. Not only does this interpretation ignore the unique historical and statutory context discussed above—which Plaintiffs fail to address—but it is also incorrect. Plaintiffs' interpretation that "arriving" is a momentary status that is soon completed and, once completed, is gone forever, makes little sense. An alien

may be subject to expedited removal if the alien "is" arriving, but the use of a form of the verb "to be" does not establish such a limited temporal scope.

In any event, Plaintiffs' analysis overlooks key textual clues which confirm that section 1225(b)(1)(A)(i) applies to aliens paroled at a port of entry:

- If Congress wanted to exclude paroled aliens from the reach of this provision, it could have easily done so, and the fact that Congress *did* specifically exclude paroled aliens from the class of designated aliens in a nearby provision, 8 U.S.C. § 1225(b)(1)(A)(iii), is especially compelling. *Bates v. United States*, 522 U.S. 23, 29-30 (1997) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion *or exclusion*." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))) (emphasis added).

- The title of section 1225(b)(1)—"Inspection of aliens arriving in the United States *and certain other aliens who have not been admitted or paroled*." (emphasis added)— reinforces the above point. This title supports Defendants' position that Congress intentionally chose not to exempt paroled aliens from the reach of the "arriving in" provision. Rather, the exclusion of such aliens referenced in the title refers to language in the designation provision at 1225(b)(1)(A)(iii).

- Section 1225(b)(1)(A)(i)(F) provides for a categorical exception to both the "arriving in" and designation provision for certain aliens who are natives or citizens of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations but contains no such categorical exclusion for paroled aliens.

Thus, the statutory text, context, structure and history support the view that Congress intended for section 1225(b)(1)(A)(i) to apply to aliens paroled at ports of entry as those "arriving in" the United States.

Plaintiffs' remaining argument is also unavailing. They point to the designation provision's explicit exclusion of an alien who "has not been ... paroled" and question why Congress would then allow expedited removal for such aliens pursuant to the "arriving in" provision. Memo at 20.

33

But as a matter of statutory interpretation, the fact that Congress included language in one provision but not in another provision in such close proximity significantly undermines Plaintiffs' position. Moreover, contrary to Plaintiffs' suggestion, Defendants' interpretation would not render the designation's language excluding paroled aliens meaningless. *See id.* As explained in more detail below, that language has a very specific purpose, which is to preclude the designation of an alien for expedited removal *for the duration of the alien's parole*. In contrast, the statutory provision governing expedited removal of arriving aliens does *not* provide any exclusion (temporary or permanent) for paroled aliens.

### B.     Aliens Paroled into the U.S. at a Port of Entry are Properly Subject to Expedited Removal Because They Are Within the Class of Aliens Designated by the Secretary.

Even apart from the arriving alien definition, aliens paroled at a port of entry may be placed in expedited removal under the designation provision at 8 U.S.C. § 1225(b)(1)(A)(iii), which allows designation of an alien "who has not been admitted or paroled" and who cannot show they have been present in the U.S. continuously for the 2-year period immediately prior to the date of their determination of inadmissibility.

Plaintiffs contend that this conclusion is contrary to the statute. Memo at 15-16. Specifically, Plaintiffs rely on the "who has not been admitted or paroled" language to argue that aliens paroled at a port of entry cannot be designated for expedited removal. Amended Compl., ¶ 149. Not so. Aliens who were (as a historical matter) paroled into the U.S. at a port of entry can be designated for expedited removal in the future when the parole expires or is terminated. 8 U.S.C. § 1225(b)(1)(A)(iii)(II); *see* 8 C.F.R. § 212.5(e)(2) (termination by service of charging document). The use of the present perfect tense ("has not been ... paroled") here reflects a "state that continues into the present." *See Turner v. U.S. Att'y Gen.*, 130 F.4th 1254, 1261–62 (11th Cir.

34

2025) (construing former 8 U.S.C. § 1432 and explaining that the present perfect tense can "refer to a ... state that continues into the present"). The simplest explanation for this language is Congress's recognition that a person would not be subjected to expedited removal pursuant to 8 U.S.C. § 1225(b)(1)(A)(iii)(II) during the period for which they were designated for parole so long as the alien retains parole.

This textual interpretation comports with the statutory and historical context: when parole is revoked, an alien reverts to the status he possessed prior to the grant of parole. In the case of all those paroled at a port of entry, that is the position of an applicant for admission standing at the threshold of entry. *See* 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 288; *Leng May Ma*, 357 U.S. at 188-90; *Duarte*, 27 F.4th at 1059-60; *Ibragimov*, 476 F.3d at 137.[3] The statutory language—"who has not been admitted or paroled"—is best understood as encompassing aliens who are no longer paroled. So long as an alien retains parole, he cannot be numbered among those designated for expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii). But once parole is terminated or expired then—so long as he has not been present for two years prior to the date of

---

[3] For these reasons, the district court in *Svitlana Doe* misread the designation provision by interpreting the "who had not been admitted or paroled" language to mean that any alien who has ever been paroled, for any length of time, is categorically immune from expedited removal. *See Doe*, 2025 WL 1099602, at *16. That reading is not only contrary to the text and structure of the parole statute and inconsistent with the broader statutory and historical context of parole, it is also inconsistent with longstanding regulations which provide that after parole is terminated, "further inspection or hearing shall be conducted under section 235 or 240 of the Act." 8 C.F.R. § 212.5(e)(2)(i). Section 235 of the Act is 8 U.S.C. § 1225, which includes the expedited removal provision. The Supreme Court's order granting the Government's application for a stay of the district court's order calls into question the soundness of the district court's reasoning, *see Noem v. Doe*, 145 S. Ct. 1524, and the Government's appeal is currently pending with the First Circuit, No. 25-1384.

the determination of inadmissibility—there is no obstacle to his being designated for expedited removal.

Plaintiffs complain that this construction of the statute is not sensible because it leaves in the Government's hands the question of whether a paroled alien could be subject to expedited removal by choosing to revoke or not revoke the parole. Memo at 15-16. But there is nothing incongruous about that conclusion. It is entirely consistent with the terms that Congress provided for parolees, namely, that upon the fulfillment of the purposes of parole "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i) (providing that when parole ends the alien "shall be restored to the status he or she had at the time of parole"). If the Government has the power to terminate parole, which the Plaintiffs do not dispute, then it has the power to return the alien to the position he had before being paroled, namely, an applicant for admission subject to expedited removal. It is Plaintiffs' proposition—that once paroled an alien is forever immune from expedited removal—that is entirely inconsistent with the parole statute.

Plaintiffs also contend that the application of expedited removal to aliens once paroled at a post of entry is contrary to the agency's own regulations. Memo at 17-18. Plaintiffs rely on a regulation governing expedited removal which speaks of an alien who entered "without having been ... paroled" and which describes the burden on the alien to show he "was ... paroled." *Id.* (citing 8 C.F.R. § 235.3(b)(1)(ii), (6)). Plaintiffs argue that DHS's choice to use the past tense verb reflects an intent to exclude paroled aliens even where the parole has been revoked. This argument fails because the regulations support the Defendants' position.

36

To begin, a regulation governing the actions to be taken by an asylum officer if an asylum application is to be denied provides for the use of expedited removal to a paroled alien by designation. 8 C.F.R. § 208.14(c)(4)(ii). The regulation directs that for parolees who are inadmissible under the relevant parts of 1182(a)(6) and (7), upon denial of the asylum application, "the asylum officer shall proceed in accordance with § 235.3(b) of this chapter." 8 C.F.R. § 208.14(c)(4)(ii). Notably, under 235.3(b), a parolee who qualifies can be subject to expedited removal either as an arriving alien *or as a designated alien*. 8 C.F.R. 208.14(c)(4)(ii)(A) ("In the case of an applicant who is an arriving alien or is otherwise subject to removal under § 235.3(b) of this chapter....").

In addition, the same expedited removal regulation upon which Plaintiffs rely—8 C.F.R. § 235.3(b)(6)—establishes a process for the termination of the alien's parole. *Id.* ("If the alien establishes that he or she was ... paroled ... the case will be examined to determine ... whether such parole has been, or should be, terminated, and whether the alien is inadmissible under section 212(a)"). The regulation thus envisions the possibility that such an alien with parole terminated could be subject to expedited removal or, at the very least, does not exclude the possibility. The regulation's further reference to an inquiry regarding inadmissibility under section 212(a), *i.e.*, section 1182(a), is consistent with the inquiry DHS must make to consider an alien for expedited removal, which is available only for aliens subject to section *1182(a)*(7) and *1182(a)*(6)(C).

Further still, another regulation (one governing parole) provides for the possibility of expedited removal after termination of parole. 8 C.F.R. § 212.5(e)(2)(i) (after parole is terminated, "further inspection or hearing shall be conducted *under section 235* or 240 of the Act") (emphasis added). This regulation clearly provides that an immigration officer retains discretion to initiate a

proceeding under "235," *i.e.,* 8 U.S.C. § 1225, once parole is terminated which includes expedited removal pursuant to 8 U.S.C. § 1225(b)(1). In the end, the regulations weigh in the Government's favor, and the language of the statute controls in any event.

The Supreme Court's recent order granting the Government's application to stay the district court's preliminary injunction in *Doe*, 2025 WL 1099602, implicitly supports the Government's position. The district court stayed the FRN's revocation of parole for aliens of certain countries to the extent parole was revoked "without case-by-case review." *Id.* at *20. That court had found plaintiffs were likely to prevail on their claims, including the claim of legal error in DHS's rationale for immediately terminating parole for individuals already present in the U.S. based on the FRN's invocation of the designation provision—similar to the issue in this case. *Id.* at *16-18. In its stay application to the Supreme Court, the Solicitor General argued, among other things, that the present perfect tense language in the designation provision ("has not been * * * paroled") is best read to reflect a "state that continues into the present"—the same argument the Government presents here. *Doe v. Noem*, No. 24A1079 (filed May 8, 2025). By a 7-2 margin the Court granted a stay of the district court's order. 145 S. Ct. 1524 (2025). Notably, not even the dissenting two Justices defended the district court's stay based on the likelihood-of-success factor but focused on irreparable harm and the balance of equities. *Id.* at 1525-28; *id.* at 1525 ("Even if the Government is likely to win on the merits, in our legal system, success takes time and the stay standards require more than anticipated victory.") (Jackson, J., dissenting). Therefore, although the majority did not provide any reasoning for the order, the stay grant implicitly undercuts Plaintiffs' claim of a likelihood of success on the merits.

C.    **Plaintiffs Are Not Likely to Succeed on their APA Claim Because the Documents They Contest Did Not Make the Changes That Plaintiffs Allege and Are Not Inconsistent.**

Plaintiffs raise an APA claim alleging that the DHS documents are inconsistent with each other, not adequately justified, and made substantive policy changes without considering the impact on the affected population. Memo at 21-28; *see also* Amended Compl., ¶¶ 155-57. Plaintiffs misread these documents. The documents are not final agency decisions conferring any new authority on immigration officers that they need to justify; they merely guide immigration officers with regard to the exercise of their existing prosecutorial discretion and statutory and regulatory authority in selecting which INA procedures to use to process removable aliens—a decision that itself is not subject to judicial review, *see infra* at Section II.A (discussing 8 U.S.C. § 1252(g); *AADC*, 525 U.S. at 487).

For this reason, Plaintiffs' APA claims fail on the ground that there is no "final agency action." 5 U.S.C. § 704. To be final, an agency action (i) "must mark the 'consummation' of the agency's decisionmaking process" such that it is not of "a merely tentative or interlocutory nature"; and (ii) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). As noted above, a long-standing DHS regulation provides that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act," and therefore is subject to expedited removal. 8 C.F.R. § 1.2. None of the three challenged documents address this rule or purport to make any changes in rules governing which aliens are designated within the statutory limit or whether aliens paroled at a port of entry fall into the group of either arriving or designated aliens. Rather, the final agency action Plaintiffs wish to challenge in this suit happened long ago with the promulgation of 8 C.F.R. § 1.2, and the documents challenged now have not

39

determined or altered any "rights or obligations" or caused any "legal consequences" with which Plaintiffs are concerned. *See* Memo at 22 (claiming that the documents' explanations "to justify applying the expedited removal statute to individuals inspected and paroled … are, on their face, arbitrary and capricious …").

*Second*, Plaintiffs' attacks on the DHS's justification for applying expedited removal to their members similarly miss the mark because they fundamentally misconstrue the purpose and function of the documents. *See* Memo at 21–26. None of the attacked documents purport to justify applying expedited removal to parolees—doing so would be odd, given that this authority has already existed since at least 1997. 8 C.F.R. § 1.2. In particular, the March 2025 FRN addresses revocation of parole and simply assumes DHS's authority to apply expedited removal to paroled aliens under the designation provision. 90 Fed. Reg. at 13,611. Likewise, the February 18 email "directive" merely instructs immigration officers to consider expedited removal for paroled aliens who qualify, again assuming (correctly) that DHS has the authority to place paroled aliens in expedited removal. The Huffman Memorandum does the same, and does not even address paroled aliens directly. *See* Huffman Memorandum ("(1) For any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied …."). What Plaintiffs really wish to attack is the 1997 regulation, which *does* provide the DHS's authority to apply expedited removal to those who were paroled and *did* provide justifications for that authority after notice and comment. 8 C.F.R. § 1.2; 62 Fed. Reg. at 10,313. Of course, they cannot prevail, for their attack comes over twenty-five years too late. 8 U.S.C. § 1252(e)(3).

*Third*, Plaintiffs' attacks on the documents' reasoning as inconsistent rests on other fundamental misunderstandings about the documents. The March 2025 FRN, consistent with the

other two documents, discusses the designation of those subject to expedited removal in such a way as to also encompass certain parolees. *See* 90 Fed. Reg. at 13,611; *see also* 8 U.S.C. § 1225(b)(1)(A)(iii). Its reference to the designation provision only adds to the potential sources of authority for subjecting parolees to the expedited removal statute. It does not diminish or alter the unambiguous, decades-old regulatory provisions treating paroled arriving aliens as arriving aliens (8 C.F.R. § 1.2) and rendering them amenable to expedited removal (8 C.F.R. § 235.3(b)(1)(i)) or Congress's unambiguous command that when parole ends "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission," 8 U.S.C. § 1182(d)(5)(A).

Plaintiffs erroneously rely on language in the FRN which states: "Expedited removal is available only when an alien has not been continuously present in the United States for at least the two years preceding the date of the inadmissibility determination." *See* Memo at 23-26; *see also* 90 Fed. Reg. at 13,619 (citing the designation provision); *id.* at 13,620 (if parole were allowed to expire on its own terms, "CHNV parolees may begin to accrue more than two years of continuous presence in the United States, such that DHS would have to initiate section 240 removal proceedings to effectuate their removal.") (same citation). Plaintiffs seize on these statements to argue that DHS's reliance on the designation provision in the FRN is inconsistent with its guidance documents. Amended Compl., ¶ 155; Memo at 23-26. But Plaintiffs' argument fails because the FRN is relying on an *additional* source of authority for applying expedited removal—the designation authority—not changing the statutory or regulatory basis for treating paroled arriving alien as arriving aliens. In turn, nothing requires an agency to use one source of legal authority over another (*i.e.*, § 1225(b)(1)(A)(i) vs. § 1225(b)(1)(A)(iii)), and this type of policy choice is

41

within the unreviewable discretion of the agency. *See contra* Memo at 25. So, while DHS cited its designation authority under § 1225(b)(1)(A)(iii), nothing in the FRN precludes it from exercising the full scope of its statutory authority for expedited removal, including 8 U.S.C. § 1225(b)(1)(A)(i), pursuant to implementing regulations that have been in effect for over twenty-five years.

Moreover, Plaintiffs ignore the context of the statements in the FRN. The FRN did not set out to decide which individuals would be eligible for expedited removal. *See* 90 Fed. Reg. at 13,611 (summary and background). Instead, in issuing this FRN, the Secretary decided to end certain parole programs (an action that Plaintiffs do not challenge) and explained her reasons for doing so. *Id.* at 13,612-17. One risk—as evidenced by this litigation—was that allowing parole to continue without prompt termination would raise practical and legal barriers to expedited removal that included a risk that section 1229a removal proceedings would be needed. *Id.* at 13,619-20. One need only read the statements in this complaint to understand the legitimacy of the Secretary's concern that removal would become more difficult if parole were let to run its course. *See* Amended Compl., ¶ 148. Beyond that, the Secretary did not purport to alter the clear statutory and regulatory rules that treat aliens paroled at ports of entry as arriving aliens.[4] Even Supreme Court opinions are not to be parsed like a statute, *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373-74 (2023), or to be read as controlling beyond the facts presented, *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 278 (2023), and the Secretary's decision to assess the risks of continued parole programs on the burden of removal obviously did not purport to reduce

---

[4] Moreover, that the FRN was silent with respect to an *alternative* authority for expedited removal for paroled aliens can in no way be construed to somehow estop the Government from exercising that well-settled authority.

42

the removal options once parole was rescinded.  In short, the regulation that defines arriving alien remains in place and individuals who meet that definition and are inadmissible on the specified grounds are subject to expedited removal without regard to whether they previously were granted parole.

*Fourth*, Plaintiffs' charge that the agency's actions violate the APA because they fail to consider the impact of their "changes" on an affected population is inapposite.  *See* Memo at 26-28; *see also* Amended Compl., ¶ 157.  As discussed above, the challenged documents made no policy change with regard to the application of expedited removal when they instructed immigration officers to exercise their well-established authority to consider which removal procedure should be utilized in the individual case.  Moreover, the Court cannot review the agency's decision to adopt policies directing that discretion, 8 U.S.C. § 1252(g), and because there has been no change in policy, Plaintiffs cannot establish that any reliance interests have been upset. Moreover, as those who have been allowed into the country as a matter of grace, *see* 8 U.S.C § 1182(d)(5)(A), who have no other lawful basis to reside in the U.S. and who are subject to being detained and removed when parole ends or is terminated, *see id.*, paroled aliens have no reliance interests in avoiding removal.

*Finally*, to the extent that Plaintiffs' arbitrary and capricious claim is based on a *different* argument, that the documents fail to justify applying expedited removal instead of 240 proceedings or fail to justify commencing removal proceedings at all, that claim is meritless.  The agency has unfettered discretion over whether to initiate proceedings, 8 U.S.C. § 1252(g); *see United States v. Texas*, 599 U.S. 670, 684 (2023) (discussing the Executive Branch's traditional discretion over whether to take enforcement actions against violators of federal law), and if so, to choose between

43

removal proceedings, and there is no judicially manageable standard in the INA for this Court to review such decisions. *See* 5 U.S.C. § 702(a)(2). The Administration was not required to justify its compliance with the existing letter of the expedited removal statute, which has *always* permitted arriving aliens to be placed in expedited removal proceedings, even if the Executive Branch at times opted not to pursue removal in light of its traditional enforcement discretion. *See* 8 U.S.C. § 1225(b)(1)(B)(ii) ("If an immigration officer determines that an alien … who is arriving in the United States … is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) … the officer *shall* order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum … or fear of persecution) (emphasis added); *see id.* § 1225(b)(1)(B)(iii) (immigration officer "shall" refer arriving alien who is inadmissible for a credible fear interview). In that sense, this case is easily distinguishable from *Grace v. Barr*, 965 F.3d 883, 902–03 (D.C. Cir. 2020), cited by Plaintiffs, which concerned the agency's guidance to change its choice-of-law policy resulting in less favorable, outcome-determinative substantive law applied to certain asylum-seekers in credible fear proceedings. *Cf.* Memo at 27. Since the time the statute went into effect, DHS has had authority to apply expedited removal to paroled arriving aliens, and DHS need not provide extensive justification for utilizing its long-established enforcement authority, particularly where that decision concerns prosecutorial charging choices traditionally within the unreviewable discretion of the Executive Branch. *See Texas*, 599 U.S. at 684.

In any event, the agency documents easily pass the arbitrary and capricious test—the clear import of all three documents is that expedited removal is the most effective way to implement the Administration's policies to quickly remove aliens who are not entitled to stay in the country and

44

there are no viable alternatives that could achieve the same results (and Plaintiffs do not propose any). DHS need not further justify its use of expedited removal; this policy decision was already decided by Congress in the plain language of 8 U.S.C. § 1225(b)(1)(B). And while a parolee may prefer to be placed in section 1229a proceedings, parolees received the benefit of temporary parole (such as employment authorization) with the knowledge that inadmissible "arriving" aliens are ultimately removed unless eligible for protection from removal. 8 U.S.C. § 1225(b)(1)(B). Thus, on the merits, the agency's position is not arbitrary and capricious. For all of these reasons Plaintiffs cannot demonstrate a likelihood of success on the merits.[5]

## IV.    The Remaining Equitable Factors Weigh Strongly in the Government's Favor.

### A.    Plaintiffs have not Established Irreparable Harm.

Plaintiffs have failed to show they will be irreparably harmed if DHS applies expedited removal. In alleging such harm, they rely heavily on the argument that their members could suffer persecution or death if removed through the expedited removal process because they could not adequately assert such fear claims in that process. *See* Memo 28, 31, 33-34. But Plaintiffs' argument is undermined by the credible fear procedures available to aliens in expedited removal.

---

[5] Plaintiffs do not base their stay request on the claim that DHS's documents violate their right to due process, as they do in their third claim for relief in the Amended Complaint, ¶¶ 159-162. In any event, that argument is without support. As discussed above, that challenge is untimely because under 8 U.S.C. § 1252(e)(3)(B), it had to have been raised in this Court within sixty days of the date that the expedited removal statute was "first implemented." *Dugdale v. U.S. Customs & Border Prot.*, 88 F. Supp. 3d 1, 8 (D.D.C. 2015) (constitutional challenge to expedited removal was time-barred). Moreover, the sufficiency of the expedited removal procedures was upheld long ago in *AILA I*, 18 F. Supp. 2d at 54-56. Plaintiffs are entitled to all the process set forth in the expedited removal statute and regulations, *see* 8 U.S.C. § 1225(b)(1); 8 C.F.R. § 235.3(b), and that is sufficient to satisfy due process. *AILA*, 18 F. Supp. 2d at 54-56; *accord Thuraissigiam*, 591 U.S. at 138-39; *see also Mezei*, 345 U.S. at 215 ("aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border") (cleaned up).

45

8 U.S.C. § 1225(b)(1)(B)(i); 8 C.F.R. §§ 235.3(b)(4), 208.30; *see also Thuraissigiam*, 591 U.S. at 109-11 (describing the credible fear process).  These procedures allow aliens to receive a credible fear interview before an asylum officer and if the asylum officer finds no credible fear, before a supervisor who reviews the asylum officer's determination. 8 C.F.R. § 208.30(e)(8).  While Plaintiffs suggest that such review is not sufficient because the asylum officer and supervisor are employees within DHS, *see* Memo at 29, 31-32, the regulations provide for de novo review of the negative credible fear finding by an immigration judge, *see* 8 C.F.R. § 1003.42(d).  The IJ "may receive into evidence any oral or written statement which is material and relevant to any issue in the review."  8 C.F.R. § 1003.42(c).  Importantly, an alien "need not show that he or she is in fact eligible for asylum—a 'credible fear' equates to only a 'significant possibility' that the alien would be eligible"–a threshold "screening" standard that is lower than the "well-founded fear standard" required to establish asylum eligibility.  *Thuraissigiam*, 591 U.S. at 109–10 ("all that an alien must show to avoid expedited removal is a 'credible fear'").

Plaintiffs' attempt to show harm by attacking the credible fear procedures as ineffective is undermined by case law, statistics and even their own declarations.  First, the Supreme Court has upheld the constitutionality of the INA's preclusion of review of the "allegedly flawed credible-fear proceeding."  *Thuraissigiam*, 591 U.S. at 138.  In so doing, it has observed that "[a]n alien subject to expedited removal [] has an opportunity at three levels to obtain an asylum hearing, and the applicant will obtain one unless the asylum officer, a supervisor, and an immigration judge all find that the applicant has not asserted a credible fear."  *Id.*  Plaintiffs' own evidence illustrates that aliens with a legitimate credible fear are referred to section 1229a proceedings.  *See* Declaration of Meghan Dupuis Maurus ("Maurus Decl."), ¶ 14; Declaration of Melissa Lim Chua ("Chua

46

Decl."), ¶ 18; Declaration of Sarah T. Gillman, Esq. ("Gillman Decl."), ¶ 9. And in one of these cases, the IJ reversed an asylum officer's negative reasonable fear determination. Gillman Decl., ¶ 9. In the end, Plaintiffs are attacking well established procedures upheld by the Supreme Court and essential to protecting our borders.

Plaintiffs allege a litany of other harms that will result from expedited removal, including detention, family separation, and a bar on admission to the United States. Memo at 35. But these harms are not unique to expedited removal; rather they are the expected consequences of removal that apply to all removed aliens, whether DHS initiates expedited removal or section 1229a removal or some other removal procedure. For example, aliens in 1229a proceedings can be detained "pending a decision on whether the alien is to be removed from the United States" under 8 U.S.C. § 1226(a), which grants DHS broad and unreviewable discretion to do so. 8 U.S.C. § 1226(e). *See also Jennings*, 583 U.S. at 306 (discussing DHS's detention authority). Likewise, removal under section 1229a often results in family separation and, although some aliens may be eligible for cancellation of removal if they can establish extreme and exceptionally unusual hardship to a qualifying relative, that relief is not available to aliens unless they can further establish 10 years of continuous physical presence in the US. *See* 8 U.S.C. § 1229b(b)(1). Thus, the specific class of paroled aliens on whose behalf Plaintiffs challenge expedited removal would not be eligible for such relief even if placed in section 1229a proceedings, and none of their declarations appear to indicate otherwise. Finally, the "bar on admission to the United States" Plaintiffs refer to for aliens removed under expedited removal, Memo at 35, also applies to aliens removed pursuant to section 1229a proceedings, and in fact, the admission bar for aliens removed under section 1229a is longer. *Compare* 8 U.S.C. § 1182(a)(9)(A)(i) (5-year bar for aliens removed

under 1225(b)(1)), *with* 8 U.S.C. § 1182(a)(9)(A)(ii)(I) (10-year bar for aliens removed under section 1229a).

Plaintiffs further claim there are a select few forms of "collateral" immigration relief that paroled aliens might be able to pursue if they were not in expedited removal.  Memo 29-31.  But this does not establish irreparable harm either.  Consider adjustment of status, for example.  An alternative to seeking to adjust status within the United States is to leave the country and seek consular processing from the U.S. embassy or consulate in the home country.  *Adams v. Holder*, 692 F.3d 91, 98-99 (2d Cir. 2012) (comparing consular processing and adjustment of status).  That might not be the alien's preferred way to pursue legal status, but requiring aliens to leave the country and apply from abroad is not irreparable harm.[6]  In fact, this is the required procedure for aliens who have entered the country illegally, regardless of how long they may have been in the United States.  *See* 8 U.S.C. § 1255(a)(2) (requiring aliens to be "admissible" to be eligible to adjust); *Landin-Molina v. Holder*, 580 F.3d 913, 915-16 (9th Cir. 2009).

In any event, Plaintiffs have failed to allege that any of *their members* will lose the opportunity to apply for collateral relief.  Plaintiffs identify only three alleged members who were granted parole and subsequently placed in expedited removal proceedings: CHIR member E.I.R.M. (Compl. ¶ 100; ECF No. 22-7); CASA member E.M.P. (Amended Compl. ¶ 135; ECF No. 22-10); and CASA member D.L.C. (Amended Compl. ¶ 136, ECF No. 22-13).  None of these

---

[6] As discussed, if such an alien fears returning to their home country to initiate consular processing, they can assert such fear in expedited removal, and, if that is fear found credible, DHS will refer the alien to section 1229a removal where they can seek a continuance with the Immigration Judge while they pursue adjustment with USCIS.  *See* 8 C.F.R. § 1245.2(a)(1)(ii) (providing that Immigration Judges generally do not have jurisdiction over arriving aliens' adjustment applications).

aliens are alleged to have pending applications for adjustment of status. And the only member who has a "collateral" relief application pending—D.L.C., who has applied for Special Immigrant Juvenile Status—was found to have a credible fear and referred to section 1229a proceedings. ECF No. 22-13, ¶ 18.

Plaintiffs' attempts to establish irreparable harm by attacking the expedited removal procedure as lacking "meaningful process" also fall flat. *See* Memo 32. Plaintiffs claim that expedited removal provides no opportunity to challenge the finding of inadmissibility or other statutory or regulatory requirements. *Id.* But nowhere in their brief or declarations is there any claim that DHS incorrectly charged any alien (much less one of Plaintiffs' members) with inadmissibility. Indeed, the very fact that these aliens were paroled into the United States at a port of entry establishes that they lacked valid documentation to enter the United States and were released into the country in the Secretary's discretion and subject to being re-detained at any time. 8 U.S.C. § 1182(d)(5)(A). The only eligibility criteria for expedited removal that Plaintiffs challenge is DHS's statutory authority to place paroled aliens in such proceedings, and as explained above, Plaintiffs are not likely to succeed on that challenge. Nor can Plaintiffs show irreparable harm by challenging the adequacy of the protections in the expedited removal statute and its implementing regulations. *See* Memo at 32-34. Plaintiffs complain, among other things, that aliens in expedited removal are not given sufficient process and an adequate opportunity to consult with counsel. *Id.* at 32. But the D.C. Circuit has upheld the legality of the statute and its implementing regulations rejecting arguments based on many of these alleged flaws, *AILA I*, 18 F. Supp. 2d at 52-60, *aff'd*, *AILA II*, 199 F.3d at 1357.

Finally, the Supreme Court's order in *Doe*, 2025 WL 1534782, granting the Government's application for a stay of the district court's preliminary injunction, *see* 145 S. Ct. 1524, counsels against granting a stay in this case. Notably, the types of harms alleged by Plaintiffs here are similar to those alleged by the aliens in *Doe*, as outlined in Justice Jackson's dissent, and include: arrest and detention, danger in the aliens' home countries, loss of employment, loss of "opportunities to seek any adjustment of status," and family separation. *Id.* at *3. Yet, despite these allegations of such harms, the Court granted the Government's stay application implying it disagreed with the district court's balancing of the equities. The balance of interests in this case are similar, and the Court should deny the stay request.

**B.     The Harm to the Government and the Public's Interest Favor Denying the Stay.**

In contrast, granting the stay would impose significant constraints and burdens on Defendants. The relief Plaintiffs request would prevent DHS from applying expedited removal to potentially hundreds of thousands of paroled aliens whose parole DHS is seeking to revoke or has revoked, thereby frustrating DHS's ability to quickly remove these aliens. *See* 90 Fed. Reg. at 13,618 (noting that "between October 19, 2022, and January 22, 2025, approximately 532,000 inadmissible aliens received parole into the United States pursuant to the CHNV parole programs"). It would also impose substantial administrative burdens and tax agency resources by requiring DHS to initiate and litigate 1229a removal hearings if it chose to pursue removal.

The harm to the Defendants would be particularly acute given the significance of expedited removal to the Government's enforcement efforts. "[When Congress enacted [IIRIRA], it crafted a system for weeding out patently meritless claims and expeditiously removing the aliens making such claims from the country." *Thuraissigiam*, 591 U.S. at 106. Congress was particularly

concerned with abuses of the asylum system by such aliens. *See* H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 107 (1996) ("House Report"). Without the procedures for expedited removal, those aliens would be placed in removal proceedings under section 1229a and "could reasonably expect that the filing of an asylum application would allow them to remain indefinitely in the United States." *Thuraissigiam*, 591 U.S. at 118. Congress designed the expedited removal system to bypass the more "cumbersome and duplicative" procedures for noncitizens "who arrive in the United States with no valid documents." *Id.* at 107.

Furthermore, vigorous enforcement of the immigration laws and the prompt removal of aliens not entitled to remain here is one of the President's top priorities. *See, e.g.*, *Executive Order Protecting the American People Again*st Invasion, 90 Fed. Reg. 8443 (Jan. 20, 2025) (encouraging the use and expansion of expedited removal); *Securing Our Borders*, 90 Fed. Reg, 8467 (Jan. 20, 2025) (Jan. 30, 2025) (increasing enforcement at the border). The President is "a representative of the people" and holds "the mandate of the people to exercise his executive power." *Myers v. United States*, 272 U.S. 52, 123 (1926). The government has a substantial interest in carrying out the President's policies. The United States suffers a form of irreparable harm to its democratic system when it is prohibited from effectuating those policies against anyone anywhere in the Nation. *Cf. Maryland v. King,* 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Those concerns escalate when, as here, the injunction would undermine the Executive Branch's constitutional and statutory authority over immigration and the admission and removal of aliens. As such, Plaintiffs' requested relief would constitute a severe intrusion into the core Executive function of managing the immigration system. *See Arizona v. U.S.*, 567 U.S. 387, 394–96 (2012); *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers)

51

(warning against "intrusion by a federal court into the workings of a coordinate branch of the Government").

The harm to the party opposing the injunction and the public interest merge when the Government is the opposing party. *Nken*, 556 U.S. at 435. "There is always a public interest in prompt execution of removal orders[.]" *Id. at* 436; *id.* at 427 ("[A] reviewing court may not ... reflexively hold[] a final order in abeyance pending review.... The parties and the public [are] ... generally entitled to the prompt execution of orders that the legislature has made final."); *Lucacela v. Reno*, 161 F.3d 1055, 1059 (7th Cir. 1998) (noting the "clear public interest (as expressed by Congress) in deporting illegal aliens without delay," and acknowledging that "Congress made it clear ... that public policy has now shifted to enforcing deportation orders immediately"); *see also* Sen. Jud. Committee Rep. No. 104-249 at 7, 1996 WL 180026 ("If the United States is to have an immigration policy that is both fair and effective, the law and the commitment of those with the duty to apply or enforce it must be clear .... Aliens who violate U.S. immigration law should be removed from this country as soon as possible."). Thus, the balance of equities tips sharply in Defendants' favor.

## V.    At a Minimum, any Relief Should be Limited to Identifiable Plaintiff Members and Their Specific Harms

Plaintiffs' request to delay agency action would, if granted and applied to all aliens paroled at a port of entry, preclude DHS from commencing expedited removal against "hundreds of thousands" of aliens. Memo at 1; s*ee also* Amended Compl. at 54, ¶ 5, Prayer for Relief (requesting that Court "[e]njoin Defendants from applying expedited removal to noncitizens who have previously been granted parole at a port of entry"). Plaintiffs are not entitled to the vastly overbroad relief they seek.

52

Even if the Court found a stay was appropriate, it would still be insufficient to stay agency action nationwide. Plaintiffs' lawsuit is brought on behalf of their members, and complete relief is provided by a stay that applies to those members who they can identify as being affected by the challenged agency actions. *Cf. Morice v. Hosp. Serv. Dist. #3*, No. CV 18-7945, 2019 WL 1517954, at *7 (E.D. La. Apr. 8, 2019) (plaintiff "lacks standing to seek injunctive relief for harm that will occur to others, even to others who would allegedly benefit"); *Nutrition Distrib., LLC v. Enhanced Athlete, Inc.*, 2017 WL 5467252, at *2 (E.D. Cal. Nov. 14, 2017) (refusing to consider irreparable harm to third parties"). Article III demands that a remedy "be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Gill,* 138 S. Ct. at 1931; *see also DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring). A stay, like an injunction, thus must be no broader than "necessary to provide complete relief to the plaintiffs."[7] *Madsen*, 512 U.S. at 765 (citation omitted); *see* 5 U.S.C. § 705 (authorizing a stay only "to the extent necessary to prevent [the] irreparable injury").

Plaintiffs do not ask the Court to set aside the DHS documents following a final decision on the merits with respect to their APA claim, which requires a showing that the agency action at issue is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). They seek a remedy that requires the far more demanding showing on the four factors required for preliminary injunctive relief, including "irreparable injury," 5 U.S.C. § 705,

---

[7] It is also important to note that Plaintiffs have not sought to certify a class under Fed. R. Civ. Pro. 23; nor could they in light of 8 U.S.C. §§ 1252(f)(1) and 1252(e)(1)(B), the latter which precludes the Court from certifying a class "in any action for which judicial review is authorized" under section 1252(e)(3). *AILA*, 199 F.3d at 1359; *see also Monsanto Co. v. Geertson Seed Farm*s, 561 U.S. 139, 163 (2010) (noting that where Plaintiffs "do not represent a class, [] they could not seek to enjoin such an order on the ground that it might cause harm to other parties").

and the other factors, and an order that has the effect of preventing DHS from applying its documents. As explained above, that would enjoin or at least restrain the government's chosen operation of Section 1225(b)(1), and so is barred by Section 1252(f)(1). But even if these limits are not applied, Section 705 does not authorize a nationwide stay except to the extent necessary to redress Plaintiffs' injury. Section 705 permits relief only "to the extent necessary to prevent irreparable injury." Thus, even if the Court believes it can enter relief under Section 705, it must be limited to the parties. Finally, the Court should not grant relief without issuing the bond required by Rule 65(c). Defendants thus request that, if the Court were to stay the documents at issue, the Court require Plaintiffs to "give[s] security in an amount . . . proper to pay the costs and damages sustained" if Defendants are found "to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## CONCLUSION

For these reasons, the Court should deny the motion for a stay under 5 U.S.C. § 705.


Dated: June 24, 2025                    Respectfully submitted,

                                       BRETT A. SHUMATE
                                       *Assistant Attorney General*
                                       *Civil Division*

                                       AUGUST E. FLENTJE
                                       *Special Counsel for Immigration*

                                       */s/ Papu Sandhu*
                                       PAPU SANDHU
                                       (Mass. Bar No. 630090)
                                       *Assistant Director*
                                       U.S. Department of Justice
                                       Civil Division
                                       Office of Immigration Litigation
                                       General Litigation & Appeals Section
                                       P.O. Box 878, Ben Franklin Station
                                       Washington, DC 20044
                                       Papu.Sandhu@usdoj.gov

                                       TIM RAMNITZ
                                       *Senior Litigation Counsel*

                                       ARIC A. ANDERSON
                                       TARYN ARBEITER
                                       *Trial Attorneys*

                                       *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2025, I electronically filed this OPPOSITION TO

PLAINTIFFS' APPLICATION FOR A STAY UNDER 5 U.S.C. § 705 with the Clerk of the

Court for the United States Court of for the District of Columbia by using the CM/ECF system.

Counsel in the case are registered CM/ECF users and service will be accomplished by the

CM/ECF system.

*/s/ Papu Sandhu*
PAPU SANDHU
Assistant Director
U.S. Department of Justice