## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COALITION FOR HUMANE IMMIGRANT RIGHTS,
*et al*.,

    *Plaintiffs,*

    *v.*

KRISTI NOEM, in her official capacity as Secretary of
Homeland Security, *et al.*,

    *Defendants.*

Case No.: 1:25-cv-0872

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY THE COURT'S AUGUST 1, 2025 ORDER GRANTING STAY OF AGENCY ACTION

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

LEGAL STANDARD ..................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.   Plaintiffs' Claims are Not Time-Barred. ................................................................ 2

II.  Defendants are Not Likely to Prevail on the Merits Because the Challenged Actions Violate the Expedited Removal Statute and are Arbitrary and Capricious. ......................................... 5

      a.   The Designation Provision Does Not Authorize Expedited Removal of Paroled Individuals. ............................................................................................ 5

      b.   The "Arriving Aliens Provision" Does Not Authorize Expedited Removal of Paroled Individuals. ................................................................................... 8

      c.   Defendants' Actions are Arbitrary and Capricious. ............................... 11

III. 8 U.S.C. § 1252(f)(1) Does Not Bar Plaintiffs' Request for a Stay. ....................... 15

IV.  The Equitable Factors Weigh Against a Stay of the Court's Order. ....................... 16

V.   The Scope of the Court's Stay Order is Appropriate. ............................................ 19

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allina Health Servs. v. Sebelius,*
  746 F.3d 1102 (D.C. Cir. 2014) ........................................................................20

*Am. Immigr. Lawyers Ass'n v. Reno,*
  199 F.3d 1352 (D.C. Cir. 2000) ..........................................................................4

*In re Any & All Funds or Other Assets in Brown Bros. Harriman & Co. Acct. No.*
  *8870792 in the Name of Tiger Eye Invs. Ltd.,*
  613 F.3d 1122 (D.C. Cir. 2010) ........................................................................16

*In re Any & All Funds or Other Assets in Brown Bros. Harriman & Co. Acct. No.*
  *8870792 in the Name of Tiger Eye Invs., Ltd.,* 601 F. Supp. 2d 252 (D.D.C.
  2009) .................................................................................................................16

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,*
  419 U.S. 281 (1974) ..........................................................................................13

*Bridgeport Hosp. v. Becerra,*
  108 F. 4th 882 (D.C. Cir. 2024) ........................................................................20

*Community Legal Services in East Palo Alto v. HHS,*
  137 F. 4th 932 (9th Cir. 2025) ..........................................................................17

*Community Legal Services in East Palo Alto v. HHS,*
  No. 3:25-cv-2847, 2025 WL 1233674 (N.D. Cal. Apr. 29, 2025) .........................17

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsv. Sys.,*
  603 U.S. 799 (2024) ............................................................................................4

*Encino Motorcars, LLC v. Navarro,*
  579 U.S. 211 (2016) ..............................................................................12, 13, 14

*Fischer v. United States,*
  603 U.S. 480 (2024) ............................................................................................6

*Florida v. United States,*
  660 F. Supp. 3d 1239 (N.D. Fla. 2023) .............................................................14

*Garland v. Aleman Gonzalez,*
  596 U.S. 543 (2022) ....................................................................................15, 16

*Grundmann v. Trump,*
  No. 25-425, 2025 WL 1671173 (D.D.C. June 13, 2025) ....................................1, 2

*Hewitt v. United States*,
   145 S. Ct. 2165 (2025) ...............................................................................5, 6, 7

*HIAS, Inc. v. Trump*,
   985 F.3d 309 (4th Cir. 2021) ...............................................................................13

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ...............................................................................20

*Ibragimov v. Gonzales*,
   476 F.3d 125 (2d Cir. 2007) ...............................................................................9

*Immigrant Defs. L. Ctr. v. Noem*,
   No. 25-2581, 2025 WL 2017247 (9th Cir. July 18, 2025) ...............................15, 20

*J.G.G. v. Trump*,
   No. 1:25-cv-00766, 2025 WL 1577811 (D.D.C. June 4, 2025) ...........................17

*Kiakombua v. Wolf*,
   498 F. Supp. 3d 1 (D.D.C. 2020) ...............................................................................3, 4

*Kucana v. Holder*,
   558 U.S. 233 (2010) ...............................................................................9, 16

*Las Americas Immigrant Advoc. Ctr. v. DHS*,
   No. 24-1702, 2025 WL 1403811 (D.D.C. May 9, 2025) ......................................21

*Las Americas Immigrant Advoc. Ctr. v. Wolf*,
   507 F. Supp. 3d 1 (D.D.C. 2020) ...............................................................................12

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) ...............................................................................8

*M.M.V. v. Barr*,
   459 F. Supp. 3d 1 (D.D.C. 2020) ...............................................................................1

*Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*,
   70 F.4th 582 (D.C. Cir. 2023) ...............................................................................15

*Make the Road New York v. McAleenan*,
   405 F. Supp. 3d 1 (D.D.C. 2019) ...............................................................................4, 21

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ...............................................................................20

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ...............................................................................15

*Nat'l Mining Ass'n v. U.S. Army Corps. of Eng'rs*,
    145 F. 3d 1399 (D.C. Cir. 1998) ........................................................................ 20

*Nat'l Postal Pol'y Council v. Postal Regul. Comm'n*,
    17 F.4th 1184 (D.C. Cir. 2021) ........................................................................ 10

*Nken v. Holder*,
    556 U.S. 418 (2009) ...................................................................................... 2, 20

*Pacito v. Trump*,
    768 F. Supp. 3d 1199 (W.D. Wash. 2025) ........................................................ 17

*Reno v. American-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ........................................................................................ 16

*Shawnee Tribe v. Mnuchin*,
    984 F.3d 94 (D.C. Cir. 2021) .......................................................................... 19

*Texas v. Biden*,
    646 F. Supp. 3d 753 (N.D. Tex. 2022) ....................................................... 20, 21

*Trump v. CASA, Inc.*,
    145 S. Ct. 2540 (2025) ......................................................................... 18, 20, 21

*Turner v. U.S. Att'y Gen.*,
    130 F.4th 1254 (11th Cir. 2025) ........................................................................ 6

*United States v. Nassif*,
    628 F. Supp. 3d 169 (D.D.C. 2022) ................................................................ 16

*United States v. Nassif*,
    97 F.4th 968 (D.C. Cir. 2024) ........................................................................ 16

**Statutes**

5 U.S.C.
    § 705 ............................................................................................................ 15, 21
    § 706 .................................................................................................................. 22

6 U.S.C.
    § 202(4) ............................................................................................................ 10

8 U.S.C.
§ 1101(a)(13)(A) ................................................................................................6
§ 1182(d)(5)(A) ..............................................................................................7, 8
§ 1225 ..............................................................................................................10
§ 1225(a)(1) ....................................................................................................7, 8
§ 1225(b)(1) .......................................................................................................7
§ 1225(b)(1)(A) ..................................................................................................8
§ 1225(b)(1)(A)(i) ............................................................................................12
§ 1225(b)(1)(A)(iii) .........................................................................................12
§ 1225(b)(1)(A)(iii)(II) ..................................................................................5, 13
§ 1252(e)(3) ......................................................................................................21
§ 1252(f)(1) .................................................................................................15, 21
§ 1255(a) .............................................................................................................7
§ 11182(a)(9)(B)(ii) ............................................................................................7

## Regulations

8 C.F.R. 245.1(b)(3) ................................................................................................7

8 C.F.R. § 1.2 ..........................................................................................................3

8 C.F.R. § 208.14(c)(4)(ii) .......................................................................................8

8 C.F.R. § 235.3(b)(6) .......................................................................................10, 11

90 Fed. Reg. 8139 (Jan. 24, 2025) ........................................................................13

## Other Authorities

Tim Henderson, *ICE has a new courthouse tactic: Get immigrants' cases tossed,
    then arrest them outside*, Ohio Capital J. (Aug. 7, 2025),
    https://ohiocapitaljournal.com/2025/08/07/ice-has-a-new-courthouse-tactic-
    get-immigrants-cases-tossed-then-arrest-them-outside/ ...........................................1

## INTRODUCTION

Defendants' Motion for Stay boils down to a motion for reconsideration, rehashing many of the same arguments that Defendants raised in their briefing and at oral argument, and which this Court has already thoroughly considered and rejected. In returning to the same arguments, Defendants point to nothing justifying either reconsideration or a stay of this Court's order, especially considering the irreparable injury that hundreds of thousands of parole beneficiaries would face if this Court's order were paused for the pendency of the litigation. The administration continues to employ its tactic of dismissing individuals' immigration cases so that it can apprehend and detain them and subject them to expedited removal.[1] The Court's order ensures that the administration does not unlawfully apply this practice to individuals who did everything this country asked of them to be paroled into the country at a port of entry and given the chance to seek other and longer-term legal status in this country. The Court should deny Defendants' Motion.

## BACKGROUND

Plaintiffs assume the Court's familiarity with the relevant facts and law, including as laid out in Plaintiffs' Motion for a Stay of Agency Action and in the declarations attached to that motion. *See* Pls.' Mot. for Stay, ECF No. 22-1 at 4-9; Pls.' Decls., ECF No. 22-2 – 22-17.

## LEGAL STANDARD

The party moving for a stay pending appeal bears the burden of showing that this "extraordinary remedy" is warranted. *Grundmann v. Trump*, No. 25-425, 2025 WL 1671173, at *1 (D.D.C. June 13, 2025) (citing *M.M.V. v. Barr*, 459 F. Supp. 3d 1, 4 (D.D.C. 2020)). The Court must consider "(1) whether the stay applicant has made a strong showing that he is likely to

---

[1] *See, e.g.*, Tim Henderson, *ICE has a new courthouse tactic: Get immigrants' cases tossed, then arrest them outside*, Ohio Capital J. (Aug. 7, 2025), https://ohiocapitaljournal.com/2025/08/07/ice-has-a-new-courthouse-tactic-get-immigrants-cases-tossed-then-arrest-them-outside/.

succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at *2. As a stay pending appeal is an "intrusion into the ordinary processes of administration and judicial review," it is "not a matter of right, even if irreparable injury might otherwise result to the appellant." *Id.* at *1 (cleaned up) (citing *Nken v. Holder*, 556 U.S. 418, 427 (2009)).

## ARGUMENT

The Court correctly found it has jurisdiction to review the challenged agency actions; that Plaintiffs are likely to succeed in proving that neither provision of the expedited removal statute can be applied to individuals who have been paroled into the country at a port of entry, and that the agency actions are arbitrary and capricious; and that preliminary relief under 5 U.S.C. § 705 from the challenged agency actions is appropriate and consistent with both the relevant statutes and controlling precedent. Defendants have neither identified any flaw in the Court's decision nor articulated any irreparable harm the government would bear in the absence of the stay, much less irreparable harm that outweighs the significant harm the January 23 Huffman Memorandum, the February 18 ICE Directive, and the March 25 CHNV Termination Notice have inflicted and would continue to inflict on Plaintiffs' members, their families and communities, and the public interest if the Court stayed its order. The Court should deny Defendants' Motion.

## I. Plaintiffs' Claims are Not Time-Barred.

In challenging the timeliness of Plaintiffs' claims, Defendants attempt only to relitigate the same argument—which this Court has already rejected—that Plaintiffs' claims are time-barred because of the existence of a 1997 regulation stating that an "arriving alien remains an arriving

alien even if paroled . . . and even after any such parole is terminated or revoked."[2] 8 C.F.R. § 1.2. This argument rests on a continued misreading of the claims at issue here, which challenge three distinct 2025 agency actions: the January 23 Huffman Memorandum, the February 18 ICE Directive, and the March 25 CHNV Termination Notice, each of which constitutes "a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement [section 1225(b)]" whose lawfulness can be challenged under 8 U.S.C. § 1252(e)(3)(A). Defendants' argument also rests on a continued misreading of section 1252(e)(3), which contains no language requiring any writing challengeable under section 1252(e)(3)(A) to constitute a "new" rule.

The Court rightly concluded that the three 2025 agency actions, and not the dormant 1997 regulation, are causing harm to Plaintiffs' members, Mem. Op., ECF No. 41 (hereinafter "Op.") at 33-38—a holding squarely in line with the reasoning in *Kiakombua*, despite Defendants' attempts to minimize its holding as "dicta." Defs.' Mem. In Supp. Of Mot. to Stay, ECF No. 42 (hereinafter "Defs.' Stay Mot.") at 4. While Defendants seek to distinguish *Kiakombua* and its holding from the instant case by claiming that the plaintiffs there challenged a "new" rule, this reading ignores that, as the *Kiakombua* Court observed *and as the federal government repeatedly argued in that case*, "'most of the 2019 Lesson Plan [challenged by the *Kiakombua* plaintiffs] has been operative for years, to say nothing of the underlying statutes, regulations, external policies, and other materials cited in the Lesson Plan, much of which has also been operative for years.'" *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 35 (D.D.C. 2020) (quoting defendants' reply brief). The *Kiakombua* Court squarely rejected the federal government's argument, identical to the argument the

---

[2] Defendants misrepresent the 1997 regulation's definition of "arriving alien," claiming that it includes "paroled arriving aliens." Neither term exists in the Immigration and Nationality Act.

government raises here, that section 1252(e)(3) limits a court's review to only "new" language or substantively "new" policies implementing the expedited removal statute. *Id.* at 36.

Defendants' reliance on dicta from *AILA* does not compel a contrary result. Defs.' Stay Mot. at 3. The *AILA* court was concerned about organizations using third-party standing to challenge new expedited removal policies on behalf of individuals who *had not yet been subject* to the policies within sixty days of the policies' implementation, thereby effectively evading section 1252(e)(3)(B)'s sixty-day limit on actions. *See Am. Immigr. Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1364 (D.C. Cir. 2000). Those facts, and the court's holding that the *AILA* organizational plaintiffs did not have third-party standing, have no bearing on the timeliness of Plaintiffs' claims here. *See Make the Road New York v. McAleenan*, 405 F. Supp. 3d 1, 30-31 (D.D.C. 2019) (rejecting Defendants' argument that *AILA* controls, holding that "section 1252 undoubtedly reflects Congress's intent to preserve the subject matter jurisdiction of at least one federal district court (the U.S. District Court for the District of Columbia) to review challenges to the implementation of the expedited removal process") (reversed on other grounds).

Defendants point to no new facts, arguments, or case law to disturb the Court's holding that it has jurisdiction to consider Plaintiffs' timely challenge of the January 23 Huffman Memorandum, the February 18 ICE Directive, and the March 25 CHNV Termination Notice under section 1252(e)(3).[3]

---

[3] Defendants argue in a footnote that Plaintiffs' Claims Four and Five are time barred, but such arguments have no relevance here because the Court's decision did not rule on or otherwise address these claims. Even if these claims are subject to section 1252(e)(3)(B), it is not clear, as the *Kiakombua* court noted, that section 1252(e)(3)(B)'s sixty-day requirement is jurisdictional in nature. *See Kiakombua*, 498 F. Supp. 3d at 35; *cf. Corner Post, Inc. v. Bd. of Governors of Fed. Rsv. Sys.*, 603 U.S. 799, 808, 825 (2024) ("An APA claim does not accrue for purposes of [28 U.S.C.] § 2401(a)'s 6-year statute of limitations until the plaintiff is injured by final agency action.").

**II. Defendants are Not Likely to Prevail on the Merits Because the Challenged Actions Violate the Expedited Removal Statute and are Arbitrary and Capricious.**

**a. The Designation Provision Does Not Authorize Expedited Removal of Paroled Individuals.**

Defendants fail to disrupt the Court's correct conclusion that the Designation Provision of the expedited removal statute "forbids the expedited removal of noncitizens who have been, at any point in time, paroled into the United States." Op. at 45. The plain language of the statute is clear that noncitizens who are now here in the United States and who have been inspected and paroled are categorically ineligible for expedited removal. 8 U.S.C. § 1225(b)(1)(A)(iii)(II); Op. at 46. Defendants again distort the Supreme Court's holding and reasoning in *Hewitt v. United States*, 145 S. Ct. 2165 (2025), misread the statutory parole authority, and ignore the agency's own contradictory regulations, but none of these arguments hold water.

1. In an attempt to convince the Court that "has not been paroled" in the Designation Provision includes someone whose parole status has ended, Defendants cherry-pick language from *Hewitt* to try and shoehorn the Court into a narrower reading of the case that "turned principally on the specific verb tense used" and limited the use of the present perfect tense ("has not been") to *always* refer to "the present." Defs.' Stay Mot. at 9-11. The Supreme Court in *Hewitt* was clear, however, that the present perfect tense can refer to *either* "an act, state, or condition that is now completed" *or* "a past action that comes up to and touches the present." 145 S. Ct. at 2171. Accordingly, as this Court correctly read, *Hewitt's* statement that the present perfect tense "necessarily refers to something that continues into the present" only applies when "describ[ing] situations involving a specific change of state that produces a continuing result." Op. at 47; *Hewitt*, 145 S. Ct. at 2172 (internal quotation marks omitted). To determine whether that situation applies, the Court must examine the statutory context of the language at issue to "determine whether its

grammatical holding made sense in the context of the statute as a whole." Op. at 47; *see also Turner v. U.S. Att'y Gen.*, 130 F.4th 1254, 1261 (11th Cir. 2025).

As to the Designation Provision, the statutory context supports Plaintiffs' interpretation of the phrase "has not been admitted or paroled," namely the pairing of "paroled" with "admitted." *See Fischer v. United States*, 603 U.S. 480, 487 (2024) (describing the canon of *noscitur a sociis*); ECF No. 22-1 at 5, 17-18. As defined in the INA, "admitted" refers to a manner of entry, 8 U.S.C. § 1101(a)(13)(A); ECF No. 22-1 at 17-18, and thus, it follows that "paroled" also necessarily refers to a manner of entry and not a status, and therefore does not describe a "situation[] 'involv[ing] a specific *change of state*,'" or a change in status, "that produces a 'continuing result.'" *Hewitt*, 145 S. Ct. at 2172-73 (emphasis added). Defendants' only attempt to grapple with this argument confuses things further. By arguing that the Designation Provision, by targeting noncitizens who "ha[ve] not been admitted or paroled," "focuses on whether someone *presently* has permission to be within the United States" and is "now unlawfully present," Defendants fail to account for the fact that a noncitizen who was admitted to the United States may become someone who no longer has permission to be within the United States and is unlawfully present (for example, by overstaying a visa). Defs.' Stay Mot. at 10-11. Nevertheless, no one would suggest that such a person has not been admitted into the United States; and in fact, the definition of "admission" would not allow such an interpretation. 8 U.S.C. § 1101(a)(13)(A).

Additionally, contrary to Defendants' reframing, the Supreme Court's decision in *Hewitt* specifically hinged on "background principles regarding the legal effect of vacatur"—that is, if a criminal sentence is vacated, it is as if the sentence never existed. *Hewitt*, 145 S. Ct. at 2173-74. Therefore, it follows that if a sentence is vacated, it is one that "has not been imposed" for the purposes of the First Step Act. *Id.* at 2174. Conversely, if "*the sentence is extant – i.e.*, has not been

vacated," it "*has been* imposed." *Id.* at 2171 (emphases added). In the context of parole, the background principles of the legal effect of termination are distinct from vacatur. *See id.* at 2173. Individuals who were paroled into the country are eligible to adjust status even if their parole has ended, *see, e.g.*, 8 U.S.C. § 1255(a); 8 C.F.R. 245.1(b)(3); *see also* Op. at 49, and the statute governing the accrual of unlawful presence does not include the time an individual had on active parole status, *see* 8 U.S.C. § 11182(a)(9)(B)(ii). Thus, because a grant of parole retains legal effect after it expires or is terminated early, the Court correctly determined that "it would therefore make sense for the Designation Provision to treat noncitizens who were paroled into the United States differently, even once their parole ends, than noncitizens who entered the country without parole." Op. at 49.

2. Defendants' other arguments against the Court's interpretation do little but kick up more dust. Defendants continue to try to stretch the statutory parole authority beyond what it can bear, arguing that because noncitizens whose parole has ended must be treated "in the same manner as that of any other applicant for admission," 8 U.S.C. § 1182(d)(5)(A), they must be automatically "subject to expedited removal." Defs.' Stay Mot. at 10. The parole statute does not imply this, let alone require it. "Applicant[s] for admission" is a broad category for noncitizens "present in the United States who ha[ve] not been admitted *or* who arrive[] in the United States." 8 U.S.C. § 1225(a)(1) (emphasis added). Then, in the very same statute that defines "applicant for admission," Congress narrowed down the groups who could be subjected to expedited removal and chose not to apply it to all applicants for admission (and explicitly carved paroled individuals out of the Designation Provision). 8 U.S.C. § 1225(b)(1). Congress expressly did *not* use the defined term "applicant for admission" when creating expedited removal, and Defendants cannot be permitted to manufacture eligibility for expedited removal where it does not exist.

3. Defendants also return to parsing regulations as evidence of the "agency's intent," pointing at the asylum regulation at 8 C.F.R. § 208.14(c)(4)(ii). Defs.' Stay Mot. at 12-13; *see* Op. at 54-55. But they do not identify anything about that regulation—which concerns a separate immigration process—that outweighs the statutory and regulatory evidence that Plaintiffs have presented to the Court, along with the agency's own understanding as reflected in the 2019 Designation Notice. Op. at 52-53. And regardless, even were the agency's regulations not "internally contradictory," Op. at 54, they cannot change the meaning of the statute, which is what controls, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 388 (2024), as Defendants have conceded, Defs.' Opp'n to Pls.' Mot. for a Stay, ECF No. 26 at 38.

### b. The "Arriving Aliens Provision" Does Not Authorize Expedited Removal of Paroled Individuals.

In challenging the Court's interpretation of the "Arriving Aliens Provision" at 8 U.S.C. § 1225(b)(1)(A), Defendants point everywhere except the statute itself. They continue to lean on the unsupported idea that Congress imported the "entry fiction" into the provision *sub silentio*, including through a further misreading of the statutory parole authority.

Defendants seem to finally recognize the inaccuracy in their prior framing of the parole statute as "revert[ing]" a noncitizen whose parole ends "to the status he possessed prior to the grant of parole," ECF No. 26 at 30, but they still point to the statute to claim that "paroled arriving aliens" (a term that does not exist in the INA or the regulations) were considered to be forever "arriving" at the border. Defs.' Stay Mot. at 6. The parole statute merely acknowledges that parole is "not an admission" and that when a noncitizen's parole ends, that noncitizen's case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Defendants continue to make too much of this language. As discussed above, being an "applicant for admission," 8 U.S.C. § 1225(a)(1), is clearly defined

in the same statutory section as being far broader than "arriving," and it certainly does not mean, as Defendants try to argue, that an applicant for admission is necessarily "in the same legal position as one stopped at the border and should be treated as such for purposes of expedited removal." Defs.' Stay Mot. at 6. If Congress truly intended to make all applicants for admission, including parolees, eligible for expedited removal, they would have said so. *Kucana v. Holder*, 558 U.S. 233, 248 (2010).

Defendants also raise a few cases that, as the Court analyzed, are either not on point or actually support Plaintiffs' reading. *See Ibragimov v. Gonzales*, 476 F.3d 125, 134 (2d Cir. 2007); Op. at 58, 60-61. Beyond those cases that do not help them, Defendants have no evidence to support the conclusion that Congress incorporated the "entry fiction" into the expedited removal statute. Instead, they try to mischaracterize the Court's use of statutory text and the legislative history thereof. For example, the Court cited legislative history indicating that, in creating expedited removal, Congress was concerned with noncitizens who entered without inspection and limiting the opportunities for those noncitizens to gain special privileges over those who did present for inspection. Op. at 63-64. This history highlights the additional "oddity" that the Court identified in Defendants' interpretation: per Defendants, a noncitizen who entered without inspection (by, e.g., crossing the border between ports of entry) cannot be subject to expedited removal once they have resided here for two years, but a noncitizen who was paroled after inspection is vulnerable to expedited removal forever. *Id.* at 63. Defendants twist the Court's observation, framing it as providing paroled individuals with an "enhanced status" (but then simultaneously pointing out the "benefits [received by parolees] that do not apply to aliens who enter illegally"). Defs.' Stay Mot. at 8-9. This mischaracterization does not actually address, let alone undermine, the Court's well-reasoned observation.

On the other hand, as the Court correctly found, Plaintiffs' reading is a faithful reading of the statute. Under the ordinary meaning of the term "arriving," a noncitizen who "is arriving" in the United States is one who is in the process of arriving. Op. at 59. It is not one who, like Plaintiffs' members, previously arrived in the United States, was inspected at a port of entry, and then was paroled into the country. *Id.*; *see also* 6 U.S.C. § 202(4) (describing parole as a "form[] of permission . . . to enter the United States"). Other provisions in the very same statute – 8 U.S.C. § 1225 – use "arrive" or some form of the word in a similar way, describing the process of arrival as one that occurs at the border or another port of entry. Op. at 57-58. Despite Defendants' unsubstantiated objections to the contrary, Defs.' Stay Mot. at 7-8, the use of an identical or nearly identical term in the same statute should be read to have the same or similar meaning. *Nat'l Postal Pol'y Council v. Postal Regul. Comm'n*, 17 F.4th 1184, 1191 (D.C. Cir. 2021) ("[a] standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning.") (citation omitted). What is more, the legislative history supports this interpretation, showing that Congress was focused on "noncitizens physically arriving at the border for entry, not those already physically present within the country." Op. at 63; Pls.' Reply in Supp. of Mot. for Stay, ECF No. 28 at 23-24.

In addition to failing to identify any errors with the Court's assessment, Defendants continue to propose a statutory scheme that is internally incoherent and renders other parts of the same statute and the agency's own regulations meaningless. *See* Op. at 62; ECF No. 22-1 at 20. Defendants' interpretation subjecting paroled individuals to expedited removal as indefinitely "arriving," including when their parole is active, makes the Designation Provision's exemption for paroled noncitizens and the regulatory provision at 8 C.F.R. § 235.3(b)(6)—which gives noncitizens the reasonable opportunity to establish that they were paroled and thus ineligible for

expedited removal—entirely irrelevant. Defendants continue to ignore this fatal flaw, besides noting that 8 C.F.R. § 235.3(b)(6) is implementing the Designation Provision, not the Arriving Aliens Provision. Defs.' Stay Mot. at 8. This only highlights the inconsistency in Defendants' reading of the expedited removal statute and its implementing regulations. What is the purpose of allowing an individual to prove that they have been paroled – and thus avoid expedited removal under the Designation Provision – if they could then be arrested the next second and put through expedited removal under the Arriving Aliens Provision?

### c. Defendants' Actions are Arbitrary and Capricious.

In arguing that they have not engaged in arbitrary and capricious decisionmaking, Defendants continue to fail to grapple with the inconsistencies in the legal justifications offered in the January 23 Huffman Memorandum, the February 18 ICE Directive, and the March 25 CHNV Termination Notice, which set out the contradictory positions that Defendants both have "no time limit" to subject paroled individuals to expedited removal *and* that they must subject paroled individuals to expedited removal within two years of the beginning of their continuous presence in the country. Defendants instead attempt to argue obliquely that none of these written policies are subject to Administrative Procedure Act ("APA") review (Defs.' Stay Mot. at 13, 14); that the January 23 Huffman Memorandum is sufficiently reasoned (Defs.' Stay Mot. at 13-14); and that the February 18 ICE Directive is consonant with the January 23 Huffman Memorandum because it contemplates that DHS may terminate an individual's active parole by issuing them a Notice to Appear ("NTA") or a charging document for expedited removal (Defs.' Stay Mot. at 14-15). None of these contentions do anything to undermine the Court's conclusion that Plaintiffs are likely to succeed on this claim.

1. First, Defendants suggest that none of the challenged policies "are subject to the APA's arbitrary and capricious standard," Defs.' Stay Mot. at 13, and argue more specifically that the

March 25 CHNV Termination Notice cannot "serve as a basis for an APA violation" because "it did not purport to create any rule applying expedited removal to [individuals] paroled at ports of entry," *id.* at 14. This ignores the fact that, as the Court noted in its decision, the APA applies to "'[a]gency action' that is 'made reviewable by statute,'" Op. at 67, and all three written policies—including the March 25 CHNV Termination Notice, which for the first time specifies that CHNV parole beneficiaries will be subjected to expedited removal pursuant to 8 U.S.C. § 1225(b)(1)(A)(i)—are reviewable under section 1252(e)(3)(A). *See Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 34 (D.D.C. 2020) (Jackson, K.B., J.) ("[S]ection 1252(e)(3) specifically authorizes claims that an agency policy directive, guideline, or procedure concerning expedited removal is 'otherwise in violation of law.'" (citations omitted)); *see also supra* Section I.

2. Defendants also argue that it was sufficient under the APA for the January 23 Huffman Memorandum to instruct DHS to implement the Memorandum "in a manner consistent with applicable statutes, regulations, and court orders." Defs.' Stay Mot. at 13. This instruction, however, does not bring the January 23 Huffman Memorandum into compliance with the APA, which requires the agency to "give adequate reasons for its decisions" and "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citation and internal punctuation omitted). The January 23 Huffman Memorandum, whose express purpose is to "provide[] guidance" as to "two new policies"—including the January 24, 2025 Federal Register Notice that expands the application of expedited removal to any individual "present in the United States, without having been admitted or paroled into the United States" "for up to two years after the [individual] arrived into the United States" based on 8 U.S.C. § 1225(b)(1)(A)(iii)—contains

no such reasoning. *See* Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). The boilerplate instruction that DHS implement the Memorandum "in a manner consistent with applicable statutes, regulations, and court orders" provides no basis by which "the agency's path may reasonably be discerned," *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) (citation omitted), nor any reason for why certain paroled individuals should be subject to expedited removal (and have their active parole status terminated), and others should not. When the agency gives "no reasons at all" for its action, it necessarily falls short of "the basic procedural requirements of administrative rulemaking." *Encino Motorcars*, 579 U.S. at 221, 224; *see also HIAS, Inc. v. Trump*, 985 F.3d 309, 325 (4th Cir. 2021) (observing that when an agency policy contains no "procedure for invoking [a] savings clause or any standards for applying it, we cannot conclude that the clause 'saves' the [agency policy] from [its] infirmities [under the APA]").

3. Finally, Defendants try to minimize the fundamental inconsistency between the February 18 ICE Directive, on the one hand, and the January 23 Huffman Memorandum and the March 25 CHNV Termination Notice, on the other, by highlighting that the ICE Directive recognizes that "[i]f [an] alien is on an active parole, the NTA or ER charging document will terminate the parole." Defs.' Stay Mot. at 15. But this kind of post-hoc rationalization fails for at least two reasons. First, Defendants' argument continues to rest on an interpretation of the Designation Provision that means that Congress protected an individual who has been paroled into the country from being subjected to expedited removal—but only up to the point when the federal government chooses to subject that individual to expedited removal by serving a Notice to Appear and terminating that person's parole. This position is absurd and renders the textual limitation in 8 U.S.C. § 1225(b)(1)(A)(iii)(II) completely meaningless as to both parolees and admittees.

13

Second, Defendants fail to acknowledge that this note about the termination of parole falls under a section of the ICE Directive applying specifically to "NTR Cases" (i.e., "aliens issued a CBP 'Notice to Report (NTR)'"); individuals paroled with "ATD [Alternatives to Detention];" or individuals granted "Parole With Conditions (PWC)."[4] The February 18 ICE Directive expressly distinguishes individuals in these special cases, who could be subject to expedited removal under the Designation Provision, from "Arriving Aliens" (also referred to by the February 18 ICE Directive as "paroled arriving aliens"), whom "ERO officers may process for ER [expedited removal]" subject to "no time limit on the ability to process such aliens for ER," presumably under the Arriving Aliens Provision.[5] The language Defendants highlight about the termination of parole therefore does nothing to resolve the "Schrödinger's legal justification" created by the two contrary positions set out by, on the one hand, the January 23 Huffman Memorandum and March 25 CHNV Termination Notice, which state that parole beneficiaries' grants of parole must be terminated before they can be subjected to expedited removal, and on the other hand, the February 18 ICE Directive, which states that "there is no time limit on the ability to process" "any arriving alien" for expedited removal. Such an "[u]nexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." *Encino*

---

[4] It is highly questionable that any of these types of cases are even at issue in this litigation. Per the February 18 ICE Directive itself, "NTR" cases do not involve parole at all. "Parole + ATD" and "PWC" were forms of parole primarily granted to people apprehended between ports of entry. *See, e.g.*, *Florida v. United States*, 660 F. Supp. 3d 1239, 1256-60 (N.D. Fla. 2023) (describing the Parole + ATD program, which was implemented to relieve pressure at the Southwest Border encounters exceeded a certain threshold, creating crowding concerns in CBP detention facilities).

[5] The note about the termination of parole, moreover, does not apply to all parole beneficiaries generally, as Defendants suggest. Rather, it follows an instruction that "NTR Cases, Parole + ATD, and PWC Cases" "should be processed for section 240 removal proceedings with issuance of an NTA" if they are "not processed for ER." It is within that context, i.e., of 240 removal proceedings specifically for these special cases, that the February 18 ICE Directive acknowledges that "[i]f [an individual] is on active parole, the NTA or ER charging document will terminate the parole."

*Motorcars*, 579 U.S. at 222 (internal quotation marks and citation omitted); *see also Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) (holding that an "agency changing its course" must "supply a reasoned analysis for the change"); *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582, 598-99 (D.C. Cir. 2023) (holding that where "the agency has oscillated between one view and its opposite" and the agency "displayed no awareness of its own flip flop," such action was "arbitrary and capricious, and so the agency's interpretation was unlawful" (internal punctuation and citation omitted)).

Defendants raise no arguments, new or otherwise, to demonstrate a likelihood of success on the merits. The Court should deny the stay motion.

### III. 8 U.S.C. § 1252(f)(1) Does Not Bar Plaintiffs' Request for a Stay.

The Court correctly concluded that 8 U.S.C. § 1252(f)(1) does not prohibit preliminary stay relief under the APA, 5 U.S.C. § 705, and Defendants advance no arguments to support a stay of the Court's order.

While Defendants are quick to criticize the Court for failing to "engage with" section 1252(f)(1)'s text, Defs.' Stay Mot. at 15, they are far quicker to ignore an unbroken line of cases uniformly rejecting Defendants' interpretation. *See* Op. at 27 n.16. Indeed, the Ninth Circuit recently added to this unbroken line of cases in *Immigrant Defenders Law Center v. Noem*, holding that "§1252(f)(1) does not bar the district court's stay pursuant to § 705 of the APA pending further review of the merits of Plaintiffs' APA challenge." *Immigrant Defs. L. Ctr. v. Noem*, No. 25-2581, 2025 WL 2017247, at *10 (9th Cir. July 18, 2025). Even *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022)—the case Defendants cite for explication of Section 1252(f)(1)'s "enjoin or restrain" language—concludes that "[p]utting these terms together, § 1252(f)(1) generally prohibits lower courts from *entering injunctions*," not stays, "that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions."

596 U.S. at 544, 550 (emphasis added); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999) ("By its plain terms, and even by its title, that provision [section 1252(f)(1)] is nothing more or less than a limit on injunctive relief.").

As the Court correctly observed, moreover, Defendants' interpretation of section 1252(f)(1) would foreclose the Court from providing any relief whatsoever, even for lawsuits that Congress has expressly authorized in section 1252(e)(3). Op. at 29. This is an absurd result that robs judicial review of "[c]hallenges on [the] validity of the [expedited removal] system" that Congress expressly authorized in section 1252(e)(3) of any practical effect. If Congress had intended for such an interpretation of section 1252(f)(1)'s "[l]imit on injunctive relief," it would have said so.[6] *See Kucana*, 558 U.S. at 248.

Defendants fail to advance any arguments or cite any new case law demonstrating how the Court erred in its finding that section 1252(f)(1) does not bar the Court from issuing a section 705 stay and consequently, have not adequately shown how they are likely to succeed on this issue.

### IV. The Equitable Factors Weigh Against a Stay of the Court's Order.

This Court correctly found that, without a stay of the agency actions, Plaintiffs' members and others like them would face irreparable injury that outweighs any harm to the government, and that the balance of equities and the public interest—which merge here—favor a stay. Op. at

---

[6] Defendants' arguments, moreover, are based largely on legislative history, while the Court's holding draws from the statute's text and D.C. Circuit case law. Legislative history cannot override clear statutory text or go where the statute does not. *See, e.g.*, *United States v. Nassif*, 628 F. Supp. 3d 169, 182 (D.D.C. 2022), *aff'd*, 97 F.4th 968 (D.C. Cir. 2024) (describing legislative history as "an uneven tool" that cannot override the statute's plain language); *In re Any & All Funds or Other Assets in Brown Bros. Harriman & Co. Acct. No. 8870792 in the Name of Tiger Eye Invs., Ltd.*, 601 F. Supp. 2d 252, 260 (D.D.C. 2009), *aff'd*, 613 F.3d 1122 (D.C. Cir. 2010) (stating that once Congress enacts a statute, the court's role is to determine what the statute means, not what Congress meant).

77-80. Defendants' arguments on these equitable factors are thin, propped up solely by Defendants' radical take on Executive Branch power over immigration. *See* Defs.' Stay Mot. at 17-18.

Defendants' argument that the government suffers irreparable harm because the Court is holding them to statutory limits on their ability to subject paroled individuals to expedited removal does not justify a stay of the court's order, which would put Plaintiffs' members and hundreds of thousands of paroled individuals around the country at imminent risk of rapid, summary deportation proceedings. *See* ECF No. 22-2 – 22-4. Defendants identify nothing beyond the kinds of vague, abstract harms to the power of the executive that district courts and Courts of Appeal alike have repeatedly rejected.[7] Defs.' Stay Mot. at 17.

Defendants do not contest that Plaintiffs' members and others like them suffer myriad and substantial harms—they merely argue that "[t]he harm to Defendants and the public interest outweigh Plaintiffs' harms." Defs.' Stay Mot. at 18. This is incorrect for all the reasons both Plaintiffs and the Court have outlined at length. ECF No. 22-1 at 28-38; Op. at 73-80. Plaintiffs' members and other paroled individuals face imminent and irreparable harms if Defendants' actions do not remain stayed, including the loss of opportunity to apply for affirmative relief for which they are eligible; detention in conditions harmful to their health; and separation from their families.

---

[7] *See, e.g.*, *J.G.G. v. Trump*, No. 1:25-cv-00766, 2025 WL 1577811, at *26 (D.D.C. June 4, 2025) (recognizing that the federal government's executive "foreign affairs" interests "do not defeat the need for the Government to fix its legal wrongs."); *Pacito v. Trump*, 768 F. Supp. 3d 1199, 1235-36 (W.D. Wash. 2025) (finding the federal government's equities' arguments "unconvincing" in an attempt to "wave away concrete evidence of devastating harms to [plaintiffs]."); *Community Legal Services in East Palo Alto v. HHS*, No. 3:25-cv-2847, 2025 WL 1233674, at *12 (N.D. Cal. Apr. 29, 2025) (rejecting the government's arguments that "it would suffer harm where the executive branch authority is hindered . . . cit[ing] no authority that this is a factor properly considered."); *Community Legal Services in East Palo Alto v. HHS*, 137 F. 4th 932, 942-43 (9th Cir. 2025) ("reject[ing] the notion that the injunction's effect on the 'separation of powers' qualifies as irreparable harm at the stay stage.") (citations omitted).

ECF No. 22-1 at 28-36; Op. at 73-77. These harms are most clearly evidenced by the fact that the paroled individuals being targeted for expedited removal were previously in section 240 proceedings, where they were not detained, had a right to counsel at their own expense, and had options to pursue their applications for immigration relief while with their families and in community. ECF No. 22-1 at 28-36; Op. at 73-77. Defendants continue to dismiss entirely this critical human impact of their actions that outweighs any abstract injury that might exist to the government.

Defendants' passing attempt to invoke *Trump v. CASA* likewise fails. Defendants concede that what that case held was "when a federal court enters a *universal injunction* against the Government, it improperly intrudes on a coordinate branch of the Government and prevents the Government from enforcing its policies against nonparties." Defs.' Stay Mot. at 17-18 (quoting *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2561 (2025)) (emphasis added). Although Defendants argue that "the Court's issuance of a stay has similar nationwide impact because it stays the challenged agency actions" for many individuals around the country, some of whom are not parties to the case (and thus constitutes irreparable harm to the government), Defs.' Stay Mot. at 18, the Supreme Court made clear that its decision went only to universal injunctions and not to other forms of relief, even other universal forms of relief. *CASA*, 145 S. Ct. at 2554 n.10 ("Nothing we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action."); *id.* at 2567 (Kavanaugh, J., concurring) ("To be sure, in the wake of the Court's decision, plaintiffs . . . may sometimes seek to proceed by class action . . . and ask a court to award preliminary classwide relief that may, for example, be statewide, regionwide, or even nationwide. And in cases under the Administrative Procedure Act, plaintiffs may ask a court to preliminarily 'set aside' a new agency rule.") (citations omitted); *id.* at 2596 (Sotomayor,

Kagan, & Jackson, JJ., dissenting) ("[T[he majority leaves untouched one important tool to provide broad relief to individuals subject to lawless Government conduct: Rule 23(b)(2) class actions for injunctive relief.").

Finally, on the balance of equities and the public interest, although the Court thoroughly deconstructed each of the government's arguments, Op. at 73-80, Defendants maintain that the Court "does not appear to quibble with [them]," Defs.' Stay Mot. at 17. But the Court was clear— "Defendants' arguments *hold little weight*." Op. at 77 (emphasis added). There is no public interest in unlawful agency action, *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021), and if there is a public interest in the prompt execution of removal orders, section 240 proceedings provide exactly that, Op. at 78. Defendants' only rebuttal to this is to argue again that their conduct *isn't* unlawful. Defs.' Stay Mot. at 17. Moreover, the Court correctly pointed out that Defendants' arguments on the final two stay factors "undermine other aspects of Defendants' arguments, particularly their redressability objection." Op. at 78. Nowhere do Defendants contest this fact in their stay motion. The equitable factors favor maintaining the stay.

### V. The Scope of the Court's Stay Order is Appropriate.

This Court's remedy staying the three agency actions at issue is entirely appropriate, and Defendants have articulated no arguments to support narrowing this relief. The Court's stay aligns with the Supreme Court's holding in *Trump v. CASA*; is consistent with the "complete relief" principle articulated in *CASA* and applied by the Ninth Circuit in *Immigrant Defenders Law Center v. Noem;* and is expressly contemplated by Congress through both the expedited removal provisions of the INA and the Administrative Procedure Act.

1. First, *Trump v. CASA*'s prohibition on nationwide injunctions does not require the Court to narrow its stay, as Defendants suggest. In *CASA*, the Supreme Court focused squarely—and solely—on the "District Courts' entry of injunctions that likely exceed the authority conferred by

the Judiciary Act [of 1789]." *CASA*, 145 S. Ct. at 2562. At issue here, however, is the Court's stay

of agency actions based on authority conferred by Congress through both the APA and the INA.

The Supreme Court has long recognized a substantive distinction between injunctive relief and

stay relief, *see, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010); *Nken*,

556 U.S. at 428; *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *CASA* leaves untouched the

authority of district courts to "preliminarily 'set aside' a new agency rule."[8] 145 S. Ct. at 2567

(Kavanaugh, J., concurring).

    2. Nor does the "complete relief" principle, articulated in *CASA* and applied by the Ninth

Circuit in *ImmDef*, require narrowing the Court's stay here. In *CASA*, the Supreme Court ultimately

*declined* to decide whether narrower relief was appropriate for the non-individual plaintiffs such

as the States. 145 S. Ct. at 2558. Instead, the Court left it to the lower courts to decide the proper

scope of relief, *id.*, observing only that equity "has long embraced the rule that courts generally

'may administer complete relief *between the parties*,'" *id.* at 2557 (emphasis in original). From

there, the Ninth Circuit in *ImmDef* found—without offering additional reasoning—that limiting

the district court's stay in that case to Plaintiff ImmDef's "current and future clients is the more

equitable approach." 2025 WL 2017247, at *14. But this Court already considered *CASA*'s

"complete relief" principle, taking into account numerous factors not present in the *ImmDef* case,

including the fact that the expedited removal process is designed to limit review of individual

---

[8] Indeed, a stay is "an interim or lesser form of [relief than] vacatur," *Texas v. Biden*, 646 F. Supp. 3d 753, 769 (N.D. Tex. 2022), and at final judgment, vacatur of the challenged policies is the appropriate remedy under controlling precedent from the D.C. Circuit, which has held that when agency regulations are unlawful, "the ordinary result is that the rule is vacated—not that their application to the individual plaintiffs is proscribed." *Nat'l Mining Ass'n v. U.S. Army Corps. of Eng'rs*, 145 F. 3d 1399, 1409 (D.C. Cir. 1998); *see also Bridgeport Hosp. v. Becerra*, 108 F. 4th 882, 890 (D.C. Cir. 2024) ("[V]acatur is the normal remedy" when an agency's action is unlawful); *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) (same). The *CASA* decision disturbs neither this precedent nor the Court's stay.

cases; that even the limited process available under expedited removal is not always observed and impinges on individuals' rights; that limiting relief to the associational Plaintiffs' members creates significant practical challenges for the federal government; and that the benefits of numerous suits percolating across different districts and circuits cannot be realized here because all suits challenging the validity of the expedited removal system must be brought in this District. Op. at 82. Defendants have identified no flaws in the Court's reasoning, much less articulated any other reason (apart from the *ipse dixit* of pointing to the "complete relief" principle itself) for this Court to reconsider its conclusion.

3. Moreover, this Court's stay is statutorily sanctioned and consistent with the INA and the APA and therefore does not implicate the issues that troubled the Supreme Court about the Judiciary Act of 1789 in *CASA*. In *CASA*, the Supreme Court expressed the concern that universal injunctions bind parties not before the court and allow courts to grant sweeping relief unsanctioned by Congress, without complying with the procedural protections afforded by class actions under Federal Rule of Civil Procedure 23. 145 S. Ct. at 2554-56. But this concern has no relevance here, as Congress expressly granted the United States District Court for the District of Columbia (and *only* this Court) jurisdiction to review "[c]hallenges on [the] validity of the [expedited removal] *system*," 8 U.S.C. § 1252(e)(3) (emphasis added), and placed no restrictions on this Court's ability to provide stay relief under the APA, *see* 8 U.S.C. § 1252(f)(1) (entitled "Limitations on injunctive relief"); *see also supra* Section III. Congress likewise expressly authorized in APA section 705 preliminary relief that would allow the reviewing court "to preserve status or rights pending conclusion of the review proceedings," 5 U.S.C. § 705, including preliminary stay relief, *see, e.g.*, *Las Americas Immigrant Advoc. Ctr. v. DHS*, No. 24-1702, 2025 WL 1403811, at *22 (D.D.C. May 9, 2025); *Texas*, 646 F. Supp. 3d at 768; *cf. Make the Road New York*, 405 F. Supp. 3d at 61 (noting

that 5 U.S.C. § 706 instructs federal courts to hold unlawful and set aside defective agency action, and further observing that Defendants' "suggestion here that the court must *also* sharply limit the scope of its injunction, by holding that the agency's unlawful rule is to be deemed invalid *only with respect to the plaintiff who appears in the case at bar*, is nowhere in the statute") (emphasis in original). The Court's stay therefore falls squarely within the relief and the system of review that Congress contemplated when creating the expedited removal process and need not be disturbed.

## CONCLUSION

This Court should deny Defendants' motion for a stay pending appeal.

Dated: August 11, 2025

Respectfully submitted,

*/s/ Hillary Li*
Hillary Li (GA0052)
Esther H. Sung (CA00132)
Karen C. Tumlin (CA00129)
Laura Flores-Perilla (admitted *pro hac vice*)
Brandon Galli-Graves (admitted *pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org

Tom-Tsvi M. Jawetz (*pro hac vice*)
*JAC Cooperating Attorney*
1358 Jefferson St. NW
Washington, DC 20011
Telephone: (202) 413-5208
Tom.jawetz@gmail.com

Carl Bergquist (*pro hac vice*)
**COALITION FOR HUMANE IMMIGRANT RIGHTS**

2533 West 3rd St, Suite 101
Los Angeles, CA 90057
Telephone: (310) 279-6025
cbergquist@chirla.org

*Attorneys for Plaintiffs*