BRETT A. SHUMATE
*Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
TYLER J. BECKER
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
PAPU SANDHU
*Assistant Director*
U.S. Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-9357
Papu.Sandhu@usdoj.gov

Counsel for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*, <br><br>Plaintiffs, <br><br>v. <br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br>Defendants. | Case No. 1:25-cv-00872 (JMC) <br><br>Hon. Jia M. Cobb |

**DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LIMITED RELIEF FROM STANDING ORDER NO. 25-55**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................... 1

RELEVANT BACKGROUND ........................................................................................................... 1

ARGUMENT....................................................................................................................................... 3

   Plaintiffs Have Failed to Justify Relief from the Standing Order............................................. 3

CONCLUSION.................................................................................................................................. 10

CERTIFICATE OF SERVICE

# **TABLE OF AUTHORITIES**

## **CASES**

*Department of Homeland Security v. Thuraissigiam*,
  591 U.S. 103 (2020) ............................................................................................................. 9

*E.V. v. Raycraft*,
  No. 4:25-CV-2069, 2025 WL 2938594 (N.D. Ohio Oct. 16, 2025) ........................................ 6

*Garland v. Aleman Gonzalez*,
  596 U.S. 543 (2022).............................................................................................................. 5

*Haaland v. Brackeen*,
  599 U.S. 255 (2023).............................................................................................................. 5

*Kaplan v. Tod*,
  267 U.S. 228 (1925).............................................................................................................. 9

*Lawyers Ass'n v. Reno*,
  (*AILA I*), 18 F. Supp. 2d 38 (D.D.C. 1998) ..................................................................... 7, 8

*Lawyers Ass'n v. Reno*,
  (*AILA II*), 199 F.3d 1352 (D.C. Cir. 2000) ..................................................................... 7, 8

*Leng May Ma v. Barber*,
  357 U.S. 185 (1958).............................................................................................................. 9

*M.M.V. v. Garland*,
  1 F.4th 1100 (D.C. Cir. 2021) .......................................................................................... 7, 8

*Munoz Materano v. Arteta*,
  No. 25 CIV. 6137 (ER), 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025) ................................ 6

*N.S. v. Dixon*,
  141 F.4th 279 (D.C. Cir. 2025) ............................................................................................ 5

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025).............................................................................................................. 5

*U.S. ex rel. Accardi v. Shaughnessy*,
  347 U.S. 260 (1954).............................................................................................................. 9

*United States v. Texas*,
  599 U.S. 670 (2023)......................................................................................................... 5, 6

**STATUTES**

5 U.S.C. § 705 .................................................................................................................... 1

8 U.S.C. § 1182(d)(5)(A) ..................................................................................................... 9

8 U.S.C. § 1252(a)(2)(A) ..................................................................................................... 6

8 U.S.C. § 1252(e)(3) ...................................................................................................... 6, 7

8 U.S.C. § 1252(e)(3)(B) ................................................................................................. 1, 7

8 U.S.C. § 1252(f)(1) ....................................................................................................... 5, 7

31 U.S.C. § 1342 ................................................................................................................. 3

**RULES**

Fed. R. Civ. Pro. 15(c)(1)(A) ............................................................................................... 8

**REGULATIONS**

8 C.F.R. § 1.2 ............................................................................................................. 2, 6, 9

8 C.F.R § 235.3(b)(1)(i) ...................................................................................................... 6

**Other Authorities**

62 Fed. Reg. 10,312 (Mar. 6, 1997) .................................................................................. 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-00872 (JMC) <br><br> Hon. Jia M. Cobb |

**DEFENDANTS' MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LIMITED RELIEF FROM STANDING ORDER NO. 25-55**

**INTRODUCTION**

The Court should deny Plaintiffs' motion because their request that the agency produce the administrative record is not the type of emergency situation warranting relief from the Court's Standing Order, No. 25-55. Plaintiffs' contention that granting their motion is necessary "to address ongoing irreparable injury" from the Department of Homeland Security's (DHS) application of the arriving alien regulations is belied by: (1) their own concession at the 5 U.S.C. § 705 stay hearing that even if the Court granted Plaintiffs' motion, Defendants could continue to apply expedited removal under the arriving alien regulations; (2) the D.C. Circuit's reasoning in its order denying Defendants' emergency motion; and (3) the fact that that this Court would lack jurisdiction over any motion for "partial summary judgment" asking the Court to vacate the arriving alien regulations because such request is time-barred under 8 U.S.C. § 1252(e)(3)(B).

**RELEVANT BACKGROUND**

1. On August 14, 2025, Defendants filed with the D.C. Circuit an emergency motion for

a stay of the Court's August 1, 2025 stay order. No. 25-5289 (D.C. Cir.). Given the pending D.C. Circuit proceedings, the parties jointly filed on August 14, 2025 a motion to vacate the Defendants' deadline to answer the complaint. Dkt. 50. The Court granted the motion the same day. *See* Electronic Order dated August 14, 2025. The Court's order directed the parties to file a joint status report within 10 days of a decision from the D.C. Circuit regarding Defendants' appeal of the Court's August 1 stay order. Additionally, the order required Defendants to serve Plaintiffs with the agency record within 60 days of August 14, 2025, so long as the August 1 stay of agency action remained in place in the interim. If, on the other hand, Defendants were granted a stay pending appeal or other extraordinary relief from the stay order, Defendants were required to serve Plaintiffs with the administrative record within 14 days after such relief was granted.

2. On September 12, the D.C. Circuit denied Defendants' emergency motion. *See Coalition for Human Immigrant Rights, et al. v. Kristi Noem, et al.*, No. 25-5289 (D.C. Cir. Sept. 12, 2025) (Exhibit A). In its stay-denial order, the D.C. Circuit concluded that the Government failed to establish irreparable harm because it did not claim that it could not continue to apply expedited removal to paroled arriving aliens pursuant to 8 C.F.R. §§ 1.2 and 235.3(b)(1)(i) under this Court's stay order. *Id.* In a concurring opinion, Judge Walker noted that the D.C. Circuit should have clarified for the Government that under this Court's stay order Defendants could continue to apply expedited removal against paroled arriving aliens pursuant to 8 C.F.R. §§ 1.2 and 235.3(b)(1)(i). *Id.*

3. In light of the D.C. Circuit's September 12 denial of the emergency stay motion, Defendants were required to serve Plaintiffs with the administrative record by October 13, 2025. However, at the end of the day on September 30, 2025, the appropriations act that had been funding the Department of Justice expired and those appropriations to the Department lapsed. The

2

Department does not know when such funding will be restored by Congress. Absent an appropriation, Department of Justice attorneys are prohibited from working, even on a voluntary basis, except in very limited circumstances, including "emergencies involving the safety of human life or the protection of property." 31 U.S.C. § 1342.

4. In light of the lapse of appropriations, on October 1, 2025, Chief Judge Boasberg issued Standing Order No. 25-55 for this Court which provides that "all filing and discovery deadlines imposed on the United States, any of its federal agencies, and any of its officers or employees, shall be extended by the number of days equal to the length (in days) of the lapse of appropriations plus ten days …." *In re: Stay of Civil Proceedings Involving the United States in Light of Lapse of Appropriations*.

5. On October 24, 2025, Plaintiffs filed a motion for limited relief from the Standing Order asking the Court to order Defendants to serve them with the administrative record within 14 days of the Court order. Plaintiffs Motion for Limited Relief (Mot.) at 1. Plaintiffs further asked the Court to "allow briefing on Plaintiffs' forthcoming motion for partial summary judgment to address ongoing irreparable injury." *Id.*

## ARGUMENT

**Plaintiffs Have Failed to Justify Relief from the Standing Order.**

1. Because of the lapse in appropriations, Department of Justice attorneys are prohibited from working, even on a voluntary basis, except in very limited circumstances, including "emergencies involving the safety of human life or the protection of property." 31 U.S.C. § 1342. Service of the agency record in this case and any ensuing response to a motion for summary judgment by Plaintiffs do not fall within this category and therefore do not constitute "excepted work" that would justify relief under the standing order. *Cf.* Standing Order No. 25-55 (specifically

3

exempting from the Standing Order the United States' deadlines to respond to motions for temporary restraining orders or preliminary injunctions).[1]

2. More fundamentally, the thrust of Plaintiffs' request—that relief is justified "to address ongoing irreparable injury" from DHS's application of the arriving alien regulations—is inconsistent with Plaintiffs' own position in its §705 stay motion and at the stay-motion hearing, and is undermined by the D.C. Circuit's reasoning in its order denying Defendants' emergency motion.

a. First, Plaintiffs' complaint that Defendants are applying expedited removal to paroled arriving aliens under §§1.2 and 235.3(b)(1)(i) rings hollow given that the Court's August 1 stay order and opinion *do not* enjoin or restrain Defendants from applying expedited removal under those regulations. Indeed, the arriving alien regulations remain independent authority for DHS to continue applying expedited removal to aliens paroled at ports of entry. These longstanding regulations predate the challenged agency actions by almost 28 years, and therefore none of the stayed agency actions are necessary for DHS to apply expedited removal under the regulations. Counsel for Plaintiffs *conceded* exactly that point at the stay-motion hearing.

> **THE COURT**: [C]ould the government still remove individuals who have been paroled under the regulations, even despite the writings at issue?
>
> **PLAINTIFFS' COUNSEL**: Yes, under the regulations as they're currently written, yes, correct.

---

[1] Defendants cite two cases not related to the current lapse in appropriations to assert that the D.C. Circuit has denied the Government's requests to "stay time sensitive proceedings during lapses in appropriation." Mot. 4-5. But as they recognize, the Chief Judge has issued a specific Standing Order to manage the "significant volume of civil matters" for this Court during the current lapse. Standing Order No. 25-55. Notably, the only matters specifically excluded from this Order are "United States' deadlines to respond to motions for temporary restraining orders or preliminary injunctions." *Id.*

Dkt. 35, at 6:22-7:1.  In their motion for a stay of agency action, Plaintiffs made a strategic choice not to seek an injunction barring Defendants from applying expedited removal under the arriving alien regulations.  Dkt. 28, at 23 n.12 (Plaintiffs do "challenge 8 C.F.R. § 1.2 as ultra vires, Am. Compl. ¶¶171-83, but have not moved for preliminary relief as to it.").  Having employed that strategy, they cannot now complain that DHS' lawful application of expedited removal justifies relief from the standing order.[2]

Plaintiffs suggest that Defendants are in violation of the Court's August 1, 2025 opinion concluding the arriving alien regulations are ultra vires.  Mot. 3.  But again, the Court did not enjoin the arriving alien regulations, *see* Dkt. 40, 41, and Plaintiffs did not seek to enjoin them either.  Nor could they have.  Thus, any discussion or conclusion in the Court's opinion on the propriety of those regulations would be nugatory.  *Cf. Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) ("It is a federal court's judgment, not its opinion, that remedies an injury"); *accord Trump v. CASA, Inc.*, 606 U.S. 831, 857 (2025) (citing *Haaland*); *see also* Dkt. 41 at 84 (reiterating the relief set forth in its order is limited to postponement and stay of agency actions).  As Justice Gorsuch explained in his concurring opinion in *United States v. Texas*, 599 U.S. 670 (2023)—a case involving a challenge to DHS's prosecutorial discretion guidelines—"whatever a court may say in an opinion does no more to compel federal officials to change how they exercise their prosecutorial discretion than an order vacating the Guidelines." *Id.* at 691.  Thus, Plaintiffs' suggestion that federal officials should "alter their [policy of applying expedited removal] in light

---

[2] That strategy was apparently made with the recognition that any request to enjoin or restrain the regulations would run headlong into the teeth of 8 U.S.C. § 1252(f)(1).  That provision states in pertinent part that "[r]egardless of the nature of the action or claim" "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" §§ 1221-1232 "other than with respect to the application of such provisions to an individual alien against whom proceedings ... have been initiated."  *See also Garland v. Aleman Gonzalez*, 596 U.S. 543, 549, 558 (2022) (applying bar); *N.S. v. Dixon*, 141 F.4th 279, 289 (D.C. Cir. 2025) (same).

5

of a judicial opinion reasoning that the [arriving alien regulation is] unlawful" is misguided. *See id.*

The D.C. Circuit's order denying Defendants' motion for emergency relief supports Defendants' position. Judge Walker's concurring opinion offers clarity on the Court of Appeals' order, stating "[t]he district court's order imposes no irreparable harm. That's because it is best read not to preclude the Government from applying expedited removal to parolees pursuant to 8 C.F.R. §§ 1.2 and 235.3(b)(1)(i)." *Id.* As Judge Walker observed, and the entire panel suggested, the district court's stay of certain agency actions does not enjoin or restrain the Government from applying expedited removal to parolees to the extent they fall within the "arriving alien" definition at § 1.2; *see also* 8 C.F.R § 235.3(b)(1)(i). And while the panel majority did not join Judge Walker in explicitly stating so, its reasoning is consistent with that view. By denying the motion because Defendants did not specifically assert that they could not apply expedited removal against paroled arriving aliens pursuant to these regulations, the panel majority implicitly suggested Defendants could do so. *Id.* (explaining that defendants "make no assertion that the district court's order" "precludes the Government from applying expedited removal to parolees, notwithstanding 8 C.F.R. §§ 1.2 and 235.3(b)(1)(i)").

Plaintiffs fail to address the D.C. Circuit's reasoning. Instead, they cite two recent district court decisions that do not address the issue they raise.[3] *See* Mot. 3. These cases agree with this Court generally that expedited removal does not apply to aliens paroled at ports of entry. But as explained above, in this case, Plaintiffs never moved to enjoin or restrain the arriving alien

---

[3] *E.V. v. Raycraft*, No. 4:25-CV-2069, 2025 WL 2938594, at *4 (N.D. Ohio Oct. 16, 2025); *Munoz Materano v. Arteta*, No. 25 CIV. 6137 (ER), 2025 WL 2630826, at *11 (S.D.N.Y. Sept. 12, 2025). These decisions are also wrong because the courts lacked jurisdiction to review the aliens' expedited removal orders pursuant to 8 U.S.C. § 1252(a)(2)(A) and any challenge to the validity of the expedited removal procedures had to be raised in this Court under 8 U.S.C. § 1252(e)(3).

6

regulations or the "arriving in" statute, *see* 8 U.S.C. § 1225(a)(1)(A)(i). Neither of the cited decisions addresses this issue. In contrast, the one court to address the issue has sided with the Government. *See* Plaintiffs' Ex. A (*Nunez v. Ripa*, No. 0:25-cv-61814-RS, slip op. at 10 (S.D. Fla.) (Dkt. 21) (relying on the D.C. Circuit's reasoning in its denial of the emergency motion)).

b. Plaintiffs' motion fails for a second reason—the Court is without jurisdiction to vacate §§ 1.2 and 235.3(b)(1)(i) because any challenge to those regulations is time-barred. Plaintiffs' motion is predicated on their filing a subsequent motion for "partial summary judgement" once they receive the agency record. Mot. 1. Presumably, the partial motion would ask the Court to vacate the arriving alien regulations and therefore end the alleged "irreparable injury." *See id.*; *see also* Dkt. 21, ¶¶171-183 (adding Count 5 challenge to arriving alien regulations).

But even putting aside the question of whether vacatur of these regulations would be precluded by 8 U.S.C § 1252(f)(1), the Court clearly lacks jurisdiction to vacate the arriving alien regulations under 8 U.S.C. § 1252(e)(3)(B)'s jurisdictional directive that a suit shall be filed "no later than 60 days" after the rule or agency action "is *first implemented*." (emphasis added); *see M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021) (rejecting argument that *AILA's* holding that the 60-day deadline is jurisdictional "has been overtaken by recent Supreme Court decisions"); *Am. Immigr. Lawyers Ass'n v. Reno (AILA I)*, 18 F. Supp. 2d 38, 47 (D.D.C. 1998) ("[T]he 60 days ran from a fixed point, the initial implementation of the challenged provisions"), *aff'd, Am. Immigr. Lawyers Ass'n v. Reno* (*AILA II*), 199 F.3d 1352, 1358 (D.C. Cir. 2000).

Even under this Court's interpretation of the 60-day time bar Plaintiffs are out of time. In its stay opinion, the Court held that the 60-day period runs from the date of the agency actions

7

Plaintiffs challenge, the earliest of which was January 23, 2025 (date of Huffman Memo).[4]  Dkt. 41 at 38-39.  The Court found Plaintiffs' claims timely because their complaint was filed on March 24, 2025—within 60 days of the earliest challenged agency action.  But the Court did not address whether Plaintiffs' specific challenge to the arriving alien regulations is timely—Plaintiffs, after all, did not challenge the regulations in their §705 stay motion.  And that claim is clearly time-barred, even under this Court's reasoning (with which the Government disagrees).  Plaintiffs' challenge to the arriving alien regulations was not raised until June 11, 2025, when Plaintiffs filed their amended complaint and added Claim 5 arguing for the first time that the arriving alien regulations are ultra vires.  *See* Dkt. 21, ¶¶171-183.  Thus, under the Court's own analysis, that claim is out of time.  The latest agency action that Plaintiffs challenge (CHNV parole termination notice) was issued on March 24, 2025.  Sixty days from that date is May 24, and the amended complaint was not filed until June 11, beyond the 60-day period for challenging any of the agency actions at issue in this case.  And because the 60-day period is jurisdictional, the added claims do not "relate back" to the date of the original complaint.  *See* Fed. R. Civ. Pro. 15(c)(1)(A); *M.M.V.*, 1 F.4th at 1109; *AILA*, 18 F. Supp. 2d at 47 (stating there is no "relation back" under Rule 15(c) and finding "new plaintiffs added in the amended Wood complaint are time barred since their claims were filed after May 31, 1997 [date 60-day period ended]); *see also AILA II*, 199 F.3d at 1357 (affirming "substantially for the reasons stated in the [district] court's thorough opinion).  Because the Court lacks jurisdiction to review the challenge to the arriving alien regulations, it

---

[4] Defendants disagree with this holding.  Their position is that the 60-day period began to run when the expedited removal procedures were "first implemented" on April 1, 1997.  *See* Dkt. 26 at 38-39.  But that disagreement is immaterial here because even applying the Court's 60-day time-bar analysis, Plaintiffs are out of time to challenge the arriving alien regulation as we explain in the text.

8

lacks jurisdiction to issue an order vacating these regulations, and the entire foundation of Plaintiffs' instant motion collapses.[5]

3. Alternatively, if the Court is inclined to grant the motion to serve Plaintiffs with the administrative records, it should: (1) do so only for the records relating to the stayed agency actions and not for the arriving alien regulations; and (2) grant Defendants more than 14 days to produce these records.

As discussed above, Defendants' position is that the Plaintiffs' challenge to the arriving alien regulations is time-barred and therefore jurisdictionally deficient. As such, the Court should order briefing on the time-bar issue before requiring Defendants to produce the record or entertaining any summary judgment motion.[6] This is especially true given that producing the record for the challenge to the 1997 arriving alien regulations will be particularly challenging for DHS given that over 28 years have passed since this major rule-making initiative, and the record

---

[5] Finally, Defendants reiterate their position that the arriving alien regulation is not ultra vires. Text, statutory context, and longstanding regulations demonstrate that the "arriving aliens" provision applies to paroled arriving aliens. As a threshold matter, 8 C.F.R. § 1.2, which was promulgated in 1997, expressly provides that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." Plaintiffs did not challenge that regulation in their stay motion, and the Court was therefore obliged to treat it as valid and controlling for present purposes. *Cf. U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265-67 (1954). Additionally, the parole statute makes clear that parole "shall not be regarded as an admission" and that once parole ends "the alien shall forthwith return ... to the custody from which he was paroled" and thereafter be treated "in the same manner as that of any other applicant for admission." 8 U.S.C. § 1182(d)(5)(A). Thus, Congress specified that parole is simply a temporary release of an alien into the United States that confers no immigration status. An alien paroled at the border then is subject to expedited removal because he retains his status as an "arriving alien" under the INA. The parole statute is foundational to the "legal fiction" the Supreme Court has long maintained—and repeatedly affirmed—that arriving aliens paroled into the United States are legally in the position of aliens standing at the border, regardless of their parole's duration. *E.g., DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020); *Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958); *Kaplan v. Tod*, 267 U.S. 228, 230 (1925).

[6] Defendants have not yet filed an answer to the amended complaint given the agreement reached by the parties and approved by the Court on August 14, 2025, which stayed the time to file an answer pending the D.C. Circuit's resolution of the Defendants' appeal of the Court's stay order.

9

is likely to be voluminous. *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures,* 62 Fed. Reg. 10,312 (Mar. 6, 1997).

Second, with respect to the records relating to the stayed agency actions, the Court should grant Defendants more than 14 days to produce these records. Plaintiffs' request is inconsistent with the Standing Order under which the deadline "shall be extended by the number of days equal to the length (in days) of the lapse of appropriations plus ten days." Thus, if the Court were to grant the motion, it should use that rule to assess the time for Defendants to produce the record. That is, the Court should grant Defendants the amount of time the lapse in appropriations has occurred plus ten days, after the Court rules on Plaintiffs' motion.

## CONCLUSION

The Court should deny Plaintiffs' motion for limited relief.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

TYLER J. BECKER
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530

s/ *Papu Sandhu*
PAPU SANDHU
*Assistant Director*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
Washington, DC 20044
(202) 616-9357

Dated: November 3, 2025

10

## CERTIFICATE OF SERVICE

     I hereby certify that on November 3, 2025, I electronically filed this Opposition with the Clerk of the Court for the United States Court of for the District of Columbia by using the CM/ECF system.  Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

                                                                     */s/ Papu Sandhu*
                                                                      PAPU SANDHU
                                                                      Assistant Director
                                                                      U.S. Department of Justice