UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants.* | Case No.: 1:25-cv-00872 |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LIMITED RELIEF FROM STANDING ORDER NO. 25-55**

Plaintiffs' request for limited relief from Standing Order No. 25-55 to require Defendants to produce the administrative record is necessary to alleviate ongoing irreparable injury. Plaintiffs hear regularly from immigration attorneys around the country whose clients were paroled into the country at a port of entry but are now being processed for expedited removal, because of Defendants' new position that they can do so pursuant to their regulatory authority and notwithstanding the Court's August 1 order. Defendants' arguments in opposition do nothing but distract from this reality, and their requests for alternative relief ignore the fact that, if not for the issuance of the Standing Order, they were required to serve the administrative record in less than two weeks.

1. Defendants argue that Department of Justice attorneys are prohibited from working during a government shutdown except in limited circumstances, such as in "emergencies involving the safety of human life or the protection of property." Opp. 3, ECF No. 52. Yet the Department of Justice's own Fiscal Year 2026 Contingency Plan provides that Executive Branch employees may,

during a shutdown, perform work "for which there is an express authority to continue," such as where a court orders that a case continue. U.S. Dep't of Justice, *U.S. Department of Justice FY 2026 Contingency Plan* ("DOJ Contingency Plan") (Sept. 29, 2025) 1, https://www.justice.gov/jmd/media/1377216/dl; *see also id.* at 3 ("If a court . . . orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue."). Other judges on this Court have in numerous recent cases granted relief from Standing Order No. 25-55, including on the basis of this DOJ Contingency Plan provision and to allow summary judgment briefing to proceed.[1] And this case and Plaintiffs' need for partial relief from the Standing Order unquestionably involve "the safety of human life." Currently, noncitizens previously paroled into the country—including those who have filed applications for asylum and withholding of removal in immigration court or with U.S. Citizenship and Immigration Services—face a renewed threat that their ability to raise protection and other defenses against removal will be pretermitted or otherwise dismissed so that Defendants may instead expeditiously remove them without legal authority, exposing many to the dangerous conditions from which they fled.

2. Defendants next argue that because Plaintiffs did not seek preliminary relief on their Fifth Claim challenging the "arriving alien" definition at 8 C.F.R. § 1.2 as *ultra vires*, they "cannot now complain" about the harm arising from the application of that definition. Opp. 5. This argument is

---

[1] *See, e.g.,* Min. Order, *Protect Democracy Project v. U.S. Office of Mgmt. and Budget,* No. 1:25-cv-01111 (D.D.C. Oct. 10, 2025); Min. Order, *Citizens for Resp. and Ethics in Wash. v. Office of Mgmt. and Budget,* No. 1:25-cv-01051 (D.D.C. Oct. 15, 2025); Min. Order, *League of United Latin Am. Citizens v. Exec. Office of the President,* No. 1:25-cv-00946 (D.D.C. Oct. 7, 2025) (sua sponte lifting Standing Order No. 25-55 "in the interest of justice" so summary judgment briefing could continue); Min. Order, *Am. Fed'n of Gov't Emps. v. U.S. Dep't of Educ.,* 1:25-cv-03553 (D.D.C. Oct. 9, 2025) (granting Plaintiffs' motion to lift the standing order and resume summary judgment briefing).

patently without merit. There is no legal basis (and Defendants certainly cite none) for their assertion that a Plaintiff foregoes their right to move for summary judgment simply because they did not move for preliminary relief on that claim.

Additionally, Defendants ignore completely that Plaintiffs' request for partial relief from the Standing Order responds to a *change* in the Defendants' own position with respect to whether people previously paroled into the country at ports of entry may be processed for expedited removal, notwithstanding this Court's August 1 stay order. It is Defendants' change of position that is causing Plaintiffs *new* harm that must be remedied without further delay. From this Court's August 1, 2025 stay order (ECF No. 41) until shortly after the September 12, 2025 D.C. Circuit decision, the government appeared to take the position that people previously paroled into the country at ports of entry could not be processed for expedited removal because of the district court's August 1 order. For example, on September 3, Plaintiffs' counsel identified for Defendants' counsel an instance of a paroled individual who was being processed for expedited removal; the next day, Defendants' counsel relayed that ICE had canceled the individual's expedited removal order and placed the individual back into section 240 removal proceedings. Exhibit B to Declaration of Hillary Li ("Li Decl."). Similarly, on August 15, Plaintiffs' counsel raised with Defendants' counsel a person previously paroled into the country who actually was removed from the country through expedited removal shortly after the August 1 order. Exhibit A to Li Decl. As with the first case, the government did not respond to Plaintiffs' counsel's inquiry by citing any regulatory authority to remove the paroled individual from the country through expedited removal. Instead, on August 23, Defendants' counsel responded to Plaintiffs' counsel's request that the noncitizen be returned to the country so that he may be given proper proceedings by informing us that the noncitizen could come to a port of entry and present himself for inspection—at which

point Defendants' counsel stated that he would be detained and processed anew for expedited removal. *Id.*

It was not until October 14 that Defendants' counsel informed Plaintiffs' counsel for the first time that, notwithstanding the August 1 order, Defendants would place previously paroled individuals in expedited removal pursuant to the regulations. The irreparable harm that Plaintiffs are now seeing on the ground stems from this changed position. As Plaintiffs' Counsel advised during the stay motion hearing, "if the Defendants do end up taking steps to subject parole beneficiaries to expedited removal under the regulations, we would be back here in front of this Court." Mot. Hr'g Tr. 39:24-40:2, ECF No. 35.

3. Defendants' arguments about the scope of this Court's August 1, 2025 order (ECF No. 41) are substantively irrelevant to the present motion. The need for the present summary judgment motion is to allow Plaintiffs to move for new relief which will address new, ongoing harm; Plaintiffs are not moving to enforce the August 1, 2025 order with respect to Defendants' current actions. Having said that, Defendants' cavalier approach to this Court's prior finding that the regulatory definition of "arriving alien" at 8 C.F.R. § 1.2 is "*ultra vires* to the extent it subjects parolees to expedited removal," Mem. Op. 53, ECF No. 41, warrants emphasis. Defendants' dismissive characterization of this Court's determination as "nugatory" speaks to the need for further relief, as does Defendants' scoffing reaction to the suggestion that Defendants should stop relying upon a regulation found by a federal court to be illegal and without statutory authority because there is not a binding court order. Opp. 5-6. Defendants' position appears to be that they can ignore that a federal court stayed certain agency actions directing the expedited removal of "arriving alien[s]" based upon its conclusion that such actions likely lack statutory authority, by relying on a related regulatory definition that a federal court found is similarly unlawful. As

4

Plaintiffs' counsel noted during the stay motion hearing, "It would be irregular for the federal government to continue removing paroled individuals through expedited removal under regulations that don't comport with what the statute allows. . . . [W]e presume that the federal government will comply with the finding that their actions don't comport with the statute." Mot. Hr'g Tr. 39:14-23, ECF No. 35.[2]

Defendants' reliance on Judge Walker's concurrence to the D.C. Circuit order is also misplaced. Defendants act as though the concurrence establishes what the majority thought, but the D.C. Circuit majority decidedly did *not* join the concurrence, and the majority did not speak to the issue of the government's authority to subject paroled individuals to expedited removal under the regulations. *Coalition for Humane Immigrant Rights v. Noem,* No. 25-5289, 2025 WL 2649100, at *1 (D.C. Cir. Sept. 12, 2025). The majority opinion holds only that the government failed to even assert that it was in fact suffering irreparable harm from this Court's August 1, 2025 order (ECF No. 41) and thus failed to show that a stay pending appeal was necessary. *Id.* Defendants provide no basis to try to extend this observation (regarding its unsuccessful stay request) to some kind of implicit acknowledgment that the government retained the regulatory authority to subject paroled individuals to expedited removal.

4. Finally, Defendants' requests for alternative relief should be denied because Defendants agreed back in August that they would produce the administrative record in sixty days if the August 1, 2025 order (ECF No. 41) remained in place. Joint Mot. 2, ECF No. 50; Min. Order dated August

---

[2] Defendants' reliance on Justice Gorsuch's concurrence in *United States v. Texas*, 599 U.S. 670 (2023) is also inapposite. *See* Opp. 5-6. While vacating particular guidance regarding how federal officials should exercise their inherent prosecutorial discretion would do nothing to undermine the fact that such prosecutorial discretion continues to exist, *Texas*, 599 U.S. at 691, Defendants here have no inherent authority to process individuals for expedited removal beyond what is afforded to them by statute.

5

14, 2025. Therefore, as Defendants agree, had Standing Order No. 25-55 not been issued on October 1, Defendants would have had to produce the record in twelve days on October 13. Opp. 2. Defendants' assertion that they now need more time, or that they should be relieved of producing the administrative record for the regulatory definition altogether because it will be "challenging" and "likely to be voluminous," ring hollow given both their agreement to the original sixty-day timeline and the fact that the agreed-upon deadline expired weeks ago. Opp. 9-10. Further, Defendants' suggestion to bifurcate the administrative record production between the stayed agency actions and the regulatory definition—raised for the first time in their opposition to Plaintiffs' present motion—was not part of the Parties' initial agreement. Joint Mot., ECF No. 50. There is no support in the Federal Rules or this court's rules that warrants deferral of production of a significant portion of the administrative record. As discussed above, the regulatory definition is what is currently causing the irreparable injury to paroled individuals, and Plaintiffs have the right to move forward with their challenge to it.

Similarly, Defendants' request for briefing on jurisdictional issues *before* requiring production of the administrative record is unwarranted. Defendants' arguments about this Court's jurisdiction to hear Plaintiffs' summary judgment motion are simply premature; questions of jurisdiction go to the merits of the legal issues on which Plaintiffs have the right to move for summary judgment. It is improper, unnecessary, and inefficient to substantively litigate them in the current posture.

Plaintiffs' members who previously have been granted paroled at ports of entry, and hundreds of thousands of others similarly situated, remain at imminent risk of expedited removal based on Defendants' change in position on the government's authority to subject paroled individuals to expedited removal. Plaintiffs respectfully request that this Court grant limited relief from Standing Order No. 25-55 to (1) require Defendants to produce the administrative record within fourteen

days of the Court order and (2) allow briefing on Plaintiffs' forthcoming motion for partial summary judgment.

Dated: November 7, 2025

Respectfully submitted,

*/s/Hillary Li*
Hillary Li (GA0052)
Esther H. Sung (CA00132)
Karen C. Tumlin (CA00129)
Laura Flores-Perilla (admitted *pro hac vice*)
Brandon Galli-Graves (admitted *pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org

Tom-Tsvi M. Jawetz (*pro hac vice*)
*JAC Cooperating Attorney*
1358 Jefferson St. NW
Washington, DC 20011
Telephone: (202) 413-5208
Tom.Jawetz@gmail.com

Carl Bergquist (*pro hac vice*)
**COALITION FOR HUMANE IMMIGRANT RIGHTS**
2533 West 3rd St, Suite 101
Los Angeles, CA 90057
Telephone: (310) 279-6025
cbergquist@chirla.org

*Attorneys for Plaintiffs*

7

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 7, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

        <u>/s/Hillary Li</u>
        Hillary Li