UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br> *Defendants*. | Case No.: 1:25-cv-0872 |

**DECLARATION OF PATRICE LAWRENCE
EXECUTIVE DIRECTOR, UNDOCUBLACK NETWORK**

I, Patrice Lawrence, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am a Founder and the Executive Director of UndocuBlack Network ("UndocuBlack" or "UBN"). I have been UndocuBlack's Executive Director since 2021. UndocuBlack is a nonprofit membership organization and multigenerational network of Black immigrants that advocates for and supports Black immigrants through facilitating access to resources, storytelling, organizing, and community wellness.

2. I make this statement based upon personal knowledge, files and documents of UndocuBlack that I have reviewed (such as case files, reports, and collected case metrics), as well as information supplied to me by employees of UndocuBlack whom I believe to be reliable. These files, documents, and information are of a type that is generated in the ordinary course of our business and that I would customarily rely upon in conducting UndocuBlack business.

3. I incorporate my Declaration, Dkt. No. 22-4, as if fully set forth herein. I submit this

supplemental declaration to provide an update to the Court regarding the impact on our members of the government's targeting of parole beneficiaries for expedited removal.

4. UndocuBlack began in 2016 as a fiscally sponsored project. This structure limited the work we were able to do and our ability to respond to community needs. In 2022, UndocuBlack incorporated as an independent 501(c)(3) nonprofit. This marked a decisive shift in our work, as it allowed us to build durable infrastructure – in terms of staffing, governance, and finance – aligned with a long-term vision rather than short-term campaigns. It also meant we could begin fundraising directly, rather than through intermediaries. The transition to an independent nonprofit is when UBN's work as we know it now truly got underway, because the organization gained the autonomy to organize at scale, sustain leadership, and pursue structural change.

5. Currently, there are approximately one thousand UndocuBlack members, and many more individuals who have received services and benefited from our advocacy.

6. UndocuBlack has long advocated on behalf of and provided legal assistance to beneficiaries and sponsors of humanitarian parole programs. We provide educational information to our members through Know Your Rights trainings, which includes information about humanitarian parole, and we advocate for expansion of humanitarian parole pathways. For example, UndocuBlack urged the administration to grant humanitarian parole to Haitian migrants at the U.S.-Mexico border through a letter in late 2021 after the mass expulsion of Haitians in Del Rio, Texas, and in 2024, UndocuBlack endorsed a letter by lawmakers to the administration urging the administration to extend humanitarian parole to Haitians in ICE detention.

7. UndocuBlack regularly hears from and supports its members in many different ways, including with respect to the administration's use of expedited removal against parole beneficiaries. For example, UBN hosts regular member calls and hosts webinars explaining

different immigration policies and how those policies might impact members. We also have a legal services arm with a dedicated UBN staff member whom members know to reach out to for consultations; after the UBN staff member conducts a consultation, they refer the member to an attorney with whom UBN has an established relationship. UBN meets regularly with its network of trusted attorneys to keep track of the cases of its members.

8. UndocuBlack has dedicated many resources to ensure its members are well-informed about the danger they now face due to the use of expedited removal against parole beneficiaries. Our Policy and Advocacy staff prepared policy packets to share with our members explaining what expedited removal is and how the Trump administration is using it. They have also been researching legal pathways available for members who face imminent risk of being impacted by recent threats to our communities, including the threat of expedited removal for paroled individuals. Our Community Wellness and Engagement teams have conducted wellness checks, convened community calls, and offered mental health and peer support services to assist those likely to be impacted by recent threats to our members. These services not only provide assistance for our members, but also a sense of community and connection.

9. At least 300 UndocuBlack members are Haitian parole beneficiaries who were granted parole either through the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV") or through CBP One appointments at a port of entry. These members are now at risk of being processed for expedited removal given that the government has terminated grants of CHNV and CBP One parole and has been targeting both CHNV and CBP One parole beneficiaries for expedited removal in the last year. Many are particularly at risk because they do not have any pending applications for legal status.

10. I am also aware of Defendants' position in this litigation that despite the district

court's August 1, 2025 order, the government can subject individuals previously paroled into the country at a port of entry to expedited removal pursuant to its regulatory authority under 8 C.F.R. § 235.3(b)(1)(i), which references the definition of "arriving alien" at 8 C.F.R. § 1.2. I am aware that 8 C.F.R. § 1.2 states that an "arriving alien" who is paroled into the country remains an "arriving alien," regardless of whether their parole is active or has been terminated or revoked. Given this position, UndocuBlack members who are parole beneficiaries remain at constant risk of being placed in expedited removal at any time.

11. For example, UBN Jane Doe 3 is a UBN member and Haitian national who was paroled into the United States in April 2024 through the CHNV parole processes. She came to the United States while pregnant and has since been the primary financial provider for her two young sons, one who is a U.S. citizen and the other who is living in Haiti, as well as extended family members in Haiti. Before coming to the United States, she worked in Haiti as an accountant specializing in payroll and employee benefits. After she arrived in the United States, she experienced delays in securing consistent work authorization, which left her unable to work for much of her time in the United States and caused her and her family prolonged instability. She ultimately obtained employment authorization and now works as a Certified Nursing Assistant, providing essential care to vulnerable patients, despite this representing a significant shift from her prior career.

12. UBN Jane Doe 3 has applied for asylum, but her application is currently suspended due to the USCIS suspension on processing immigration benefits for nationals from Haiti. Given this and the government's termination of grants of CHNV parole, she is at risk of being targeted for expedited removal at any time. If the government were to detain her and process her for expedited removal, her U.S. citizen child would lose his primary caregiver, and she would be

unable to meet her financial responsibilities to her children and family, including her husband, who is currently unable to work. She and her family previously lost their home in Haiti due to economic instability in Haiti, and her removal would cause severe economic and emotional harm, leaving her dependents without support both in the United States and in Haiti.

13. J.P. is another UndocuBlack member who remains at risk. A Haitian national, J.P. was paroled into the United States in December 2024 after attending a CBP One appointment in Laredo, Texas. His grant of parole was valid until December 11, 2026, and he was issued a Notice to Appear in immigration court on July 25, 2025. He timely filed his asylum application and appeared at his first master calendar hearing in July 2025. But during that hearing, DHS moved to dismiss his removal proceedings, which the Immigration Judge granted. Following the hearing, and while still in the courthouse, ICE agents arrested and detained J.P. When J.P.'s attorney submitted a request with ICE to release him and vacate any expedited removal order against him, ICE refused. J.P.'s attorney filed an appeal with the Board of Immigration Appeals, which remains pending. J.P. has now been detained for more than half a year, during which time he has experienced significant harm from the emotional distress of prolonged separation from his family and the looming threat of being returned to Haiti. He fears that at any point he could lose his appeal of the dismissal and be removed from the country through expedited removal.

14. Prior to 2025, I had not encountered any UBN member paroled at a port of entry who was subjected to expedited removal. I had understood humanitarian parole to be a lawful pathway that could not result in expedited removal. This was also the understanding of our community of UndocuBlack staff and members. So I was disappointed and appalled by the government's extreme shift in 2025, when it began subjecting paroled individuals to expedited removal. Individuals who have been paroled are already vulnerable and in need of protection.

Stripping away their security without any justifiable explanation felt perplexing and cruel. Because UndocuBlack's membership includes hundreds of individuals who have been paroled into the country—like J.P., and the Jane Does I described in my previous declaration—our members continue to be at risk of having their grants of parole revoked, being detained and separated from their families and communities, and being forced to return to countries where they fear for their lives.

     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed February 27, 2026, in __Washington, D.C.__.

_P.S. Lawrence_

Patrice Lawrence