**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COALITION FOR HUMANE
IMMIGRANT RIGHTS, *et al.*,

        Plaintiffs,

        v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, *et al.*,

        Defendants.

Case No. 1:25-cv-00872 (JMC)

Hon. Jia M. Cobb

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION TO STAY SUMMARY JUDGMENT BRIEFING
PENDING THE COURT OF APPEALS' RESOLUTION  OF DEFENDANTS' APPEAL**

On March 16, 2026, the D.C. Circuit held oral argument with respect to Defendants' appeal of this Court's August 1, 2025 stay order. No. 25-5289. Given that Defendants' appeal involves many of the same issues Plaintiffs have raised in their motion for summary judgment (SJ), and that the D.C. Circuit is poised to issue a decision on these issues soon, this Court should stay SJ briefing to avoid duplicative litigation and preserve the parties' and Court's resources. This is especially true where Plaintiffs' claim of hardship rings hollow because they waited months to file their SJ motion, even as they were aware that Defendants continued to apply expedited removal to their members pursuant to the arriving alien regulations at 8 C.F.R. §§1.2, 235.3. As such, Plaintiffs have failed to establish sufficient hardship outweighing the benefits of granting a stay of briefing. If the Court is disinclined to grant an indefinite stay, it should, at a minimum, stay the proceedings for 90 days at the end of which time the parties would file a joint status report. *See United States ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, L.L.C.*, 288 F. Supp. 3d 28, 33 (D.D.C. 2017) (issuing a similar order).

1

## ARGUMENT

## THE BALANCING OF RELEVANT FACTORS WEIGHS
## IN FAVOR OF GRANTING A STAY OF BRIEFING

**I.**  **Plaintiffs Cite the Wrong Test for Determining Whether the Court Should Stay Summary Judgment Briefing.**

"At the outset, it is important to emphasize … that [Defendants] are requesting a stay of further proceedings in this case, not a stay of this Court's prior [§705 stay] Order." *See Wrenn v. D.C.*, 179 F. Supp. 3d 135, 137 (D.D.C. 2016). Plaintiffs erroneously rely on cases addressing the latter. In those cases, courts applied the traditional four-factor test that governs requests to stay an injunction or stay an agency action under 5 U.S.C. §705.  *See* Plaintiffs' Opposition (hereafter Dkt. 63) at 1 (citing *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972 (D.C. Cir. 1985) (involving an emergency stay of a United States Nuclear Regulatory Commission Licensing Board *decision* pending appeal); *Grundmann v. Trump*, 786 F. Supp. 3d 188, 190 (D.D.C. 2025) (involving a request to stay the district court's *order* granting injunctive relief pending appeal)). In those, circumstances, a stay is indeed considered "exceptional relief." Dkt. 63 at 1.

That is not the issue here. The Government's motion did not ask the Court to stay its August 1, 2025 §705 stay order. Instead, the Government is asking the Court to hold summary judgment briefing in abeyance until the D.C. Circuit issues a decision. Hence, Plaintiffs' suggestion that the Government is required to demonstrate irreparable harm if the motion is not granted is wrong.[1] *See* Dkt. at 1 (citing *Cuomo* and *Grundmann* ).  Rather, as discussed below, the Court may consider the potential hardship to the parties in granting an abeyance but the moving party is not required to establish a threshold level of hardship to prevail.

---

[1] Of course nothing precludes a court from "also tak[ing] account of the[se] traditional factors," or any other factor relevant to the court's exercise of judicial discretion. *Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "Whether to hold a case in abeyance is thus a matter of discretion and judgment, which must take into account the optimal use of judicial resources as well as the 'competing interests' of the parties." *Utah by & through Cox v. Env't Prot. Agency*, No. 23-1157, 2025 WL 1354371, at *1 (D.C. Cir. May 2, 2025) (citing *Landis*, 299 U.S. at 254–55)). "[T]he question of whether to stay a particular case is inextricably intertwined with the nature of the specific case." *Wrenn*, 179 F. Supp. 3d at 137. Allowing resolution of a dispute without the court's intervention "conserve[s] judicial resources" and "comports with the court's theoretical role as the governmental branch of last resort." *Am. Petroleum Inst. v. E.P.A.*, 683 F.3d 382, 386-87 (D.C. Cir. 2012) (cleaned up); *see also Landis*, 299 U.S. at 255 ("Occasions may arise when it would be a scandal to the administration of justice ... if power to coordinate the business of the court efficiently and sensibly were lacking altogether.") (cleaned up).

This Circuit has repeatedly approved abeyance "in light of other pending proceedings that may affect the outcome of the case before [it]" in order to promote judicial economy. *Basardh*, 545 F.3d at 1069. In *Basardh*, for example, the Court granted a request for an abeyance where "[t]he habeas action in the district court and the petition for direct review in our court raise common issues" and "[r]esolution of the habeas action in [Plaintiff's] favor may entirely, or partially, moot his direct review petition." *Id.* (noting the "longstanding policy of the law to avoid duplicative litigative activity") (internal citation omitted); *see also Philipp v. Fed. Republic of Germany*, 253 F. Supp. 3d 84, 89 (D.D.C. 2017) (staying proceedings in district court pending an interlocutory

appeal to D.C. Circuit where Defendants raised several dispositive issues, including arguing that the court does not have jurisdiction to hear Plaintiffs' claims).

"[T]he interest in judicial economy must be weighed against any potential prejudice to the parties." *Utah by & through Co.*, 2025 WL 1354371, at *2; *Landis*, 299 U.S. at 258–59. The party moving for the stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255. But "[e]ven when abeyance is opposed and a party points to some hardship, the possibility of inconvenience will not categorically outweigh the need for the sound use of judicial resources." *Utah by & through Cox*, 2025 WL 1354371, at *2 (citing *Landis*, 299 U.S. at 256). The Court will instead consider the nature and degree of any alleged hardship. *Utah by & through Cox*, 2025 WL 1354371, at *2.

In this case, because judicial economy favors a stay and Plaintiffs have failed to demonstrate sufficient hardship to overcome the benefits of a stay, the Court should grant a stay of briefing.

**II.    Abeyance Will Promote Judicial Economy Because There is a Strong Likelihood the Court of Appeals' Decision will, at a Minimum, Narrow the Issues for Briefing Thereby Avoiding Unnecessary and Duplicative Work.**

None of Plaintiffs' arguments against judicial economy pass muster given the common issues currently pending before both courts. First, Plaintiffs fail to engage with Defendant's primary argument that the statutory interpretation question—of whether the "arriving in" provision provides authority to apply expedited removal to parolees—is pending before the D.C. Circuit. *See generally* Dkt. 63; Dkt. 59 at 4. Nor do Plaintiffs explain how the agency records in this case (which are not before the Court of Appeals) would matter as to this issue given that this is a pure legal question. As Defendants noted in their request for an abeyance (Dkt. 59 at 4), this is the

4

central merits issue on appeal and therefore likely to be addressed by the D.C. Circuit. *See* Dkt. 59-1 at 30-37 (Government's opening brief in D.C. Circuit). This issue is also the primary one raised in Plaintiffs' SJ motion, and is likely to require the most briefing resources given the complexity of the statutory question, and the dueling legislative history arguments presented by both sides. *See* Dkt. 55-1 at 18-40; *see also* No. 25-5289, Government Reply Brief at 8-21 (responding to Plaintiffs' statutory and legislative history arguments); No. 25-5289, Brief of Amici Curiae Immigration and Constitutional Scholars at 11-23 (addressing whether Congress intended to apply expedited removal to parolees and discussing legislative history).

Plaintiffs' only retort on this point is that "[i]n the summary judgment posture, this Court will apply different legal standards to decide the actual merits of the question and rule on Plaintiffs' entitlement to permanent relief." Dkt. 63 at 7. That conclusory statement fails to explain how the different context will matter given that the "arriving in" issue is a purely legal one. A ruling on the issue by the D.C. Circuit—even in the context of a likelihood of success analysis—is very likely to be dispositive and therefore eliminate the need for further briefing.[2]

Likewise, Plaintiffs fail to adequately respond to Defendants' point about redressability, which is a threshold issue in the D.C. Circuit appeal. In a footnote, Plaintiffs merely state that if the D.C. Circuit agrees with the Government that Plaintiffs' harms are not redressable, "a decision by this Court on the pending summary judgment motion would resolve that concern" because presumably, Plaintiffs are asking this Court to vacate the arriving alien regulation as ultra vires. Dkt. 63 at 7 n.5. But Plaintiffs fail to recognize the significant benefit of abeyance in these

---

[2] Additionally, Plaintiffs' generic statement that it is "black-letter law that an interlocutory appeal does not warrant a stay of district court proceedings," Dkt. 63 at 3, proves nothing. Defendants do not contend a stay is justified merely because they have filed an interlocutory appeal, but because of the extensive overlapping issues involved in both proceedings, along with Plaintiffs' lack of hardship showing, and the fact that the D.C. Circuit is likely to issue a decision soon.

circumstances. If the D.C. Circuit concludes Plaintiffs cannot establish redressability (which is a threshold Article III issue), that would counsel strongly in favor of *limiting briefing* in this Court for the parties to address only the specific threshold jurisdictional question of whether Plaintiffs' challenge to the arriving alien regulations is untimely under the 60-day deadline at 8 U.S.C. §1252(e)(3)(B). That is because, if this Court concludes Plaintiffs' challenge is untimely, that ruling would dispose of the whole case on standing/lack-of-redressability grounds, thus avoiding needless briefing on the other issues. Indeed, Plaintiffs themselves recognize this difficult jurisdictional hurdle and the importance of this issue to their case as they have devoted almost 10 pages to the timeliness issue in their SJ motion. *See* Dkt. at 55-1 at 9-18.

Plaintiffs' general contention that they "have moved for summary judgment on a far broader range of issues than are presented in the appeal" (Dkt. 63 at 5), is unpersuasive. They claim they are moving for relief "as to the regulatory definition of 'arriving alien'" (*id.* at 5), but the *merits* of that question are squarely before the D.C. Circuit. Dkt. 59-1 at 30-37. They assert that this is the "first time Plaintiffs are challenging the Challenged Directives as arbitrary and capricious based on the administrative records" but that precise issue is also before the D.C. Circuit, *id.* at 45-47, and Plaintiffs fail to show how or what portion of the agency record would make the issue different for purposes of summary judgment. Having failed to distinguish these issues from those currently pending before the D.C. Circuit, Plaintiffs turn to the question of remedy in a last-ditch effort to support their claim of a "broader range of issues." Dkt. 63 at 6. But even as to remedy, their argument is unconvincing because a D.C. Circuit opinion addressing 8 U.S.C. §1252(f)(1) and/or the impact of *Trump v. CASA, Inc.*, 606 U.S. 831, 851-52, 859 (2025), will have implications for what relief the Court can issue on summary judgment. Indeed, if the D.C. Circuit rejects the Government's position as to these arguments in the context of the §705

appeal, Plaintiffs no doubt will argue that such a holding precludes the Government from making those same arguments with respect to §706 vacatur and request for declaratory relief.

In sum, given the multiple overlapping issues in this Court and the D.C. Circuit, a stay makes sense in order to promote judicial economy and avoid a round of briefing that may very well be unnecessary, especially given that briefing and argument in the Court of Appeals' case is complete.

### III. Plaintiffs have Failed to Establish Sufficient Hardship to Overcome the Benefits of Abeyance.

Plaintiffs contend they and their members will face "irreparable harm" if the Court stays the briefing schedule because Defendants continue to apply expedited removal under the arriving alien regulations. Dkt. 63 at 3-4. Plaintiffs complain that staying the briefing schedule "would defer this Court's consideration of additional relief for Plaintiffs' members for months or longer …." *Id.* at 4.

That argument is wholly unconvincing for at least two reasons. First, Plaintiffs have had the agency records in their possession since December 1, 2025, and yet waited ***over three months*** to file their SJ motion even though they were on notice of Defendants' application of expedited removal under the arriving alien regulations for the duration of this time. *See* Dkt. 51 at 3. Plaintiffs' opposition to Defendants' motion to stay briefing is unresponsive to this point. Plaintiffs' delay without explanation "may be grounds for denial because such delay implies a lack of urgency" and therefore a lack of hardship. *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005). They cannot now argue that waiting a few weeks or months until the D.C. Circuit issues a decision will result in hardship. *Id.*; *see also Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (finding that a delay of 44 days before bringing action for injunctive relief "bolstered" the "conclusion that an injunction should not issue," particularly where the party seeking an

injunction had knowledge of the pending nature of the alleged irreparable harm.); *Western Watersheds Project v. Bernhardt*, 468 F. Supp. 3d 29, 50 (D.D.C. 2020) ("These unexplained delays in seeking emergency relief undermine their contention that they will be irreparably harmed absent an injunction").

Second, the Court's §705 stay order has remained in effect since August 1, 2025, and will continue to remain in effect at least until the D.C. Circuit resolves Defendants' appeal. Plaintiffs' complaint is really about the *scope of that stay order* which does not enjoin Defendants from applying expedited removal under the arriving alien regulations. But that result is of the Plaintiffs' own making because, as they have conceded, they chose not to move for preliminary relief based on their challenge to the arriving alien regulations. Dkt. 28 at 23 n.12 (Plaintiffs do "challenge 8 C.F.R. §1.2 as ultra vires, Am. Compl. ¶¶171-83, but have not moved for preliminary relief as to it.").

Additionally, to the extent Plaintiffs imply that Defendants are acting improperly in continuing to apply expedited removal to their members under the regulations,[3] they have not claimed—either in this Court or in the D.C. Circuit—that Defendants' actions violate the Court's August 1, 2025 stay order. In sum, Plaintiffs chose this litigation strategy and then waited months to file their SJ motion during which time Defendants lawfully applied expedited removal. Having failed to seek a stay based on a challenge to the arriving alien regulations and then having waited months to file their SJ motion, their claim of hardship is thoroughly unconvincing.

---

[3] *See* Dkt. 63 at 4 ("Notwithstanding this Court's stay of agency action and its determination that the regulatory definition of 'arriving alien' at 8 C.F.R. § 1.2 is 'ultra vires to the extent it subjects parolees to expedited removal,' Dkt. No. 41 at 53, 'DHS continues to apply expedited removal to paroled arriving aliens under its arriving alien regulations at 8 C.F.R. §§ 1.2 and 235.3(b)(1)(i).' Dkt. No. 59 at 6.").

**CONCLUSION**

The Court should grant Defendants' motion for a stay of summary judgment briefing pending a decision by the D.C. Circuit on Defendants' appeal of the Court's §705 stay order.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
Deputy Assistant Attorney General
TYLER BECKER
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530

s/ *Papu Sandhu*
PAPU SANDHU
*Assistant Director*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, DC 20044
(202) 616-9357

Dated:  March 18, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2026, I electronically filed this Reply with the Clerk of

the Court for the United States Court of for the District of Columbia by using the CM/ECF

system.  Counsel in the case are registered CM/ECF users and service will be accomplished by

the CM/ECF system.

 */s/ Papu Sandhu*
PAPU SANDHU
Assistant Director
U.S. Department of Justice