## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-00872 (JMC) <br><br> Hon. Jia M. Cobb |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ..................................................................................... 4

STANDARD OF REVIEW ..................................................................................... 4

ARGUMENT ..........................................................................................................5

I.      The Court Should Dismiss Plaintiffs' Challenge to the Arriving Alien
        Regulation for Lack of Jurisdiction Because that Challenge is Time-Barred .....................5

        A.  Section 1252(a)(2)(A)'s Jurisdictional Bar Applies to Plaintiffs'
            Challenge to the Arriving Alien Regulation ...............................................5

        B.  Section 1252(e) Does Not Apply to Preserve Jurisdiction Over
            Plaintiffs' Challenge to the Arriving Alien Regulation ..................................8

            1.  Section 1252(e)(3) does not Confer Jurisdiction
                Because Plaintiffs' Challenge is Time-Barred....................................7

            2.  Even if the 60-day Time Bar is not Jurisdictional,
                it is Mandatory and Requires Dismissal of Plaintiffs'
                Claim....................................................................................15

            3.  Even if Equitable Tolling Were Available, Plaintiffs
                Fail to Establish Due Diligence and Extraordinary
                Circumstances .........................................................................17

II.     The Court Should Dismiss the Amended Complaint and Vacate its
        August 1, 2025 Stay Order for Lack of Standing Because Plaintiffs'
        Harms from the Challenged Documents are not Redressable ...........................17

III.    Assuming Jurisdiction, the Application of Expedited Removal to
        Aliens Paroled at Ports of Entry as set forth in 8 C.F.R. §1.2 is a
        Proper Interpretation of the "Arriving in" Provision .........................................23

IV.     Plaintiffs Lack Standing Over the Challenged Actions, and,
        in any Event, the Challenged Actions are Consistent with the INA.................33

V.      The Challenged Actions are not Arbitrary and Capricious..............................37

VI.     The Court Lacks Authority Under the INA to Grant the Requested Relief ......40

        A.      Plaintiffs' Requests for Vacatur and Declaratory Relief are
                Precluded by 8 U.S.C. §1252(f)(1) .........................................................40

B.     Under Traditional Equitable Principles, Any Relief Must be Narrowly Tailored to Plaintiffs' Members and Should not Extend to Non-Parties ..........................................................................43

CONCLUSION..................................................................................................................... 45

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Perez*,
   585 U.S. 579 (2018)..................................................................................................... 48

*Akhtar v. Gonzales*,
   450 F.3d 587 (5th Cir. 2006)........................................................................................ 26

*Alli v. Decker*,
   650 F.3d 1007 (3d Cir. 2011) ....................................................................................... 42

*Am. Bioscience, Inc. v. Thompson*,
   269 F.3d 1077................................................................................................................. 4

*Barney v. Rogers*,
   83 F.3d 318 (9th Cir. 1996).......................................................................................... 25

*Boechler v. Commissioner*,
   596 U.S. 199 (2022)............................................................................. 10, 13, 14, 15, 16

*Bouchikhi v. Holder*,
   676 F.3d 173 (5th Cir. 2012).................................................................................. 23, 25

*California v. Texas*,
   593 U.S. 659 (2021)................................................................................................ 20, 44

*Coalition for Humane Immigrant Rights. v. Noem*,
   No. 25-5289, 2025 WL 2649100 (D.C. Cir. Sept. 12, 2025)................................... 8, 24

*Conroy v. Aniskoff*,
   507 U.S. 511 (1993)...................................................................................................... 28

*Cordon-Linarez v. Garland*,
   No. 3:24-cv-00488, 2024 WL 4652824 (M.D. Pa. 2024) ............................................ 19

*Corrales-Gonzalez v. Emmerich*,
   No. 24-CV-638-WMC, 2025 WL 1638423 (W.D. Wis. 2025) .................................... 19

*Deppenbrook v. Pension Benefit Guar. Corp*,
   778 F.3d 166 (D.C. Cir. 2015)........................................................................................ 4

*Doc Soc'y v. Rubio*,
   141 F.4th 1273 (D.C. Cir. 2025) .................................................................................. 22

*Doe v. Noem*,
    152 F.4th 272 (1st Cir. 2025) ................................................................. 31, 34

*Duarte v. Mayorkas*,
    27 F.4th 1044 (5th Cir. 2022) ...................................................................... 23

*E.V. v. Raycraft*,
    2025 WL 3122837 (N.D. Ohio Nov. 7, 2025) ............................................. 22

*Exxon Mobil Corp. v. Allapattah Svcs., Inc.,*
    545 U.S. 546 (2005) ...................................................................................... 28

*FAA v. Cooper*,
    566 U.S. 284 (2012) ...................................................................................... 23

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022) ...................................................................................... 40

*Gill v. Whitford*,
    585 U.S. 48 (2018) ........................................................................................ 43

*Gisbert v. U.S. Att'y Gen.*,
    988 F.2d 1437 (5th Cir.) ............................................................................... 29

*Government of Guam v. United States*,
    744 F.2d 699 (9th Cir.1984) ......................................................................... 31

*Hamama v. Adducci*,
    912 F.3d 869 (6th Cir. 2018) ........................................................................ 42

*Harrow v. Department of Defense*,
    601 U.S. 480 (2024) ................................................................................. 18, 19

*Hewitt v. United States*,
    606 U.S. 419 (2025) ...................................................................................... 34

*Irwin v. Dept. of Veterans Affairs*,
    498 U.S. 89 (1990) ........................................................................................ 16

*Jazz Pharms., Inc. v. Kennedy*,
    141 F.4th 254 (D.C. Cir. 2025) .................................................................... 26

*Karmamoldoyeva v. Warden*,
    2026 WL 266459 (S.D. Cal. Feb. 2, 2026) .................................................. 22

*Kennedy v. Mendoza-Martinez*,
  372 U.S. 144 (1963) ................................................................................................. 42

*Landon v. Plasencia*,
  459 U.S. 21 (1982) ................................................................................................... 25

*Lawyers Ass'n v. Reno*,
  *(AILA I)*, 18 F. Supp. 2d 38 (D.D.C. 1998) ............................................................ 8

*Lawyers Ass'n v. Reno*,
  *(AILA II)*, 199 F.3d 1352 (D.C. Cir. 2000) ............................................................ 8

*Lee v. United States*,
  570 F. Supp. 2d 142 (D.D.C. 2008) ......................................................................... 9

*Leng May Ma v. Barber*,
  357 U.S. 185 (1958) ........................................................................................... 25, 26

*Liao v. Bondi*,
  162 F.4th 519 (5th Cir. 2025) ................................................................................ 16

*Linda Univ. Med. Ctr. v. Sebelius*,
  684 F. Supp. 2d 42 (D.D.C. 2010) ........................................................................... 4

*Loughrin v. United States*,
  573 U.S. 351 (2014) ................................................................................................ 40

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................... 18, 20, 22

*M.M.V. v. Garland*,
  1 F.4th 1100 (D.C. Cir. 2021) ................................................................. 6, 8, 9, 10, 11

*Mallinckrodt Chem. Works v. Missouri ex rel. Jones*,
  238 U.S. 41 (1915) .................................................................................................. 44

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ................................................................................................ 41

*Mendoza-Linares v. Garland*,
  51 F.4th 1146 (9th Cir. 2022) .................................................................................. 6

*Montiel v. Raycraft*,
  2026 WL 32076 (W.D. Mich. Jan. 6, 2026) ........................................................... 22

v

*National Wrestling Coaches Ass'n v. Dep't of Educ.*,
    366 F.3d 930 (D.C. Cir. 2004).................................................................... 20

*Nutraceutical Corp. v. Lambert*,
    586 U.S. 188 (2019)................................................................................ 16

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019) ............................................................ 7

*Obregon-Calcedo v. Thompson*,
    No. 25-1048, 2025 WL 1805464 (D.N.J. 2025) ........................................ 19

*Privett v. Sec'y, Dep't of Homeland Sec.*,
    865 F.3d 375 (6th Cir. 2017)................................................................... 12

*Renal Physicians Ass'n v. HHS*,
    489 F.3d 1267 (D.C. Cir. 2007)............................................................... 22

*Resolute Forest Prods., Inc. v. U.S. Dep't of Agric.*,
    130 F. Supp. 3d 81(D.D.C. 2015) .............................................................. 4

*Rodriguez-Acurio v. Almodovar*,
    811 F. Supp. 3d 274 (E.D.N.Y. 2025) ...................................................... 22

*S.W. v. Noem*,
    2025 WL 3754067 & n.7 (S.D.N.Y. Dec. 29, 2025)................................... 22

*San Juan Cellular Tel. Co. v. PSC*,
    967 F.2d 683 (1st Cir. 1992) ................................................................... 42

*Scenic Am., Inc. v. DOT*,
    836 F.3d 42 (D.C. Cir. 2016)............................................................. 20, 21

*Serv. V. Nuclear Regul. Comm'n*,
    457 F.3d 941 (9th Cir. 2006)................................................................... 26

*Silguero v. CSL Plasma, Inc.*,
    907 F.3d 323 (5th Cir. 2018)................................................................... 28

*Stone v. INS*,
    514 U.S. 386 (1995)................................................................................ 16

*Succar v. Ashcroft*,
    394 F.3d 8 (1st Cir. 2005) ....................................................................... 35

*Texas v. EPA*,
  726 F.3d 180 (D.C. Cir. 2013)..................................................................................... 18

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025)...................................................................................... 3, 43, 44

*United States v. Argueta-Rosales*,
  819 F.3d 1149 (9th Cir. 2016) ..................................................................................... 30

*United States v. Arredondo-Martinez*,
  No. 10-525, 2011 WL 13196331 (C.D. Cal. 2011)...................................................... 19

*United States v. Balint*,
  201 F.3d 928 (7th Cir. 2000) ..................................................................................... 23

*United States v. Kwai Fun Wong*,
  575 U.S. 402 (2015).................................................................................................9, 11

*United States v. Texas*,
  599 U.S. 670 (2023).............................................................................................. 25, 50

*Visinscaia v. Beers*,
  4 F. Supp. 3d 126 (D.D.C. 2013) .................................................................................. 4

### STATUTES

5 U.S.C. §703............................................................................................................... 44

5 U.S.C. §705.............................................................................................. 18, 19, 23, 40, 44

5 U.S.C. §706.......................................................................................................... 39, 43

5 U.S.C. §7703(b)(1) ...................................................................................................11, 12

8 U.S.C. §1101(a)(13)(B) .............................................................................................. 30

8 U.S.C. §1158(a)(2)(B) ................................................................................................ 25

8 U.S.C. §1182(d)(5)................................................................................................. 23, 30

8 U.S.C. §1182(d)(5)(A) ........................................................................................... 23, 24

8 U.S.C. §1225............................................................................................................... 36

8 U.S.C. §1225(a)(1)...................................................................................................... 39

8 U.S.C. §1225(a)(2)...................................................................................................... 24

8 U.S.C. §1225(b)(1) ............................................................................................... 5, 6, 24

8 U.S.C. §1225(b)(1)(A) .................................................................... 5, 24, 31, 34, 42

8 U.S.C. §1225(c)(1) ..................................................................................................... 29

8 U.S.C. §1226(a) ......................................................................................................... 25

8 U.S.C. §1229a .............................................................................................. 7, 30, 36

8 U.S.C. §1252(a)(2) .......................................................................... 1, 2, 6, 7, 10

8 U.S.C. §1252(a)(2)(A) .................................................................... 2, 6, 7, 10, 11

8 U.S.C. §1252(e)(1)(A) ............................................................................................ 11

8 U.S.C. §1252(e)(3) .............................................................................. 1, 2, 6, 7, 8, 11

8 U.S.C. §1252(e)(3)(A) ................................................................................... 6, 8, 11

8 U.S.C. §1252(e)(3)(B) .................................................................... 2, 11, 12, 14, 16

8 U.S.C. §1252(f)(1) ........................................................................................ 40, 41, 42

8 U.S.C. §1255(a) ......................................................................................................... 35

28 U.S.C. §1295 ..................................................................................................... 11, 12

28 U.S.C. § 1295(a)(9) ................................................................................................. 11

28 U.S.C. § 2201(a) ...................................................................................................... 41

## RULES

FED. R. CIV. PRO. 15(c)(1)(A) ................................................................................... 15

## REGULATIONS

8 C.F.R. §1.2 ............................................................................. 1, 4, 22, 24, 25, 38

8 C.F.R. §212.5(e)(2)(i) ............................................................................................... 36

8 C.F.R. §235.3 ............................................................................................. 5, 7, 35, 36

8 C.F.R. §235.3(b)(1)(i) ................................................................................... 5, 7, 19

8 C.F.R. §235.3(b)(6) ................................................................................................... 35

8 C.F.R. §245.1(c)(8) ................................................................................................... 27

## <u>Other Authorities</u>

*Inspection and Expedited Removal of Aliens*
62 Fed. Reg. 10312 (Mar. 6, 1997). ................................................................. 31, 36

*Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans,*
90 Fed. Reg. 13611 (Mar. 25, 2025). ................................................................ 32, 40

ix

**INTRODUCTION**

Plaintiffs' motion for partial summary judgment should be denied, and this case dismissed, because this Court lacks jurisdiction to entertain Plaintiffs' challenges. This is particularly true with regard to Plaintiffs' challenge to the "arriving alien" regulation at 8 C.F.R. §1.2 where Plaintiffs' challenge is decades' late under binding D.C. Circuit precedent. And without the ability to prevail on their challenge to that regulation, there is no effective relief this Court can provide to Plaintiffs. Even if this Court did have jurisdiction, the Department of Homeland Security (DHS) has clear statutory authority under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) to apply expedited removal to aliens paroled at ports of entry under two provisions. DHS did not act arbitrarily and capriciously in concluding as much, and in any event any such errors are harmless under the APA.

Plaintiffs' case falls apart like a house of cards once this Court applies binding D.C. Circuit precedent that holds it lacks jurisdiction to review Plaintiffs' challenge to the "arriving alien" regulation at 8 C.F.R. §1.2, and to issue vacatur and declaratory relief because that challenge is untimely. First, 8 U.S.C. §1252(a)(2)(A) precludes review of Plaintiffs' challenge to the Department of Homeland Security's (DHS) policy, as implemented by 8 C.F.R. §§1.2 and 235.3(b)(1)(i), to apply expedited removal to aliens paroled at ports of entry. Second, 8 U.S.C. §1252(e)(3) does not preserve such review because Plaintiffs failed to bring their challenge to §1.2 "no later than 60 days" after the regulation was "first implemented" decades ago—in 1997. *See* 8 U.S.C. §1252(e)(3)(B).

Plaintiffs do not even dispute their challenge to the relevant regulation was not brought within the 60-day deadline, but claim that deadline can be equitably tolled because the Supreme Court has overturned long-established D.C. Circuit precedent holding that the deadline is

jurisdictional, despite the D.C. Circuit holding exactly the opposite only five years ago. *M.M.V. v. Garland*, 1 F.4th 1100, 1106 (D.C. Cir. 2021). In any event, Plaintiffs do not come close to identifying a Supreme Court case that is irreconcilable with Circuit precedent given the very clear jurisdictional language Congress employed in §1252(a)(2)(A). Because any jurisdiction preserved under §1252(e)(3)'s exception to §1252(a)(2)(A) is contingent on an alien filing a timely suit under §1252(e)(3)(B), Plaintiffs' attempt to escape the 60-day deadline fails. Moreover, their argument would fail anyway even if the Court found the 60-day deadline to be non-jurisdictional because: (1) that deadline is, at a minimum, a "mandatory" claims processing rule not subject to equitable tolling; and (2) further still, Plaintiffs have failed to demonstrate that equitable tolling is warranted in these circumstances where they do not explain why they could not have raised their challenge to the arriving alien regulation when they filed their original complaint, as they did with several of their other claims.

Because the Court lacks jurisdiction over the arriving alien claim, it also lacks jurisdiction to provide Plaintiffs with any relief here. That's because absent the ability to challenge the arriving alien regulation, they cannot establish Article III standing for purposes of the remaining claims in their amended complaint. Any harms to their members from the agency actions they challenge ("Challenged Actions") are not redressable because the arriving alien regulations, 8 C.F.R. §§1.2 and 235.3, provide an *independent* basis for DHS to apply expedited removal to paroled arriving aliens, and this Court lacks jurisdiction to entertain Plaintiffs' challenge to those. For these reasons, the Court should grant Defendants' cross-motion for summary judgment and dismiss the amended complaint.

Even if this Court had jurisdiction over Plaintiffs' suit, the application of expedited removal to aliens paroled at ports of entry as set forth in 8 C.F.R. §§1.2 and 235.3(b)(1)(i) and the

Challenged Actions is a proper interpretation of the "arriving in" provision in IIRIRA. Congress was and is well-aware of the entry fiction doctrine and its application to parolees. Congress presumed that any type of summary exclusion provision would naturally apply to such aliens given they are legally in the position of aliens stopped at the border. The legislative history presented by Plaintiffs supports Defendants' interpretation. Similarly, the agency records show that commentators were aware of the Attorney General's proposed rule in 1996/1997 to include paroled arriving aliens in the definition of arriving alien and that most commentators would have assumed without question (as Congress did) that "arriving in" encompasses such aliens.

DHS may also apply its designation authority to aliens whose parole has been revoked as long as they have not been present in the country for two years immediately prior to the date of the inadmissibility determination. That is the best reading of the provision's present perfect tense language—"has not been admitted or paroled," which includes arriving aliens whose parole has been revoked. Finally, Plaintiffs' arbitrary and capricious claim fails because the DHS documents are not inconsistent with each other and do not purport to justify applying expedited removal to paroled arriving aliens—but merely provide guidance on DHS officers' enforcement discretion under already-existing expedited removal authorities.

As to remedy, the Court lacks authority to grant Plaintiffs' request for vacatur and declaratory relief to the extent those forms of relief "restrain" the Government from removing an entire class of aliens pursuant to the expedited removal statute. 8 U.S.C. §1252(f)(1). And even if the Court retained such authority, any relief it issues must operate within traditional equitable limits. Vacatur and declaratory relief, like other equitable remedies, cannot go beyond awarding a *party* complete relief. *Trump v. CASA, Inc.*, 606 U.S. 831, 852-53 (2025). Thus, any relief must be narrowly tailored to Plaintiffs' members who are able to establish the necessary showing of harm.

3

## STATEMENT OF FACTS[1]

Defendants are filing simultaneously with this Memorandum a Response to Plaintiffs' Statement of Material Facts and Defendants' Statement of Material Facts. This Court does not require a statement of undisputed material facts for "cases in which judicial review is based solely on the administrative record." LCvR 7(h)(2). However, because Plaintiffs provided such a statement of facts in support of their motion for partial summary judgment (Dkt. 55-2), the Government provides a response and then proposes its own undisputed material facts.

## STANDARD OF REVIEW

Summary judgment under Rule 56 is the proper mechanism for deciding, as a matter of law, whether an agency action is consistent with the standard of review under the APA. *See Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010). Due to the limited role the court plays in reviewing the administrative record, the typical summary judgment standards set forth in Rule 56 are not applicable. *See Visinscaia v. Beers*, 4 F. Supp. 3d 126, 130 (D.D.C. 2013); *see also* Comment to Local Civil Rule 7(h). Rather, the Court should enter summary judgment for the agency unless it violated the APA by taking an action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Deppenbrook v. Pension Benefit Guar. Corp*, 778 F.3d 166, 171 (D.C. Cir. 2015); *Resolute Forest Prods., Inc. v. Dep't of Agric.*, 130 F. Supp. 3d 81, 89 (D.D.C. 2015). Whether the agency complied with the governing APA standard is entirely a question of law. *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

---

[1] Defendants incorporate by reference their prior briefing and submissions regarding the relevant background. *See* Dkt. 26, 36, 36-1, 36-2.

**ARGUMENT**

I.    **The Court Should Dismiss Plaintiffs' Challenge to the Arriving Alien Regulation for Lack of Jurisdiction Because that Challenge is Time-Barred.**

Plaintiffs argue the "arriving alien" regulation at 8 C.F.R. §1.2 is contrary to law. Dkt. 55-1 at 28. They request injunctive relief seeking vacatur of §1.2 as well as declaratory relief. *Id.* at 54. But as explained below, the Court lacks jurisdiction to review this claim because it is untimely.

To start, it is important to understand the regulatory scheme the Attorney General established soon after Congress enacted expedited removal in 1996. The regulatory provisions at 8 C.F.R. §§1.2, 235.3 work in tandem to implement DHS's statutory authority to apply expedited removal to paroled arriving aliens. Section 1.2 provides that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." In turn, §235.3(b)(1) delineates the "classes of aliens" subject to expedited removal, including "arriving aliens, *as defined in 8 CFR 1.2*." 8 C.F.R. §235.3(b)(1)(i) (emphasis added). Together, these provisions implement a policy, as first established in 1997, to apply expedited removal to parolees under the "arriving in" authority at 8 U.S.C. §1225(b)(1)(A)(i). Given the regulatory framework, Plaintiffs' challenge is really a challenge to *both* 8 C.F.R. §§1.2 and 235.3(b)(1)(i), as they argue that the Attorney General's longstanding interpretation of §1225(b)(1)(A)(i) through the promulgation of these provisions is unlawful.

   A. **Section 1252(a)(2)(A)'s Jurisdictional Bar Applies to Plaintiffs' Challenge to the Arriving Alien Regulation.**

The unambiguous text of 8 U.S.C. § 1252(a)(2)(A) and § 1252(e)(3) foreclose jurisdiction. Specifically, 8 U.S.C. §1252(a)(2) is entitled "Matters not subject to judicial review," and subsection (A) of that provision, entitled "Review relating to section 1225(b)(1))," provides that "*[n]otwithstanding any other provision of law* (statutory or nonstatutory), including *section 2241*

*of Title 28*, or any other habeas corpus provision, and sections 1361 and 1651 of such title, *no court shall have jurisdiction to review*" certain matters "relating to §1225(b)(1)." 8 U.S.C. §1252(a)(2)(A)(emphasis added). The statute then contains four romanette subsections providing for the comprehensive preclusion of review over matters relating to expedited removal. 8 U.S.C. §1252(a)(2)(A) (i)-(iv). These "four categories of matters … taken together, cover every aspect of the expedited removal process." *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1154 (9th Cir. 2022). "Congress could scarcely have been more comprehensive in its articulation of the general prohibition on judicial review of expedited removal orders." *Id.* at 1155.

In particular, 8 U.S.C. §1252(a)(2)(A)(iv), which precludes review of "procedures and policies adopted by the [Secretary] to implement the provisions of section 1225(b)(1)," clearly applies because Plaintiffs challenge DHS's "policy" to "implement the provisions of 1225(b)(1)" to paroled arriving aliens. *See M.M.V. v. Garland*, 1 F.4th 1100, 1106 (D.C. Cir. 2021) (applying the "procedures and policies adopted" bar); *see* Dkt. 28 at 23 (Plaintiffs stating that "an older regulation [§1.2] seems to allow DHS to apply expedited removal to paroled individuals"). Similarly, §1252(a)(2)(A)(ii) applies to preclude review over DHS's "decision" "to invoke" the expedited removal provisions to paroled arriving aliens like Petitioners through its promulgation of §§1.2 and 235.3.

Defendants' argument is bolstered by the fact that §§1252(a)(2)(A)(ii) and (iv) contain an exception, allowing for review of facial challenges to the Secretary's policies, including challenges to his regulations, if timely filed. 8 U.S.C. §1252(e)(3)(A), (B). Thus, §1252(a)(2)(A)(ii) and (iv) cover such claims, which are then funneled through §1252(e)'s exception.

Plaintiffs' argument to the contrary, *see* Dkt. 55-1 at 20-22, is unavailing. First, Plaintiffs have no answer as to why romanette (iv) does not apply given that §1.2., in conjunction with

6

§235.3(b)(1)(i), implement the Government's policy to apply expedited removal to aliens paroled at ports of entry—precisely the policy that Plaintiffs challenge in this case. Grasping at straws, Plaintiffs cite *O.A. v. Trump*, 404 F. Supp. 3d 109 (D.D.C. 2019), *see* Dkt. 55-1 at 22, but that case did not interpret any of the romanette provisions under §1252(a)(2)(A). Instead, it focused on the interpretation of §1252(e)(3), and its discussion in that regard supports Defendants' position: "§ 1252(e)(3) is about *challenges to expedited removal orders* and *the implementation of the expedited removal provisions* that Congress enacted in IIRIRA." *O.A.*, 404 F. Supp. 3d at 141. Unlike the challenged action in *O.A.*, which involved a regulatory asylum bar of general applicability that applied both in credible fear proceedings and in §1229a proceedings, Plaintiffs' challenge takes aim directly at the "implementation of the expedited removal provisions." *Id.*

Further, Plaintiffs contend without citing any authority that §1.2 is merely a "glossary provision" that "defin[es]" terms and does not "implement" or reflect a decision to "invoke" expedited removal. Dkt. at 55-1 at 21. That characterization, however, is squarely at odds with what they say in other parts of their brief, including their recognition that §1.2 "exposes" paroled arriving aliens "to expedited removal." Dkt. 55-1 at 33. In contradicting themselves, Plaintiffs overlook the fact that §235.3(b)(1)(i)—which sets forth the procedures for applying expedited removal—references §1.2, and that together these regulations "implement" DHS's policy choice to apply expedited removal to paroled arriving aliens. Indeed, Plaintiffs recognize this later in their brief, *see* Dkt. 55-1 at 21 ("§235.3(b)(1)(i) uses the 'arriving alien' regulation to demarcate who is amenable to expedited removal"), as well as in their prior briefing, *see* Dkt. 21 at 52, ¶176 (Plaintiffs stating in their amended complaint that "[t]he breadth of 8 C.F.R. §1.2's definition … means that, via 8 C.F.R. §235.3, more classes of individuals are subject to expedited removal"). They cannot pivot now to escape the reach of §1252(a)(2)(A)'s jurisdictional bar.

**B. Section 1252(e) Does Not Apply to Preserve Jurisdiction Over Plaintiffs' Challenge to the Arriving Alien Regulation.**

For multiple reasons, Plaintiffs cannot rely on the limited habeas jurisdiction that Congress preserved at 8 U.S.C. §1252(e)(3).

**1. Section 1252(e)(3) does not Confer Jurisdiction Because Plaintiffs' Challenge is Time-Barred.**

Section 1252(e)(3), entitled "Challenges on Validity of the System," states that review of determinations under section 1225(b) and its implementation is available but shall be limited to determinations of:

(i) whether such section, or any regulation issued to implement such section, is constitutional; or

(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A)(i)-(ii). Critically, the statute provides that such a challenge must be raised only through "an action instituted in the United States District Court for the District of Columbia" "no later than 60 days" after the rule or agency action "is *first implemented*." 8 U.S.C. §1252(e)(3)(A) and (B) (emphasis added).

a. The Court lacks jurisdiction to review the arriving alien regulation under 8 U.S.C. § 1252(e)(3)(B)'s 60-day jurisdictional deadline. *See M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021); *Am. Immigr. Lawyers Ass'n v. Reno (AILA I)*, 18 F. Supp. 2d 38, 47 (D.D.C. 1998) ("[T]he 60 days ran from a fixed point, the initial implementation of the challenged provisions"), *aff'd, Am. Immigr. Lawyers Ass'n v. Reno* (*AILA II*), 199 F.3d 1352, 1358 (D.C. Cir. 2000).

Plaintiffs do not contest that their amended complaint was not filed within the 60-day deadline but ask the Court to equitably toll that deadline. Dkt. 55-1 at 22. Plaintiffs "recognize that the D.C. Circuit previously held that Section 1252(e)(3)(B)'s deadline is jurisdictional." Dkt. 55-

8

1 at 23 (citing *M.M.V.* and *AILA*). They claim, however, that the Supreme Court has "effectively overrule[d]" that precedent. *Id.* But to show that a Supreme Court decision has overruled Circuit precedent a litigant must establish that the subsequent Supreme Court decision is irreconcilable with Circuit precedent. *Lee v. United States*, 570 F. Supp. 2d 142, 149 (D.D.C. 2008) ("This Court will attempt to reconcile all of the judgments binding upon it if possible").

Plaintiffs fail to cite any Supreme Court decision that is clearly irreconcilable with *M.M.V.* Instead, they begin by announcing the general principle that "'most time bars are nonjurisdictional'" and discussing Supreme Court cases from the last "two decades.'" Dkt. 55-1 at 23 (quoting *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015)). But in *M.M.V.*, 1 F.4th at 1109, the D.C. Circuit already considered and squarely rejected this argument. There, the plaintiffs also relied on *Kwai Fun Wong* for the proposition that time limits are jurisdictional only if clearly stated as such and claimed that *AILA's* holding had been "overtaken by recent Supreme Court decisions stressing that time limits are jurisdictional only if clearly stated as such." *Id.* (citing *Kwai Fun Wong*, 575 U.S. 402). In rejecting that argument, the D.C. Circuit explained in detail why the 60-day time bar "speaks in jurisdictional terms," and "conditions the jurisdictional grant on the limitations period." *Id.* (cleaned up).

The post-*M.M.V.* Supreme Court decisions which Plaintiffs cite do not move the needle either. *See* Dkt. 55-1 at 26 (claiming that the "reasoning in *Boechler*, *Harrow*, and *Riley* eviscerates the D.C. Circuit precedent …."). Nothing in the reasoning of those cases is inconsistent with *M.M.V.*'s analysis, much less "irreconcilable."

Take the Supreme Court's decision in *Harrow*, for example. Plaintiffs contend that *Harrow* rejected the approach in *M.M.V.* of "treating a time limit as jurisdictional because a separate provision cross-references the statute containing it." Dkt. 55-1 at 27. Not so. As explained

9

in more detail below, the jurisdictional statutes at issue in these cases are fundamentally different because §1252(a)(2)(A), which cross-references §1252(e), is a clear jurisdiction-*precluding* statute—a point Plaintiffs do not dispute—while the statute in *Harrow* (containing the cross-reference) is a jurisdiction-*granting* statute.

A review of *M.M.V.*'s discussion of §1252, is informative. First, §1252(a)(2)(A) states very clearly that "no court shall have *jurisdiction* to review" certain matters relating to expedited removal set forth in romanettes (i)-(iv). (Emphasis added). Thus, as the D.C. Circuit has held, this provision is explicitly jurisdictional and precludes courts' ability to review the specified matters.[2] *M.M.V.*, 1 F.4th at 1109 (§1252(a)(2)(A) satisfied the "clear-statement rule"); *see also Boechler v. Commissioner*, 596 U.S. 199, 203 (2022) ("[w]hen Congress enacts a jurisdictional requirement, it "mark[s] the bounds" of a court's power"). Critically, §1252(a)(2)(A) is *not* a jurisdictional-*granting* provision as the statute in *Harrow*; rather it states in categorical terms that there is no "jurisdiction to review" such matters. In fact, in *Riley v. Bondi*, the Supreme Court specifically pointed to §1252(a)(2)(A) as a "logical home[] for a true jurisdictional provision" because of its jurisdictional nature. 606 U.S. 259, 274 (2025) ("§ 1252(a)(2) [] is entitled "Matters not subject to judicial review").

Second, §1252(a)(2)(A) contains multiple cross-references to §1252(e), as exceptions to the jurisdictional bar. 8 U.S.C. §1252(a)(2)(A)(i), (ii), (iv) ("except as provided in subsection (e)"). "Subsection (a) thus *conditions jurisdiction* on satisfaction of the requirements of subsection (e)." *M.M.V.*, 1 F.4th at 1109 (emphasis added). And in turn, as the D.C. Circuit explained, "the first paragraph of subsection (e) likewise provides that 'no court may … enter declaratory, injunctive,

---

[2] Thus, the Supreme Court's decision in *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.* does not impact the jurisdictional analysis here. 603 U.S. 799 (2024). Whether or not Plaintiffs' suit is timely for purposes of the 6-year APA deadline is immaterial.

10

or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent paragraph of this subsection.'" *Id.* (citing 8 U.S.C. §1252(e)(1)(A)). "This formulation—restricting the courts rather than conferring rights and duties on the parties—is also framed in jurisdictional terms." *Id.* (citing *Kwai Fun Wong*, 575 U.S. at 410–11, n.4).

Finally, §1252(e)(1) itself *further* conditions jurisdiction "on satisfying the requirements that follow later in the subsection," including the time-bar in §1252(e)(3)(B). *M.M.V.*, 1 F.4th at 1109; 8 U.S.C. §1252(e)(1) ("except as specifically authorized in a subsequent paragraph of this subsection"). Indeed, §1252(e)(3)(A) authorizes judicial review "limited to" certain challenges to statutes, regulations, and written policies, "with a deadline for '[a]ny action instituted under this paragraph, *id.* § 1252(e)(3)(B).'" *Id.* "Section 1252 thus twice conditions" jurisdiction on the 60-day bar "which makes the time limit itself jurisdictional." *Id.* at 1109-10 (collecting cases at 1110).

Now compare §1252(a)(2)(A) to the jurisdictional provision in *Harrow* which contained the cross-reference at issue in that case. That provision, 28 U.S.C. §1295(a)(9), *grants* "[t]he United States Court of Appeals for the Federal Circuit" "exclusive jurisdiction" over "an appeal from a final order or final decision of the Merit Systems Protection Board, *pursuant to* sections 7703(b)(1) and 7703(d) of title 5." 28 U.S.C. §1295(a)(9) (emphasis added). In turn, 5 U.S.C. §7703(b)(1) instructs that a litigant must appeal a Merit Systems Protection Board decision to the Federal Circuit Court of Appeals "within 60 days after the Board issues notice of the final order or decision of the Board." *Harrow*, 601 U.S. at 485.

The Supreme Court held that, although 28 U.S.C. §1295 "spells out the Federal Circuit's subject-matter jurisdiction," its language referencing 5 U.S.C. §7703(b)(1)—"pursuant to section[] 7703(b)(1)"—did not render §7703(b)(1) jurisdictional. The Court focused on the phrase "pursuant

11

to," concluding that this "phrase often functions as a legalese synonym for 'under'" that "identifies the provision that served as the basis for the filing, but without addressing whether the latter conformed to the former's every requirement." *Id.* (internal citations omitted). In other words, the jurisdictional limit in §1295 is not inextricably linked to the time limit in §7703(b)(1) such that the Court would lack jurisdiction over the case if the time limit was not satisfied. The Court could have found "that Harrow filed his appeal 'pursuant to' § 7703(b)(1) even though he failed to satisfy that section's time bar." *Id.* at 487 ("Section 1295(a)(9)'s use of the words 'pursuant to' does not 'plainly show' that § 7703(b)(1)'s deadline has 'jurisdictional consequences.'") (citation omitted).

The Court's reasoning in *Harrow* is inapplicable to this case for at least two reasons. First, unlike §1295(a)(9), §1252(a)(2)(A) is not a jurisdictional grant; rather, it *forecloses* all jurisdiction related to expedited removal *unless* §1252(e) expressly restores jurisdiction. Thus, §1252(e)(3)(B) must be read to condition any jurisdiction under §1252(e)(3) on meeting the 60-day statute of limitations. *See M.M.V.*, 1 F.4th at 1109–11. Another way to think about this is that an untimely suit under §1252(e)(3) cannot logically create jurisdiction if Congress has shut off jurisdiction in the first place through §1252(a)(2)(A). Using *Harrow*'s language, Congress has turned the courts' "power" "off" and only a timely suit under §1252(e)(3) can provide jurisdiction. *See* 601 U.S. at 488; *see also Privett v. Sec'y, Dep't of Homeland Sec.*, 865 F.3d 375, 381 (6th Cir. 2017) (court lacked jurisdiction because an exception did not apply and thus "the general limitation on jurisdiction of § 1252(a)(2)(B)(ii) applies"). At a minimum, the differences in the statutory schemes between *M.M.V.* and *Harrow* clearly undermine Plaintiffs' contention that *M.M.V.* and *Harrow* are irreconcilable.

Second, *Harrow* is also distinguishable because it focused on the specific "pursuant to" language in the statute at issue (§1295) while §1252(a)(2)(A) uses clearer and more precise

12

language in cross-referencing §1252(e)—"except as provided in subsection (e)." To be clear, for the reasons explained above, the Government does not need to establish that the jurisdictional bar in §1252(a)(2)(A) is directly linked to the time limit in §1252(e) because, unlike in *Harrow*, the former provision clearly precludes jurisdiction, full stop. But, in addition to that distinguishing feature, the cross-referenced language in §1252(a)(2)(A) does not raise the same problematic issues the Supreme Court identified with "pursuant to" in *Harrow*. *See* 601 U.S. at 486 ("'Pursuant to' is one of those little phrases that can mean a raft of things.").

b. Plaintiffs' generic discussion of *Boechler*, *P.C.*, 596 U.S. 199 and *Riley*, 606 U.S. 259, *see* Dkt. 55-1 at 26-27, provides no basis to find those cases irreconcilable with *M.M.V* either. *Boechler* involved a narrow statutory question interpreting a provision that states a taxpayer "may, within 30 days . . . petition the Tax Court for review of such determination (and the Tax Court shall have jurisdiction with respect to such matter"). 596 U.S. at 204 (quoting 26 U.S.C §6330(d)(1)). The issue was whether the language in the parenthetical, "such matter" refers only to the immediately preceding phrase: "petition the Tax Court for review of such determination" or to the entire first clause of the sentence, sweeping in the 30-day deadline and granting jurisdiction only over petitions filed within that time. The Supreme Court found the language of the jurisdictional parenthetical created many plausible interpretations. *Boechler* is clearly limited in its application based on the "awkward structure" of the provision at issue given that the term "'such matter' lacks a clear antecedent." *See* 596 U.S. at 204. More fundamentally, like *Harrow*, *Boechler* is distinguishable because it involved a jurisdictional-*granting* provision linked to a time limit. Unlike *Boechler*, there is no ambiguity that §1252(a)(2)(A) precludes jurisdiction, and that an untimely suit under §1252(a)(3)(B) lacks any basis of jurisdiction.

*Riley*, 606 U.S. 259, is similarly distinguishable because that case as well did not involve a true jurisdiction-divesting statute akin to §1252(a)(2)(A). Rather, it involved a typical statutory filing deadline—§1252(b)(1)'s 30-day deadline for the filing of a petition for review for final orders of removal—which does not speak to the authority of the courts. *Id.* at 274. Here, in contrast, §1252(a)(2)(A) by its plain language—"no court shall have jurisdiction to review"—bars review and the only review that is preserved under §1252(e)(3) is contingent on a timely-filed action.

Nor does Plaintiffs' invocation of a laundry list of canons support their position in light of §1252(a)(2)(A)'s clear jurisdictional bar. *See* Dkt 55 at 24-25. The D.C. Circuit addressed a similar argument in *M.M.V.* and reasoned that the presumption of reviewability "'like all presumptions used in interpreting statutes, may be overcome by specific language that is a reliable indicator of congressional intent.'" *M.M.V.*, 1 F.4th at 1107. "Here, Congress obviously foreclosed judicial review" and thus has overcome that presumption. *Id.* Similarly, regarding the doctrine of constitutional avoidance, the *M.M.V.* Court reasoned "that interpretive tool does not apply if the statute at issue is unambiguous" as is the case with §1252(a)(2)(A) and §1252(e)(3)(B). *Id.* Moreover, canons do not assist Plaintiffs in this context where they are asking the Court to hold that D.C. Circuit precedent has been overruled. In these circumstances the burden is on Plaintiffs to identify a Supreme Court case that is irreconcilable with *M.M.V.* Plaintiffs do not even come close.

c. Applying these principles, Plaintiffs challenge is untimely even under this Court's interpretation of the time bar. In its stay opinion, the Court held that the 60-day period runs from the date of the agency actions that Plaintiffs challenge, the earliest of which was January 23, 2025

14

(date of Huffman Memo).[3] Dkt. 41 at 38-39. The Court found Plaintiffs' claims timely because their complaint was filed on March 24, 2025—within 60 days of the earliest challenged agency action. But the Court did not address whether Plaintiffs' challenge to the arriving alien regulation is timely. That challenge is clearly time-barred because it was not raised until June 11, 2025, when Plaintiffs filed their amended complaint and added Claim 5, arguing for the first time that the arriving alien regulation was *ultra vires*. *See* Dkt. 21, ¶¶171-183. The latest agency action that Plaintiffs challenge (CHNV parole termination notice) was issued on March 24, 2025. Sixty days from that date is May 24, 2025. But the amended complaint was not filed until June 11, 2025, beyond the 60-day period for challenging *any* of the agency actions at issue in this case. And because the D.C. Circuit has held that the 60-day period is jurisdictional, the added claims do not "relate back" to the date of the original complaint. *See* Fed. R. Civ. Pro. 15(c)(1)(A); *AILA*, 18 F. Supp. 2d at 47 (stating there is no "relation back" under Rule 15(c) and finding "new plaintiffs added in the amended Wood complaint are time barred since their claims were filed after May 31, 1997 [date 60-day period ended]); *see also AILA II*, 199 F.3d at 1357 (affirming "substantially for the reasons stated in the [district] court's thorough opinion").

### 2. Even if the 60-day Time Bar is not Jurisdictional, it is Mandatory and Requires Dismissal of Plaintiffs' Claim.

Plaintiffs incorrectly assume that §1252(a)(2)(A) can be equitably tolled if it is not jurisdictional. Dkt. 55-1 at 28. However, even if the Court concludes that §1252(a)(3)(B) is not jurisdictional, it should find that it is a mandatory claims processing rule not subject to equitable

---

[3] Defendants disagree with this holding. Their position, as previously briefed, is that the 60-day period began to run when the arriving alien regulation was "first implemented" on April 1, 1997. *See* Dkt. 26 at 38-39. But that disagreement is immaterial because even applying the Court's 60-day time-bar analysis, Plaintiffs are out of time to challenge those regulations as we explain in the text.

tolling. A mandatory but non-jurisdictional deadline must be given effect by a court where raised by a party, but is subject to waiver and forfeiture. *See Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 193 (2019). While "nonjurisdictional limitations periods are presumptively subject to equitable tolling," *Boechler*, 596 U.S. at 209 (citing *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)), that presumption may be rebutted.

Here, the presumption of equitable tolling is rebutted based on Supreme Court precedent and the text of §1252(e)(3)(B). As Plaintiffs themselves observe, *see* Dkt. 55-1 at 25, the language of that section ("Any action instituted under this paragraph *must be filed no later than 60 days after* ….") is almost identical to that of a neighboring provision at issue in *Riley*, §1252(b)(1) ("a petition for review *must be filed not later than 30 days after* ….") (emphasis added). That is significant because in *Riley*, while the Supreme Court clarified that the 30-day filing deadline at §1252(b)(1) is not jurisdictional, it preserved its holding from its prior precedent in *Stone v. INS*, 514 U.S. 386, 405 (1995), that the deadline is mandatory. 606 U.S. at 276–77; *see Navarrete v. Bondi*, __ F.4th __, No. 24-2776, 2026 WL 797428, at *3 (9th Cir. Mar. 23, 2026) (*Riley* held that "§ 1252(b)(1)'s 30-day deadline is not jurisdictional, but rather is a mandatory claims-processing rule, and thus is subject to ordinary principles of waiver and forfeiture"); *Liao v. Bondi*, 162 F.4th 519, 525 (5th Cir. 2025) ("Because *Riley* holds that §1252(b)(1) is a claim-processing rule and the statutory text confirms it is mandatory, §1252(b)(1)'s thirty-day filing deadline must be enforced against Liao's petition") (internal citation omitted). That in and of itself should be dispositive. But in addition, the phrase "*must* be *filed no later than*" contains "emphatic" language signaling Congress's intent that the time limit be strictly enforced, *see Nutraceutical Corp.*, 586 U.S. at 193 (focusing on FRAP 5(a)(2)'s similar language which directs that any petition for permission to

16

appeal "must be filed within the time specified"), with no textual indication of the availability of equitable tolling, *see Boechler*, 596 U.S. at 209.

### 3. Even if Equitable Tolling Were Available, Plaintiffs Fail to Establish Due Diligence and Extraordinary Circumstances.

Alternatively, the Court should not toll the 60-day deadline because Plaintiffs have failed to show both: (1) due diligence in meeting the deadline; and (2) extraordinary circumstances preventing them from doing so. Plaintiffs attempt to meet these requirements by asserting that they raised their challenges "swiftly" after the Challenged Actions were issued and that they could not have brought suit prior to those Actions because of "standing or ripeness" problems. Dkt. 55-1 at 28. What Plaintiffs fail entirely to explain is why they could not have raised their challenge to the arriving alien regulation in their original complaint (which the Court found timely) and which included several of their other challenges to expedited removal. In fact, Plaintiffs filed their original complaint on March 24, 2025 asserting three challenges to expedited removal: (1) violating the INA; (2) arbitrary and capricious; and (3) violating Due Process. Plaintiffs waited almost two and a half months before filing an amended complaint (on June 11, 2025), which for the first time challenged the arriving alien regulation. Under these circumstances, Plaintiffs are not entitled to equitable tolling and their challenge should be dismissed for untimeliness.

## II. The Court Should Dismiss the Amended Complaint for Lack of Standing Because Plaintiffs' Harms from the Challenged Documents are not Redressable.

Plaintiffs cannot establish Article III standing because any harms to their members from the Challenged Actions are not redressable. That is because the arriving alien regulations, 8 C.F.R. §§1.2 and 235.3, provide an independent basis for DHS to apply expedited removal to paroled arriving aliens. And because Plaintiffs' challenge to the arriving alien regulation at §1.2 is jurisdictionally barred because it is untimely by decades, the lack of redressability is dispositive

17

and requires dismissal of all the claims in the amended complaint, including their Due Process claim, *see* Dkt. 21, ¶¶159-162, which they do not assert in their motion for summary judgement.

Plaintiffs have not established Article III standing because they fail to show that it is "likely" their members' alleged injury—being subject to expedited removal—will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation omitted). [S]tanding is not dispensed in gross; rather, [P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

As Plaintiffs conceded previously in the context of the §705 briefing, DHS has independent authority—apart from the Challenged Actions—to apply expedited removal to aliens paroled at ports of entry. Dkt. 35 at 6:22-7:1. That concession dooms their request for permanent relief with regard to the Challenged Actions as well as their other claims in the amended complaint. *See* Dkt. 55-1 at 44 (requesting permanent vacatur of DHS documents); *Texas v. EPA*, 726 F.3d 180, 198 (D.C. Cir. 2013) (dismissing challenge to rules for lack of standing because vacating those rules "would not redress the State petitioners' injury," which was separately caused by statute).

In its prior opinion, the Court found redressability likely satisfied in the context of Plaintiffs' §705 request based on the "factual record." The Court reasoned that, although "DHS has long asserted the authority to apply expedited removal to parolees," it "only beg[a]n doing so *en masse* since the Challenged Actions" and that made Plaintiffs' injuries redressable. Dkt. 41 at 34. But there are at least two reasons why the Court should reconsider its conclusion on this issue.

First, on August 14, 2025, Defendants filed an emergency motion for a stay of the district court's stay order pending its appeal of this Court §705 stay. *See Coal. for Humane Immigrant Rts. v. Noem*, No. 25-5289, 2025 WL 2649100 (D.C. Cir. Sept. 12, 2025). The D.C. Circuit's denial of

18

the Government's motion supports Defendants' position here. Judge Walker's concurring opinion offers clarity on the Court of Appeals' order, stating "[t]he district court's order imposes no irreparable harm. That's because it is best read not to preclude the Government from applying expedited removal to parolees pursuant to 8 C.F.R. §§1.2 and 235.3(b)(1)(i)." *Id.* at *1. As Judge Walker observed, and the entire panel suggested, the district court's stay of certain agency actions does not enjoin or restrain the Government from applying expedited removal to parolees to the extent they fall within the "arriving alien" definition at §1.2 and §235.3(b)(1)(i). *See id.* And while the panel majority did not join Judge Walker in explicitly stating so, its reasoning is consistent with that view. By denying the motion because Defendants did not specifically assert that they could not apply expedited removal against paroled arriving aliens pursuant to these regulations, the panel majority implicitly suggested Defendants could do so. *Id.* (explaining that defendants "make no assertion that the district court's order" "precludes the Government from applying expedited removal to parolees, notwithstanding 8 C.F.R. §§1.2 and 235.3(b)(1)(i)"). Thus, the D.C. Circuit's order supports the Government's argument.

Second, Defendants submit additional D.C. Circuit authority discussed below that was not cited in its opposition to the §705 motion. Even assuming for the moment that DHS began applying expedited removal to parolees "en masse" after the Challenged Actions went into effect, that would not cure Plaintiffs' redressability problem.[4] The question here is not whether Plaintiffs' injury would be redressed based on DHS's past conduct. Plaintiffs are seeking prospective relief—not

---

[4] In several cases, DHS applied expedited removal to paroled arriving aliens *prior to 2025*. *United States v. Arredondo-Martinez*, No. 10-525, 2011 WL 13196331, at *1, *4 (C.D. Cal. 2011), *aff'd*, 492 F. App'x 823 (9th Cir. 2012); *Cordon-Linarez v. Garland*, No. 3:24-cv-00488, 2024 WL 4652824 (M.D. Pa. 2024), *appeal pending*, No. 24-3068 (3d Cir.); *Corrales-Gonzalez v. Emmerich*, No. 24-CV-638-WMC, 2025 WL 1638423 (W.D. Wis. 2025) (alien paroled and given expedited removal order issued on same day in July 2023); *Obregon-Calcedo v. Thompson*, No. 25-1048, 2025 WL 1805464 (D.N.J. 2025) (2015 parole and 2024 expedited removal order).

damages for past actions. The operative question under Article III is thus whether Plaintiffs' injury would "likely" be redressed going forward in the event of a favorable court ruling. *See Lujan*, 504 U.S. at 561 (quotation omitted). Because DHS can, and is, applying 8 C.F.R. §§1.2 and 235.3 to the same group of aliens after the Challenged Actions were stayed, Plaintiffs cannot establish their members' injury will likely be redressed by permanent relief they seek.

Plaintiffs argue that vacating the Challenged Actions "would redress at least part of Plaintiffs' injuries." Dkt. 55-1 at 18. But Plaintiffs cannot establish what "part" of their injury would be redressed if DHS is still applying 8 C.F.R. §§1.2 and 235.3, in its *enforcement discretion*, to remove the same previously paroled aliens who Plaintiffs represent. Indeed, given this broad enforcement discretion, it is impossible for Plaintiffs to show that vacatur of the Challenged Actions will preclude expedited removal of even *one* of their members. *See United States v. Texas*, 599 U.S. 670, 689-93 (2023) (Gorsuch, J., concurring) (injury from DHS prosecutorial guidance not redressable by vacatur because immigration officers would still have enforcement discretion); *see also Lujan*, 504 U.S. at 561 (plaintiff has the burden to establish standing). It is thus "merely speculative" that a ruling on the three actions Plaintiffs challenge would have any impact on DHS subjecting their members to expedited removal; Article III redressability is therefore wanting here. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotations omitted).

Courts have repeatedly concluded that plaintiff speculation about the effect of vacating agency action does not establish redressability. For example, the D.C. Circuit concluded that a plaintiff failed to establish redressability where the plaintiff challenged only interpretive guidelines but did not challenge the "underlying … [r]egulations" that permitted the same practices plaintiff sought to challenge. *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 940 (D.C.

20

Cir. 2004), *abrogated on other grounds by Perry Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017).

The D.C. Circuit similarly held that plaintiffs failed to establish redressability when seeking to vacate Department of Transportation guidance interpreting agreements with states to allow digital billboards subject to certain criteria because it was mere speculation whether plaintiffs' injury—having to expend resources fighting states' approvals of digital billboards— would be remedied by vacating the guidance. *Scenic Am., Inc. v. DOT*, 836 F.3d 42, 50-53 (D.C. Cir. 2016). Plaintiffs there presented no evidence indicating whether fewer such billboards would actually be approved absent the guidance. *Id.* at 51, 53. Here, it is even more clear. Plaintiffs cannot possibly show their parolee members are less likely to be subjected to expedited removal if the Court vacates the Challenged Actions because there is no way to predict how DHS will exercise its enforcement discretion under the arriving alien regulations. More generally, redressability is absent where (as here) plaintiffs fail to challenge authority independently permitting the same conduct. *See*, *e.g.*, *Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941, 955 (9th Cir. 2006) (redressability was lacking because plaintiffs did not challenge another regulation authorizing the same conduct).

Moreover, whether Plaintiffs have established redressability depends on whether Defendants would "behave any differently in the absence of the" challenged actions. *Scenic Am.*, 836 F.3d at 52. Plaintiffs have provided *no* evidence that staying the challenged actions would cause DHS not to apply expedited removal to previously paroled arriving aliens, especially considering that unchallenged regulations would explicitly permit such actions. Even if Plaintiffs are correct that the Challenged Actions contributed to expedited removal being applied to previously paroled aliens more often than before, "the undoing of the governmental action" here

21

"will not undo the harm, because the new status quo is held in place by other forces." *Renal Physicians Ass'n v. HHS*, 489 F.3d 1267, 1278 (D.C. Cir. 2007). Plaintiffs simply assume—without evidence—that DHS would apply expedited removal to Plaintiffs' members less often if the Challenged Actions are stayed. Article III demands more. *See*, *e.g.*, *Lujan*, 504 U.S. at 561.

In another recent case, the D.C. Circuit determined Plaintiffs' claims were not likely redressable where, even if a mandatory policy for visa applicants to provide social-media accounts with applications were vacated, regulations still permitted consular officers to consider a visa applicant's social-media history on a case-by-case basis. *Doc Soc'y v. Rubio*, 141 F.4th 1273, 1278 (D.C. Cir. 2025). Specifically, the Court held that because "a consular officer may still scrutinize a visa applicant's social media activities even if" a policy requiring visa applicants to provide their social-media accounts was vacated, Plaintiffs' alleged speech harms may not be redressed by a decision vacating the mandatory policy. *Id.*

So too here. Plaintiffs' members' injuries are not redressable where DHS can still subject those members to expedited removal under the regulations. And, in particular, redressability is clearly a problem for Plaintiffs because of DHS's broad enforcement discretion to apply expedited removal. In any event, as the many cases about the issue in federal courts demonstrate, DHS has used and is using 8 C.F.R. §§1.2 and 235.3 to apply expedited removal to previously paroled arriving aliens.[5]

---

[5] *E.g.*, *Karmamoldoyeva v. Warden*, 2026 WL 266459, at *6 (S.D. Cal. Feb. 2, 2026); *Montiel v. Raycraft*, 2026 WL 32076, at *3 (W.D. Mich. Jan. 6, 2026); *S.W. v. Noem*, 2025 WL 3754067, at *2,*5 & n.7 (S.D.N.Y. Dec. 29, 2025); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 304-08 (E.D.N.Y. 2025); *E.V. v. Raycraft*, 2025 WL 3122837, at *7 (N.D. Ohio Nov. 7, 2025).

III.    **Assuming Jurisdiction, the Application of Expedited Removal to Aliens Paroled at Ports of Entry as set forth in 8 C.F.R. §1.2 is a Proper Interpretation of the "Arriving in" Provision**.

Defendants acknowledge that in its §705 stay opinion, the Court found it likely that §1.2 is "*ultra vires* to the extent it subjects parolees to expedited removal." Dkt. 41 at 53. As explained below, however, §1.2 is consistent with Congress's intent, and the legislative history and agency records only support that point.

1. In its prior decision, the Court adopted Plaintiffs' interpretation of "arriving," based on dictionary definitions. *Id.* at 90-91. But dictionary definitions are not dispositive when interpreting a term that has a specialized meaning in the law. *FAA v. Cooper*, 566 U.S. 284, 291-92 (2012); *Bouchikhi v. Holder*, 676 F.3d 173, 177 (5th Cir. 2012) ("arriving alien" is "legal term of art"). The immigration and statutory context of the term "arriving" strongly suggests Congress was referring to a *status* and not just a historical event (the alien's physical arrival). The use of the present-progressive tense, "arriving," signals a status that continues to be true; an alien "arriving in" the United States without valid documentation has not been admitted and continues to not be admitted.  *See United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000) ("[T]he present progressive tense … generally indicates continuing action[.]").  For a paroled arriving alien, the parole statute makes clear that parole "shall not be regarded as an admission" and "when the purposes of such parole … have been served" the alien "shall forthwith" be returned to custody and "shall continue to be dealt with in the same manner as that of any other applicant for admission."  8 U.S.C. §1182(d)(5)(A).

Thus, an alien granted parole at a port of entry remains an unadmitted arriving alien and hence, in the *status* of an alien "arriving in" the United States. *See Duarte v. Mayorkas*, 27 F.4th 1044, 1058 (5th Cir. 2022) ("[A]lthough a paroled alien is physically allowed to enter the country,

23

the legal status of the alien is the same as if he or she were still being held at the border waiting for his or her application for admission to be granted or denied."). Congress surely meant to include such aliens under §1225(b)(1)(A)(i).

This interpretation of "arriving" is supported by the statutory context because Congress has used that term in other provisions to denote status. *See* 8 U.S.C. §1225(a)(2) ("An *arriving alien who is a stowaway* is not eligible to apply for admission….") (emphasis added). Additionally, the inadmissibility ground at 8 U.S.C. §1182(a)(9)(A)(i) for aliens previously removed is entitled: "Arriving Aliens." Notably, the section under that heading references an "alien who has been ordered removed under *section 1225(b)(1)* …." suggesting Congress viewed aliens under §1225(b)(1)(A)(i) as having the *status* of "arriving aliens" and thus within the class of aliens "arriving in" the United States.  (Emphasis added).

Plaintiffs cite other provisions in §1225(b)(1) and statutes that use some form of the term "arrive." Dkt. 55-1 at 20-23. But those references do not undermine Defendants' interpretation of §1.2. No one disputes paroled arriving aliens have physically reached a port of entry and been paroled.  That says nothing, however about the interpretation of "arriving in" for purposes of *expedited removal of parolees*, who have not been admitted, and whose release is temporary and subject to the broad discretion of the Secretary.[6] 8 U.S.C. §1182(d)(5)(A). As discussed above,

---

[6] For similar reasons, Plaintiffs are wrong in suggesting the Government made a contrary argument" in *Noem v. Al Otro Lado*, No. 25-5 (Jan. 6, 2026). *See* Dkt. 55-1 at 30. There the Government made the unremarkable argument that "an alien who is stopped in Mexico does not 'arrive in' the United States" for purposes of asylum eligibility because "arrives in" "refers to entering a specified place, not just coming close to it." *Al Otro Lado*, No. 25-5, Brief for Petitioners at 11.  There is nothing contradictory in the Government's position.

24

because parole does not change an alien's immigration *status*, a paroled alien continues to have the status of an alien "arriving in" the United States.[7]

2. Decades of case law support Defendants' position.  That case law and statutory history show Congress's awareness of the term "arriving" as used in the analogous context of "exclusion" proceedings. Prior to the enactment of expedited removal in IIRIRA, aliens arriving at a port of entry without valid documentation were placed in exclusion proceedings as "excludable," while those who entered the country and were "deportable," were placed in "deportation" proceedings. 8 U.S.C. §§1226(a), 1251(a), 1252(b) (1994); *Leng May Ma*, 357 U.S. at 187. In exclusion proceedings an immigration officer had authority to determine whether an "*arriving alien*" detained for further inquiry "shall be allowed to enter or shall be excluded and deported."  8 U.S.C. §1226(a) (1994) (emphasis added). Aliens in exclusion proceedings had significantly fewer "procedural protections and [] substantive rights." *Landon v. Plasencia*, 459 U.S. 21, 25-27 (1982) (detailing differences); *see also Leng May Ma*, 357 U.S. at 187.

Importantly, the Supreme Court held that parole at the border did not entitle an "arriving alien" to be placed in deportation proceedings because such parole does not constitute an "entry." *Leng May Ma*, 357 U.S. at 186-88. This was true even when parole was granted for humanitarian reasons and immigration authorities did not initiate exclusion proceedings until later. *E.g.*, *Barney*

---

[7] Plaintiffs' faulty analysis of the term "arriving in" leads to their erroneous conclusion that §1.2 is inconsistent with 8 U.S.C. §1158(a)(2)(B)'s one-year filing deadline, which requires the alien to file an asylum application "within 1 year after the date of the alien's *arrival* in the United States," (emphasis added), as well as the implementing regulation for that statutory bar. *See* Dkt. 55-1 at 33 n. 9. The fact that a parolee may have the status of an "arriving alien" "does not support [the] theory that a fictionally prolonged 'arriving' is continuously carried on during that time." *Bouchikhi*, 676 F.3d at 178 (rejecting paroled arriving alien's claim of having filed a timely asylum application because his "arriving" status was continuing rendering his application timely).

*v. Rogers*, 83 F.3d 318, 320 (9th Cir. 1996) (alien properly placed in exclusion proceedings after paroled into United States pursuant to a prior grant of advance parole) (relying on *Leng May Ma*).

Thus, prior to IIRIRA, "[p]aroled aliens were considered arriving aliens" because parole was not considered an entry. *Akhtar v. Gonzales*, 450 F.3d 587, 590 (5th Cir. 2006). In IIRIRA, Congress eliminated exclusion and deportation proceedings and replaced them with "removal proceedings." *See* 8 U.S.C. §1229a. But critically, Congress also created expedited removal for aliens "arriving in the United States," like those "arriving aliens" previously placed in exclusion proceedings. 8 U.S.C. §1225(b)(1)(A)(i).

Although the pre-IIRIRA exclusion cases primarily focused on the term "entry" rather than "arriving," they support Defendants' interpretation of "arriving in." Congress is presumed to have legislated with awareness of the prior case law holding that an alien's parole at a port of entry does not exempt the alien from exclusion proceedings. *See Jazz Pharms., Inc. v. Kennedy*, 141 F.4th 254, 263 (D.C. Cir. 2025). Analogously, under the current scheme, parole of an alien "arriving" at a port of entry should not exempt the alien from expedited removal proceedings. It was against this backdrop that then-Attorney General Reno issued a regulation in 1997 defining "arriving alien" to include paroled arriving aliens. *See* 62 Fed. Reg. 10,312, 10,330 (Mar. 6, 1997); *see also* 8 C.F.R. §1.2.

3. Plaintiffs attempt to bolster their erroneous interpretation of the INA by claiming §1.2 leads to "further unlawful consequences." Dkt. 55-1 at 33. But these "consequences," which are not unlawful, provide no insight into whether Congress intended for expedited removal to apply to paroled arriving aliens.

Take, for example, Plaintiffs' contention that it would be "odd" to treat parolees worse than illegal entrants. *Id.* at 34. That argument falls flat for multiple reasons. First, it ignores that

26

Congress can choose to balance the burdens and benefits of immigration law as it sees fit; and here, Congress granted many benefits to parolees, including not accruing unlawful presence, and, in some cases, receiving work authorization, *see* 90 Fed. Reg. 13611, 13612 (Mar. 25, 2025)— benefits that do not apply to aliens who enter illegally. Further, since the time of this Court's opinion, two judges of the D.C. Circuit have rejected a similar argument explaining that "[p]arolees enter on the condition and with the understanding that they remain legally at the border." *Make the Rd. New York v. Noem (MRNY)*, No. 25-5320, 2025 WL 3563313, at *23 (D.C. Cir. Nov. 22, 2025). "Any connections they make within the United States are with the knowledge of their unentered status, and so they develop no reasonable expectations or reliance interests based on their continued presence." *Id.* Moreover, because parolees have been processed at the border, there is "a lower risk of erroneous removal" from expedited removal. *Id.* at *24.

Plaintiffs also point to former 8 C.F.R. §§245.1(c)(8), 1245.1(c)(8) (1998), which rendered arriving aliens placed in removal proceedings effectively ineligible for adjustment of status.  Dkt. 55-1 at 34-35. As Plaintiffs note, circuits were divided regarding whether that regulation was consistent with the adjustment of status statute. *Id.* at 35 n.10. But those cases support Defendants' position. Tellingly, none of the circuits found the arriving alien regulation at §1.2 to be *ultra vires* as applied to parolees; rather they applied that regulation to conclude that the aliens were arriving alien, and therefore subject to the §245.1(c)(8) bar, with some circuits concluding that the bar (not the arriving alien regulation) was contrary to law. *See*, *e.g.*, *Bona v. Gonzales*, 425 F.3d 663, 667–68 (9th Cir. 2005) ("Accordingly, Delia, as a parolee, was properly deemed an "arriving alien" within the meaning of section 1.1(q).").

4. Next, Plaintiffs spend almost ten pages in an effort to show that past Congressional bills (mostly ones that were unsuccessful) support their position. Dkt. 55-1 at 35-44. These arguments

27

fail. As a preliminary matter, legislative history, especially that involving failed legislative efforts, is often unreliable, *Exxon Mobil Corp. v. Allapattah* Svcs., Inc., 545 U.S. 546, 568–69 (2005), and therefore "a last resort for ambiguous statutes," *Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 329 (5th Cir. 2018). "[T]he use of legislative history [is] the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends." *See Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J. concurring). This case is no different.

Plaintiffs rely heavily on a declaration by Yael Schacher (Schacher Decl., Dkt 55), a historian "retained by counsel for the Plaintiffs," *id.* at ¶5, who attaches numerous legislative history documents to his declaration, and characterizes those documents in various ways.[8] Plaintiffs' main point (relying heavily on Schacher)—that Congress was concerned about "people attempting to physically come into the country without valid entry documents," *see* Dkt. 55-1 at 35, is not fully accurate. Schacher describes his research as establishing that Congress envisioned applying expedited removal to individuals "physically" seeking entry, Schacher Decl., ¶¶ 10, 18, 50, but research material accompanying Schacher's declaration does not support his use of the modifier "physical" or "physically" to describe the aliens seeking entry or admission who would be subjected to expedited removal. *See* Defendants' Counterstatement of Material Facts Not in Dispute, ¶¶191-194. And Plaintiffs do not cite any legislative document using that language.

There is no doubt that in IIRIRA and prior bills, Congress recognized the need for a summary exclusion process allowing DHS to quickly apprehend and remove undocumented aliens "physically" at the border; but nothing in the legislative history supports the separate point that Congress intended to exclude parolees from that summary process. Congress was and is well-

---

[8] It is unclear why Plaintiffs attach this voluminous legislative history to a declaration instead of citing it directly in their brief.

aware of the entry fiction doctrine and its application to paroled arriving aliens. Consistent with decades of Supreme Court case law, Congress understood that paroled arriving aliens would be subject to that summary procedure because their parole does not constitute an entry or admission.

In fact, many of the bills Plaintiffs rely on have provisions that apply the proposed summary removal procedure to aliens seeking entry or admission into the United States. *See* Dkt. 55-1 at 35-38. For example, Plaintiffs rely on several bills in the 1980s and 1990s, including a bill led by Rep. Romano Mazzoli proposing "an expedited exclusion process" for aliens "'seeking entry.'" Dkt. 55-1 at 36 (quoting bill). There is simply no indication that Congress intended to deviate from the well-established entry doctrine by excluding parolees from the expedited procedure.

Additionally, the mass migration crises that Plaintiffs rely on as evidence of Congress's motivations in considering summary exclusion procedures demonstrate why Congress intended to include paroled arriving aliens under these procedures. *Id.* The "Mariel Boatlift" crisis in the 1980s involving fleeing Cuban migrants but many, if not most, of the 125,000 arriving Cubans were paroled into the United States pending their exclusion proceedings given their large numbers and Cuba's refusal to accept their return. *Gisbert v. U.S. Att'y Gen.*, 988 F.2d 1437, 1439 (5th Cir.), *amended*, 997 F.2d 1122 (5th Cir. 1993). Removing these parolees quickly and efficiently is consistent with Rep. Romano Mazzoli's proposal to apply summary exclusion to aliens "seeking entry." Moreover, a different interpretation would hamstring the Executive's ability to manage such crises. Consider if thousands of undocumented aliens arrived at U.S. ports of entry and DHS had to parole many of them because it lacked the resources to process all of them for expedited removal at that moment and detain them or because a foreign dictator refused to take them back. Under Plaintiffs' reading, DHS would be forced to place such aliens—even those who had

29

committed serious crimes—into removal proceedings under §1229a, which could take months or even years to complete. There is no reason to believe that Congress intended anything of the sort.

Plaintiffs' reliance on the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132 (Apr. 24, 1996) (AEDPA), likewise is puzzling because that statute's "expedited exclusion" provision would have applied to aliens "seeking entry" had it become effective and thus apply to paroled arriving aliens. AEDPA, §422; *see* Dkt. 55-1 at 38, 39. Plaintiffs fail to acknowledge this point. Instead, brushing off the actual statutory language of AEDPA, they suggest Congress was only concerned about "'people who show up at the airport' without proper documents." Dkt. 55-1 at 38 (internal citation omitted). But legislative history cannot trump a statute's plain text. Moreover, nothing in AEDPA's legislative history reveals a Congressional intent to preclude application of the exclusion provisions to paroled arriving aliens. *See* 104 Cong. Rec. S3427 (daily ed. Apr. 17, 1996) (statement of Sen. Leahy) (focusing on protecting asylum applicants). If anything, the legislative history supports Defendants' position by showing Congress's awareness of the entry fiction, which even the dissenting House Judiciary Committee Members acknowledged. *See* H.R. Rep. No. 104-383 (1996), at 182 n.29, 1995 WL 731698 ("arguing that entry fiction should not be applied to "aliens who have effected entry … even where they have entered without documentation").

Similarly, nothing in IIRIRA's legislative history indicates a Congressional intent not to include paroled arriving aliens within the category of aliens subject to expedited removal. Indeed, in IIRIRA Congress "replaced 'entry' with the new concept of 'admission,'" *United States v. Argueta-Rosales*, 819 F.3d 1149, 1166 (9th Cir. 2016), with full awareness that parole is *not* an admission, 8 U.S.C. §1182(d)(5). Further, Congress doubled down on this principle by inserting the same language in another provision of the INA. 8 U.S.C. §1101(a)(13)(B) ("An alien who is

paroled under section 1182(d)(5) of this title … shall not be considered to have been admitted.");

*see also* H.R. Rep. No. 104–469 (1996), at 225, 1996 WL 168955 (1996), ("Parolees under INA

section 212(d)(5), who are not considered to have made an 'entry' under current law, will likewise

not be considered to have been admitted under this new definition.").[9] Thus, there is no indication

Congress intended to change course and exclude parolees from expedited removal. Moreover,

Plaintiffs' theory makes little sense: if Congress intended such a result, it could have explicitly

excluded parolees from the "arriving in" authority *as it did* in the Designation Provision for

parolees in an active parole period.  8 U.S.C. §1225(b)(1)(A)(iii).

5. Plaintiffs' reliance on the agency records is also confounding. Their main point is that

"nearly everyone who commented" on the proposed definition of "arriving alien" "was unaware

of the potential application of expedited removal to parolees" because they assumed it did not

apply. Dkt. 55-1 at 44-45. That conclusion is not only unsupported by the record, it defies logic.

Given that the proposed regulation would clearly apply expedited removal to aliens paroled at

ports of entry, "everyone who commented" would presumably be aware of this application. *See*

*Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10,312, 10,312-13 (Mar. 6, 1997);

*Government of Guam v. United States*, 744 F.2d 699, 701 (9th Cir. 1984) (publication in the

Federal Register "constituted formal notice to the world"). Indeed, as Plaintiffs acknowledge, at

least three commentators objected to the application of expedited removal to parolees. *Id.* at 36.

Two other commentators explicitly assumed that parolees would be subject to expedited removal

and approved of this outcome. For example, the Central American Legal Assistance, an immigrant

---

[9] In IIRIRA, Congress also "enacted several provisions intended to limit or discourage the use of parole." Schacher Decl., Dkt 55, ¶11; *Doe v. Noem*, 152 F.4th 272, 287 (1st Cir. 2025); H.R. Rep. 104–469, pt. 1, at 141 (parole "should not be used to circumvent Congressionally-established immigration policy").

rights organization, commented that the proposed rule's "limitation of 'arriving alien' to only those found at port of entry, at sea and *in parole status* is appropriate." Declaration of Aric A. Anderson, ¶6 & Ex. B, AA-REG-00221; *see also id.*, ¶7, Ex. C, AA-REG-01216 (immigration law student commenting that the proposed definition of arriving aliens "as aliens arriving at a port-of-entry … aliens previously *paroled upon arrival* … is reasonable") (emphasis added).

The likely reason there were not more comments on this issue is the *opposite of the reason* Plaintiffs propose—i.e., most commentators would have assumed without question (as Congress did) that "arriving in" encompasses paroled arriving aliens because of the long history of such aliens being treated as stopped at the border under the entry fiction doctrine. *See* Dkt 55-1 at 47 (citing a comment objecting to the rule and stating that the "inclusion" of parolees appears to "rest on the 'legal fiction' that parolees, though physically present, had not yet affected an entry into the country"). Indeed, the comments Plaintiffs rely on from Senators Kennedy and Wellstone, as well as Representative Lamar Smith, Dkt. 55-1 at 46-47, support Defendants' position because, if these Congressional leaders' understanding was that paroled arriving aliens could *not* be subject to expedited removal, they would certainly have addressed that issue given the language in the proposed rule. Take, for example, the comments of Senators Kennedy and Wellstone. They praised the former INS's decision to not invoke the Designation Provision in the proposed regulation, while also noting that other parts of the Rule regarding the one-year deadline for filing an asylum application and protections for refugees "present serious concerns." Li. Decl. ¶22. & Ex. R, AA-REG-00896. Yet the Senators raised no "serious concern[]" as to the Rule's application of expedited removal to paroled arriving aliens. Indeed, it is noteworthy that, although several Congressmen submitted comments, Plaintiffs cannot point to a single Congressman who took issue with this aspect of the rule. *See* Anderson Decl., ¶8 & Ex. D, AA-REG-1259-1260 (comments by

32

Congressmen Gilman, Smith, and Berman expressing concerns about the qualifications of asylum officers who make credible fear determinations and the credible fear process in general but saying nothing about the proposed arriving alien regulation).

**IV.    Plaintiffs Lack Standing Over the Challenged Actions, and, in any Event, the Challenged Actions are Consistent with the INA.**

For reasons already explained, Plaintiffs lack standing to challenge the January 23, 2025 Huffman Memorandum; (2) the February 18, 2025 ICE Directive; and (3) the CHNV Termination Notice, for lack of redressability because DHS retains independent authority under the arriving alien regulations to apply expedited removal to Plaintiffs' members. *See*, *supra*, Section II. Defendants incorporate by reference this briefing, as well as their prior briefing in this case on redressability. *See* Dkt. 26 at 29-30. On the merits question of whether the DHS documents are consistent with the "arriving in" authority at 8 U.S.C. §1225(b)(1)(A)(i), Defendants incorporate briefing from Section III of this brief regarding the meaning and legislative history of the term "arriving," as well as their prior briefing on this issue. *See* Dkt. 26 at 41-45.

In addition to its "arriving in" authority, DHS also has authority under the Designation Provision to apply expedited removal to paroled arriving aliens if their parole has terminated. 8 U.S.C. §1225(b)(1)(A)(iii). Defendants recognize the Court previously held it was likely this provision does not authorize expedited removal of parolees. *See* Dkt. 41 at 44, *et seq*. Defendants respectfully disagree and incorporate by reference their prior briefing on this issue as well. *See* Dkt 26 at 45-49. Defendants briefly discuss this Provision below supplementing their prior arguments.

Under the Designation Provision, Congress authorized expedited removal for any alien "designated by the [Secretary]" who "has not been admitted or paroled into the United States" and who cannot demonstrate that he "has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C.

33

§1225(b)(1)(A)(iii). The Court interpreted the "has not been admitted or paroled" language to exclude anyone who was paroled at any time in the past, even if that parole has been terminated. But the present perfect tense ("has not been … paroled") may be used to indicate a continuing state, not just a past event, and that is the best reading of the statute here.

For example, in *Hewitt v. United States*, 606 U.S. 419 (2025), the Supreme Court held that a statute permitting resentencing of a defendant whose sentence "has not been imposed" applied to defendants whose sentences were imposed but then vacated. *Id.* at 422. The Court explained that the use of the present perfect tense "conveys to a listener that the event in question continues to be true or valid." *Id.* at 429. The same is true here: an alien who was paroled but whose parole has terminated "has not been … paroled into the United States" as required by §1225(b)(1)(A)(iii).

This Court reasoned that because *Hewitt* involved vacatur of a sentence, "it makes sense for an offender whose sentence was vacated" to be treated as someone who was never sentenced; it then concluded that parole is different because termination "does not render that parole" void *ab initio*. Dkt. 41 at 49. But in context, the Designation Provision refers to the alien's "status" at the time the alien is placed in removal proceedings: an alien who is *currently* in "admitted or paroled" status is ineligible for expedited removal, 8 U.S.C. §1225(b)(1)(A)(iii), whereas an alien who is present in the United States *without* an admission or parole may be subject to expedited removal under the designation provision. *See Doe v. Noem*, 152 F.4th 272, 288 (1st Cir. 2025) ("the Government's interpretation of the [Designation Provision] is persuasive enough" to defeat a §705 stay).

The Court also reasoned that Congress's decision to pair "admitted" and "paroled" in the same phrase demonstrates that both terms refer to a completed act, not a continuing status, on the ground that "in immigration law, 'admission' is something that happens at a specific point in time;

34

it is not a 'continuing status.'" Dkt. 41 at 47-48. But although "admission" (noun) might refer to a specific act, "admitted" in the statutory phrase "has not been admitted" refers to a status.

Moreover, if Congress wanted to distinguish between those who were once paroled and those who were not, it could have easily used the past tense "was paroled" (or, even better, "was at any time paroled"). *See Hewitt*, 145 S. Ct. at 2173 (noting that, in other provisions of the same act, Congress used simple past tense to convey events that occurred in the past as contrasted to its use of present perfect in other contexts). For example, in 8 U.S.C. §1255(a), Congress provided that the Attorney General may adjust the status of an alien who "*was* inspected and ... *paroled* into the United States" and meets other eligibility requirements. (emphasis added); *Succar v. Ashcroft*, 394 F.3d 8, 16 (1st Cir. 2005).

The Court also mistakenly relied on DHS regulations to support its interpretation. First, the Court invoked language in 8 C.F.R. §235.3—the expedited removal regulation—that refers to parole in the past tense. Dkt. 41 at 52-53. That regulation provides that if the government determines that expedited removal is appropriate, the "alien will be given a reasonable opportunity to establish to the satisfaction of the examining immigration officer that he or she was admitted or paroled into the United States following inspection." 8 C.F.R. §235.3(b)(6). In context, that language plainly is referring to the alien's chance to prove that his *current* presence is pursuant to an admission or parole; indeed, the regulation states that the "immigration officer will consider all such evidence and information [presented by the alien], make further inquiry if necessary, and will attempt to verify *the alien's status* through a check of all available Service data systems." *Id.* (emphasis added).

Second, the Court failed to give adequate weight to other regulations. An asylum regulation expressly authorizes expedited removal for certain aliens whose parole "has expired or been

35

terminated." 8 C.F.R. §208.14(c)(4)(ii). The Court distinguished that regulatory text on the ground that the regulation was promulgated in 1998 instead of "in the original 1997 rulemaking" implementing IIRIRA. Dkt. 41 at 54. But the Court's reasoning—that the regulation "envisioned expedited removal of parolees only" under the "arriving in" authority because the "arriving alien" regulation contains a similar dichotomy between aliens paroled before April 1, 1997 and after, *id.* at 54-55—is not correct because the language of §208.14 *explicitly* authorizes expedited removal under *both* authorities. 8 C.F.R. §208.14(c)(4)(ii)(A) ("In the case of an applicant who is an arriving alien *or is otherwise subject to removal under §235.3(b)* of this chapter...." the asylum officer "shall proceed in accordance with §235.3(b)") (emphasis added).

Finally, the Court misconstrued 8 C.F.R. §212.5(e)(2)(i), entitled, "Termination of Parole." Section 212.5(e)(2)(i) supports the Government's position because it provides for the possibility of expedited removal after the termination of an alien's parole. The regulation states that after parole is terminated, "further inspection or hearing shall be conducted under section *235 [1225]* or 240 [1229a] of the Act") (emphasis added). Thus, an immigration officer retains discretion to initiate a proceeding under INA § "235," *i.e.*, expedited removal under 8 U.S.C. §1225(b)(1), once parole is terminated.

The Court disagreed reasoning that §1225 also includes §1225(b)(2), and that applicants for admission processed under that provision are placed in §1229a proceedings. Dkt. 41 at 55-56. While true, the only removal procedure under §1225(b) is expedited removal at §1225(b)(1); aliens processed under §1225(b)(2) are referred to §1229a proceedings. Thus, when the regulation states that "further inspection or hearing shall be conducted under § 235 or 240 of the Act," the most natural reading is that the alien will either be subject to expedited removal or placed in §240

36

proceedings; there is no other removal procedure specific to aliens processed under §1225(b)(2). As such, the regulation clearly contemplates expedited removal of paroled arriving aliens.

Plaintiffs supplement their prior arguments regarding the Designation Provision claiming the "text and legislative history of AEDPA" support their argument that Congress did not intend for the Designation Provision to apply to aliens paroled at ports of entry. Dkt. 55-1 at 48-51. But that argument is undermined by the text of AEDPA which authorized expedited exclusion for aliens who were "found in the United States who had not been admitted." AEDPA §414. AEDPA provided that such aliens were deemed to be "seeking entry and admission." *Id.* That provision could reasonably be read to apply to paroled arriving aliens as Plaintiffs themselves concede. *Id.* at 48 (AEDPA "likely would have exposed parolees to expedited exclusion"). Plaintiffs' reliance on IIRIRA's legislative history is similarly misguided. *See* Dkt. 55-1 at 40-41. While IIRIRA did not include the "found in" language Congress adopted in AEDPA, it did include the language "has not been admitted or paroled." As discussed above, given its use of present perfect tense language, Congress authorized the application of expedited removal under the Designation Provision to aliens whose parole has terminated and who cannot establish the two-year continuous physical presence requirement as of the date of the inadmissibility determination. Under *Hewitt*, that is the best reading of the statute, especially given that it is consistent with Congress's expedited exclusion approach in AEDPA and the earlier bills discussed by Plaintiffs.

## V.   The Challenged Actions are not Arbitrary and Capricious.

Defendants incorporate by reference their prior briefing on the arbitrary and capricious issue. *See* Dkt. 26 at 50-56. Defendants acknowledge the Court previously found Plaintiffs are likely to succeed on their claim that the Challenged Actions are arbitrary and capricious, *see* Dkt. 41 at 65-73. Defendants respectfully disagree with the Court's analysis.

First, the Court observed that the Huffman Memorandum states that the "maximum" "scope of expedited removal" "under 8 U.S.C. §1225(b)(1)" includes the two-year continuous-presence requirement, which the court viewed as being inconsistent with the Government's "arriving in" argument (under which all paroled arriving aliens are eligible for expedited removal irrespective of their continuous presence). Dkt. 41 at 44-45, 68-69. But in context, the Huffman Memorandum was merely referring to the scope of expedited removal under the *Designation Provision* as evidenced by the fact that it cited DHS's Federal Register Notice on "Designating Aliens for Expedited Removal," which had just been issued. That Notice involved the Secretary's invocation of the Designation Provision to its outer limit (two years). The fact that the Huffman Memorandum provided "guidance regarding how to exercise enforcement discretion in implementing" this authority, *id.* at 45, does not suggest it eschewed its authority to pursue expedited removal without a time limit for aliens that fall within the "arriving in" authority.

Second, the district court faulted the "February 18 ICE Directive"—in fact, merely an internal agency email, for not citing any statutory or regulatory provisions supporting the use of expedited removal on all "paroled arriving aliens." Dkt. 41 at 69-70. But no principle of administrative law requires an internal email between Executive Branch personnel to contain citations as if it were published in the Federal Register. Moreover, the ICE Directive contained legal justification in concluding there is "no time limit" to apply expedited removal to parolees. By using the term "paroled arriving aliens," that Directive was invoking the "arriving alien" authority under 8 C.F.R. §1.2, which contains no time limit for applying expedited removal. Indeed, the Court suggested this language on its own might "suffice[] to indicate th[e] Directive's legal authority." Dkt. 41 at 70.

38

Third, the Court thought the Huffman Memorandum and February 18 email contradicted each other because the former suggests that the government "must first terminate a noncitizen's parole before subjecting them to expedited removal" if the alien does not satisfy the two-year continuous-presence requirement, while the latter suggests that the government "can subject even active parolees to expedited removal" with "'no time limit'" on continuous presence. Dkt. 41 at 71. But the Huffman Memorandum nowhere contains that termination requirement. Even now, Plaintiffs cannot point to what language in the Huffman Memo is inconsistent with the February 18 ICE Directive.

Fourth, DHS's statements in the CHNV Termination Notice about being limited to a two-year time-period simply do not constitute a renunciation of using expedited removal under its "arriving in" authority; indeed, such a renunciation would be contrary to the governing regulation at §1.2. Additionally, DHS's statement in the Termination Notice cannot be the basis of an inconsistency given it does not purport to create a rule for the application of expedited removal; rather, it was intended only to provide support for the Secretary's discretionary decision to terminate the parole periods of aliens paroled under the CHNV programs.

Finally, Plaintiffs' argument fails because any alleged error would be harmless in any event given DHS's clear statutory and regulatory authority to apply expedited removal to paroled arriving aliens. *See* 5 U.S.C. §706(2) ("In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.").

In sum, because these documents are not inconsistent with each other and do not purport to justify applying expedited removal to paroled arriving aliens—but merely provide guidance on

DHS officers' enforcement discretion under already-existing expedited removal authorities—Plaintiffs' claim that the record lacks any "findings" or "analysis," is wrong.  *See* Dkt. 55-1 at 54.

**VI.    The Court Lacks Authority Under the INA to Grant the Requested Relief.**

**A.    Plaintiffs' Requests for Vacatur and Declaratory Relief are Precluded by 8 U.S.C. §1252(f)(1).**

The INA precludes classwide relief by making clear that lower federal courts lack "jurisdiction or authority to enjoin or restrain the operation" of certain INA provisions—including the removal provisions in 8 U.S.C. §1225(b)(1)—"other than with respect to the application of such provisions to an individual alien" in removal proceedings. 8 U.S.C. §1252(f)(1). By its terms, §1252(f)(1) prohibits lower federal courts from issuing classwide relief that "order[s] federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550-551 (2022).  Here, granting universal vacatur and declaratory judgment would violate §1252(f)(1). Just like a preliminary injunction, such relief runs to "an entire class of aliens," *id.*, rather than an "individual alien," 8 U.S.C. § 1252(f)(1), and inescapably "restrain[s]"—that is, "check[s], hold[s] back, or prevent[s]"—the "operation" of Section 1225(b)(1). *See Aleman Gonzalez*, 596 U.S. at 552-554; *but see MRNY*, 2025 WL 3563313, at *16 (statement of Millett and Childs, JJ.) (finding that §1252(f)(1) did not apply in the context of a §705 motion).

First, with regard to vacatur, Congress precluded not only classwide orders that "enjoin," but also those that "restrain." 8 U.S.C. § 1252(f)(1). The independent meaning of "restrain" in §1252(f)(1) is particularly clear given the contrast between §1252(f)(1)'s language ("enjoin or restrain") and that of the very next provision, §1252(f)(2), which bars only orders that "enjoin" covered conduct. Section 1252(f)(1) *does* include the word "restrain," and that deliberate addition must be given effect. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("When Congress

includes particular language in one section of a statute but omits it in another, this Court presumes that Congress intended a difference in meaning." (cleaned up). And the Supreme Court has explained that "restrain" is broad, reaching all judicial orders that "check, hold back, or prevent" governmental action. *Aleman Gonzalez*, 596 U.S. at 549. Vacatur plainly can have such an "inhibit[ing]" effect. *Id.* If a rule or other agency action provides the legal authority for officials to act, vacating the rule or action obviously "prevents" officials from acting. And even where a rule simply directs officials how to exercise their statutory and regulatory authority, vacatur "checks" and "holds back" officials from acting in accordance with the rule, because it leaves officials without instructions about how to act.

In its opinion, the Court acknowledged the on-point legislative history for §1252(f)(1) reflecting Congress's intent that the challenged procedures should "remain in force while such lawsuits are pending." Doc. 41 at 29 (quoting H.R. Rep. No. 104-469, at 161 (1996)) ("On its face, that statement supports Defendants' position."). The Court, however, refused to give weight to that legislative history because of "structural" concerns—specifically, that the Court would be unable to provide a remedy in §1252(e)(3) cases like this one, brought by organizations asserting associational standing. *See* Dkt. 41 at 29-30; *id.* at 30 (noting that "bizarre result"). But such an interpretation of §1252(f)(1) does not "present a structural problem" because the Court could, consistent with §1252(f)(1), provide party-specific relief to an individual alien who was subject to expedited removal. And the Supreme Court always retains authority to "enjoin or restrain" actions under §1252(f)(1).

Second, §1252(f)(1) applies to preclude issuing universal declaratory relief that has a coercive effect. 28 U.S.C. § 2201(a). Some declaratory judgments are not coercive, such as those that clarify whether *the plaintiff* may act (or not act) in a certain way, *e.g.*, *MedImmune, Inc. v.*

41

*Genentech, Inc.*, 549 U.S. 118, 130 (2007) (patent licensee may seek declaration on patent's invalidity), or those which declare a policy unlawful but "in [their] agreed substance d[o] not contemplate injunctive relief," *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963) (plaintiffs cannot automatically be stripped of citizenship for draft evasion). Such declarations do not "check, hold back, or prevent" the defendant, *Aleman Gonzalez*, 596 U.S. at 549, who remains "free to continue to" act as he likes pending appellate review, *Mendoza-Martinez*, 372 U.S. at 155.

In contrast, a declaration that a *defendant* must act (or not act) in a certain way and that contemplates *a follow-on injunction* if the defendant does not comply with the declaration does check, hold back, and prevent the defendant from acting, and thus has the practical effect of an injunction. *See San Juan Cellular Tel. Co. v. PSC*, 967 F.2d 683, 684 (1st Cir. 1992) (Breyer, J.) (noting that "a declaratory judgment that [a practice] is unlawful is equivalent to an injunction"). To the extent that is what Plaintiffs request here, their request is precluded by §1252(f)(1). *See* Dkt. 55-1 at 54 (requesting various declarations). Plaintiffs, for example, request, *inter alia*, that the Court declare "that noncitizens who have previously been granted parole at ports of entry are not amenable to expedited removal under 8 U.S.C. §1225(b)(1)(A)." *Id.* That proposed declaration invites "every single member of the class" to "immediately seek an injunction grounded on the authority of the declaratory judgment." *Alli v. Decker*, 650 F.3d 1007, 1020 n.2 (3d Cir. 2011) (Fuentes, J., dissenting). It necessarily "check[s], hold[s] back, [and] prevent[s]" the challenged policy, *Aleman Gonzalez*, 596 U.S. at 549, and thus has the "practical effect" of a "class-wide injunction," *Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018), *cert. denied*, 141 S. Ct. 188 (2020).

By prohibiting orders that "restrain" as well as "enjoin," Congress did not forbid classwide injunctions, yet welcome classwide declaratory judgments that invite each and every class member

42

to obtain a follow-on injunction. Put differently, a court may not accomplish in two steps (classwide declaration plus follow-on injunctions) what Congress has forbidden it to do in one (classwide injunction).

**B.      Under Traditional Equitable Principles, Any Relief Must be Narrowly Tailored to Plaintiffs' Members and Should not Extend to Non-Parties.**

Finally, even if the Court finds in favor of the Plaintiffs, any relief should be narrowly tailored to the Plaintiff organization's members who can demonstrate injury. *See Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) ("A universal injunction can be justified only as an exercise of equitable authority, yet Congress has granted federal courts no such power."). In its August 1, 2025, §705 stay opinion, the Court rejected a similar argument. Dkt. 41 at 80-81. The Court's principal reasoning was that §705 stays are essentially temporary vacaturs under 5 U.S.C. §706, which need not be limited to the parties before the court. But as explained below, that underlying assumption regarding §706 vacatur is incorrect, and the Court should not continue to adhere to it.

Under settled constitutional and equitable principles, a court may not issue relief that is broader than necessary to remedy actual harm shown by specific plaintiffs. *Gill v. Whitford*, 585 U.S. 48, 73 (2018). The Supreme Court has already held that "universal injunctions" are unlawful because that relief was unavailable at the founding and "falls outside the bounds of a federal court's equitable authority under the Judiciary Act [of 1789]." *CASA*, 145 S. Ct. at 2554. Universal vacatur similarly falls outside of what the APA authorizes. *But see MRNY*, 2025 WL 3563313, at *36 (rejecting *CASA* argument in the context of a §706 stay).

Section §706(2) provides that a reviewing court "shall hold unlawful and set aside agency action, findings, and conclusions" found to be unlawful. But the term "set aside" in §706(2) does not pertain to remedies at all. Instead, it has historically encompassed "put[ting] to one side" or "reject[ing] from consideration." *See, e.g.*, Webster's New International Dictionary of the English

43

Language 2291 (2d ed. 1958); *accord* Act of Aug. 24, 1937, ch. 754, 50 Stat. 752-753*; Massachusetts v. Mellon*, 549 U.S. 447, 488 (1923); *Mallinckrodt Chem. Works v. Missouri ex rel. Jones*, 238 U.S. 41, 54 (1915).

Statutory context confirms that reading, as 5 U.S.C. §703 points outside the APA for the available remedies, specifying that "[t]he form of proceeding" is a traditional "form of legal action," such as "actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus." There is no reason to think that, after "nodd[ing] to traditional standing rules and remedial principles" in Section 703, "Congress proceeded just a few paragraphs later to plow right through those rules and empower a single judge to award a novel form of relief affecting parties and nonparties alike." *Texas*, 599 U.S. at 698 (Gorsuch, J., concurring).

Further, the Court's determination (in the context of §705), that the application of the complete-relief principle raises "practical" concerns, *see* Dkt. 41 at 82, does not authorize the Court's extraordinary relief extended to non-party aliens nationwide. *CASA* rejected a similar appeal concluding that "the policy pros and cons are beside the point." 606 U.S. at 856 (citation omitted). In any event, the Court's speculation about DHS' potential difficulties in identifying Plaintiffs' members does not warrant universal relief. *See* Dkt. 41 at 82 ("Now imagine the Executive Branch having to implement, across every immigration facility and officer nationwide, additional procedures to determine whether individuals in expedited removal are members of one of the Plaintiff organizations …."). The burden of identifying relevant members rests with the Plaintiffs, not Defendants. And creating such exceptions would permit organizations to flout *CASA* and obtain universal relief in virtually every case.

Nor is *CASA* distinguishable because systematic challenges to expedited removal may be brought only in the District Court for the District of Columbia. *See id.* That fact only supports

44

application of the party-specific relief principle because once the D.C. Circuit decides an issue, its holding can be invoked by all non-parties as controlling precedent; until then individual non-parties may file their own suits in the D.C. District Court.

In sum, vacatur falls outside the authority granted by the INA. If nothing else, the Court should limit relief to Plaintiffs and their members.

## CONCLUSION

The Court should deny Plaintiffs' motion for summary judgment, grant Defendants cross-motion for summary judgment, and dismiss the amended complaint for lack of jurisdiction.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
DREW C. ENSIGN
Deputy Assistant Attorney General
TYLER BECKER
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530

s/ *Papu Sandhu*
PAPU SANDHU
*Assistant Director*
ARIC A. ANDERSON
*Trial Attorney*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, DC 20044
(202) 616-9357

Counsel for Defendants

Dated: April 16, 2026

45

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2026, I electronically filed the foregoing with the Clerk of the District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ Papu Sandhu
PAPU SANDHU
Assistant Director
U.S. Department of Justice