**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

COALITION FOR HUMANE IMMIGRANT RIGHTS,
*et al*.,

    *Plaintiffs,*

    *v.*

KRISTI NOEM, in her official capacity as Secretary of
Homeland Security, *et al.*,

    *Defendants.*

Case No.: 1:25-cv-00872

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT
OF MATERIAL FACTS NOT IN DISPUTE AND RESPONSE TO DEFENDANTS'
COUNTERSTATEMENT OF MATERIAL FACTS**

Plaintiffs submit this Reply to Defendants' Response to Plaintiffs' Statement of Material

Facts ("SOMF") and Response to Defendants' Counterstatement of Material Facts ("CMF") (Dkt.

Nos. 68-2, 69-2). Because the parties have filed cross-motions for summary judgment, Plaintiffs

respond below in their dual capacity as movant on their partial motion for summary judgment

(Dkt. No. 55) and as non-movant on Defendants' cross-motion (Dkt. No. 69). Facts deemed

admitted under LCvR 7(h)(1) and Fed. R. Civ. P. 56(e)(2) are admitted for purposes of both

motions.

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS**

**The Associational Plaintiffs**

1.    Plaintiff Coalition for Humane Immigrant Rights ("CHIRLA") is a nonprofit membership organization headquartered in Los Angeles, California. Declaration of Angelica Salas, Dkt. No. 22-3 ("Salas Decl.") ¶ 2.

Defendants' Response: Not disputed.

2.    CHIRLA's members include noncitizens who were previously paroled into the United States at a port of entry. Salas Decl. ¶¶ 15-16.

Defendants' Response: Not disputed.

3.    CHIRLA's members who were previously paroled into the United States at a port of entry are at risk of being, or already have been, arrested, detained, and subject to expedited removal due to Defendants' policies described below in ¶¶ 41-58. Salas Decl. ¶¶ 15-16.

Defendants' Response: Disputed. Plaintiffs' members are not "at risk of being, or already have been, arrested, detained, and subject to expedited removal due to" the cited policies.

Plaintiffs' Reply: To the extent Defendants dispute that these impacts on CHIRLA's members are due to Defendants' policies, Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

2

Moreover, Defendants' response contradicts their existing admissions in this case. They have admitted that CHIRLA's members who were previously paroled into the United States have been arrested, detained, and subjected to expedited removal. *See* Defendants' Responses to SOMF Nos. 5-7, 10-16.

4.  CHIRLA's mission is to ensure that immigrant communities are fully integrated into society with full rights and access to resources. This work includes advocating for immigrant rights, and organizing, educating, serving, and defending immigrants and refugees in Los Angeles and throughout California. Salas Decl. ¶¶ 3-4.

    Defendants' Response: Not disputed.

5.  CHIRLA's membership includes E.I.R.M., a noncitizen who was granted humanitarian parole at a port of entry in 2023 following an appointment made with the CBP One application and was placed in regular removal proceedings pursuant to 8 U.S.C. § 1229a ("Section 240 removal proceedings"). Salas Decl. ¶ 17; Declaration of Bianca Torres, Dkt. No. 22-7 ("Torres Decl.") ¶ 3.

    Defendants' Response: Not disputed.

6.  E.I.R.M. appeared for all his scheduled immigration court hearings and timely filed an asylum application with the immigration court. He was subsequently arrested and detained in March 2025 and placed in expedited removal proceedings after DHS moved to dismiss his Section 240 removal proceedings. Salas Decl. ¶ 17; Torres Decl. ¶¶ 4-6.

    Defendants' Response: Not disputed.

7.  E.I.R.M. was released from detention on bond while his appeal at the Board of Immigration Appeals was pending. In October 2025, the BIA dismissed his appeal,

so he is at imminent risk of re-detention and being processed for expedited removal. Supplemental Declaration of Angelica Salas ("Salas Suppl. Decl.") ¶ 21; Supplemental Declaration of Bianca Torres ("Torres Suppl. Decl.") ¶¶ 4-6, 7-8.

Defendants' Response: Not disputed.

8. E.I.R.M.'s U.S.-citizen wife filed a family-based visa petition for E.I.R.M. and they filed an adjustment of status application with USCIS. Torres Suppl. Decl. ¶ 6.

Defendants' Response: Not disputed.

9. E.I.R.M. cannot freely travel because he is required to check in with ICE and may only travel within a certain parameter within his state. Because they fear E.I.R.M. may be detained again or removed, E.I.R.M. and his wife have postponed decisions regarding long-term plans. Torres Suppl. Decl. ¶¶ 6-8.

Defendants' Response: Not disputed.

10. Another CHIRLA member, R.H.H., was paroled into the United States at a port of entry along with her minor children, C.M.H. and M.M.H., following a CBP One appointment in November 2024. They were granted parole through April 18, 2025, and they were issued Notices to Appear at an immigration court hearing on June 5, 2025. They resided with R.H.H.'s partner—C.M.H. and M.M.H.'s father—and the children were enrolled in elementary school. Declaration of Elizabeth Hercules-Paez, ("Hercules-Paez Decl.") ¶¶ 3-4; Salas Suppl. Decl. ¶ 19.

Defendants' Response: Not disputed.

11. At their initial master calendar hearing on June 5, 2025, DHS moved to dismiss R.H.H. and her children's removal proceedings, which the immigration judge granted over R.H.H.'s opposition. ICE agents arrested and detained R.H.H. and her

children as they walked out of the courtroom and detained them for over a month. Hercules-Paez Decl. ¶¶ 5-6; Salas Suppl. Decl. ¶ 19.

Defendants' Response: Not disputed.

12.    While R.H.H. and her children were detained, their attorney appealed the dismissal of their removal proceedings. R.H.H. also underwent a credible fear interview, without the presence of counsel, and received a negative credible fear determination. Their counsel requested immigration judge review of that negative fear determination and submitted a release request. Hercules-Paez Decl. ¶ 8; Salas Suppl. Decl. ¶ 19.

Defendants' Response: Not disputed.

13.    On July 11, 2025, R.H.H. and her children were released from detention on parole, which expires in July 2026. Hercules-Paez Decl. ¶ 9.

Defendants' Response: Not disputed.

14.    On July 14, 2025, the immigration judge affirmed R.H.H.'s negative credible fear determination, and on December 5, 2025, their appeal was dismissed. Hercules-Paez Decl. ¶¶ 8-10; Salas Suppl. Decl. ¶ 19. They are subject to a final order of expedited removal. Hercules-Paez Decl. ¶¶ 14.

Defendants' Response: Not disputed.

15.    CHIRLA's membership also includes J.L., a noncitizen who attended a CBP One appointment and was paroled into the United States at a port of entry in June 2024 with her two children. Salas Suppl. Decl. ¶ 20.

Defendants' Response: Not disputed.

16.     J.L. applied for asylum and obtained work authorization associated with her application. Given the government's targeting of parolees for expedited removal, she and her family live in constant fear of being detained and being forcibly returned to Venezuela, where she believes she would be persecuted by the government. Salas Suppl. Decl. ¶ 20.

Defendants' Response: Not disputed.

17.     CHIRLA's members who were previously paroled into the country at a port of entry were first subjected to expedited removal in 2025. Salas Suppl. Decl. ¶¶ 19-22.

Defendants' Response: Disputed. The numbered statement of material fact is not limited to the cited declarant's knowledge.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants' denial is contradicted by the document cited. The declarant is competent to testify on the matter. Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602. In her declaration, CHIRLA's Executive Director, Angelica Salas, clearly explains that her statements are based on personal knowledge and her review of CHIRLA's files and documents and conversations she had with reliable CHIRLA staff in preparing the declaration. Salas Suppl. Decl. ¶¶ 3, 10-11.

In addition, Defendants' own counsel acknowledged this fact under direct questioning by this Court at the July 9, 2025 stay hearing: asked whether "DHS or

its predecessors [had] ever appl[ied] or subject[ed] to expedited removal procedures individuals who had been previously paroled but whose parole terminated for whatever reason," Defendants' counsel responded, "I'm not [aware], Your Honor." Dkt. No. 35 at 52:2-15. At oral argument before the D.C. Circuit, Defendants' counsel further acknowledged that "DHS is only applying expedited removal to the folks for the prior two years under the designation provision" and that "[t]he arriving alien regulation is broader authority" that was not being used. Tr. of Oral Arg., attached as Exhibit 1, at 45:1-4. These statements are party admissions admissible against Defendants for their truth. Fed. R. Evid. 801(d)(2)(A), (B), (C), and (D); *see United States v. Morgan*, 581 F.2d 933, 937–38 & nn.10, 15 (D.C. Cir. 1978); *United States v. Warren*, 42 F.3d 647, 655 (D.C. Cir. 1994); *Talavera v. Shah*, 638 F.3d 303, 309-10 (D.C. Cir. 2011); *see also United States v. Kattar*, 840 F.2d 118, 131 & n.9 (1st Cir. 1988) (DOJ counsel's statements admissible as party's own under Rule 801(d)(2)(A)). Counsel's concessions in formal proceedings are also binding as judicial admissions. *See Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1880).

18.   Plaintiff UndocuBlack Network ("UndocuBlack") is a nonprofit membership organization incorporated in 2022. Supplemental Declaration of Patrice Lawrence, ("Lawrence Suppl. Decl.") ¶ 4.

Defendants' Response: Not disputed.

19.   UndocuBlack's mission is to foster community, facilitate access to resources, and contribute to transforming the realities of its members, who are Black immigrants. This work includes providing legal assistance to sponsors and beneficiaries of

humanitarian parole programs. Declaration of Patrice Lawrence, Dkt. No. 22-4 ("Lawrence Decl.") ¶¶ 3-5.

Defendants' Response: Not disputed.

20.   UndocuBlack's members include nationals from Haiti who were previously paroled into the United States at a port of entry, including through the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV" parole) or following appointments made through the CBP One application. Lawrence Decl. ¶ 11.

Defendants' Response: Not disputed.

21.   UndocuBlack's members who were previously paroled into the United States at a port of entry are at risk of being, or already have been, arrested, detained, and subject to expedited removal due to Defendants' policies described below in paragraphs 41-58. Lawrence Decl. ¶ 13.

Defendants' Response: Disputed. Plaintiffs' members are not "at risk of being, or already have been, arrested, detained, and subject to expedited removal due to" the cited policies.

Plaintiffs' Reply: To the extent Defendants dispute that these impacts on UndocuBlack's members are due to Defendants' policies, Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Moreover, Defendants' response contradicts their existing admissions in this case. They have admitted that UndocuBlack's members who were previously

8

paroled into the United States have been arrested, detained, and subjected to expedited removal. *See* Defendants' Responses to SOMF Nos. 22-24.

22. UndocuBlack's membership includes J.P., a noncitizen who was paroled into the United States at a port of entry in December 2024 after attending a CBP One appointment. He was issued a Notice to Appear before an immigration judge on July 25, 2025. J.P. timely filed an asylum application with the immigration court. Lawrence Suppl. Decl. ¶ 13; Declaration of Ida De Luca ("De Luca Decl.") ¶¶ 2, 3-4. J.P. is also a member of CHIRLA. De Luca Decl. ¶ 2; Salas Suppl. Decl. ¶ 22.

Defendants' Response: Not disputed.

23. At his master calendar hearing on July 25, 2025, DHS moved to dismiss J.P.'s removal proceedings, which the immigration judge granted. Immediately after the hearing, ICE agents arrested J.P. at the Immigration Court and detained him, and when his attorney made a request for him to be released and any expedited removal order against him to be vacated, ICE refused. He remains detained. De Luca Decl. ¶¶ 4-7.

Defendants' Response: Not disputed.

24. Another UndocuBlack member, UBN Jane Doe 3, was paroled into the United States in April 2024 through the CHNV parole processes. She applied for asylum, but her application is currently suspended due to the USCIS suspension on processing immigration benefits for nationals from Haiti. Because of this and the government's termination of grants of CHNV parole, Jane Doe 3 is at risk of being targeted for expedited removal at any time. Lawrence Suppl. Decl. ¶¶ 11-12.

Defendants' Response: Not disputed.

25.    UndocuBlack's members who were previously paroled into the country at a port of entry were first subjected to expedited removal in 2025. Lawrence Suppl. Decl. ¶¶ 11-14.

Defendants' Response: Disputed. The numbered statement of material fact is not limited to the cited declarant's knowledge.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants' denial is contradicted by the document cited. The declarant is competent to testify on the matter. Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602. In her declaration, UndocuBlack's Founder and Executive Director, Patrice Lawrence, clearly explains that her statements are based on personal knowledge and her review of UndocuBlack's files and documents and conversations she had with reliable UndocuBlack staff in preparing the declaration. Lawrence Suppl. Decl. ¶¶ 2, 3.

Defendants' counsel's contrary representations at the July 9, 2025 stay hearing and at oral argument before the D.C. Circuit are described in Plaintiffs' Reply to SOMF No. 17, *supra*.

26.    Plaintiff CASA, Inc. ("CASA") is a national nonprofit membership organization headquartered in Langley Park, Maryland. Declaration of George Escobar, Dkt. No. 22-2 ("Escobar Decl.") ¶ 1.

10

Defendants' Response: Not disputed.

27.    CASA's members include noncitizens who were previously paroled into the United States at a port of entry. Escobar Decl. ¶¶ 10-12.

Defendants' Response: Not disputed.

28.    CASA's members who were previously paroled into the United States at a port of entry are at risk of being, or already have been, arrested, detained, and subject to expedited removal due to Defendants' policies described below in ¶¶ 41-58. Escobar Decl. ¶¶ 10-13.

Defendants' Response: Disputed. Plaintiffs' members are not "at risk of being, or already have been, arrested, detained, and subject to expedited removal due to" the cited policies.

Plaintiffs' Reply: To the extent Defendants dispute that these impacts on CASA's members are due to Defendants' policies, Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Moreover, Defendants' response contradicts their existing admissions in this case. They have admitted that CASA's members who were previously paroled into the United States have been arrested, detained, and subjected to expedited removal. *See* Defendants' Responses to SOMF Nos. 30-39.

29.    CASA's mission is to build, power, and improve the quality of life in working-class Black, Latino/a/e, Afro-descendent, Indigenous, and immigrant communities. In

11

furtherance of its mission, CASA offers a wide range of social, health, job, training, employment, and legal services to immigrant communities. Escobar Decl. ¶¶ 7-8.

Defendants' Response: Not disputed.

30. CASA's membership includes E.M.P., a noncitizen who was granted humanitarian parole at a port of entry in 2023 following an appointment made with the CBP One application and was placed in Section 240 removal proceedings. Escobar Decl. ¶ 17; Declaration of Jessica Olive, Dkt. No. 22-10 ("Olive Decl.") ¶ 3.

Defendants' Response: Not disputed.

31. E.M.P. appeared for all his scheduled immigration court hearings and filed an asylum application with the immigration court in 2024. He was subsequently arrested, detained, and placed in expedited removal proceedings on May 21, 2025 after DHS moved to dismiss his Section 240 removal proceedings. Escobar Decl. ¶ 17; Olive Decl. ¶¶ 5-6.

Defendants' Response: Not disputed.

32. CASA's membership also includes L.Z.P., who was granted humanitarian parole and entered the United States with her three minor children in July 2024 after attending a CBP One appointment. The expiration date of her parole status was June 2, 2026, and her work authorization was valid through July 1, 2026. Escobar Decl. ¶ 14.

Defendants' Response: Not disputed.

33. Around May and June 2025, L.Z.P. received notice that her parole status and work authorization had been terminated. She awaits a hearing in her asylum case, which is scheduled for April 2026, and she is afraid that she will be detained and processed

for expedited removal when she appears in court. Escobar Decl. ¶ 14; Supplemental Declaration of George Escobar ("Escobar Suppl. Decl.") ¶ 13.

Defendants' Response: Not disputed.

34. D.S., a CASA member, was paroled into the country at a port of entry in March 2022. He applied for asylum in January 2023. Escobar Suppl. Decl. ¶ 14; Declaration of Dmitry Filimonov ("Filimonov Decl.") ¶¶ 2-4.

Defendants' Response: Not disputed.

35. In August 2025, USCIS dismissed D.S.'s asylum application on the basis that DHS records indicated D.S. had been placed in expedited removal, and D.S. lost his employment authorization as a result, which has caused his family financial hardship. D.S. and his family fear that D.S. could be arrested at any point and processed for expedited removal. Escobar Suppl. Decl. ¶ 14; Filimonov Decl. ¶¶ 5-11.

Defendants' Response: Not disputed.

36. CASA member O.L.C. attended a CBP One appointment in September 2024 and was subsequently paroled into the United States. In May 2025, at a master calendar hearing, an Immigration Judge granted the government's motion to dismiss O.L.C.'s removal proceedings. O.L.C. was arrested at the courthouse following the hearing and was issued a Notice and Order of Expedited Removal. He has appealed the dismissal, and he remains detained while his appeal is pending. Escobar Suppl. Decl. ¶ 14; Supplemental Declaration of Laura Kelley ("Kelley Decl.") ¶¶ 2-3.

Defendants' Response: Not disputed.

37.  Another CASA member, D.R.C., and her husband were granted humanitarian parole around 2024. They applied for lawful permanent residence status under the Cuban Adjustment Act. In July 2025, D.R.C. and her husband were pulled over while driving to work and detained. Upon being detained, D.R.C. learned her and her husband's grants of parole had been terminated. D.R.C. and her husband were separated, and D.R.C. remains detained. D.R.C.'s husband was processed for expedited removal and removed. Escobar Suppl. Decl. ¶ 14.

Defendants' Response: Not disputed.

38.  CASA's membership also includes D.L.C., a noncitizen who was granted humanitarian parole at a port of entry in 2024 following an appointment made with the CBP One application, and who was placed in Section 240 removal proceedings. Declaration of Melissa Lim Chua, Dkt. No. 22-13 ("Chua Decl.") ¶¶ 2-4.

Defendants' Response: Not disputed.

39.  D.L.C. appeared for all his scheduled immigration court hearings, filed an asylum application with the immigration court, and began the process of seeking Special Immigrant Juvenile Status ("SIJS"). In May 2025, he was subsequently arrested, detained, and placed in expedited removal proceedings after DHS moved to dismiss his Section 240 removal proceedings. Chua Decl. ¶¶ 6-8.

Defendants' Response: Not disputed.

40.  CASA's members who were previously paroled into the country at a port of entry were first subjected to expedited removal in 2025. Escobar Suppl. Decl. ¶¶ 12-16.

Defendants' Response: Disputed. The numbered statement of material fact is not limited to the cited declarant's knowledge.

14

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants' denial is contradicted by the document cited. The declarant is competent to testify on the matter. Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602. The declarant, George Escobar, has been at CASA since 2011, Escobar Suppl. Decl. ¶ 2, and testifies on personal knowledge and based on records of a type "generated in the ordinary course of [CASA's] business and that [he] would customarily rely upon in conducting CASA business," *id.* ¶ 3. CASA has worked consistently with individuals processed for expedited removal since at least 2013, and "[i]n the 15 years that [Escobar] worked at CASA, it was not until 2025 that [he] encountered any individual — CASA member or otherwise — processed for expedited removal who was previously paroled at a port of entry," *id.* ¶ 16, with colleagues whose tenure extends "going back to 1991, the longest tenure of any current CASA employee," confirming the same. *Id.* ¶¶ 16-17. The absence of any such record over CASA's three-decade institutional history is admissible to prove the non-occurrence of the activity. Fed. R. Evid. 803(7).

Defendants' counsel's contrary representations at the July 9, 2025 stay hearing and at oral argument before the D.C. Circuit are described in Plaintiffs' Reply to SOMF No. 17, *supra*.

**Defendants' Use of Expedited Removal Against Paroled Individuals**

15

*The January 23 Huffman Memorandum*

41.    On January 23, 2025, Acting Department of Homeland Security ("DHS") Secretary Benjamine Huffman issued a memorandum (the "January 23 Huffman Memorandum") to the leadership of U.S. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), and U.S. Citizenship and Immigration Services ("USCIS") with the subject line, "Guidance Regarding How to Exercise Enforcement Discretion."  Declaration of Hillary Li ("Li Decl."), ¶ 5 & Ex. A.

Defendants' Response: The document is in the record and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

42.    The January 23 Huffman Memorandum references two other documents: first, a memorandum entitled "Exercising Appropriate Discretion Under Parole Authority," signed on January 20, 2025, that "clarifies DHS's position regarding the scope of the parole statute, 8 U.S.C. § 1182(d)(5)" (the "January 20 Parole Memorandum"); and second, a Federal Register Notice entitled "Designating Aliens for Expedited Removal," signed on January 21, 2025 and published on January 24, 2025, that "expands the scope of expedited removal to the statutory maximum under 8 U.S.C. § 1225(b)(1) which . . . includes certain aliens who have not been continuously present in the United States for two years" (the "January 24 Expanded Expedited Removal Notice"). Li Decl., ¶¶ 6-7 & Exs. B-C.

Defendants' Response: The document is in the record and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

43. Through the January 24 Expanded Expedited Removal Notice referenced in the January 23 Huffman Memorandum, the Secretary of DHS "exercise[d] the full scope of [DHS's] statutory authority to place in expedited removal, with limited exceptions, aliens determined to be inadmissible under sections 212(a)(6)(C) or (a)(7) of the INA who have not been admitted or paroled into the United States and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility." Li Decl., Ex. C.

Defendants' Response: The document is in the record and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

44. The legal basis of the January 24 Expanded Expedited Removal Notice's expanded application of the expedited removal authority is "INA 235(b)(1)(A)(iii), 8 U.S.C. 1225(b)(1)(A)(iii), and 8 C.F.R. 253.3(b)(1)(ii)," Li Decl., Ex. C at 90 Fed. Reg. at 8139-40, which are statutes and regulations that allow expedited removal to be applied to individuals who have not been admitted or paroled and who have not been continuously present in the United States for two years.

Defendants' Response: The document is in the record and speaks for itself.

<u>Plaintiffs' Reply</u>: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

45. The January 23 Huffman Memorandum "provides guidance regarding how to exercise enforcement discretion in implementing" the January 20 Parole Memorandum and the January 24 Expanded Expedited Removal Notice. Li Decl., Ex. A.

<u>Defendants' Response</u>: The document is in the record and speaks for itself.

<u>Plaintiffs' Reply</u>: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

46. The January 23 Huffman Memorandum directs the leadership of ICE, CBP, and USCIS to "consider, in exercising your enforcement discretion, whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied," which "may include steps to terminate any ongoing removal proceeding and/or any active parole status." Li Decl., Ex. A.

<u>Defendants' Response</u>: The document is in the record and speaks for itself.

<u>Plaintiffs' Reply</u>: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

47. Apart from the January 20 Parole Memorandum and the January 24 Expanded Expedited Removal Notice (which itself cites 8 U.S.C. § 1225(b)(1)(A)(iii) and 8

18

C.F.R. § 253.3(b)(1)(ii)), the January 23 Huffman Memorandum cites no authority for this directive to ICE, CBP, and USCIS leadership. Li Decl., Ex. A.

Defendants' Response: Disputed. The document is in the record and speaks for itself, and it cites and quotes additional authority not listed in the numbered statement of material fact, including authority about the exercise of prosecutorial discretion.

Plaintiffs' Reply: Defendants confirm rather than refute Plaintiffs' statement. Defendants describe the additional authority cited in the Huffman Memorandum as "authority about the exercise of prosecutorial discretion"—not authority about the scope of the expedited removal authority Plaintiffs challenge. Defendants identify no statutory or regulatory authority cited in the memorandum for expanding expedited removal because none exists. Defendants' immaterial objection does not create a genuine dispute. Fed. R. Civ. P. 56(c)(1).

*The February 18 ICE Directive*

48.    On February 18, 2025, the leadership of Immigration and Customs Enforcement ("ICE") issued a directive to its Enforcement and Removal Operations ("ERO") personnel (the "February 18 ICE Directive") that instructed "ERO officers [to] consider for expedited removal (ER) . . . paroled arriving aliens." Li Decl., ¶ 8 & Ex. D.

Defendants' Response: The document is in the record and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

19

49.    The February ICE Directive authorized "ERO officers [to] process for ER any arriving alien (i.e., encountered at a port of entry) who CBP determined to be inadmissible and released, as long as the alien is inadmissible under INA 212(a)(6)(C) (fraud or willful misrepresentation) or 212(a)(7) (lack of valid immigration documents)." Li Decl., Ex. D.

Defendants' Response: The document is in the record and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

50.    The February 18 ICE Directive authorized ERO officers to process "paroled arriving aliens" for expedited removal without regard to how long those individuals have been in the United States. Li Decl., Ex. D. ("There is no time limit on the ability to process such aliens for ER.").

Defendants' Response: The document is in the record and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

51.    The February 18 ICE Directive references Executive Order 14165, "Securing Our Borders," 90 Fed. Reg. 8467 (Jan. 20, 2025). Li Decl. ¶¶ 8-9 & Exs. D-E. Apart from the reference to Executive Order 14165, the February 18 ICE Directive cites no authority for its directives to ERO personnel.  Li Decl., Ex. D.

Defendants' Response: Disputed. The document is in the record and speaks for itself, and its use of the term "paroled arriving alien" invoked the authority under 8

C.F.R. § 1.2. Dkt 41 at 70 ("On its own, perhaps the February 18 ICE Directive's use of the regulatorily defined term sufficed to indicate that Directive's legal authority.").

Plaintiffs' Reply: Defendants identify no authority the Directive *cites* beyond Executive Order 14165. They offer in its place a *post hoc* justification found nowhere in the Directive: that its use of "paroled arriving alien" silently "invoked" § 1.2.The Court previously properly rejected that very characterization, finding that the February 18 ICE Directive "cited no legal authorities whatsoever besides the inadmissibility criteria of sections 1182(a)(6)(C) and 1182(a)(7)," "suggested . . . that it was invoking the agency's definition of 'arriving aliens' under 8 C.F.R. § 1.2, but . . . did not say so explicitly," and was "legally opaque." Dkt. No. 41 at 69-70. Defendants quote only the Court's hedged "perhaps" observation while omitting these express findings. No genuine material dispute is created. Fed. R. Civ. P. 56(c)(1).

What is more, when asked by this Court at the July 9, 2025 hearing, "what was the statutory or regulatory basis for [the February 18 ICE Directive]. Was it 8 C.F.R. 1.2, or something else?" Defendants' counsel responded that "I don't think the authority comes from 8 C.F.R. 1.2." Dkt. No. 35 at 52:23-53:15. At oral argument before the D.C. Circuit, Defendants' counsel similarly told the panel: "I just don't think that DHS was necessarily relying on [§ 1.2] before." Tr. of Oral Arg., Ex. 1, at 49:15-16. These statements are party admissions admissible against Defendants for their truth. Fed. R. Evid. 801(d)(2)(A), (B), (C), and (D); *see United States v. Morgan,* 581 F.2d 933, 937–38 & nn.10, 15 (D.C. Cir. 1978); *United States*

21

*v. Warren,* 42 F.3d 647, 655 (D.C. Cir. 1994); *Talavera v. Shah,* 638 F.3d 303, 309–10 (D.C. Cir. 2011); *see also United States v. Kattar,* 840 F.2d 118, 131 & n.9 (1st Cir. 1988) (DOJ counsel's statements admissible as party's own under Rule 801(d)(2)(A)). Counsel's concessions in formal proceedings are also binding as judicial admissions. *See Oscanyan v. Arms Co.,* 103 U.S. 261, 263 (1880).

52.    The February 18 ICE Directive does not reference the January 23 Huffman Memorandum. Li Decl., Ex. D.

Defendants' Response: The document is in the record and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

*The March 25 CHNV Termination Notice*

53.    On March 25, 2025, DHS announced that it was terminating the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans. Notice, U.S. Dep't of Homeland Security, *Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13611 (Mar. 25, 2025) (the "March 25 CHNV Termination Notice"). Li Decl. ¶ 10 & Ex. F.

Defendants' Response: The document is published in the Federal Register and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

54.  The March 25 CHNV Termination Notice also terminates all individual grants of parole under the CHNV parole processes. Li Decl., Ex. F, 90 Fed. Reg. at 13611 ("[t]he temporary parole period of aliens in the United States under the CHNV parole programs and whose parole has not already expired by April 24, 2025 will terminate on that date unless the Secretary makes an individual determination to the contrary.").

Defendants' Response: The document is published in the Federal Register and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

55.  DHS justified the premature termination of all grants of CHNV parole by explaining that "[e]xpedited removal is available only when an alien has not been continuously present in the United States for at least the two years preceding the date of the inadmissibility determination." Li Decl., Ex. F, at 90 Fed. Reg. at 13619.

Defendants' Response: Disputed. The document is published in the Federal Register and speaks for itself, and the document does not label the termination "premature."

Plaintiffs' Reply: Defendants' quibble is with the single word "premature," not with the operative fact. Defendants do not dispute that the justification DHS gave for the termination of CHNV parole grants was that expedited removal is only available "when an alien has not been continuously present in the United States for at least the two years preceding the date of the inadmissibility determination." Nor can

they: parole was granted to individuals for approximately two years, and the stated justification for terminating grants before expiration was that otherwise expedited removal would not be available. Defendants' word choice objection does not create a genuine material dispute. Fed. R. Civ. P. 56(c)(1).

56.    To support its assertion that expedited removal is only available when an individual has been present in the United States for less than two years, the March 25 CHNV Termination Notice cites INA § 235(b)(1)(iii)(II), 8 U.S.C. § 1225(b)(1)(iii)(II) and 8 CFR § 235.3, and—in a footnote—the January 24 Expanded Expedited Removal Notice, which itself cites the same authorities. Li Decl., Ex. F, 90 Fed. Reg. at 13619.

Defendants' Response: The document is published in the Federal Register and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

57.    The March 25 CHNV Termination Notice further explained that "[i]f DHS were to allow the CHNV parolee population to remain for the full duration of their two-year parole, DHS would be compelled to place a greater proportion of this population in section 240 removal proceedings to effectuate their removal." Li Decl., Ex. F, 90 Fed. Reg. 13619.

Defendants' Response: The document is published in the Federal Register and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

58.    Apart from 8 U.S.C. § 1225(b)(1)(A)(iii), 8 C.F.R. § 253.3(b)(1)(ii), and the January 24 Expanded Expedited Removal Notice, the March 25 CHNV Termination Notice cites no authority for its claim that expedited removal may be applied to CHNV parolees only if they have been continuously present in the United States for less than two years. Li Decl., Ex. F. The March 24 CHNV Termination Notice does not reference the January 23 Huffman Memorandum or the February 18 ICE Directive. Li Decl., Ex. F.

Defendants' Response: The document is published in the Federal Register and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

*Defendants' use of expedited removal*

59.    In 2011, DHS adopted a policy whereby ICE officers could use expedited removal "for all arriving aliens paroled into the United States for prosecution, regardless of how long they have been present in the United States." Dkt. No. 36-1 (Memo entitled "Strategic Use of Expedited Removal Authority") at 2.

Defendants' Response: The document has been filed on the Court's docket and speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

60.    This 2011 policy was not made public until 2025, *see* Dkt. No. 36, and it is not in the administrative records (discussed more *infra*) for any of the agency actions challenged here, *see* Li Decl. ¶¶ 11-13, 28 & Exs. G, H, I, X.

Defendants' Response: Disputed. The date the document was made public is immaterial. Plaintiffs have not shown that it was first made public in 2025.

Plaintiffs' Reply: Defendants do not dispute that the 2011 policy is not in any administrative record for the challenged agency actions. The fact is therefore deemed admitted. Fed. R. Civ. P. 56(c); LCvR 7(h).

As to the date the policy was made public, Defendants offer no contrary evidence and instead suggest Plaintiffs have not shown the policy first became public in 2025. Defendants themselves have provided the contrary evidence. Defendants filed the 2011 policy on this Court's docket on July 16, 2025, noting it was not cited in Defendants' Response to Plaintiffs' Motion to Stay. Dkt. 36. If Defendants possessed evidence that the policy had been publicly available before 2025, they were required to identify it. The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should also consider that fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

61.    In this litigation, DHS has identified four noncitizens whom it paroled into the country for purposes of criminal prosecution and whom it later subjected to expedited removal after they completed their criminal sentences. Brief for

26

Appellants at 9-10 n.1, Doc. 2145851, *CHIRLA v. Noem,* No. 25-5289 (D.C. Cir. Nov. 17, 2025).

Defendants' Response: Not disputed.

62. Beyond these four individuals, Defendants have identified no other pre-2025 instance in which DHS subjected a noncitizen paroled into the country at a port of entry to expedited removal. Brief for Appellants at 9-10 n.1, Doc. 2145851, *CHIRLA v. Noem,* No. 25-5289 (D.C. Cir. Nov. 17, 2025).

Defendants' Response: Not disputed.

63. Beginning in 2025, DHS has subjected other noncitizens paroled into the country at a port of entry to expedited removal, including those whose parole remained valid. Dkt. Nos. 22-2 – 22-5, 22-7 – 22-17; Salas Suppl. Decl.; Lawrence Suppl. Decl.; Escobar Suppl. Decl.; Torres Suppl. Decl.; Hercules-Paez Decl.; De Luca Decl.; Olive Suppl. Decl.; Declaration of Laura Kelley ("Kelley Decl."); Declaration of Dmitry Filimonov ("Filimonov Decl.").

Defendants' Response: Not disputed.

64. In May 2025, White House deputy chief of staff Stephen Miller "set a goal of a minimum of 3,000 arrests for ICE every day and President Trump is going to keep pushing to get that number up higher each and every day." Li Decl. ¶ 14 & Ex. J.

Defendants' Response: Disputed. Plaintiffs have not shown the fact is material, and Plaintiffs rely on evidence outside the administrative record.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court

27

should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Defendants also do not provide any explanation for why the setting of an arrest quota is immaterial, particularly given the temporal nexus between the statement and Defendants' change in policy discussed in SOMF Nos. 66-68 & 71-72. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Additionally, their extra-record objection is meritless. Plaintiffs offer this evidence to establish the change in Defendants' policy in the use of expedited removal against paroled individuals, which supports their argument that they have standing—specifically, that their injuries are redressable because in the nearly 30 years prior to the issuance of the Challenged Directives, Defendants largely did not rely on 8 C.F.R. § 1.2 to subject parole beneficiaries to expedited removal until 2025. Further, the evidence is not hearsay because it is the statement of an opposing party's agent. Fed. R. Evid. 801(d)(2)(D).

65.    In May 2025, pursuant to the direction of leadership, DHS attorneys representing ICE at immigration court hearings around the country moved to dismiss Section 240 removal proceedings of noncitizens. Li Decl. ¶ 15 & Ex. K.

Defendants' Response: Disputed. Plaintiffs have not shown the fact is material, and Plaintiffs rely on evidence outside the administrative record.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The

absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Defendants do not provide any explanation for why this fact is immaterial, particularly given the temporal nexus between the events described and Defendants' change in policy discussed in SOMF Nos. 66-68 & 71-72. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Additionally, their extra-record objection is meritless. Plaintiffs offer this evidence to establish the change in Defendants' policy in the use of expedited removal against paroled individuals, which supports their argument that they have standing—specifically, that their injuries are redressable because in the nearly 30 years prior to the issuance of the Challenged Directives, Defendants largely did not rely on 8 C.F.R. § 1.2 to subject parole beneficiaries to expedited removal until 2025. *See also* Torres Decl. ¶¶ 4-6; Olive Decl. ¶¶ 5-6; Chua Decl. ¶¶ 6-8; Hercules-Paez Decl. ¶¶ 5-6; De Luca Decl. ¶¶ 4-7; Kelley Decl. ¶¶ 2-3. Further, the evidence is not hearsay because it is the statement of an opposing party's agent. Fed. R. Evid. 801(d)(2)(D).

66.    After the cases were dismissed, ICE enforcement officers arrested the noncitizens and detained them to process them for expedited removal. Li Decl., Ex. K; Dkt. Nos. 22-5, 22-7 – 22-17; Hercules-Paez Decl.; De Luca Decl.; Kelley Decl.

29

Defendants' Response: Defendants cannot state whether this statement is disputed or undisputed because it does not identify who was allegedly arrested by ICE enforcement officers.

Plaintiffs' Reply: Defendants fail to comply with Rule 56(c) or Local Rule 7(h) which require a party to state whether or not a fact is genuinely disputed, nor do they provide any evidentiary basis to dispute the fact. Accordingly, to the extent Defendants deny this fact, their denial is unsupported, and pursuant to Rule 56(e)(2), the Court should consider the fact deemed admitted for purposes of the motion.

Moreover, Defendants' objection that the statement "does not identify who was allegedly arrested by ICE enforcement officers" is immaterial and without merit. The cited, sworn declarations identify by initials the specific noncitizens arrested by ICE enforcement officers after immigration court dismissals and are submitted by attorneys representing those noncitizens: *e.g.,* E.I.R.M. (Torres Decl. ¶¶ 4-6), R.H.H. and her minor children C.M.H. and M.M.H. (Hercules-Paez Decl. ¶¶ 5-6), J.P. (De Luca Decl. ¶¶ 4-7), E.M.P. (Olive Decl. ¶¶ 5-6), O.L.C. (Kelley Decl. ¶¶ 2-3), and D.L.C. (Chua Decl. ¶¶ 6-8).

67.   Noncitizens previously paroled at a port of entry were among those targeted for expedited removal. Li Decl., Ex. K; Dkt. Nos. 22-5, 22-7 – 22-17; Hercules-Paez Decl.; De Luca Decl.; Kelley Decl.

Defendants' Response: Not disputed.

68.   As of July 9, 2025, Defendants represented to this court that they were not aware of "DHS or its predecessors ever applying or subjecting to expedited removal

30

procedures individuals who had been previously paroled but whose parole terminated for whatever reason." Dkt. No. 35 at 52:3-8.

<u>Defendants' Response</u>: The document has been filed on the Court's docket and speaks for itself.

<u>Plaintiffs' Reply</u>: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

69.   Between this Court's August 1, 2025 order preliminarily staying the January 23 Huffman Memo, February 18 ICE Directive, and March 25 CHNV Termination Notice, and the September 12, 2025 D.C. Circuit order denying Defendants' motion for a stay pending appeal, DHS acknowledged that this Court's order prevents the expedited removal of people previously paroled into the country at a port of entry. Dkt. No. 53-1.

<u>Defendants' Response</u>: Disputed. The document filed at Dkt. 53 speaks for itself. Defendants' emergency motion in the D.C. Circuit asking for a stay of this Court's order did not "acknowledge" that the order "prevents . . . expedited removal." Appellants' Emergency Motion, *CHIRLA v. Noem*, No. 25-5289, Document 2130201 (D.C. Cir. Aug. 14, 2025).

<u>Plaintiffs' Reply</u>: Defendants' own conduct and submissions during the relevant period establish the acknowledgement Plaintiffs' fact describes. First, in September 2025, ICE canceled at least one expedited removal order of an individual who was previously paroled into the country, after Plaintiffs raised the case to Defendants as a violation of this Court's order. *See* Defendants' Response to SOMF No. 70.

Second, Defendants' own Emergency Motion to the D.C. Circuit characterized this Court's order as "an attempt to block the Secretary from utilizing expedited removal to remove hundreds of thousands of aliens whose parole was terminated," Appellants' Emergency Mot. at 1, *CHIRLA v. Noem*, No. 25-5289, Doc. 2130201 (D.C. Cir. Aug. 14, 2025), and sought a stay on the ground that the order caused "significant harm" to the government. *Id.* at 24. A party that does not believe an order has the effect Plaintiffs describe does not file an emergency stay motion premised on that same effect. Defendants' dispute over the particular verb "acknowledge" does not create a genuine material dispute. Fed. R. Civ. P. 56(c)(1).

70. In September 2025, ICE canceled at least one expedited removal order of an individual who was previously paroled into the country, after Plaintiffs raised the case to Defendants as a violation of this Court's order. Dkt. No. 53-1.

Defendants' Response: Not disputed.

71. As of October 2025, DHS took the position that, even though this Court's order remained in place, DHS would resume placing previously paroled individuals in expedited removal, but now pursuant to the government's regulations. Li Decl. ¶ 4.

Defendants' Response: Disputed. The question mistakenly assumes that DHS was not previously applying expedited removal based on the regulations.

Plaintiffs' Reply: Defendants do not deny that as of October 2025, DHS took the position that it would resume placing previously paroled individuals in expedited removal under the regulations notwithstanding this Court's order. That fact is therefore deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Defendants' only dispute is with the premise that DHS was not previously using the regulations to apply expedited removal to individuals paroled at a port of entry prior to the Court's order. Fed. R. Civ. P. 56(c)(1), (c)(1)(B). As to that dispute, Defendants identify no record support. The unsupported assertion does not create a genuine material dispute. Fed. R. Civ. P. 56(c)(1), (c)(1)(B).

In addition, Defendants' counsel has represented to this Court and the D.C. Circuit that the regulation was not previously being used to subject parolees to expedited removal, as discussed in Plaintiffs' Reply to SOMF No. 17.

72. Since October 2025, DHS has been subjecting certain noncitizens paroled into the country at a port of entry to expedited removal pursuant to the government's regulations. Reply Brief for Appellants at 4-5, 26, Doc. 2159516, *CHIRLA v. Noem*, No. 25-5289 (D.C. Cir. Feb. 17, 2026); Torres Suppl. Decl. ¶ 7; Hercules-Paez Decl. ¶ 14; *see also* Filimonov Decl. ¶¶ 5-6.

Defendants' Response: Not disputed.

*Impact of expedited removal on noncitizens*

73. Unlike Section 240 removal proceedings, which are conducted by Immigration Judges with the Department of Justice ("DOJ") who are sworn to serve as neutral judges, expedited removal is a process initiated, conducted, and adjudicated by DHS enforcement officers. Declaration of Ashley Tabaddor ("Tabaddor Decl."), Dkt. No. 22-6 ¶¶ 4, 11, 17.

Defendants' Response: This is a legal conclusion and not a statement of fact.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature, describes the proceedings at issue in this case, and is supported with competent evidence in the form of a sworn declaration that describes factually what happens during the expedited removal process.

74. Individuals subject to expedited removal do not receive a hearing before an IJ, and they are not entitled to seek or be represented by counsel even at their own expense. Tabaddor Decl. ¶ 11. They are not given reasonable time to gather and submit documents, witness testimony, or legal motions to defend against their deportation. Tabaddor Decl. ¶ 17.

Defendants' Response: This is a legal conclusion and not a statement of fact.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature, describes the proceedings at issue in this case, and is supported with competent evidence in the form of a sworn declaration that describes factually what happens during the expedited removal process.

75.     In Section 240 removal proceedings, noncitizens are afforded the opportunity to retain counsel and request continuances to secure representation. Tabaddor Decl. ¶ 17. They are given reasonable time to gather and submit documents, witness testimony, or legal motions to defend against their deportation. Tabaddor Decl. ¶ 17.

Defendants' Response: This is a legal conclusion and not a statement of fact.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature and is supported with competent evidence in the form of a sworn declaration that describes factually what happens during Section 240 removal proceedings.

76.     Expedited removal proceedings can result in deportation as quickly as within hours and days of detention. Tabaddor Decl. ¶ 11.

Defendants' Response: Plaintiffs have not shown that this is a material fact.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Nor have Defendants provided any explanation for why this fact is immaterial. The challenged proposition describes one of the key immigration proceedings—expedited removal—at issue in this case, as well as its consequences for individuals subjected to such proceedings. *See Anderson v. Liberty Lobby, Inc.*

35

477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

77. Individuals in expedited removal are typically detained by DHS from the time of apprehension through the conclusion of their case. Tabaddor Decl. ¶ 19.

Defendants' Response: Plaintiffs have not shown that this is a material fact.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Nor have Defendants provided any explanation for why this fact is immaterial. The challenged proposition describes one of the key immigration proceedings—expedited removal—at issue in this case, as well as its consequences for individuals subjected to such proceedings. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

78. In Section 240 proceedings, noncitizens who are *prima facie* eligible for collateral relief (relief from removal that can be granted not by an immigration court but by another entity like USCIS), such as adjustment of status, Temporary Protected Status ("TPS"), or Special Immigrant Juvenile Status ("SIJS"), can request that the Immigration Judge allow them to pursue those applications. Tabaddor Decl. ¶ 9. The Immigration Judge can exercise various options to do so, including granting a continuance, administratively closing proceedings, placing the case on the status docket to provide USCIS with time to adjudicate the collateral relief, or terminating proceedings altogether. Tabaddor Decl. ¶ 9.

Defendants' Response: This is a legal conclusion and not a statement of fact.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature and is supported with competent evidence in the form of a sworn declaration that describes factually what happens during Section 240 removal proceedings.

79.  In expedited removal, there is no mechanism for individuals to pursue eligibility for any non-fear-based forms of relief, including family-based petitions, special immigration visas, TPS, or adjustment of status. Tabaddor Decl. ¶ 16. Individuals with valid claims of these kinds of relief lose their ability to pursue them when they are processed for expedited removal. Tabaddor Decl. ¶ 16.

Defendants' Response: This is a legal conclusion and not a statement of fact.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature, describes the proceedings at issue in this case, and is supported with competent evidence in the form of a sworn declaration that describes factually what happens during the expedited removal process.

80. Noncitizens in expedited removal who express a fear of returning to their home country are supposed to be referred for a credible fear screening interview. Tabaddor Decl. ¶ 12. These interviews are conducted by asylum officers who are also employees of DHS. Tabaddor Decl. ¶ 12.

Defendants' Response: This is a legal conclusion and not a statement of fact.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature, describes the proceedings at issue in this case, and is supported with competent evidence in the form of a sworn declaration that describes factually what happens during the expedited removal process.

81. There is no right to counsel during a credible fear interview. Tabaddor Decl. ¶ 12.

Defendants' Response: Disputed. This is a legal conclusion and not a statement of fact. The statute and regulations provide a right to consult another person before the credible fear interview.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature, describes the proceedings at issue in this case, and is supported with competent evidence in the form of a sworn declaration that describes factually what happens during the expedited removal process.

Moreover, Defendants do not identify a material basis to dispute this fact. The statute and regulation that Defendants are presumably referencing—but have not identified—both state only that an individual subject to expedited removal proceedings and referred for a credible fear interview "*may* consult with a person or persons of the alien's choosing prior to the interview" and that any such consultation "shall be at no expense to the Government and shall not unreasonably delay the process." 8 U.S.C. § 1225(b)(1)(B)(iv) (emphasis added); 8 C.F.R. § 208.30(d)(4) (same). As stated in SOMF No. 82, the short period of notice that noncitizens are given before their credible fear interviews means that their ability to obtain counsel or otherwise consult with another person before the interview is severely constrained.

82.    As noncitizens are typically detained during expedited removal proceedings, and they are given on average 24 to 48 hours' notice before credible fear interviews, their ability to obtain counsel, or contact another trusted individual to accompany them during the interview is severely constrained. Tabaddor Decl. ¶ 12.

Defendants' Response: Disputed. This is a legal conclusion and not a statement of fact. Plaintiffs have not shown that these are material facts.

39

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature, describes the proceedings at issue in this case, and is supported with competent evidence in the form of a sworn declaration that describes factually what happens during the expedited removal process.

Nor have Defendants provided any explanation for why this fact is immaterial. The challenged proposition describes one of the key immigration proceedings—expedited removal—at issue in this case, as well as its consequences for individuals subjected to such proceedings. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

83.  If after a credible fear interview the asylum officer finds no credible fear, the noncitizen can request a limited review by an Immigration Judge that focuses solely on whether the credible fear determination was proper. Tabaddor Decl. ¶ 14. If the Immigration Judge affirms the asylum officer's finding, there is no judicial review of the decision. Tabaddor Decl. ¶ 14.

Defendants' Response: This is a legal conclusion and not a statement of fact.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature, describes the proceedings at issue in this case, and is supported with competent evidence in the form of a sworn declaration that describes factually what happens during the expedited removal process.

84. In Section 240 removal proceedings, Immigration Judge decisions are subject to appellate and judicial review in the circuit court of appeals. Tabaddor Decl. ¶ 17.

Defendants' Response: This is a legal conclusion and not a statement of fact.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature and is supported with competent evidence in the form of a sworn declaration that describes factually what happens during Section 240 removal proceedings.

85. The credible fear screening process has long been documented to lack basic and necessary safeguards to protect against the erroneous removal of noncitizens to dangerous situations abroad. Li Decl. ¶¶ 16-17 & Exs. L, M.

Defendants' Response: Disputed. This is a legal conclusion and not a statement of fact. Plaintiffs rely on evidence outside the administrative record.

41

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature, describes the proceedings at issue in this case, and is supported with competent evidence in the form of reports from the U.S. Commission on International Religious Freedom and nonprofit organization Human Rights Watch that describe factually what happens during the expedited removal process.

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is likewise meritless. Plaintiffs offer this evidence to establish important aspects of the problem Defendants did not consider when issuing the January 23 Huffman Memorandum, the February 18 ICE Directive, and the March 25 CHNV Termination Notice—a proper subject of arbitrary-and-capricious review. An agency acts arbitrarily and capriciously when it "entirely failed to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983), which includes the "facts and circumstances that underlay . . . the prior policy" being changed, *Encino Motorcars, LLC v. Navarro,* 579 U.S. 211, 222 (2016). Evidence showing what the agency failed to consider is a recognized exception to record-rule limitations. *See Dep't of Com. v. N.Y.*, 588 U.S. 752, 781-82 (2019) (affirming consideration of evidence

42

beyond the original administrative record where necessary to evaluate agency's stated rationale); *Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971).

**The History of Expedited Removal from the Refugee Act of 1980 through the Illegal Immigration Reform and Immigrant Responsibility Act of 1996**

*1980s*

86.    In March 1980, Congress passed the Refugee Act, establishing the U.S. Refugee Admissions Program for resettling in the United States refugees identified and processed abroad and requiring the Attorney General to establish a procedure to allow noncitizens "physically present in the United States or at a land border or port of entry" to apply for asylum. Pub. L. No. 96-212, § 201(b), 94 Stat. 102, 105 (*codified as amended at* 8 U.S.C. § 1158(a)); Declaration of Yael Schacher, ("Schacher Decl.") ¶ 12.

Defendants' Response: This is a legal conclusion and not a statement of fact. The statute speaks for itself. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in

the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC*, 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC*, 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Additionally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature, is supported with competent evidence in the form of the historical Public Law and a sworn declaration, and describes a historical event—the passage of the Refugee Act and establishment of the U.S. Refugee Admissions Program—relevant to the legislative history of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

87. After enactment but before the Attorney General established the required procedures to allow for the filing of asylum applications, tens of thousands of Cubans sailed from the port of Mariel and began arriving by boat in Florida. Thousands of Haitians also arrived in Florida during the spring and summer of 1980. Many were paroled into the country. Schacher Decl. ¶ 13.

44

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult

whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

88. In 1981, U.S. officials were concerned that additional large groups of Cuban or Haitian migrants might attempt to come to the United States by boat. The Reagan Administration and members of Congress of both parties began to propose legislation to create an expedited exclusion process for migrants with fraudulent documents or no documents at all who were in the process of arriving at our borders or who had just come into the country at a place that was not a designated port of entry. Schacher Decl. ¶¶ 14-15.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed

because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

89. The Reagan administration's legislation containing the first expedited exclusion proposal was introduced in 1981 as S. 1765 and H.R. 4832, the "Omnibus Immigration Control Act," which authorized immigration officers during inspection to order noncitizens lacking necessary entry documents to be excluded and to "immediately deport[]" such noncitizens who are "arriving in the United States." Schacher Decl. ¶ 17 & Ex. B.

Defendants' Response: Plaintiffs have not shown the facts are material. The material attached to the declaration speaks for itself. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

90.  After debate over the administration's bill, Rep. Romano Mazzoli and Sen. Alan Simpson introduced bills both in 1982 and during the following Congress that allowed inspectors to exclude noncitizens in the physical act of seeking entry to the United States who lacked documents authorizing entry. Schacher Decl. ¶¶ 18-19.

Defendants' Response: Plaintiffs have not shown the facts are material. The material attached to the declaration speaks for itself. The material attached to the declaration does not support the adjective "physical." To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a

49

motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' dispute over the use of the adjective "physical" is immaterial: the materials referenced and attached repeatedly describe expedited exclusion as applying to noncitizens "seeking entry," "at the port of arrival," or "in the physical act of seeking entry." *See, e.g.*, Schacher Decl. ¶ 19 & Exs. F, G (Sen. Simpson describing the bill as providing the INS "the ability to react to immigration emergencies" through summary procedures at ports of arrival; Rep. McCollum describing expedited exclusion as designed "to insure that we have the capacity to handle and deal with future Mariel boatlifts"). "Physical" is an accurate summary descriptor. Fed. R. Civ. P. 56(e)(2); *see also* Dkt. No. 69 at 24 ("No one disputes paroled [individuals] have physically reached a port of entry and been paroled.").

91. Sen. Simpson's bills in both Congresses specified that the provision applied only "at the port of arrival" to people without entry documents who were described as "unlawfully seeking entry into the United States." Rep. Mazzoli's bills in both Congresses referred to people "seeking entry" who failed to provide required entry documents. Schacher Decl. ¶¶ 18-19.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

92.    Each of these proposals was motivated, in part, by a desire to give the Immigration and Naturalization Service (INS) an expeditious exclusion tool to use against non-

asylum seekers in the event of a future mass migration event. Schacher Decl. ¶¶ 14-19.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings");

*Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Finally, Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is clearly factual in nature, is supported with competent evidence in the form of a sworn declaration, and describes facts—motivations and events leading up to various legislative proposals—relevant to the legislative history of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

93.    None of these legislative proposals would have subjected people previously paroled into the country—including those Cuban and Haitian nationals who came in 1980 and were paroled into the country—to the expedited exclusion procedures. Schacher Decl. ¶¶ 16-20.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself. The assertion ignores the entry fiction or doctrine.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court

should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' reference to the "entry fiction or doctrine" is a non sequitur with no connection to relevant or contrary evidence supported by citations to record evidence. Whether the entry fiction existed at the relevant historical time has no

54

bearing on Plaintiffs' factual statement about what Congress did or did not do; and Defendants identify no evidence that the entry fiction affected the legislative actions Plaintiffs describe.

94.    The legislative proposals that passed the House and the Senate in 1983 and 1984 that containing expedited exclusion provisions also contained provisions allowing eligible Cuban and Haitian nationals who had been paroled into the country during this period to adjust status to lawful permanent residence. Schacher Decl. ¶¶ 18-20.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events

55

relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration, and it describes facts—as to provisions included in various legislative proposals—that are relevant to the legislative history of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

95. Although none of the legislation with summary exclusion provisions proposed in the 1980s were enacted, Congress, in the Immigration Reform and Control Act of 1986, enacted a provision allowing Cuban and Haitian parolees who were otherwise eligible under the legislation to apply for adjustment of status to lawful permanent residence. Schacher Decl. ¶ 21.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings");

*Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration, and it describes facts—as to legislation that was and was not enacted—that are relevant to the legislative history of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

*1990s*

96.    Congress's interest in an expedited exclusion process generally faded toward the second half of the 1980s, but returned in the 1990s due to increased reports of noncitizens arriving at airports with no documents or with fraudulent documents, increased smuggling of migrants by boat, and after the February 1993 bombing of the World Trade Center. Schacher Decl. ¶¶ 23-25.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court

should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

97. In response, Rep. Bill McCollum in March 1993 (H.R. 1355) and Sen. Simpson in May 1993 (S. 667) both introduced legislation that would have created an expedited exclusion process for people seeking entry with fraudulent documents and those

who claimed asylum but could not pass a credible fear screening. Schacher Decl. ¶ 24.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings");

*Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

98.     During the May 1993 Senate Judiciary Committee hearing on Sen. Simpson's bill, S. 667, Members of Congress raised concerns about the need to address increased smuggling of Chinese migrants to the United States by boat. Schacher Decl. ¶ 25.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process,

61

whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

99.    In July 1993, Reps. Mazzoli, McCollum, and Schumer introduced legislation, H.R. 2602, that combined the expedited exclusion of people seeking entry at ports of entry without proper documentation with provisions aimed at preventing smuggling. Schacher Decl. ¶ 25.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See*

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

100. Speaking on the House Floor in support of this legislation, Rep. Mazzoli described the bill as "keeping people out of the United States who are attempting to travel with fraudulent papers" and providing "an expedited but fair hearing for those who plead asylum when they reach this shore." Schacher Decl. ¶ 25 & Ex. H.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

101. In July 1993, Sen. Edward Kennedy introduced legislation, S. 1333, that applied expedited exclusion to those seeking entry at ports with fraudulent documents and

those who tried to enter by boat and were brought by U.S. authorities to a port of entry for inspection. Schacher Decl. ¶ 26.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings");

*Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

102. In May 1994, Rep. Lamar Smith introduced legislation, H.R. 3860, that included an expedited exclusion provision. Like Rep. Mazzoli's bill, the legislation was focused on noncitizens seeking entry at ports without necessary documents. Schacher Decl. ¶ 27.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed

66

because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

103.    None of these expedited exclusion provisions proposed between 1992 and 1994 mentioned people paroled into the country. Schacher Decl. ¶ 29.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself. The assertion ignores the entry fiction or doctrine.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant

67

to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' reference to the "entry fiction or doctrine" is a non sequitur with no connection to relevant or contrary evidence supported by citations to record evidence. Whether the entry fiction existed at the relevant historical time has no bearing on Plaintiffs' factual statement about what Congress did or did not do; and Defendants identify no evidence that the entry fiction affected the legislative actions Plaintiffs describe.

68

104.    On September 13, 1994, Congress enacted the Violent Crime Control and Law Enforcement Act of 1994. The legislation contained a "sense of the Senate" that the country's immigration and asylum laws should be amended to provide an expedited exclusion process for noncitizens "who arrive[] at a port-of-entry with fraudulent documents, or no documents" and who make a "noncredible claim of asylum." Schacher Decl. ¶ 28 & Ex. I.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in

the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration, and it describes facts about the Violent Crime Control and Law Enforcement Act of 1994 that are relevant to the legislative history of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

105.    The Violent Crime Control and Law Enforcement Act of 1994 contains no mention of people previously paroled into the country in connection with its support for the creation of an expedited exclusion authority. Schacher Decl. ¶ 28 & Ex. I.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The material attached to the declaration speaks for itself. The assertion ignores the entry fiction or doctrine.

70

<u>Plaintiffs' Reply</u>: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration, and it describes facts about the Violent Crime Control and Law Enforcement Act of 1994 that are relevant to the legislative history of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

Defendants' reference to the "entry fiction or doctrine" is a non sequitur with no connection to relevant or contrary evidence supported by citations to record evidence. Whether the entry fiction existed at the relevant historical time has no bearing on Plaintiffs' factual statement about what Congress did or did not do; and Defendants identify no evidence that the entry fiction affected the legislative actions Plaintiffs describe.

### 104th Congress and the Enactment of AEDPA and IIRIRA

106. On March 14, 1995, the Senate Judiciary Committee held a hearing on S. 269, the "Immigrant Control and Financial Responsibility Act of 1995," as well as a proposal advanced by the Clinton Administration, both of which contained expedited exclusion provisions. At the hearing, the discussion regarding these provisions focused exclusively on people arriving at ports of entry or brought to the United States after interdiction at sea. Schacher Decl. ¶ 29.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside

of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

**107.** Although both expedited exclusion and reforms to the parole authority were discussed at the hearing, the two topics were treated as entirely separate subjects and no senator or witness argued that an expedited exclusion authority should be available for use against noncitizens paroled into the country at ports of entry. Schacher Decl. ¶ 29.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process,

whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration, and it describes facts about the March 1995 Senate Judiciary Committee hearing that are relevant to the legislative history of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

108. On April 19, 1995, a domestic terrorist attack took place in Oklahoma City, where the Alfred P. Murrah Federal Building was bombed. Schacher Decl. ¶ 30.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

109. Over the course of the next year and a half, Congress considered both immigration legislation that eventually became the Illegal Immigration and Immigrant

Responsibility Act (IIRIRA) and antiterrorism legislation that eventually became the Antiterrorism and Effective Death Penalty Act (AEDPA). Both pieces of enacted legislation included expedited removal provisions. Schacher Decl. ¶ 31.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have

77

considered legislative facts that were not the product of trial-type proceedings");
*Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a
motion to strike a "report to the Senate . . . , which the court would be free to consult
whether or not anyone had supplied it; lodging simply reduces the workload of the
court's librarian").

110.    Exhibit J to the Declaration of Yael Schacher accurately reflects and summarizes
key legislative moments in the 104th Congress leading to the enactment of both
IIRIRA and AEDPA. Schacher Decl. ¶ 31 & Ex. J.

Defendants' Response: Plaintiffs have not shown the facts are material. To the
extent the statement is based on historical events, Plaintiffs rely on evidence outside
of the administrative record. The material attached to the declaration speaks for
itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert
Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1);
Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this
fact is immaterial. The challenged proposition describes historical events relevant
to the legislative history of the expedited removal authority at issue in this case. *See
Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material
fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the
administrative record is meritless. Legislative history, as well as historical events
relevant to that legislative history, are legislative facts that may judicially be noticed

because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

111.    AEDPA was enacted into law first, on April 24, 1996. Schacher Decl. ¶ 40; AEDPA, Pub. L. No. 104-132.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The statute speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

112. AEDPA made noncitizens lacking entry documents who were "seeking entry" subject to expedited exclusion. Schacher Decl. ¶ 38 & Ex. N; AEDPA, Pub. L. No. 104-132, § 422.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The statute speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

113. Congress designed this "seeking entry" authority for noncitizens lacking entry documents who were arriving in the country at a port of entry. Schacher Decl. ¶¶ 35-36, 38.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside

of the administrative record. This is a legal conclusion and not a statement of fact. The statute and the material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration, and it describes facts about the drafting of AEDPA that are relevant to the legislative history of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

114.   During markup of H.R. 1710, the House bill that first contained the expedited removal provisions ultimately enacted in AEDPA, Judiciary Committee Chairman Henry Hyde emphasized that the goal of the "seeking entry" provision was deal with "people who show up at the airport" without proper documents and to "get control" of the situation where people "get off [the plane] without documentation." Schacher Decl. ¶ 35 & Ex. K.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See*

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

115. The House Judiciary Committee report for H.R. 1710 described the "seeking entry" provision as applying to noncitizens "arriving at the port of entry" and providing authority to return noncitizens at airports with fraudulent or no documents "as promptly as possible, to where they boarded the plane to come here." Schacher Decl. ¶ 36 & Ex. M.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence

84

outside of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult

whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

116.    AEDPA also deemed noncitizens "found in" the country without having been admitted following inspection to be "seeking entry and admission" and exposed them not only to exclusion hearings, but also to expedited exclusion. Schacher Decl. ¶ 33; AEDPA, Pub. L. No. 104-132, § 414.

Defendants' Response: To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The statute speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult

86

whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration, and it describes facts about the text of AEDPA that are relevant to the legislative history of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

117.  Congress designed this "found in" authority for noncitizens present in the country who entered without inspection, wholly unlawfully. Schacher Decl. ¶¶ 35-36, 38.

Defendants' Response: To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory

Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration, and it describes facts about the drafting of AEDPA that are relevant to the legislative history of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

118. During markup, Chairman Hyde described the "found in" provision as focused on those who "evade our border controls," "succeed in crossing our borders illegally," and make a "stealthy entrance." The provision was meant as "an expression of our resolve" to end incentives "for terrorists to enter the country illegally." Schacher Decl. ¶ 35 & Ex. K.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself.

<u>Plaintiffs' Reply</u>: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

119. The House Judiciary Committee report for H.R. 1710 described the "found in" provision as applying to noncitizens who "entered the United States unlawfully"

89

and "regardless of the length of time the illegal entrant has been unlawfully present within the United States." Schacher Decl. ¶ 36 & Ex. M. The INS described the "found in" provision in AEDPA as applying to noncitizens "who have entered the U.S. without inspection, wherever encountered and irrespective of their length of stay in the U.S." Schacher Decl. ¶ 46 & Ex. S.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process,

90

whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

120.    At no point in the legislative history leading to the enactment of AEDPA, including the House Judiciary Committee hearings and markups on H.R. 1710 or consideration of the legislation on the House or Senate Floor, was there any mention of noncitizens who had been paroled into the country at a port of entry being treated as "seeking entry." Schacher Decl. ¶¶ 34-35, 37, 39.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself. The assertion ignores the entry fiction or doctrine.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' reference to the "entry fiction or doctrine" is a non sequitur with no connection to relevant or contrary evidence supported by citations to record evidence. Whether the entry fiction existed at the relevant historical time has no bearing on Plaintiffs' factual statement about what Congress did or did not do; and

Defendants identify no evidence that the entry fiction affected the legislative actions Plaintiffs describe.

121. At no point in the legislative history leading to the enactment of AEDPA, including the House Judiciary Committee hearings and markups on the bill or consideration of the legislation on the House or Senate Floor, was there any mention of noncitizens who had been paroled into the country at a port of entry being treated as "found in" the country without inspection. Schacher Decl. ¶¶ 34-35, 37, 39.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. The material attached to the declaration speaks for itself. The assertion ignores the entry fiction or doctrine.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events

relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' reference to the "entry fiction or doctrine" is a non sequitur with no connection to relevant or contrary evidence supported by citations to record evidence. Whether the entry fiction existed at the relevant historical time has no bearing on Plaintiffs' factual statement about what Congress did or did not do; and Defendants identify no evidence that the entry fiction affected the legislative actions Plaintiffs describe.

122. IIRIRA was enacted into law on September 30, 1996. Schacher Decl. ¶ 62; IIRIRA, Pub. L. No. 104-208, 110 Stat. 3009, Division C. The first purpose of IIRIRA was to "improve deterrence of illegal immigration to the United States." Schacher Decl. ¶ 63 & Ex. L.

Defendants' Response: This is a legal conclusion and not a statement of fact. The statute speaks for itself.

94

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is supported with competent evidence in the form of a Public Law, a Conference Committee Report, and a sworn declaration and describes facts about the historical enactment of IIRIRA that are relevant to the legislative history of the expedited removal authority at issue in this case. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC*, 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

123. IIRIRA rescinded both the "seeking entry" and "found in" provisions enacted in AEDPA. Schacher Decl. ¶ 41.

Defendants' Response: This is a legal conclusion and not a statement of fact. The statute speaks for itself.

95

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is supported with competent evidence in the form of a sworn declaration and describes facts about the historical enactment of IIRIRA that are relevant to the legislative history of the expedited removal authority at issue in this case. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC*, 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

124. To replace the "seeking entry" expedited exclusion provision contained in AEDPA, Congress authorized in IIRIRA the use of expedited removal against noncitizens lacking entry documents who are "arriving in" the country. IIRIRA, Pub. L. No. 104-208, 110 Stat. 3009, Division C, Sec. 302; *see* Schacher Decl. ¶¶ 40, 42-66.

96

Defendants' Response: This is a legal conclusion and not a statement of fact. The statute speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is supported with competent evidence in the form of a Public Law and a sworn declaration and describes facts about the historical enactment of IIRIRA that are relevant to the legislative history of the expedited removal authority at issue in this case. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC*, 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

125. To replace the "found in" expedited exclusion provision contained in AEDPA, Congress authorized in IIRIRA, subject to designation by the Attorney General, the

use of expedited removal against noncitizens lacking entry documents who have not been admitted or paroled into the country and cannot establish two years of physical presence. IIRIRA, Pub. L. No. 104-208, 110 Stat. 3009, Division C, Sec. 302; *see* Schacher Decl. ¶¶ 40, 42-66.

Defendants' Response: This is a legal conclusion and not a statement of fact. The statute speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is supported with competent evidence in the form of a Public Law and a sworn declaration and describes facts about the historical enactment of IIRIRA that are relevant to the legislative history of the expedited removal authority at issue in this case. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC*, 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult

98

whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

126.   When the Senate Immigration Subcommittee marked up the Senate bill that would become IIRIRA, the bill sponsor, Sen. Simpson, emphasized that "[t]he purpose of expedited exclusion is just that, to accelerate the exclusion of those who would abuse our hospitality and generosity through surreptitious entry, document fraud, and by making fraudulent and wholly frivolous asylum claims." Schacher Decl. ¶ 43 & Ex. Q.

Defendants' Response: This is a legal conclusion and not a statement of fact. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is supported with competent evidence in the form of legislative history attached to and authenticated by a sworn declaration and describes facts about concurrent Congressional intent and the practical consequence of IIRIRA's enactment that are relevant to the legislative history of the expedited removal authority at issue in this case. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes

of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC*, 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

127.   Similarly, the House Judiciary Committee markup debates for its versions of the bill confirm that the bill's proponents understood the expedited removal provision as applying to people in the process of physically coming into the country without valid documents. During the markup, Rep. Smith made it clear that expedited removal was designed to return "as promptly as possible to where they boarded the plane to come here" those without valid entry documents who had no fear of persecution. Schacher Decl. ¶ 50 & Ex. U.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. The material attached to the declaration speaks for itself. The material attached to the declaration does not support the adjective "physically."

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' dispute over the use of the term "physically" is immaterial and baseless. Plaintiffs' statement is supported by the materials referenced and attached, which show that Rep. Lamar Smith, the bill sponsor, described expedited removal as focused on removing people "as promptly as possible to where they boarded the plane to come here." Schacher Decl. ¶ 50 & Ex. U. Rep. Smith further opposed an amendment to provide review by immigration judges within 72 hours of a negative credible fear determination on the ground that "it is not at all certain that the Department of Justice could make immigration judges available in such a short time *at each airport*.'" Schacher Decl. ¶ 50 & Ex. V (emphasis added). "Physical" is an accurate summary descriptor. Fed. R. Civ. P. 56(e)(2); *see also* Dkt. No. 69 at 24 ("No one disputes paroled [individuals] have physically reached a port of entry and been paroled.").

128. The Department of Justice's official views on the expedited exclusion provisions in the House- and Senate-passed versions of IIRIRA supported the Senate-passed version, with certain modifications, because it provided sufficient flexibility to use the authority when needed for people attempting to come into the country at ports of entry without proper documents. The Department wrote that, "[e]xpedited

101

exclusion authority is critically important to our ability to deal with organized alien smuggling and fraud at our ports of entry." Schacher Decl. ¶ 55 & Ex. W.

Defendants' Response: Plaintiffs have not shown the facts are material. This is a legal conclusion and not a statement of fact. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. This statement is supported with competent evidence in the form of legislative history attached to and authenticated by a sworn declaration and describes facts about the agency's own interpretation of its statutory authority that are relevant to the legislative history of the expedited removal authority at issue in this case. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed

102

Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC*, 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

129.   Unlike the expedited removal provisions that were enacted in AEDPA after receiving little scrutiny throughout the process, the expedited removal provisions that were being considered in the House and Senate immigration bills underwent significant debate and discussion. But at no point during the process was there any discussion of creating a statutory authorization of expedited removal to be used against noncitizens who had already been paroled into the country at a port of entry. Schacher Decl. ¶ 41.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. The material attached to the declaration speaks for itself. The assertion ignores the entry fiction or doctrine.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant

to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' reference to the "entry fiction or doctrine" is a non sequitur with no connection to relevant or contrary evidence supported by citations to record evidence. Whether the entry fiction existed at the relevant historical time has no bearing on Plaintiffs' factual statement about what Congress did or did not do; and Defendants identify no evidence that the entry fiction affected the legislative actions Plaintiffs describe.

130.  At no point in the legislative history leading to the enactment of IIRIRA, which included extensive House Judiciary Committee and Senate Judiciary Committee hearings and markups on the bill, House and Senate Floor debates, and materials prepared and exchanged when the House and Senate bills were being conference was there any mention of noncitizens who had been paroled into the country at a port of entry being treated as "arriving in" the country. Schacher Decl. ¶¶ 41-66.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. The material attached to the declaration speaks for itself. The assertion ignores the entry fiction or doctrine.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' reference to the "entry fiction or doctrine" is a non sequitur with no connection to relevant or contrary evidence supported by citations to record evidence. Whether the entry fiction existed at the relevant historical time has no bearing on Plaintiffs' factual statement about what Congress did or did not do; and Defendants identify no evidence that the entry fiction affected the legislative actions Plaintiffs describe.

131.    At no point in the legislative history leading to the enactment of IIRIRA, which included extensive House Judiciary Committee and Senate Judiciary Committee hearings and markups on the bill, House and Senate Floor debates, and materials prepared and exchanged when the House and Senate bills were being conferenced was there any mention of noncitizens who had been paroled into the country at a port of entry being subjected to expedited removal pursuant to a designation by the Attorney General. Schacher Decl. ¶¶ 41-66.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. The material attached to the declaration speaks for itself. The assertion ignores the entry fiction or doctrine.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The

absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' reference to the "entry fiction or doctrine" is a non sequitur with no connection to relevant or contrary evidence supported by citations to record evidence. Whether the entry fiction existed at the relevant historical time has no bearing on Plaintiffs' factual statement about what Congress did or did not do; and Defendants identify no evidence that the entry fiction affected the legislative actions Plaintiffs describe.

132. The first time in the legislative history of IIRIRA that there is a reference to noncitizens paroled into the country in connection to exposure to expedited removal is in the version of the legislation reported by the Conference Committee, where the provision targeting noncitizens who entered the country without inspection now included language to specifically protect from expedited removal noncitizens who have been paroled into the country (just as the language already protected noncitizens who have been admitted to the country). Schacher Decl. ¶ 66.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. The material attached to the declaration speaks for itself. The assertion ignores the entry fiction or doctrine.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' reference to the "entry fiction or doctrine" is a non sequitur with no connection to relevant or contrary evidence supported by citations to record evidence. Whether the entry fiction existed at the relevant historical time has no bearing on Plaintiffs' factual statement about what Congress did or did not do; and Defendants identify no evidence that the entry fiction affected the legislative actions Plaintiffs describe.

**Parole Reform Efforts As Distinct From Expedited Removal**

133. Congressional efforts to modify the parole authority prior to IIRIRA have always been distinct from efforts to create an expedited removal authority. Schacher Decl. ¶¶ 67-74.

<u>Defendants' Response</u>: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The material attached to the declaration speaks for itself.

<u>Plaintiffs' Reply</u>: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult

108

whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration from a scholar who has extensively reviewed the legislative history of the INA's expedited removal authority, and it describes facts about the legislative history preceding the enactment of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

134. In 1980, Congress replaced the conditional entry of refugees with a process for the admission of refugees and also amended the parole statute to limit the statutory authority to parole refugees into the country rather than admitting absent "compelling reasons in the public interest." Schacher Decl. ¶ 68.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The statute speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See*

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration from a scholar who has extensively reviewed the legislative history of the INA's expedited removal authority, and it describes facts about the legislative history preceding the enactment of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

110

**135.** In 1994 and 1995, legislation was proposed but not enacted to limit how many people and who could be paroled and the eligibility of parolees for work authorization or adjustment of status. Schacher Decl. ¶ 68.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have

111

considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration from a scholar who has extensively reviewed the legislative history of the INA's expedited removal authority, and it describes facts about the legislative history preceding the enactment of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

136. In 1996, Congress in IIRIRA enacted several provisions pertaining to the parole authority and amended the parole statute itself. Schacher Decl. ¶¶ 69-71. These include: (1) requiring nearly all long-term parolees who have yet to become lawful permanent residents be counted against annual numerical caps on family-sponsored immigration; (2) requiring the Executive to report to Congress annually on the use of parole; and (3)  and replacing the "emergent reasons or for reasons deemed strictly in the public interest" language that had been in the parole criteria since 1952 with "urgent humanitarian reasons or significant public benefit." Schacher Decl. ¶¶ 69-71.

Defendants' Response: Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside

112

of the administrative record. This is a legal conclusion and not a statement of fact. The statute speaks for itself.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

113

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration from a scholar who has extensively reviewed the legislative history of the INA's expedited removal authority, and it describes facts about the legislative history preceding the enactment of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

137. Congress did not in IIRIRA amend—or discuss amending—the parole statute to render noncitizens paroled into the country at a port of entry as "arriving" in the United States, regardless of whether their parole had expired or otherwise been terminated. Schacher Decl. ¶ 73.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The assertion ignores the entry fiction or doctrine. The statute and material attached to the declaration speak for themselves.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant

114

to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration from a scholar who has extensively reviewed the legislative history of the INA's expedited removal authority, and it describes facts about the legislative history preceding the enactment of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

115

Defendants' reference to the "entry fiction or doctrine" is a non sequitur with no connection to relevant or contrary evidence supported by citations to record evidence. Whether the entry fiction existed at the relevant historical time has no bearing on Plaintiffs' factual statement about what Congress did or did not do; and Defendants identify no evidence that the entry fiction affected the legislative actions Plaintiffs describe.

138.    Congress did not in IIRIRA amend—or discuss amending—the parole statute to state that a noncitizen paroled into the country at a port of entry could be subject to removal under the contemporaneously enacted expedited removal authority at 8 U.S.C. § 1225(b)(1). Schacher Decl. ¶ 73.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The assertion ignores the entry fiction or doctrine. The statute and material attached to the declaration speak for themselves.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See*

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration from a scholar who has extensively reviewed the legislative history of the INA's expedited removal authority, and it describes facts about the legislative history preceding the enactment of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

117

Defendants' reference to the "entry fiction or doctrine" is a non sequitur with no connection to relevant or contrary evidence supported by citations to record evidence. Whether the entry fiction existed at the relevant historical time has no bearing on Plaintiffs' factual statement about what Congress did or did not do; and Defendants identify no evidence that the entry fiction affected the legislative actions Plaintiffs describe.

139.    When legislative proposals regarding parole were being considered in the wake of the enactment of the Refugee Act and continuing through enactment of IIRIRA, there was no consideration given to subjecting noncitizens who previously had been paroled into the country to summary removal provisions also being considered. Schacher Decl. ¶ 73.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The assertion ignores the entry fiction or doctrine. The statute and material attached to the declaration speak for themselves.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant

to the legislative history of the expedited removal authority at issue in this case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration from a scholar who has extensively reviewed the legislative history of the INA's expedited removal authority, and it describes facts about the legislative history preceding the enactment of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

119

Defendants' reference to the "entry fiction or doctrine" is a non sequitur with no connection to relevant or contrary evidence supported by citations to record evidence. Whether the entry fiction existed at the relevant historical time has no bearing on Plaintiffs' factual statement about what Congress did or did not do; and Defendants identify no evidence that the entry fiction affected the legislative actions Plaintiffs describe.

140. Rather, throughout this period—and even in IIRIRA itself—Congress regularly continued to enact legislation allowing such individuals physically present in the country pursuant to parole to adjust status to lawful permanent residence. Schacher Decl. ¶ 74.

Defendants' Response: Disputed. Plaintiffs have not shown the facts are material. To the extent the statement is based on historical events, Plaintiffs rely on evidence outside of the administrative record. This is a legal conclusion and not a statement of fact. The statute and material attached to the declaration speak for themselves.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The challenged proposition describes historical events relevant to the legislative history of the expedited removal authority at issue in this case. *See*

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is meritless. Legislative history, as well as historical events relevant to that legislative history, are legislative facts that may judicially be noticed because they "have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a), Notes of Advisory Committee on 1972 Proposed Rules; *see also Ass'n of Nat'l Advertisers v. FTC,* 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) (citing cases in which courts "have considered legislative facts that were not the product of trial-type proceedings"); *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 541-42 (7th Cir. 1989) (denying a motion to strike a "report to the Senate . . . , which the court would be free to consult whether or not anyone had supplied it; lodging simply reduces the workload of the court's librarian").

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement is supported with competent evidence in the form of a sworn declaration from a scholar who has extensively reviewed the legislative history of the INA's expedited removal authority, and it describes facts about the legislative history preceding the enactment of the expedited removal authority at issue in this case. As established above in this Reply, legislative history, as well as historical events relevant to that legislative history, are legislative facts.

**The Administrative Record**

*January 23 Huffman Memorandum*

141.   The Administrative Record ("AR") that Defendants produced for the January 23 Huffman Memorandum consists of 18 documents in PDF format totaling 141 pages. Li Decl., Ex. G.

Defendants' Response: Not disputed.

142.   All 18 documents in the AR were already publicly available either because they were published on a government website, printed in the Federal Register, or filed on the public docket of a federal court case. Li Decl., Ex. G.

Defendants' Response: Disputed. Calls for information outside the administrative record.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is likewise meritless. Plaintiffs do not offer the index to the administrative record for January 23 Huffman Memorandum for the truth of any matter contained in the documents listed in it. They offer it to establish important aspects of the problem the Secretary did not consider when issuing the memo—a proper subject of arbitrary-and-capricious review. An agency acts arbitrarily and capriciously when it "entirely failed to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S.

122

29, 43 (1983), which includes the "facts and circumstances that underlay . . . the prior policy" being changed, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (citation omitted). Evidence showing what the agency failed to consider is a recognized exception to record-rule limitations. *See Dep't of Com. v. N.Y.,* 588 U.S. 752, 781-82 (2019) (affirming consideration of evidence beyond the original administrative record where necessary to evaluate agency's stated rationale); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

Additionally, the public nature of the documents in the AR for the January 23 Huffman Memorandum is evident from the names of the documents themselves (i.e., those printed in the Federal Register) or can otherwise be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Therefore, the Court may take judicial notice of this fact. Fed. R. Evid. 201(b)(2).

143.    The AR has no information about DHS subjecting of individuals who were paroled into the country at a port of entry to expedited removal before 2025. Li Decl., Ex. G.

Defendants' Response: Disputed. The January 23 Huffman Memorandum, which is part of the relevant AR, is attached as Exhibit A to the Li Declaration, and the document speaks for itself.

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

Moreover, Defendants' response that the Huffman Memorandum—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

144.    Nothing in the AR provides an explanation as to why the government began subjecting paroled individuals to expedited removal in 2025. Li Decl., Ex. G.

Defendants' Response: Disputed. Plaintiffs have acknowledged that the government did not "beg[i]n subjecting paroled individuals to expedited removal in 2025." See Plaintiffs' Statement of Material Facts (Dkt. 55-2) ¶ 59.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Defendants also fail to identify a material dispute. The proposed fact concerns the contents of the AR, and the Defendants' response does not address the contents of the AR or point to contrary evidence.

The paragraph of Plaintiffs' Statement of Material Facts that Defendants cite, ¶ 59, describes only the 2011 DHS policy under which ICE officers *could* use expedited removal "for all arriving aliens paroled into the United States for prosecution, regardless of how long they have been present in the United States."

Plaintiffs in SOMF No. 144 do not dispute that this policy existed, or that Defendants used expedited removal against paroled individuals in select cases before 2025. But the statement focuses on the decision to begin subjecting paroled individuals to expedited removal in 2025, including in larger numbers. *See* Defendants' Responses to SOMF Nos. 61-69 (Defendants do not substantively contest that DHS has only identified a handful of paroled individuals who were subjected to expedited removal before 2025 but then in 2025 began subjecting more paroled noncitizens to expedited removal). Defendants do not dispute that the AR for the January 23 Huffman Memorandum contains no explanation as to those actions.

145. The AR includes the Federal Register Notice cited in the January 23 Huffman Memo, "Designating Aliens for Expedited Removal," 90 Fed. Reg. 8139 (Jan. 24, 2025), which expanded the use of expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Li Decl., Ex. C.

Defendants' Response: Not disputed.

146. The AR includes two notices of termination of parole, which instruct to the individual receiving the notice, "Do not attempt to unlawfully remain in the United State – the federal government will find you." Li Decl. ¶ 18 & Ex. N.

Defendants' Response: Plaintiffs have not shown that the fact is material.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The statement provides evidence that the January 23 Huffman Memorandum required the termination of active grants of parole before placing parolees in expedited removal, which is material to Plaintiffs' arbitrary and capricious claim. *See* Dkt. No. 55-1 at 41-43. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

147.   There is no information in the AR about the government's ability to subject paroled individuals to expedited removal while their parole is active. Li Decl., Ex. G.

Defendants' Response: Disputed. The January 23 Huffman Memorandum, which is part of the relevant AR, is attached as Exhibit A to the Li Declaration, and the document speaks for itself.

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

Moreover, Defendants' response that the Huffman Memorandum—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

148. There is no information in the AR about the government's ability to subject paroled individuals to expedited removal after they have been continuously present in the United States for at least two years. Li Decl., Ex. G.

Defendants' Response: Disputed. The January 23 Huffman Memorandum, which is part of the relevant AR, is attached as Exhibit A to the Li Declaration, and the document speaks for itself.

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

Moreover, Defendants' response that the Huffman Memorandum—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

149. There is no information in the AR about the impact that applying expedited removal to parole beneficiaries have on those individuals, nor on any reasonable alternatives to applying expedited removal to paroled individuals that DHS considered. Li Decl., Ex. G.

Defendants' Response: Disputed. The January 23 Huffman Memorandum is attached as Exhibit A to the Li Declaration, and that document speaks for itself.

127

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

Moreover, Defendants' response that the Huffman Memorandum—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

150.   There is no information in the AR about the reliance interests of parole beneficiaries or their families, sponsors, employers, and communities that would be implicated of the parole beneficiaries were to be subjected to expedited removal. Li Decl., Ex. G.

Defendants' Response: Disputed. The January 23 Huffman Memorandum is attached as Exhibit A to the Li Declaration, and that document speaks for itself.

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

Moreover, Defendants' response that the Huffman Memorandum—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record

does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

*February 18 ICE Directive*

151. The AR that Defendants produced for the February 18 ICE Directive consists of three documents in PDF format totaling seven pages. Li Decl., Ex. H.

   Defendants' Response: Not disputed.

152. The three documents that make up the AR are the February 18 ICE Directive itself, the January 23 Huffman Memorandum, and the Executive Order specifically referenced in the February 18 ICE Directive (Executive Order 14165, "Securing Our Borders," (January 20, 2025). Li Decl., Ex. H.

   Defendants' Response: Not disputed.

153. All three documents in the AR were already publicly available either because they were published on a government website or made publicly available online (on news sites, for example). Li Decl. ¶ 12 & Ex. H.

   Defendants' Response: Disputed. Calls for information outside the administrative record.

   Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is likewise meritless. Plaintiffs do not offer the index to the administrative record for the February 18 ICE Directive for the truth of any matter contained in the documents listed in it. They offer it to establish important aspects of the problem the Secretary did not consider when issuing the directive—a proper subject of arbitrary-and-capricious review. An agency acts arbitrarily and capriciously when it "entirely failed to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), which includes the "facts and circumstances that underlay . . . the prior policy" being changed, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (citation omitted). Evidence showing what the agency failed to consider is a recognized exception to record-rule limitations. *See Dep't of Com. v. N.Y.,* 588 U.S. 752, 781-82 (2019) (affirming consideration of evidence beyond the original administrative record where necessary to evaluate agency's stated rationale); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

Additionally, the public nature of the documents in the AR for the February 18 ICE Directive is evident from the names of the documents themselves. The Parties in this case have both provided public links to the January 23 Huffman Memorandum and February 18 ICE Directive in previous briefing, Dkt. Nos. 22-1 at 6-7; 26 at 7-8; and Executive Order 14165 is public because it is an Executive Order. Since the public nature can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned," the Court may take judicial notice of this fact. Fed. R. Evid. 201(b)(2).

130

154. The AR has no information about DHS's subjecting of individuals who were paroled into the country at a port of entry to expedited removal before 2025. Li Decl., Ex. H.

Defendants' Response: Disputed. The January 23 Huffman Memorandum, which is part of the relevant AR, is attached as Exhibit A to the Li Declaration, and the document speaks for itself.

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

Moreover, Defendants' response that the Huffman Memorandum—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

155. Nothing in the AR provides an explanation as to why the government, shortly after issuing the January 23 Huffman Memorandum, took the new position that there is no time limit on the ability to process paroled individuals for expedited removal. Li Decl., Ex. H.

Defendants' Response: Disputed. Plaintiffs have not shown that the position was new. Plaintiffs have acknowledged a 2011 memo that did not include a deadline for employing expedited removal for individuals paroled for prosecution. Dkt. No. 36-

1 (2011 memo that did not state a time limit on use of expedited removal for individuals paroled for prosecution); Plaintiffs' Statement of Material Facts (Dkt. No. 55-2) ¶ 59.

Plaintiffs' Reply: Defendants do not identify a material dispute. Defendants' response does not address the contents of the AR. The 2011 memo Defendants reference is not in the AR for the February 18 ICE Directive (or for any of the challenged agency actions) and contains no explanation for the change in position Plaintiffs identify. A citation to a document outside the AR cannot create a dispute about what the AR contains. Fed. R. Civ. P. 56(c)(1).

Defendants' objection that Plaintiffs have not established that Defendants took a new position is also meritless. The January 23 Huffman Memorandum required terminating parole before two years of residency for purposes of subjecting parolees to expedited removal, SOMF Nos. 43-46, while the February 18 ICE Directive, issued less than a month later, claimed no time limit to subject parolees to expedited removal, SOMF No. 50. *See* Defendants' Responses to SOMF Nos. 43-46, 50 (not substantively contesting those facts). Defendants do not dispute that the AR contains no information about this change. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

156. There is no information in the AR about the impact that applying expedited removal to parole beneficiaries has on those individuals, nor on any reasonable alternatives to applying expedited removal to paroled individuals that DHS considered. Li Decl., Ex. H.

132

Defendants' Response: Disputed. The January 23 Huffman Memorandum is attached as Exhibit A to the Li Declaration, and that document speaks for itself.

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

Moreover, Defendants' response that the Huffman Memorandum—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

157. There is no information in the AR about the reliance interests of parole beneficiaries or their families, sponsors, employers, and communities that would be implicated if the parole beneficiaries were to be subjected to expedited removal. Li Decl., Ex. H.

Defendants' Response: Disputed. The January 23 Huffman Memorandum is attached as Exhibit A to the Li Declaration, and that document speaks for itself.

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

Moreover, Defendants' response that the Huffman Memorandum—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

*March 25 CHNV Termination Notice*

158.    The AR that Defendants produced for the March 25 CHNV Termination Notice has 68 entries consisting of two native format Excel spreadsheets and 66 documents in PDF format totaling 840 pages. Li Decl., Ex. I.

Defendants' Response: Plaintiffs have not shown this is a material fact.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The statement is clearly factual in nature and describes the universe of documents and materials considered when issuing the March 25 CHNV Termination Notice, which is relevant to whether the action was arbitrary and capricious. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a material fact is one that "might affect the outcome of the suit under the governing law").

159.    Of the 66 PDF documents in the AR, all were already publicly available either because they were published on a government website, printed in the Federal

134

Register, filed on the public docket of a federal court case, or otherwise made publicly available online (on news sites, for example). Li Decl., Ex. I.

Defendants' Response: Disputed. Calls for information outside the administrative record.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Defendants' objection that Plaintiffs rely on evidence outside the administrative record is likewise meritless. Plaintiffs do not offer the index to the administrative record for the March 25 CHNV Termination Notice for the truth of any matter contained in the documents listed in it. They offer it to establish important aspects of the problem the Secretary did not consider when issuing the notice—a proper subject of arbitrary-and-capricious review. An agency acts arbitrarily and capriciously when it "entirely failed to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), which includes the "facts and circumstances that underlay . . . the prior policy" being changed, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (citation omitted). Evidence showing what the agency failed to consider is a recognized exception to record-rule limitations. *See Dep't of Com. v. N.Y.,* 588 U.S. 752, 781-82 (2019) (affirming consideration of evidence beyond the original

135

administrative record where necessary to evaluate agency's stated rationale); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

Additionally, the public nature of the documents in the AR for the March 25 CHNV Termination Notice is evident from the names of the documents themselves (i.e., those printed in the Federal Register or those with web links) or can otherwise be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Therefore, the Court may take judicial notice of this fact. Fed. R. Evid. 201(b)(2).

160. The AR does not include the February 18 ICE Directive. Li Decl., Ex. I.

Defendants' Response: Not disputed.

161. Aside from the January 23 Huffman Memorandum and the March 25 CHNV Termination Notice itself, there is no information in the AR about DHS's subjecting of individuals who were paroled into the country at a port of entry to expedited removal. Li Decl., Ex. I.

Defendants' Response: Disputed. This AR includes the Federal Register Notice published at 89 Fed. Reg. 48710 (June 7, 2024), Li Decl. Ex. I, and that document speaks for itself.

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

Moreover, Defendants' response that the Federal Register Notice—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not

controvert—or even contest—Plaintiffs' statement that the administrative record does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

162.    Nothing in the AR provides an explanation as to why the government, after issuing the February 18 ICE Directive, took the changed position that expedited removal is available only when a noncitizen has not been continuously present in the United States for at least two years. Li Decl., Ex. I.

Defendants' Response: Disputed. Plaintiffs have not shown that agency changed its position.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Defendants also fail to identify a material dispute. The proposed fact concerns the contents of the AR, and the Defendants' response does not address the contents of the AR or point to any contrary evidence.

Plaintiffs have established that the February 18 ICE Directive "authorized ERO officers to process 'paroled arriving aliens' for expedited removal without regard to how long those individuals have been in the United States," SOMF No. 50, while the March 25 CHNV Termination Notice "terminates all individual grants of parole under the CHNV parole processes" and justifies the termination by

137

explaining that "[e]xpedited removal is available only when an alien has not been continuously present in the United States for at least the two years preceding the date of the inadmissibility determination," SOMF Nos. 54-55. Defendants have not substantively disputed either of these statements. Defendants' Responses to SOMF Nos. 50, 54-55. This is a clear change in position, and Defendants do not dispute that the AR contains no information about the change.

163.    There is no information in the AR about the government's ability to subject paroled individuals to expedited removal while their parole is active. Li Decl., Ex. I.

Defendants' Response: Disputed. The January 23 Huffman Memorandum, which is part of the relevant AR, is attached as Exhibit A to the Li Declaration, and the document speaks for itself.

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

    Moreover, Defendants' response that the Huffman Memorandum—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

164. There is no information in the AR about the government's ability to subject paroled individuals to expedited removal after they have continuously resided in the United States for more than two years. Li Decl., Ex. I.

Defendants' Response: Disputed. The January 23 Huffman Memorandum, which is part of the relevant AR, is attached as Exhibit A to the Li Declaration, and the document speaks for itself.

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

Moreover, Defendants' response that the Huffman Memorandum—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2)

165. There is no information in the AR about the impact that applying expedited removal to parole beneficiaries have on those individuals, nor on any reasonable alternatives to applying expedited removal to paroled individuals that DHS considered. Li Decl., Ex. I.

Defendants' Response: Disputed. The March 25 CHNV Termination Notice is attached as Exhibit F to the Li Declaration, and that document speaks for itself.

139

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

Moreover, Defendants' response that the Federal Register Notice—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

166. There is no information in the AR about the reliance interests of parole beneficiaries or their families, sponsors, employers, and communities that would be implicated of the parole beneficiaries were to be subjected to expedited removal. Li Decl., Ex. I.

Defendants' Response: Disputed. The March 25 CHNV Termination Notice is attached as Exhibit F to the Li Declaration, and that document speaks for itself.

Plaintiffs' Reply: Defendants fail to identify a material dispute. Plaintiffs' fact concerns the contents of the AR. Defendants pointing to a single document in the AR without identifying any information that the document contains does not create a material dispute. Fed. R. Civ. P. 56(c)(1).

Moreover, Defendants' response that the Federal Register Notice—ignoring all else in the AR—"speaks for itself" is a non-denial. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record

does not contains the relevant information. If Defendants believed the record contained the relevant information, they would cite it. They do not because they cannot. The fact is deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

*The "Arriving Alien" Definition*

167.    The AR that Defendants produced for the 1997 rulemaking that included the definition of "arriving alien" has 291 entries consisting of 9 documents in PDF format totaling 1,949 pages. Li Decl. ¶ 28 & Ex. X.

Defendants' Response: Plaintiffs have not shown this is a material fact.

Plaintiffs' Reply: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. The statement is clearly factual in nature and describes the universe of documents and materials considered when implementing the 1997 rulemaking that included the definition of "arriving alien" at issue in this case, which is relevant to the interpretation and understanding of the definition. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a material fact is one that "might affect the outcome of the suit under the governing law").

168.    The AR that Defendants produced for the 1997 rulemaking is entirely composed of public comments submitted on the notice of proposed rulemaking and the interim rule. Li Decl., Ex. X; Schacher Decl. ¶ 75.

Defendants' Response: Plaintiffs have not shown this is a material fact.

<u>Plaintiffs' Reply</u>: Defendants' response is a non-denial that fails to controvert Plaintiffs' statement. The fact should therefore be deemed admitted. LCvR 7(h)(1); Fed. R. Civ. P. 56(e)(2).

Additionally, Defendants have not provided any explanation for why this fact is immaterial. Plaintiffs have supported this fact with competent evidence in the form of the certification and index of the AR produced by Defendants for the 1997 rulemaking and a sworn statement by a scholar who has reviewed the AR for the 1997 rulemaking in full. Schacher Decl. ¶ 6. The challenged proposition is clearly factual in nature and describes the universe of documents and materials considered when implementing the 1997 rulemaking that included the definition of "arriving alien" at issue in this case, which is relevant to the interpretation and understanding of the definition. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986) (describing a material fact as one that "might affect the outcome of the suit under the governing law").

169.   Of the public comments in the AR, only three commenters identified and objected to the inclusion of people paroled into the country at ports of entry in the "arriving alien" definition. Li Decl. ¶¶ 19-21 & Exs. O, P, Q.

<u>Defendants' Response</u>: Disputed. Other commenters objected to including parolees among the group of arriving aliens. *E.g.,* Declaration of Aric A. Anderson ("Anderson Decl.") Ex. A. The material attached to the Li Declaration and the Anderson Declaration speaks for itself.

<u>Plaintiffs' Reply</u>: Defendants fail to identify a material dispute. The exhibit Defendants cite, Exhibit A to the Anderson Declaration (Dkt. 69-1), is a public

comment submitted by the Catholic Diocese of Richmond, Refugee and Immigration Services, dated February 1, 1997. In a section objecting to the portion of the proposed regulations that would bar arriving aliens in removal proceedings from adjusting status, the commenter objects to the inclusion of paroled individuals in the definition of "arriving alien" specifically because it would bar paroled individuals from adjusting status and conflict with IIRIRA. Anderson Decl., Ex. A at AA-REG-00235 ("By excluding a category of aliens which Congress explicitly allows to adjust status, the regulations are *ultra vires*."). This is precisely what Plaintiffs argue in this case. Dkt. No. 55-1 at 33-35. Additionally, the public comment generally supports Plaintiffs' argument that "arriving" is understood to involve the process of physically coming into the country. The commenter largely focuses on the impact of the proposed regulation on refugees and asylum seekers in the process of arriving in the country, including "the regulations' failure to provide adequate procedural safeguards when aliens are pre-screened by immigration officers *at airports*," and recommending that "[pre-screening] interviews should be conducted in private, comfortable rooms away from other *airport* activities" and that "asylum seekers should be given time to recuperate from their journey." *See* Anderson Decl., Ex. A at AA-REG-00231-36 (emphases added).

170. Two of these commenters made the structural argument presented in this case that including paroled individuals as arriving aliens who would therefore be exposed to expedited removal as noncitizens "arriving in the United States" conflicts with the express statutory provision that protects individuals who have been paroled into the country from expedited removal. Li Decl., Exs. O, P.

143

Defendants' Response: Not disputed.

171.	The third commenter, a group of immigration and asylum law experts, argued that the inclusion of people previously paroled into the country appeared to rest on the "legal fiction" that parolees, though physically present, had not yet effected an entry into the country, but changes made in IIRIRA were largely designed to "do away with that fiction." Li Decl., Ex. Q.

Defendants' Response: Disputed. The changes made by IIRIRA are a legal conclusion and not a statement of material fact. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Defendants' objection that this statement constitutes a "legal conclusion" is baseless. The statement quotes directly from, and describes, as a matter of fact, what is contained in the relevant public comment. It does not make any independent legal conclusions about IIRIRA.

172.	With the exception of these commenters who objected to the inclusion of parolees in the definition of "arriving alien," the public comments received in response to both the notice of proposed rulemaking and the interim rule indicate that nearly everyone who commented was unaware of the potential application of expedited removal to parolees and instead understood the arriving alien definition and its

application in the expedited removal context to be limited to people literally in the process of arriving in the United States. Schacher Decl. ¶ 77.

Defendants' Response: Disputed. Plaintiffs do not establish that "nearly everyone who commented was unaware," or that a person or organization commenting on a proposed regulation is "unaware" of legal issues not explicitly discussed in her comment. Comments other than those provided by Plaintiffs acknowledged and approved the proposal to include parolees in the definition of arriving alien in the context of expedited removal. Anderson Decl. Ex. B & C. The material attached to the declarations speaks for itself.

Plaintiffs' Reply: Defendants fail to identify a material dispute. The two comments Defendants cite (Anderson Decl., Exs. B & C) do not establish broad commenter awareness; if anything, they confirm Plaintiffs' point, particularly taken together with the contemporaneous comments from Members of Congress discussed in SOMF Nos. 173-175. Moreover, Defendants have acknowledged that "In 2006, the regulatory definitions were amended to specifically provide, as they do now, that an arriving alien includes aliens who are paroled 'even after any such parole is terminated or revoked.'" Dkt. No. 26 at 4-5. If, as Defendants now claim, the 1997 regulation always contemplated application to long-term former parolees, the 2006 amendment would have been unnecessary.

173. Senators Edward Kennedy and Paul Wellstone's comment on the proposed rule evidenced their understanding that IIRIRA's authorization to use expedited removal on noncitizens "arriving in the United States" was limited to noncitizens at ports of entry during secondary inspection, as they focused on the fact that, "[r]efugees

145

often arrive in the U.S. having just fled their persecutors. They are usually exhausted, jet-lagged and terrified." Li Decl. ¶ 22 & Ex. R.

Defendants' Response: Disputed. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

174. Senator Spencer Abraham's comment similarly evidenced his understanding that the use of expedited removal under the statute for noncitizens "arriving" with false or no documents applied to people in secondary inspection at ports of entry, frequently "following an exhausting and stressful escape from persecution." Li Decl. ¶ 23 & Ex. S.

Defendants' Response: Disputed. The material attached to the declaration speaks for itself.

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

175. The comments from Representative Lamar Smith, who played a key role in House passage of IIRIRA, highlight both that "arriving in the United States" was tied to

the process of physically entering into the country, and that the regulatory definition of "arriving alien" was used for various purposes beyond expedited removal. Li Decl. ¶¶ 24-25 & Exs. T, U.

Defendants' Response: Disputed. The material attached to the declaration speaks for itself. The material attached to the declaration does not support the adjective "physically."

Plaintiffs' Reply: Defendants fail to comply with the requirement that denials be supported by citations to record evidence. Fed. R. Civ. P. 56(c); LCvR 7(h). The absence of contrary evidence makes Plaintiffs' statement undisputed, and the Court should consider the fact deemed admitted for purposes of the motion pursuant to Rule 56(e)(2).

Defendants do not dispute the operative content of the cited material. Defendants object only to the adjective "physically," and their dispute over the use of the term is immaterial: the materials referenced and attached describe the term "arriving alien" as "selected specifically by Congress in order to provide a flexible concept that would include all aliens who are in the process of *physical entry past our borders* . . . . 'Arrival' in this context should not be considered ephemeral or instantaneous but, consistent with common usage, as a process." Li Decl., Ex. T at AA-REG-00685-86, Ex. U at AA-REG-00632-33 (emphasis added). "Physical" is the precise word he uses. Fed. R. Civ. P. 56(c), 56(e)(2); LCvR 7(h); *see also* Dkt. No. 69 at 24 ("No one disputes paroled [individuals] have physically reached a port of entry and been paroled.").

147

**RESPONSE TO DEFENDANTS' COUNTERSTATEMENT OF MATERIAL FACTS**

176.    The expedited removal authority in INA § 235(b)(1), 8 U.S.C. § 1225(b)(1), was adopted in IIRIRA, which was enacted on September 30, 1996, and took effect on April 1, 1997. IIRIRA authorized expedited removal for aliens "arriving in the United States" and aliens "described in" § 1225(b)(1)(A)(iii).

Plaintiffs' Response: Not disputed as to the first sentence. The second sentence is a legal conclusion, not a statement of fact, which partially summarizes and selectively quotes language from the statute, 8 U.S.C. § 1225(b)(1), which speaks for itself.

177.    On January 3, 1997, the Department of Justice issued a proposed rule which defined "arriving alien" to include aliens paroled at a port of entry. Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 444, 455 (Jan. 3, 1997) (proposing 8 C.F.R. 1.1(q) and including "an alien who seeks admission to or transit through the United States, as provided in 8 CFR part 235, at a port-of-entry" and specifying that "[a]n arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act"). The Department did not at that time employ its authority to designate aliens for expedited removal under § 1225(b)(1)(A)(iii). The proposed rule specifically invited comment on the definition of arriving alien. 62 Fed. Reg. at 445.

Plaintiffs' Response: Not disputed.

178.    Commenters on the rule indicated an awareness that the "arriving alien" definition included aliens paroled at a port of entry. Anderson Decl. Ex. A, B & C.

Plaintiffs' Response: Disputed in part to the extent the statement is meant to suggest broad awareness by commenters of the inclusion of parolees in the "arriving alien" definition. Defendants identified three commenters, one of whom objected on grounds that it resulted in unlawful denial of adjustment of status, Anderson Decl., Ex. A. Plaintiffs previously identified three commenters who recognized and objected to the inclusion of parolees in the definition as creating other unlawful consequences. See SOMF Nos. 169-172. These six comments (two-thirds of which objected to the inclusion of parolees in the definition) out of nearly 300 total comments do not show broad commenter awareness that parolees would be subjected to expedited removal under the proposed definition.

179.    Some commenters commented on the effect of including certain paroled aliens within the definition of arriving alien for reasons unrelated to the expedited removal statute. A letter on behalf of Catholic Diocese of Richmond, Refugee and Immigration Services, asserted that the definition would limit the availability of adjustment of status for parolees and objected to this consequence. Anderson Decl., Ex. A.

Plaintiffs' Response: Not disputed.

180.    The three commenters discussed by Plaintiffs who objected to the inclusion of certain parolees thereby demonstrated that they were aware of the proposed inclusion of certain parolees in the group of arriving aliens subject to expedited removal. Li Decl. (Dkt. 55-3) Ex. O, P & Q.

Plaintiffs' Response: Disputed in part to the extent the statement is meant to suggest broad awareness by commenters of the inclusion of parolees in the "arriving alien"

149

definition. Defendants identified three commenters, one of whom objected on grounds that it resulted in unlawful denial of adjustment of status, Anderson Decl., Ex. A. Plaintiffs previously identified three commenters who recognized and objected to the inclusion of parolees in the definition as creating other unlawful consequences. *See* SOMF Nos. 169-172. These six comments (two-thirds of which objected to the inclusion of parolees in the definition) out of nearly 300 total comments do not show broad commenter awareness that parolees would be subjected to expedited removal under the proposed definition.

181.   Two additional commenters not addressed by Plaintiffs acknowledged the inclusion of aliens paroled at a port of entry in the "arriving alien" definition as it would be applied in the expedited removal context. The January 28, 1997 comment by Central American Legal Assistance stated: "The draft's limitation of 'arriving alien' to only those found at port of entry, at sea and in parole status is appropriate." Anderson Decl., Ex. B. A January 31, 1997 comment from a law student at the University of Denver stated: "The proposed definition of 'arriving aliens' as aliens arriving at a port-of-entry, aliens interdicted at sea, aliens previously paroled upon arrival, those apprehended crossing a land border between ports-of-entry, is reasonable. . . . . Regarding the new expedited removal proceedings, I believe that they should only be applied to aliens who can be included in the above-mentioned 'arriving aliens' definition." Anderson Decl., Ex. C.

Plaintiffs' Response: Not disputed.

150

182. These commenters (described in ¶ 181) were aware of the proposal to include aliens paroled at a port of entry as arriving aliens subject to expedited removal. Anderson Decl. Ex. B & C.

Plaintiffs' Response: Not disputed.

183. Several Congressmen and Senators submitted comments on the proposed rule. Plaintiffs provide some of these comments with their motion. Li Decl. (Dkt. 55-3) Ex. R, S & T. Additional comments are attached to the Anderson Declaration. Anderson Decl. Ex. D & E. Not a single Congressman or Senator took issue with the proposal to include aliens paroled at a port of entry within the definition of arriving aliens subject to expedited removal. Li Decl. (Dkt. 55-3) Ex. R, S, & T; Anderson Decl. Ex. D & E.

Plaintiffs' Response: Not disputed as to the first three sentences. Disputed as to "Not a single Congressman or Senator took issue with the proposal to include aliens paroled at a port of entry within the definition of arriving aliens subject to expedited removal." The comments, including those submitted by Defendants, make clear that the Congressmen and Senators saw the definition of "arriving" for the purposes of expedited removal as limited to noncitizens at ports of entry during secondary inspection, not noncitizens who had already been paroled into the country. *See, e.g.*, Li Decl., Ex. R ("Refugees often arrive in the U.S. having just fled their persecutors. They are usually exhausted, jet-lagged and terrified."), Ex. S (describing individuals in secondary inspection at ports of entry, frequently "following an exhausting and stressful escape from persecution" and requesting that additional time be provided before credible fear screenings be performed, preferably "away

151

from airports and other ports of entry" in locations that would not "unduly delay[] the process."), Ex. T (describing "arriving alien" as "aliens who are in the process of physical entry past our borders"); Anderson Decl., Ex. D (focusing recommendations about expedited exclusion on asylum seekers), Ex. E (same).

184. After receiving comments, the Department issued an interim rule, effective April 1, 1997, which adopted a definition of arriving alien that included aliens paroled at a port of entry who otherwise met the definition of an arriving alien. Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,313 (Mar. 6, 1997).

Plaintiffs' Response: Not disputed.

185. Two Senators commented on the interim rule after it went into effect. Li Decl. (Dkt. 55-3) Ex. U & Z. Neither of those comments objected to the interim rule which defined "arriving alien" to include aliens paroled at a port of entry.

Plaintiffs' Response: Not disputed as to the first sentence. Disputed as to the second sentence. The comments make clear that the Senators saw the definition of "arriving" for the purposes of expedited removal as limited to noncitizens at ports of entry during secondary inspection, not noncitizens who had already been paroled into the country. *See, e.g.*, Li Decl., Ex. U (describing "arriving alien" as "aliens who are in the process of physical entry past our borders"), Ex. Z (discussing the expedited removal system only with respect to noncitizens in secondary inspection at ports of entry).

186. No lawsuit challenging the inclusion of paroled arriving aliens in the group of arriving aliens subject to expedited removal was filed within 60 days after the April 1, 1997, effective date of the regulation.

Plaintiffs' Response: Defendants' statement fails to comply with Rule 56(c)(1) because Defendants provide no evidence to support this statement. As movant on their cross-motion, Defendants bear the burden of establishing any affirmative defense of untimeliness as a matter of law. Fed. R. Civ. P. 56(c)(1), 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

187. Plaintiffs challenge three guidance documents ("Challenged Actions"), the first of which was dated January 23, 2025, and the last of which was published in the Federal Register on March 25, 2025. Dkt. 21 ¶¶ 144-170.

Plaintiffs' Response: Not disputed.

188. Plaintiffs filed a complaint on March 24, 2025, which did not challenge the regulatory definition of arriving alien. Dkt. 1.

Plaintiffs' Response: Not disputed.

189. On June 11, 2025 – more than 60 days after the last of the three Challenged Actions – Plaintiffs filed an amended complaint adding a challenge to the regulatory arriving alien definition. Dkt. 21 ¶¶ 171-183.

Plaintiffs' Response: Disputed only as to "more than 60 days after the last of the three Challenged Actions" as immaterial. Plaintiffs' challenge to the regulatory "arriving alien" definition is not governed by the 60-day timeline in 8 U.S.C. § 1252(e)(3). Plaintiffs' challenge is timely under 28 U.S.C. § 2401(a) because Plaintiffs' claim did not accrue until 2025. *Corner Post, Inc. v. Bd. of Governors of*

*Fed. Rsrv. Sys.*, 603 U.S. 799, 812 (2024); *see* Plaintiffs' Replies to SOMF Nos. 17, 25, 40. Defendants, as movant on their cross-motion, bear the burden of establishing the affirmative defense of untimeliness as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

190.   Plaintiffs agree that 8 CFR 1.2 and 235.3(b)(1)(i) provide DHS with authority, independent from the Challenged Actions, to apply expedited removal to aliens paroled at ports of entry under the "arriving in" authority of 8 U.S.C. 1225(b)(1)(A)(i). Dkt. 35 at 6-7.

Plaintiffs' Response: Disputed. Plaintiffs have never conceded that 8 C.F.R. §§ 1.2 and 235.3(b)(1)(i) lawfully authorize DHS to apply expedited removal to noncitizens paroled at ports of entry. As such, Plaintiffs dispute that DHS has any regulatory authority to do the same. Plaintiffs have always maintained—including in Count Five of the Amended Complaint, Dkt. No. 21 ¶¶ 171-183, and in their motion for partial summary judgment, Dkt. No. 55-1 at 18-46—that § 1.2's inclusion of parolees within the "arriving alien" definition is contrary to law because Congress did not authorize expedited removal of previously paroled individuals under the Arriving In Provision, 8 U.S.C. § 1225(b)(1)(A)(i).

The transcript Defendants cite (Dkt. No. 35 at 6:22-7:1) reflects only Plaintiffs' counsel's narrow acknowledgment that DHS was invoking the regulations "as they're currently written"—a description of regulatory text, not an admission that the regulations supply lawful authority. The fuller transcript confirms Plaintiffs' consistent position. Plaintiffs' counsel told this Court: "even if the regulations remain on the books and are not challenged in this specific motion,

154

if the Court stays the three challenged writings at issue . . . that will provide some relief to the plaintiffs. . . . [T]he world in which the regulations were on the books and in effect is qualitatively different from a world in which the three challenged writings plus the regulations are in effect, and . . . the harms that the plaintiffs have articulated that their members are experiencing stem from these three challenged writings." Dkt. No. 35 at 5:15-6:21. This Court itself characterized Plaintiffs' position correctly: "in practice, those regulations have been on the books and were never enforced that way, and it's only this recent directive." Dkt. No. 35 at 7:2-6.

191. Plaintiffs provide and rely on a declaration by Yael Schacher (Schacher Decl., Dkt. 55-12). At no point does the Schacher Declaration address or acknowledge the entry fiction or doctrine, under which an individual could be physically present in the United States but legally be considered at the border seeking entry or admission.

Plaintiffs' Response: Not disputed as to the first sentence. Disputed as to the second sentence, as Defendants have not shown the fact is material.

Schacher's declaration describes what Congress did and did not do in enacting and amending the expedited removal authority. Her silence on the entry fiction has no bearing on those factual statements, and Defendants identify no evidence that the entry fiction informed any of the legislative actions Schacher describes.

The entry fiction is also a non sequitur. Whatever relevance the entry fiction continues to have for procedural due process purposes of certain noncitizens, it does not transform paroled noncitizens who have already arrived in the United States—and who have lived here for months or years—into those who are "arriving" under

155

8 U.S.C. § 1225(b)(1). Defendants identify no authority, in the AR or otherwise, applying the entry fiction to expand the scope of the expedited removal statute. The doctrine does not do the work Defendants attribute to it.

192. Schacher describes his research as establishing that Congress envisioned applying expedited removal to individuals physically seeking entry. Schacher Decl. ¶ 10 ("Members of Congress were focused on making expedited removal available for two groups of noncitizens: (1) those who are in the process of physically entering the country at a port of entry . . . .") (emphasis added), *id*. ¶ 18 ("Rep. Romano Mazzoli and Sen. Alan Simpson introduced bills in 1982 that allowed inspectors to exclude noncitizens in the *physical act* of seeking entry to the United States . . . .") (emphasis added); *id*. ¶ 50 ("The House Judiciary Committee markup debates for H.R. 2202, which occurred in September and October 1995, confirm that the bill's proponents understood the expedited removal provision as applying to people in the process of *physically* coming into the country . . . .") (emphasis added).

Plaintiffs' Response: Disputed to the extent that the statement limits Schacher's research to the described scope. Schacher also describes her (note Schacher's pronouns are she/her) research as establishing that Congress in AEDPA and IIRIRA envisioned applying expedited removal to noncitizens physically present in the country who entered without inspection. At times, Members of Congress discussed using a summary removal authority in other ways, such as in response to an "Attorney General-declared extraordinary migration situation," Schacher Decl. ¶ 45, but at no point did any Member of Congress advocate for the use of a summary removal authority on a noncitizen paroled into the country at a port of entry.

156

193. The research material accompanying Schacher's declaration does not use the modifier "physical" or "physically" to describe the aliens seeking entry or admission who would be subjected to expedited removal.

Plaintiffs' Response: Disputed. Defendants' semantic quibble is meritless: the material accompanying Schacher's declaration describes the noncitizens who would be subjected to summary removal in the various proposals creating such an authority between 1981-1996 as "seeking entry at airports, ports of arrival, ports of entry, or upon stepping off an airplane." *See, e.g.,* Schacher Decl. ¶¶ 26-27 & Exs. B, C, H, K, M, Q, R, U, V. These descriptions clearly refer to physical entry, as Schacher describes. *See also* Plaintiffs' Reply to SOMF No. 90.

194. The modifier "physical" or "physically" to describe aliens seeking entry or admission subject to expedited removal is Schacher's own addition.

Plaintiffs' Response: Disputed. Defendants' statement fails to comply with Rule 56(c)(1) because Defendants provide no evidence to support this statement. Fed. R. Civ. P. 56(c)(1). Additionally, Defendants' semantic quibble is meritless: the research material accompanying Schacher's declaration describes the noncitizens who would be subjected to summary removal in the various proposals creating such an authority between 1981-1996 as "seeking entry at airports, ports of arrival, ports of entry, or upon stepping off an airplane." *See, e.g.,* Schacher Decl. ¶¶ 26-27 & Exs. B, C, H, K, M, Q, R, U, V. These descriptions clearly refer to physical entry, as Schacher describes. *See also* Plaintiffs' Reply to SOMF No. 90.

157

Dated: May 28, 2026

Respectfully submitted,

*/s/Hillary Li*
Hillary Li (GA0052)
Esther H. Sung (CA00132)
Karen C. Tumlin (CA00129)
Laura Flores-Perilla (admitted *pro hac vice*)
Brandon Galli-Graves (admitted *pro hac vice*)
Vanessa Rivas-Bernardy (admitted *pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org
vanessa.rivas@justiceactioncenter.org

Tom-Tsvi M. Jawetz (*pro hac vice*)
*JAC Cooperating Attorney*
1358 Jefferson St. NW
Washington, DC 20011
Telephone: (202) 413-5208
Tom.Jawetz@gmail.com

Carl Bergquist (*pro hac vice*)
**COALITION FOR HUMANE IMMIGRANT RIGHTS**
2533 West 3rd St, Suite 101
Los Angeles, CA 90057
Telephone: (310) 279-6025
cbergquist@chirla.org

Shana Khader (D.D.C. Bar No. 90011926)
**CASA, INC.**
P.O. Box 7277
Hyattsville, MD 20787
(240) 406-4348
skhader@wearecasa.org

*Attorneys for Plaintiffs*

158

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of for the District of Columbia by using the CM/ECF system.  Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.


*/s/Hillary Li*
Hillary Li