**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants.* | Case No.: 1:25-cv-0872 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY (Dkt. No. 79)**

The recent decision of the U.S. Court of Appeals for the District of Columbia Circuit, attached to Defendants' notice (Dkt. No. 79), does not support Defendants' arguments in the summary judgment motions pending before this Court. It confirms that the relief Plaintiffs seek would redress their injuries, and it highlights the urgency of Plaintiffs' motion.

First, while the circuit court did conclude that Plaintiffs lacked standing to request a 5 U.S.C. § 705 stay of *only* the three Department of Homeland Security ("DHS") directives challenged in the previous motion for preliminary relief (the "Challenged Directives"), Dkt. No. 22, the court's holding rested entirely on the fact that the stay Plaintiffs requested "would not affect the Government's authority to continue subjecting the plaintiffs to expedited removal under 8 C.F.R. § 1.2." *Coal. for Humane Immigrant Rts. v. Mullin*, --- F.4th ----, 2026 WL 2317908, at *5 (D.C. Cir. Aug. 11, 2026). The court reached neither the merits of Plaintiffs' claims nor the timeliness of their challenge to 8 C.F.R. § 1.2.

The "fatal redressability problem" identified by the circuit court is resolved by Plaintiffs' pending motion for summary judgment, which seeks permanent relief as to both the Challenged Directives and the inclusion of port-of-entry parole beneficiaries in the regulatory definition of "arriving alien" at 8 C.F.R. § 1.2. Plaintiffs' motion requests, *inter alia*, an order "[d]eclaring that the inclusion of paroled individuals in the definition of 'arriving aliens' in 8 CFR § 1.2 conflicts with the INA and is *ultra vires*" and "[p]ermanently vacating 8 CFR § 1.2's definition of 'arriving alien' insofar as it is applied to paroled individuals." Dkt. No. 55-1 at 44. Granting Plaintiffs' motion would fully redress Plaintiffs' injuries. *See* Dkt. No. 72 at 15.

Indeed, the circuit court's own analysis establishes as much. In holding that Defendants had standing to appeal, the court reasoned that this Court's order was "plausibly read to block the Government from relying on the regulation authorizing the Government to subject parolees to expedited removal," and that such an order would "temporarily divest[]" that authority of legal force and thereby injure Defendants. *Mullin*, 2026 WL 2317908, at *4 (citation omitted)). The court's redressability holding turned on the resulting asymmetry between "the order requested and the order entered," *id.*—an asymmetry that existed only because Plaintiffs had not sought relief as to § 1.2 at the preliminary stage. No such gap exists now.

Second, even if this Court were to conclude that Plaintiffs' challenge to 8 C.F.R. § 1.2 is untimely—which it is not—Defendants' suggestion that the circuit court decision on redressability forecloses all relief at this stage is incorrect. At summary judgment, Plaintiffs would not be left simply with vacatur of the Challenged Directives and no further relief reflecting an exercise of the Court's power that would likely redress their injuries, because Plaintiffs also seek a declaratory judgment that "noncitizens granted parole at ports of entry are not statutorily amenable to expedited removal." Dkt. No. 55-1 at 44. A declaratory judgment is not the "persuasive . . . effect

of [an] opinion," *Mullin*, 2026 WL 2317908, at *6; it is a judgment, which "ha[s] the force and effect of a final judgment or decree." 28 U.S.C. § 2201(a); *see* Dkt. No. 55-1 at 45. The requested declaratory judgment is exactly the type of authoritative interpretation of the statute that the Supreme Court has held sufficient to establish redressability, because it is substantially likely that executive officials would abide by it, even though they would not be directly bound by it. *Utah v. Evans*, 536 U.S. 452, 463-64 (2002); *Franklin v. Mass.*, 505 U.S. 788, 803 (1992) (plurality opinion); *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996). *See* Dkt. No. 72 at 15.

Additionally, Plaintiffs have requested a declaratory judgment that "expedited removal orders issued to individuals previously paroled into the country at a port of entry are not in accordance with law and that such orders are not considered orders of removal under 8 U.S.C. § 1225(b)(1)." Dkt. No. 55-1 at 44. This declaratory judgment would allow Plaintiffs' members and other paroled individuals unlawfully subjected to expedited removal to seek concrete protection, including in immigration court, based upon the specific facts of their cases. *Id.* at 45.

Third, Defendants' notice also highlights that Defendants continue to assert the authority to use—and are using—expedited removal against individuals who have been paroled into the country. As the circuit court observed, "it is undisputed that since last year, the Government has indeed been relying on § 1.2," and Defendants have adopted a "new enforcement priority for the expedited removal of parolees." *Mullin*, 2026 WL 2317908, at *6.[1] Plaintiffs are available for a hearing on the pending summary judgment motions, including on an expedited basis, so that the

---

[1] Just recently, U.S. Immigration and Customs Enforcement reportedly directed its officers to consider using expedited removal against noncitizens stripped of Temporary Protected Status—a direction likely to affect many former TPS holders from countries such as Afghanistan, Haiti, and Venezuela who were paroled into the United States at ports of entry. Miriam Jordan, *Haitians in Springfield Hunker Down as ICE Begins Detentions*, N.Y. Times (Aug. 18, 2026), https://www.nytimes.com/2026/08/18/us/ice-haiti-detention-springfield-tps-immigration.html.

matters therein that are impacting noncitizens across the country, including Plaintiffs' members, can be decided without delay.

Dated: August 26, 2026

Respectfully submitted,

/s/Hillary Li
Hillary Li (GA0052)
Esther H. Sung (CA00132)
Karen C. Tumlin (CA00129)
Laura Flores-Perilla (admitted *pro hac vice*)
Brandon Galli-Graves (admitted *pro hac vice*)
Vanessa Rivas-Bernardy (admitted *pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org
vanessa.rivas-bernardy@justiceactioncenter.org

Tom-Tsvi M. Jawetz (*pro hac vice*)
*JAC Cooperating Attorney*
1358 Jefferson St. NW
Washington, DC 20011
Telephone: (202) 413-5208
Tom.Jawetz@gmail.com

Carl Bergquist (*pro hac vice*)
**COALITION FOR HUMANE IMMIGRANT RIGHTS**
2533 West 3rd St, Suite 101
Los Angeles, CA 90057
Telephone: (310) 279-6025
cbergquist@chirla.org

Shana Khader (D.D.C. Bar No. 90011926)
**CASA, INC.**
P.O. Box 7277
Hyattsville, MD 20787
(240) 406-4348
skhader@wearecasa.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify on August 26, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify by all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF filing system.

*/s/ Hillary Li*
Hillary Li (GA0052)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
hillary.li@justiceactioncenter.org