**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants.* | Case No.: 1:25-cv-0872 |

**PLAINTIFFS' SUPPLEMENTAL PLEADING**
**PURSUANT TO FED. R. CIV. P. 15(d)**

Plaintiffs, by and through their undersigned counsel, hereby supplement their First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(d). Plaintiffs allege the following:

**SUPPLEMENTAL FACTUAL ALLEGATIONS**

1. Plaintiffs incorporate by reference every allegation in Plaintiffs' First Amended Complaint (ECF No. 21).

2. Temporary Protected Status ("TPS") is a temporary immigration status that the federal government may provide to nationals of designated countries when armed conflict, an environmental disaster, or other extraordinary and temporary conditions make it difficult or unsafe for those nationals to return to their home country. TPS gives its holders protection against removal, as well as eligibility for work authorization, and can be granted and subsequently renewed in six-, twelve-, or eighteen-month increments following periodic review of country conditions.

3. To be eligible to apply for TPS, a foreign national of a country designated for TPS must, at a minimum, be present in the United States when the TPS designation occurs, but the manner in which the noncitizen came to the United States has no bearing on the noncitizen's eligibility for TPS. As a result, noncitizens who have been paroled into the United States at a port of entry may qualify for TPS if they were present in the United States when their home country was designated for TPS and if they meet the other eligibility requirements for TPS.

4. As of January 20, 2025, 17 countries were designated for TPS and hundreds of thousands of individuals from those countries maintained TPS protections.

5. A significant number of noncitizens from Afghanistan, Haiti, Venezuela, and Ukraine who initially came into the country pursuant to a grant of parole issued at a port of entry in connection with Operation Allies Welcome, the Haitian and Venezuelan Humanitarian Parole Processes, and Uniting for Ukraine subsequently applied for and received TPS.

6. Some noncitizens from other designated countries who also initially came into the country pursuant to a grant of parole issued at a port of entry similarly may have subsequently applied for and received TPS.

7. Since January 20, 2025, the Department of Homeland Security has taken steps to end TPS designations for all but four of the seventeen countries. Although some of these termination decisions were halted during litigation, others were permitted to take effect and hundreds of thousands of TPS holders lost TPS.

8. On June 25, 2026, the U.S. Supreme Court reversed two lower court rulings that had halted DHS's termination of TPS for Haiti and Syria. *Mullin v. Doe*, 609 U.S. ____ (2026). Since then, those and other TPS termination decisions have been permitted to take effect and

hundreds of thousands of additional TPS holders have lost protections, including more than 330,000 Haitian nationals living in the United States.

9. TPS designations remain in place only for El Salvador, Lebanon, Sudan, and Ukraine, and protections for some Venezuelan nationals remain in place only until October 2, 2026. U.S. Citizenship & Immigr. Servs., *Temporary Protected Status Designated Country: Venezuela* (Oct. 23, 2025), https://www.uscis.gov/humanitarian/temporary-protected-status/temporary-protected-status-designated-country-venezuela.

10. Subsequent to the Supreme Court's decision in *Mullin*, the *New York Times* reported on August 18, 2026, that "ICE has indicated internally that it would push to quickly deport people who recently lost T.P.S., including those from Haiti, Syria, Yemen, and South Sudan." The *New York Times* further reported that it had reviewed internal guidance issued the previous week to Immigration and Customs Enforcement ("ICE") officers instructing that former TPS holders should "first be considered for expedited removal." Miriam Jordan, *Haitians in Springfield Hunker Down as ICE Begins Detentions,* The New York Times (Aug. 18, 2026), https://www.nytimes.com/2026/08/18/us/ice-haiti-detention-springfield-tps-immigration.html.

11. Upon information and belief, the August 18, 2026 *New York Times* article is the first public mention of any internal ICE guidance concerning TPS holders and the use of expedited removal.

12. Upon information and belief, the ICE guidance referenced in the August 18, 2026 *New York Times* article (the "August 2026 ICE TPS Guidance") was issued on or around August 12, 2026, and is not publicly available.

13. Upon information and belief, the language in the guidance regarding amenability to and consideration for expedited removal extends to former TPS holders who came into the country at a port of entry pursuant to a grant of parole.

14. Upon information and belief, the reason the guidance purports to expose former TPS holders who came into the country at a port of entry pursuant to a grant of parole to expedited removal is because such individuals are considered to be "arriving aliens," and therefore "arriving in" the United States and subject to expedited removal under 8 U.S.C. § 1225(b)(1)(A)(i), and also because—if their parole has since been terminated—they are considered to be someone who "has not been admitted or paroled into the United States" and subject to expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii).

15. Plaintiff CHIRLA's members include noncitizens who have or previously had TPS and were granted parole into the country at a port of entry, including Afghans who were paroled in through Operation Allies Welcome, Ukrainians who were paroled in through Uniting for Ukraine and Venezuelans who were paroled in after securing appointments to appear at a land port of entry using the CBP One mobile application, and who were subsequently granted TPS. With the termination of numerous parole processes and TPS designations, these CHIRLA members and other CHIRLA clients, including many from Haiti, have expressed directly to CHIRLA a severely heightened fear of being arrested, detained and deported summarily. The members who were paroled into the country at ports of entry were already acutely aware of the threat of expedited removal and now have a heightened fear of being particularly targeted for expedited removal because their TPS status has been terminated. CHIRLA's members and other clients from Ukraine who were paroled into the

country similarly fear being targeted for expedited removal if their TPS is terminated next month, when the designation may expire on October 19, 2026.

16. Plaintiff UndocuBlack Network's members include noncitizens who have or previously had TPS and were granted parole into the country at a port of entry, including Haitians who were paroled into the country through the Haitian CHNV (parole for Cubans, Haitians, Nicaraguans, and Venezuelans) parole process and who were subsequently granted TPS. In the last month since the *Mullin v. Doe* Supreme Court decision permitting the termination of Haitian TPS protections to move forward, UBN has heard directly from some of these members that they fear being arrested, detained, and targeted for expedited removal given the termination of their TPS status and the administration's targeting of former TPS holders for expedited removal.

17. Plaintiff CASA's members include noncitizens who have or previously had TPS and were granted parole into the country at a port of entry, including Haitians and Venezuelans who were paroled into the country through the CHNV (parole for Cubans, Haitians, Nicaraguans, and Venezuelans) parole process who were subsequently granted TPS. In the last month, since the *Mullin v. Doe* Supreme Court decision permitting the termination of Haitian TPS protections to move forward, CASA has heard directly from Haitian members that they fear being arrested, detained, and targeted for expedited removal given the termination of their TPS status and the administration's targeting of former TPS holders for expedited removal. CASA members whose TPS status has been terminated live in fear of being targeted for expedited removal as a result of the administration's targeting of former TPS holders.

**SUPPLEMENTAL CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**(Violation of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(1)(A); Administrative Procedure Act, 5 U.S.C. § 706(2); 8 U.S.C. § 1252(e)(3))**

18. Plaintiffs incorporate by reference every allegation set forth above, and in Plaintiffs' First Amended Complaint (ECF No. 21).

19. The August 2026 ICE TPS Guidance violates the INA and is "not in accordance with law" and "in excess of statutory . . . authority" under the APA, 5 U.S.C. § 706(2)(A), (C), to the extent that it authorizes the use of expedited removal for former TPS holders who were inspected and granted parole at a port of entry and are currently present in the United States subsequent to that parole. Such individuals completed their arrival into the United States years ago and are no longer in the act of "arriving in the United States" for purposes of the immigration laws, including 8 U.S.C. § 1225(b)(1)(A)(i). Additionally, such individuals "ha[ve] been . . . paroled into the United States" and cannot be subject to expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

20. The August 2026 ICE TPS Guidance is therefore contrary to law and must be held unlawful, set aside, and/or otherwise vacated.

21. The August 2026 ICE TPS Guidance constitutes a new and unique "written policy directive, written policy guideline, or written procedure issued by or under the authority of the [Secretary of Homeland Security] to implement [8 U.S.C. § 1225(b), the expedited removal statute]." 8 U.S.C. § 1252(e)(3)(A)(ii).

**SECOND CLAIM FOR RELIEF**
**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) – arbitrary and capricious)**

22. Plaintiffs incorporate by reference every allegation set forth above, and in Plaintiffs' First Amended Complaint (ECF No. 21).

23. Upon information and belief, the August 2026 ICE TPS Guidance is inconsistent with the January 23 Huffman Memorandum and the March 25 CHNV Termination Notice, both of which contemplate subjecting parolees to expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii), and the latter of which expresses DHS's view that parolees may be removed only under this provision, which is why the Department took steps to prematurely terminate the parole status granted to Cuban, Haitian, Nicaraguan, and Venezuelan parole recipients before they had been in the United States for two years. In contrast, the August 2026 ICE TPS Guidance considers all individuals who were granted parole at ports of entry and are now present in the United States eligible for expedited removal under 8 U.S.C. § 1225(b)(1)(A)(i) as individuals who are "arriving in the United States." Upon information and belief, the August 2026 ICE TPS Guidance does not provide an explanation for this new position.

24. Upon information and belief, the August 2026 ICE TPS Guidance does not consider the impact of the agency's decision to apply expedited removal to former TPS holders who came into the country at a port of entry pursuant to a grant of parole—to their families, their employers, their communities—and does not consider any reasonable alternatives.

25. The August 2026 ICE TPS Guidance is arbitrary and capricious and must therefore be held unlawful, set aside, and/or vacated.

**THIRD CLAIM FOR RELIEF**
**(Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution)**

26. Plaintiffs incorporate by reference every allegation set forth above, and in Plaintiffs' First Amended Complaint (ECF No. 21).

27. Plaintiffs' members who are at risk of being subjected to expedited removal under the August 2026 ICE TPS Guidance are entitled under the Due Process Clause to notice, an opportunity to be heard, and to have the law correctly applied to their cases, including to a meaningful process before they can be removed from the country.

28. The August 2026 ICE TPS Guidance must therefore be enjoined as violative of the Fifth Amendment's guarantee of due process.

**FOURTH CLAIM FOR RELIEF**
**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2) – *Accardi* Doctrine)**

29. Plaintiffs incorporate by reference every allegation set forth above, and in Plaintiffs' First Amended Complaint (ECF No. 21).

30. To the extent that the August 2026 ICE TPS Guidance purports to subject to expedited removal former TPS holders who came into the country at a port of entry pursuant to a grant of parole, but whose parole status has since expired or been terminated, such a policy is presumably based on Defendants' interpretation of 8 U.S.C. § 1225(b)(1)(A)(iii)(ii) that a noncitizen who has been paroled into the country becomes a person who has not been paroled into the country once their parole status terminates or expires.

31. Defendants' actions are contrary to the express terms of the expedited removal statute and the implementing regulations at 8 C.F.R. § 235.3(b)(1)(ii) and (b)(6).

32. Defendants' interpretation of the statute and relevant regulations, as set forth above, violates agency procedures, including those found at 8 C.F.R. § 235.3(b)(1)(ii) and (b)(6).

33. The August 2026 ICE TPS Guidance, as set forth above, should therefore be set aside under the *Accardi* principle.

34. The August 2026 ICE TPS Guidance, as set forth above, fails to comply with the issuing agencies' regulations and is therefore arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs hereby incorporate and reassert the prayer for relief from Plaintiffs' First Amended Complaint and also set forth the additional requests for relief:

a. Declare that former TPS holders who came into the country at a port of entry pursuant to a grant of parole are not amenable to expedited removal under 8 U.S.C. § 1225(b)(1)(A) and that the August 2026 ICE TPS Guidance is unconstitutional and contrary to law and arbitrary and capricious in violation of the APA.

b. Preliminarily enjoin and stay the August 2026 ICE TPS Guidance to the extent it subjects to expedited removal former TPS holders who came into the country at a port of entry pursuant to a grant of parole pursuant to Federal Rule of Civil Procedure 65(a) and 5 U.S.C. § 705 during the pendency of this suit.

c. Permanently enjoin and vacate at final judgment the August 2026 ICE TPS Guidance to the extent it subjects to expedited removal former TPS holders who came into the country at a port of entry pursuant to a grant of parole.

Dated: October 9, 2026

Respectfully submitted,

*/s/Hillary Li*
Hillary Li (GA0052)
Esther H. Sung (CA00132)
Karen C. Tumlin (CA00129)
Laura Flores-Perilla (admitted *pro hac vice*)
Brandon Galli-Graves (admitted *pro hac vice*)
Vanessa Rivas-Bernardy (admitted *pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org
vanessa.rivas@justiceactioncenter.org

Tom-Tsvi M. Jawetz (*pro hac vice*)
*JAC Cooperating Attorney*
1358 Jefferson St. NW
Washington, DC 20011
Telephone: (202) 413-5208
Tom.Jawetz@gmail.com

Carl Bergquist (*pro hac vice*)
**COALITION FOR HUMANE IMMIGRANT RIGHTS**
2533 West 3rd St, Suite 101
Los Angeles, CA 90057
Telephone: (310) 279-6025
cbergquist@chirla.org

Shana Khader (D.D.C. Bar No. 90011926)
**CASA, INC.**
P.O. Box 7277
Hyattsville, MD 20787
(240) 406-4348
skhader@wearecasa.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify on October 9, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF filing system.

*/s/ Hillary Li*
Hillary Li (GA0052)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
hillary.li@justiceactioncenter.org